ALLISON H. GODDARD (211098)
**JACZKO GODDARD LLP**
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6150
Facsimile: (858) 225-3500

MARTIN B. PAVANE (admitted *pro hac vice*)
TEODOR J. HOLMBERG (admitted *pro hac vice*)
**COHEN PONTANI LIEBERMAN & PAVANE LLP**
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 687-2770
Facsimile: (212) 972-5487
E-mail: mpavane@cplplaw.com
E-Mail: tidge@cplplaw.com

Attorneys for Defendant and Counterclaim-Plaintiff
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation; MERCK & CO., INC., a New Jersey corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH INC., a Delaware corporation; and DOES 17-50,<br><br>Defendants.<br>______________________________<br>AND RELATED COUNTERCLAIMS. | Case No. 3:07-CV-00097-JLS-RBB<br><br>**CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.'S OPPOSITION TO ANTICANCER, INC.'S MOTION FOR LEAVE TO AMEND ITS PRELIMINARY INFRINGEMENT CONTENTIONS**<br><br>Hearing Date: January 14, 2008<br>Time: 10:00 a.m.<br>Courtroom: B, 1st Floor<br>Judge: Honorable Ruben B. Brooks |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION / BRIEF STATEMENT .......... 1

II. BACKGROUND .......... 2

A. The Deficiencies in AntiCancer's Present Preliminary Infringement Contentions Against CRI .......... 3

B. AntiCancer Did Not Confer With CRI Concerning the Deficiencies (Instead Flatly Denying Them In Writing), Briefly Asserted Its Intent To Amend Its Contentions On Other Grounds, And Never Conferred With CRI Concerning Its Proposed Amended Contentions .......... 6

C. AntiCancer Is Trying To Add "New" Material to Its Contentions Against CRI, Without Explanation or Justification for This "New" Material's Absence from the Present Contentions, and Without Amending In Any Way the Original Deficient Language of the Contentions Against CRI .......... 7

III. MEMORANDUM OF POINTS AND AUTHORITIES .......... 9

A. AntiCancer Must Explain, *Inter Alia*, Why Any "New" Material Was Not Included in Its Original Contentions .......... 9

B. AntiCancer Offers No Explanation Except "Neglect" for The Absence of the "New" Material From Its Original Contentions .......... 9

C. In Addition, AntiCancer Did Not "Meet and Confer" With CRI Regarding the Addition of This "New" Material to Its Contentions Against CRI .......... 10

IV. CONCLUSION .......... 10

Pursuant to CivLR 7.1.f.3.a, defendant Cambridge Research & Instrumentation, Inc., ("CRI") hereby files this written opposition to plaintiff AntiCancer, Inc.'s ("AntiCancer") motion for leave to amend its infringement contentions against, *inter alia*, CRI [D.E. 065] ("AntiCancer's Mot/Amd. [D.E. 065]").

Although CRI joins in the reasoning behind defendant Merck & Co., Inc.'s ("Merck") opposition [D.E. 072] and defendant Novartis Institutes for BioMedical Research, Inc.'s ("NIBRI") joinder [D.E. 073] to Merck's opposition, CRI is filing a separate opposition because CRI is in a somewhat different posture than Merck and NIBRI on this issue. AntiCancer's original contentions were against CRI ***alone*** (neither Merck nor NIBRI are even mentioned in AntiCancer's original claim chart). Thus, AntiCancer's Mot/Amd. [D.E. 065], in regards to CRI, is truly a motion to amend the contentions against CRI, whereas AntiCancer's Mot/Amd. [D.E. 065], in regards to Merck and NIBRI, is actually a motion for leave to file contentions against Merck and NIBRI for the first time, more than a month after the deadline in the CMC Order [D.E. 049]. Simply put, by contrast to CRI, there are no "proposed amended contentions" in regards to NIBRI and Merck, only brand new ones.

## I. INTRODUCTION / BRIEF STATEMENT

Pursuant to CivLR 7.1.f.3.b, CRI makes the following brief statement of reasons in opposition to AntiCancer's Mot/Amd. [D.E. 065].

First, AntiCancer has provided no explanation for why AntiCancer was unable to put the "new" information from its proposed amended contentions against CRI in its original contentions against CRI. Instead, AntiCancer provides irrelevant excuses about how counsel for AntiCancer and AntiCancer's president, Robert Hoffman, were not able to work with each other in the period ***after*** the original contentions were filed. *See*, *e.g.*, AntiCancer's Mot/Amd. [065], p. 3, l. 12-13. On this basis alone, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

Second, the "new" information in AntiCancer's proposed amended contentions against CRI is not "new"; it has been known, or should have been known, to AntiCancer for months, if not years. For example, one of the three "new" references in AntiCancer's proposed amended contentions against CRI was co-written by Robert Hoffman, the aforementioned president of AntiCancer. On this alternative basis alone, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

Third, in addition to being irrelevant, AntiCancer's excuse that AntiCancer's counsel was too busy (*after* filing the original contentions) to file AntiCancer's proposed amended contentions "timely and in the correct format" (AntiCancer's Mot/Amd. [065], p. 3, l. 23-24) begs the question: *whose fault is that?* After AntiCancer's counsel made this admission that he was too busy to meet his discovery obligations under the CMC Order [D.E. 049] in this case, this same counsel initiated another patent infringement litigation for AntiCancer in this very court. *See*, *e.g.*, Docket Report in *AntiCancer v. Teco et al*., S.D.Cal. Case No. 07-cv-02294-L-BLM, (showing Lawton's Dec. 7, 2007 filing of a patent infringement complaint for AntiCancer), **Exhibit 1** hereto. It was AntiCancer's decision to choose this counsel to litigate this case (*and to initiate and litigate new cases as well*), and AntiCancer—not defendants—should bear the consequences of that decision. At least for this yet further alternative reason, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

Fourth, after AntiCancer served its original contentions against CRI, CRI sent a letter describing in great detail the deficiencies of AntiCancer's contentions. After leading CRI to believe, during a discovery teleconference on the issue, that AntiCancer would address at least some of these deficiencies, AntiCancer instead denied them in writing and offered its "proposed amended contentions" which suffer from the same deficiencies. At least for the additional reason that AntiCancer has made no attempt to correct in its proposed amended contentions the glaring deficiencies of the original contentions against CRI, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

Fifth, although CRI initiated a meet-and-confer teleconference with AntiCancer concerning the deficiencies with AntiCancer's present contentions against CRI (at which AntiCancer avoided all discussion of those deficiencies), AntiCancer never initiated a meet-and-confer conference concerning its proposed amended contentions against CRI to discuss the substance of those amendments (which were completely unrelated to the deficiencies raised by CRI). At least for this additional reason, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

## II. BACKGROUND

CRI adopts all the facts set forth in Merck's and NIBRI's Background sections, and adds the following:

### A. The Deficiencies in AntiCancer's Present Preliminary Infringement Contentions Against CRI

In the claim chart required as part of the preliminary infringement contentions[1] by the CMC Order [D.E. 049], ¶2(c), AntiCancer was required to "[identify] specifically where each element of each asserted claim is found within each Accused Instrumentality" of each defendant. As mentioned above, the claim chart in AntiCancer's present infringement contentions refers only to CRI, and has no mention of either Merck or NIBRI. *See* AntiCancer's Original Claim Chart, pp. 6-19 in Ex. A to AntiCancer's Mot/Amd. [D.E. 065]; *see also* the claim chart in AntiCancer's proposed amended preliminary infringement contentions ("AntiCancer's Proposed Amended Claim Chart"), **Exhibit 2** hereto.[2]

Despite the clear instruction provided by the CMC Order, neither AntiCancer's original claim chart nor AntiCancer's proposed amended claim chart[3] provide an analysis relating each element of each asserted claim to some activity of CRI's. CMC Order [D.E. 049], ¶2(c); *see also*, *e.g.*, *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003) ("At this juncture, a party may comply with Patent LR 3-1 [equivalent to CMC Order, ¶2(c)] by setting forth particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement beyond that which is provided by the mere language of the patents themselves.") Instead, the majority of AntiCancer's original claim chart is spent describing what is allegedly disclosed in an article written by AntiCancer's aforementioned president, Robert M. Hoffman. As pointed out by CRI in a letter to AntiCancer detailing the various deficiencies in AntiCancer's original contentions:

---

[1] There were two components to AntiCancer's preliminary infringement contentions: the first, the "shell" document which discusses, *inter alia*, AntiCancer's asserted priority dates for the patents-in-suit; and the second, a claim chart which sets forth the specifics of AntiCancer's infringement contentions. Merck's opposition argues the issues concerning AntiCancer's asserted priority dates (and CRI joins Merck's opposition concerning the priority dates), but, since AntiCancer's original claim chart was directed to CRI alone, CRI discusses herein the issues with AntiCancer's original claim chart.

[2] Because (a) the material AntiCancer is now attempting to add has been highlighted in yellow in the exhibit; and (b) AntiCancer's proposed amended contentions against CRI have not modified the original language of the claim chart in any way, the unhighlighted material in **Ex. 2** constitutes AntiCancer's present, or original, claim chart.

[3] AntiCancer's proposed amended claim chart still has the language of the original claim chart, and shares in all of the deficiencies of the original claim chart. However, the specifics of the proposed amended claim chart are discussed in a section below, and this section is directed the original claim chart.

> Instead of contending that (a) CRI or a third party has performed the steps of AntiCancer's asserted method claims; (b) CRI's MAESTRO can perform the steps of AntiCancer's asserted method claims; (c) CRI's MAESTRO has no substantial noninfringing use (*i.e.*, contributory infringement); or (d) CRI has actively and knowingly aided and abetted a third party to directly infringe AntiCancer's asserted method claims (*i.e.*, inducing infringement), AntiCancer's chart cites (1) an article which AntiCancer alleges to have downloaded from CRI's website ("the CRI article"), which article, in turn, cites a 2002 Lancet Oncology article by Robert Hoffmann ("the Hoffmann article"); (2) an image entitled "GFP-Labeled Colon Tumor" allegedly "drawn from the CRI website as of October 12, 2007"; and (3) an image entitled "GFP-Labeled mouse pancreatic islets", allegedly "drawn from the CRI website as of October 12, 2007".

Holmberg's Nov. 1, 2007 letter, **Exhibit 3** hereto, pp. 4-5

The majority of AntiCancer's original chart—22 of the 35 paragraphs—consists of AntiCancer's description of the contents of the Hoffman article.[4] *See* AntiCancer's Proposed Amended Claim Chart, **Ex. 2** (unhighlighted paragraphs in the left column constitute the paragraphs of the original claim chart). But the only connection between the Hoffman article and CRI, as explained in the first paragraph of AntiCancer's chart, is that the "CRI article" (one of the many articles and papers published by CRI) has a *single* sentence on page 3, where that single sentence has two separate endnotes, one of which refers to the Hoffman article. *See* AntiCancer's Proposed Amended Claim Chart, **Ex. 2** (first paragraph in the left column); the CRI article,[5] **Exhibit 9** hereto (the single sentence on page three is highlighted in the exhibit); *see also* Holmberg's Nov. 1, 2007 letter, **Ex. 3** hereto, p. 5 ("AntiCancer does not allege that the CRI article teaches, discloses, suggests, or induces one to perform the steps detailed in AntiCancer's asserted method claims, but rather argues that the Hoffmann article cited in the CRI article discloses the steps detailed in AntiCancer's asserted method claims"); p. 4, 3rd full paragraph, ("But the broad usage described in the sentence [in the CRI article] … covers a universe of uses and methods not covered by AntiCancer's asserted method claims.").

---

[4] Hoffman, R., "Green fluorescent protein imaging of tumor growth, metastasis, and angiogenesis in mouse model", Lancet Oncology, vol. 3, issue 9, pp. 546-56 (2002). AntiCancer did not attach this article or "the CRI article" to its original contentions, which made it even more difficult to ascertain what AntiCancer was contending. *See*, *e.g.*, Holmberg's Nov. 1, 2007 letter, **Ex. 3**, p. 5, footnote. Because AntiCancer did not provide a copy of AntiCancer's cited references with its motion to amend, the Hoffman article is attached as **Exhibit 8** hereto.

[5] Mansfield, J., Levenson, R., "Distinguished Photons: The Maestro™ *in-vivo* Fluorescence Imaging System", reproduced from BioTechniques Protocol Guide 2007. In addition to highlighting the single sentence referred to by AntiCancer on page three, the two endnote references are highlighted on page nine. *See* **Ex. 9**, pp. 3, 12.

The remaining portions of AntiCancer's original chart—12 of the 35 paragraphs—consists of AntiCancer's description of what is allegedly shown in two images downloaded from CRI's website (*i.e.*, the "GFP-Labeled Colon Tumor" image[6] and the "GFP-labeled mouse pancreatic islets" image). *See* AntiCancer's Proposed Amended Claim Chart, **Ex. 2** (unhighlighted paragraphs constitute the original claim chart). But, not only is AntiCancer's description of what is shown in the two images often incorrect, the description often does not bear any obvious relation to the language of the asserted claim to which it supposedly corresponds. *See* Holmberg's Nov. 1, 2007 letter, **Ex. 3**, p. 5, 2nd and 3rd full paragraphs.

AntiCancer's original claim chart does ***not*** "[set] forth particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement beyond that which is provided by the mere language of the patents themselves." *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003). Instead, AntiCancer's original claim chart describes the contents of an AntiCancer article (whose only connection with CRI is as an endnote reference from a single sentence in a CRI article), and misdescribes the contents of two images downloaded from CRI's website, without once attempting to contend a single act of direct or indirect infringement by CRI.

After AntiCancer tardily served its preliminary infringement contentions, CRI sent a nine page letter that described, in detail, the deficiencies in AntiCancer's preliminary infringement contentions (including, *inter alia*, the problems described above), and demanded a discovery teleconference under CivLR 26.1. Holmberg's Nov. 1, 2007 letter, **Ex. 3**.

---

[6] As was subsequently explained in a CRI letter to AntiCancer, the "GFP-Labeled Colon Tumor" label outside the image is actually incorrect, while the description inset in the image is correct. *See* **Ex. 2**, p. 2 (description inset in image can be clearly seen); Holmberg's Nov. 30, 2007 letter, **Exhibit 7** hereto ("An error in CRI's website was brought to CRI's attention by AntiCancer's contentions: although the label *inside* image MSI 05 was correct (*see*, *e.g.*, Prelim. Infr. Conts., Fig. 1, inset on the left hand, "Unmixed Maestro images of Fluoroscein (Blue), Cy 3.5 (Green), … "), the label *outside* the image, "GFP-labeled Colon Tumor", was incorrect. The MSI 05 image's outset label has been corrected and now matches the inset label (*i.e.*, "Maestro™ separation of fluoroscein, Cy 3.5, TRITC, and food autofluorescence").").

### B. AntiCancer Did Not Confer With CRI Concerning the Deficiencies (Instead Flatly Denying Them In Writing), Briefly Asserted Its Intent To Amend Its Contentions On Other Grounds, And Never Conferred With CRI Concerning Its Proposed Amended Contentions

At the teleconference demanded by CRI to discuss the aforesaid deficiencies with the original claim chart, AntiCancer avoided all discussions of the substantive problems with AntiCancer's preliminary infringement contentions, stating that a "detailed letter concerning the deficiencies listed in CRI's November 1st letter would be forthcoming". *See*, *e.g.*, Holmberg's Nov. 8, 2007 letter memorializing some of the Nov. 6, 2007 teleconference, **Exhibit 4** hereto, p. 2; and Holmberg's Nov. 9, 2007 letter, **Exhibit 5** hereto, p. 1 ("… you avoided any substantive discussion of the deficiencies in the teleconference between AntiCancer and CRI by announcing your intent to send a detailed written response."); *see also* CivLR 16.5(k) ("under no circumstances may counsel satisfy the "meet and confer" obligation by written correspondence").

AntiCancer's subsequent letter denied that there were any problems or deficiencies with AntiCancer's preliminary infringement contentions. Lawton's Nov. 7, 2007 letter, **Exhibit 6** hereto. After denying there were any deficiencies with its contentions, AntiCancer announced its intent to amend its claim chart on a completely different ground, i.e., "to add further specificity on priority dates of claims and accused instrumentalities, images and articles". *Id.*, p. 2. AntiCancer gave no reason for why that "specificity" was not present in the originally served contentions.

As CRI pointed out in a letter at the time, although AntiCancer had briefly mentioned its desire to amend its contentions against CRI (on grounds totally unrelated to the deficiencies raised by CRI), AntiCancer never bothered to confer substantively with CRI concerning its desired amendments. Holmberg's Nov. 9, 2007 letter, **Ex. 5**, p. 1 ("… we did not have ***any*** discussion concerning those amendments: you did not explain their content, why they were needed, or why you were previously unable to put them in AntiCancer's preliminary infringement contentions. … We [still] do not even know what they are."). Despite this, CRI still offered to consider stipulating to AntiCancer's proposed amended contentions if certain pre-conditions were met (such as, *e.g.*, explaining what prevented AntiCancer from putting the new material in the original contentions). *Id.*, pp. 1-2.

AntiCancer never responded to CRI's offer, and never attempted to confer substantively with CRI concerning its proposed amended contentions against CRI. As such, it is questionable whether AntiCancer has complied with either the spirit or the letter of CivLR 26.1, which requires a meet-and-confer conference before the filing of a motion, and CivLR 16.5(k), which states that "under no circumstances may counsel satisfy the 'meet and confer' obligation by written correspondence".

### C. AntiCancer Is Trying To Add "New" Material to Its Contentions Against CRI, Without Explanation or Justification for This "New" Material's Absence from the Present Contentions, and Without Amending In Any Way the Original Deficient Language of the Contentions Against CRI

AntiCancer forwarded its proposed amended contentions against CRI on November 12th. The claim chart in AntiCancer's proposed amended contentions against CRI keeps the deficient language of the originally served contentions entirely intact. *See*, *e.g.*, AntiCancer's Original Claim Chart, pp. 6-19 in Ex. A to AntiCancer's Mot/Amd. [D.E. 065]; and AntiCancer's Proposed Amended Claim Chart, **Ex. 2** hereto (in which the material AntiCancer is now attempting to add has been highlighted in yellow). The only amendment is the addition of three boilerplate paragraphs describing three "new" references and a fourth paragraph[7] making the general assertion that "CRI's published articles and images in the Hoffman article and CRI's website shows mice subjects which are mammals".[8] *See* AntiCancer's Proposed Amended Claim Chart, **Ex. 2** (paragraphs are highlighted and identified). Two of the "new" references are by CRI personnel and have been publicly available (*e.g.*, on CRI's website) since before this litigation began. The third "new" reference is never referred to by name, but instead elliptically referred to as "the second reference" from "the document entitled Selected References on CRI's website". *See*, *e.g.*, AntiCancer's Proposed Amended Claim Chart, **Ex. 2** (where

---

[7] Although a total of 41 paragraphs are added in AntiCancer's proposed amended claim chart against CRI, the added paragraphs are all variations on four basic paragraphs. *See* AntiCancer's Proposed Amended Claim Chart, **Ex. 2** (where the four basic paragraphs, and their variations, are marked).

[8] Since making this general assertion requires hardly any work at all (and actually citing a specific reference for this assertion would require little more), it is difficult to imagine what prevented AntiCancer from making this general assertion in its original claim chart.

the "second reference" has been highlighted in blue throughout the chart). After searching through the attached exhibits, one discovers the identity of this mysterious "second reference": it's an abstract from a 2004 presentation made by Hoffman (the aforementioned president of AntiCancer), Meng Yang (a co-inventor on AntiCancer's asserted patents and past/present employee of AntiCancer), and Richard Levenson (an employee of CRI). "Selected References" document,[9] **Exhibit 10** hereto, p. 1 (abstract is highlighted therein).

In AntiCancer's subsequent Mot/Amd. [D.E. 065], AntiCancer still does not explain why it was not able to put, *e.g.*, these "new" references and general assertion in the original claim chart, although this is a legal prerequisite for such a motion (see *infra*). Instead, AntiCancer generally asserts that the original contentions were a "failure" and the product of "neglect" (AntiCancer's Mot/Amd. [065], p. 4, l. 20-22) and explains that, during the period ***after*** AntiCancer tardily served its original contentions, (a) AntiCancer's president Hoffman was out of the country and "uncontactible" (*see* AntiCancer's Mot/Amd. [065], p. 3, l. 12-16); and (b) AntiCancer's counsel Lawton was busy with three other cases (*see* AntiCancer's Mot/Amd. [065], p. 3, l. 17-24). But AntiCancer does not explain the admitted "failure" of the ***original*** contentions, nor the "neglect" that caused that failure. Nor does AntiCancer explain how it first came to discover the newly added material, such as the abstract of the proceeding co-authored by AntiCancer president Hoffman and AntiCancer co-inventor Yang, ***after*** the original contentions were served.

Lastly, as mentioned above, the irrelevant excuse that AntiCancer and its counsel were too busy, ***after*** the original contentions were served, to serve AntiCancer's proposed amended contentions "timely and in the correct format" (AntiCancer's Mot/Amd. [065], p. 3, l. 23-24) in this case rings hollow when, shortly after proffering the excuse to this Court, AntiCancer and this same counsel

---

[9] AntiCancer did not submit to the Court any of the references discussed in its proposed amended contentions against CRI. CRI has attached the references as exhibits hereto. *See* **Ex. 8**, the Hoffman Article (cited in both the original and proposed amended contentions); **Ex. 9**, the CRI article (cited in both the original and proposed amended contentions); **Ex. 10**, the "Selected References" document (new citation in the proposed amended contentions); **Exhibit 11**, document identified as "CRI's published article entitled 'Distinguished photos: [*sic*] Increased contrast with multispectral in-vivo fluorescent imaging' from CRI's website" (new citation in the proposed amended contentions); and **Exhibit 12**, document identified as "CRI's article entitled 'Spectral imaging in Biology and Medicine: Slices of Life' on CRI's website" (new citation).

initiated yet another patent infringement litigation. *See* **Ex. 1**, (Docket Report showing Lawton's Dec. 7, 2007 filing of a patent infringement complaint for AntiCancer).

## III. MEMORANDUM OF POINTS AND AUTHORITIES

### A. AntiCancer Must Explain, *Inter Alia*, Why Any "New" Material Was Not Included in Its Original Contentions

Pursuant to the CMC Order [D.E. 049], ¶12, AntiCancer must show good cause for leave to amend its Infringement Contentions. "Good cause" requires a showing of diligence by the moving party, including an explanation for why any amendment was not included in the original. *See*, *e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (affirming denial of motion to amend infringement contentions); *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845 (E.D. Tex. 2004) (plaintiff's motion to amend its infringement contentions denied because plaintiff offered no explanation for its failure to include the information in the original contentions); *Berger v. Rossignol Ski Co.*, 2006 WL 1095914 *5 (N.D. Cal. Apr. 25, 2006), *aff'd*, 2007 WL 200935 (Fed. Cir. Jan. 12, 2007) (plaintiff's motion to amend its infringement contentions denied because, *inter alia*, there was no explanation for plaintiff's initial failure to serve complete and error-free contentions); *Softvault Systems, Inc. v. Microsoft Corp.*, 2007 WL 1342554 (E.D. Tex. May 4, 2007) (plaintiff's request to revise the information in its infringement contentions denied because the revised information was available even before the suit was filed).

### B. AntiCancer Offers No Explanation Except "Neglect" for The Absence of the "New" Material From Its Original Contentions

AntiCancer has offered no explanation except "neglect" (as discussed in Merck's opposition) for AntiCancer's failure to include (a) the two publicly available CRI articles; (b) the abstract of the presentation made by, *inter alia*, AntiCancer's Hoffman and Yang; or (c) the general assertion that mice are shown on CRI's publicly available materials and website, in the claim chart of AntiCancer's original contentions against CRI. For this reason alone, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

### C. In Addition, AntiCancer Did Not "Meet and Confer" With CRI Regarding the Addition of This "New" Material to Its Contentions Against CRI

AntiCancer ***never*** discussed, either verbally or in writing, the substance of, and reasons for, AntiCancer's proposed amendments to the contentions against CRI—AntiCancer just flatly asserted its intent to amend, without more, and then filed its motion with the Court. *See*, *e.g.*, Lawton's Nov. 9, 2007 letter, **Ex. 6**, p. 2. At least on the additional basis that AntiCancer did not "meet and confer" with CRI to substantively discuss AntiCancer's proposed amendments to its contentions against CRI, AntiCancer's motion to amend should be denied.

Moreover, before AntiCancer filed its motion to amend, CRI brought the many deficiencies of AntiCancer's present contentions to AntiCancer's attention and demanded a discovery teleconference pursuant to CivLR 26.1(a). But AntiCancer avoided any substantive discussion of the deficiencies in the subsequent teleconference, and then eschewed the opportunity to fix those deficiencies in its instant motion to amend. Such conduct should not be rewarded. At least because (1) AntiCancer did not "meet and confer" concerning the deficiencies raised by CRI;[10] and (2) AntiCancer eschewed the instant opportunity to fix those deficiencies, AntiCancer should be barred pursuant to CivLR 26.1(a) (and CivLR 16.5(k)) from correcting those deficiencies.

## IV. CONCLUSION

At least on the basis of the above, AntiCancer's Mot/Amd. [D.E. 065] should be denied.

**COHEN PONTANI LIEBERMAN & PAVANE LLP**

Dated: December 31, 2007 By /s Teodor J. Holmberg

Teodor J. Holmberg
Attorneys for Defendant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.
e-mail: tidge@cplplaw.com

[10] As discussed above, AntiCancer did have written correspondence concerning the deficiencies raised by CRI, but (1) the correspondence did not address many of the deficiencies, often misconstrued the deficiencies that were addressed, and almost always misconstrued and/or miscited the applicable case law; and (2) "under no circumstances may counsel satisfy the "meet and confer" obligation by written correspondence" (CivLR 16.5(k)).

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.'S OPPOSITION TO ANTICANCER, INC.,'S MOTION FOR LEAVE TO AMEND ITS PRELIMINARY INFRINGEMENT CONTENTIONS was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Dated: December 31, 2007

By: /s Teodor J. Holmberg
Teodor J. Holmberg
Attorney for Defendant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.
e-mail: tidge@cplplaw.com