Dan Lawton (State Bar No. 127342)
Joseph C. Kracht (State Bar No. 228507)
Matt Valenti (State Bar No. 253978)
LAWTON LAW FIRM
550 West C Street, Suite 1400
San Diego, CA  92101
(619) 595-1370
(619) 595-1520 (Telefacsimile Number)
dlawton@lawtonlaw.com (electronic mail)

Attorneys for Plaintiff and Counterdefendant AntiCancer, Inc.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation; MERCK & CO., INC., a New Jersey corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH, INC., a New Jersey corporation; and DOES 17-50,<br><br>    Defendants.<br>_____<br>AND RELATED COUNTERCLAIMS.<br>_____ | Case No. 07CV0097-JLS (RBB)<br><br>PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.'S **OMNIBUS REPLY BRIEF** IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND PRELIMINARY INFRINGEMENT CONTENTIONS PER PATENT LOCAL RULE 3.7<br><br><br>Date: January 14, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom B, 1st Floor<br>Judge: Hon. Ruben B. Brooks |

AntiCancer replies to the oppositions of defendants CRI[1], Merck[2], and NIBRI[3] to AntiCancer's motion for leave to amend its preliminary infringement contentions. Defendants' oppositions (which rely on a smattering of easily distinguishable cases decided in other Districts) lack merit. The Court should grant AntiCancer's motion, as is authorized by the pertinent Rule (PLR 3.7) and case law which defendants cannot (and do not) distinguish meaningfully.

I.   GOOD CAUSE SUPPORTS LEAVE TO AMEND.

   A.   <u>AntiCancer Has Shown Diligence in Serving Its Preliminary Infringement Contentions and the Proposed Amended Contentions.</u>

Defendants misplace reliance on *Berger v. Rossignol Ski Co.*, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006), *aff'd*, 2007 WL 200935 (Fed. Cir. 2007), *cert. denied*, ___U.S. ___, 169 L.Ed.2d 242, 128 S.Ct. 48 (2007). In *Berger*, the court denied plaintiffs' motion to amend preliminary infringement contentions. In that case, however, plaintiffs served their preliminary contentions *five weeks late*, and only after a motion to compel; failed to provide any infringement contentions for one of the two patents in suit; and "did not diligently seek to amend their contentions" after the defendants' invalidity contentions pointed out their errors and omissions. *Id.*, at ** 2, 4.

*Berger* is readily distinguishable from the case at bench. Here, AntiCancer served its preliminary contentions two days late. Though these contentions concededly had defects (which this motion seeks to correct), they were nonetheless substantially complete and accurate. They addressed all patents in suit. They preceded (by several weeks) service of defendants' invalidity contentions. When defense counsel sent letters alleging deficiencies in the contentions, AntiCancer responded immediately. Within a month of receiving the original preliminary contentions, defendants had in their hands AntiCancer's proposed

---

[1] Defendant Cambridge Research & Instrumentation, Inc.

[2] Defendant and counterclaimant Merck & Co., Inc.

[3] Defendant Novartis Institutes for BioMedical Research, Inc.

amendments. These facts are a far cry from plaintiffs' tardiness and lack of diligence in *Berger*, *supra*.

Further, unlike the plaintiffs in the cases defendants cite, AntiCancer acted diligently in requesting this Court's leave to amend concurrently with serving its proposed amendments. Plaintiff in *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845 (E.D. Tex. 2004) initially tried to serve amended contentions without seeking any leave of court. 307 F.Supp. at 848. Too, plaintiff in *Softvault Systems, Inc. v. Microsoft Corp.*, 2007 WL 1342554 (E.D. Tex. 2007) sought to amend its preliminary contentions nearly *six months* after serving its initial contentions. *Id.*, at *1. Here, however, AntiCancer followed the Local Patent Rules and moved this Court for leave to amend on November 20, 2007 – a little over one month after having served its original contentions. AntiCancer's counsel did this despite some challenges during the affected period. Among these were the absence of AntiCancer's president on business overseas and counsel's preparation for three trials (two of them jury, and two of them outside this District) in other cases during a five-week period. *See* Lawton dec. (November 20, 2007), ¶ 3.

Concededly, AntiCancer's preliminary contentions had defects. But AntiCancer acted promptly and diligently to fix the defects, and in time to enable defendants to take the proposed amendments into account before serving their own invalidity contentions (weeks later). These facts comprise good cause within the meaning of Patent Local Rule 3.7. It follows the Court should grant AntiCancer's motion. *See Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 U.S. Dist. LEXIS 35957, * 8 (N.D. Cal. 2007) ("degree of flexibility, at least near the outset[,]" in allowing amendment to preliminary infringement contentions; granting leave to amend); *General Atomics, Diazyme Laboratories Division v. Axis-Shield ASA*, 2006 U.S. Dist. LEXIS 58939, ** 5, 6 (N.D. Cal. 2006) ("[b]ecause this case is still relatively young, the Court finds that Axis Shield has demonstrated good cause"; granting leave to amend); *Biogenex Laboratories, Inc. v. Ventana Medical Systems, Inc.*, 2006 U.S. Dist. LEXIS 57067, ** 8, 9 (N.D. Cal. 2006) ("Court is extremely reluctant to dispose of

substantive infringement claims based on procedural defects"; "no evidence of bad faith"; granting motion for leave to amend despite "unreasonable conduct" by plaintiff).

  B. <u>The Absence of Any Gamesmanship Reinforces the Propriety of Leave to Amend.</u>

The common thread in the cases that defendants cite is the idea that the court should deny leave to amend where there has been gamesmanship by the moving party. As explained by the court in *STMicroelectronics*, *supra*,

> The Court stresses that it is sensitive to the realities of trial practice, and is willing to liberally grant parties time extensions when warranted. However, the Court's sensitivity to the realities of trial practice also make it aware that a filing/submission delay which suggests gamesmanship and leaves opposing counsel only one sixth of the time normally allotted to respond can be prejudicial.

*STMicroelectronics, Inc. v. Motorola, Inc.*, *supra*, 307 F. Supp. 2d 845, 853. There, plaintiff wanted to amend its preliminary contentions to add **twenty-six new claims** (after having initially asserted only two). *Id*., at 848. Likewise, the court in *Berger* found that plaintiffs' actions suggested that the omissions in their initial contentions "were not 'errors' but were instead a deliberate strategic course which plaintiffs now wish to change." *Berger v. Rossignol Ski Co.*, 2006 WL 1095914, at *5.

In this case, no possible basis for finding gamesmanship exists. The idea that AntiCancer deliberately would try to mislead defendants by serving preliminary contentions, then amending them promptly – far in advance of the due date for defendants' invalidity contentions and the *Markman* hearing[4] – is insupportable. Tellingly, defendants themselves (whose lawyers have criticism aplenty for AntiCancer in this case) identify no improper motive for the proffered amendments. There is no such motive – as shown by AntiCancer's unsolicited offer (unresponded-to by defendants) to stipulate to more time for defendants to serve invalidity contentions (so that defendants would not be "squeezed" on their time to respond as a result of AntiCancer's amendments). Such are not the acts of a party trying to

---

  [4] The *Markman* hearing in this case is scheduled for April 22, 2008.

manipulate the system in order to gain an unfair advantage (in contrast to plaintiffs' acts in *STMicroelectronics* and *Berger*, *supra*).

### C. Defendants' Opposition Really Is An Attempt to Gain Tactical Advantage via Exaltation of Form Over Substance.  This Is Not What Rule 3.7 or Pertinent Case Law Contemplate.

Defendants' own cited case, *STMicroelectronics*, *supra*, notes that "the Patent Rules are to be applied flexibly and with consideration of the realities of trial practice." *STMicroelectronics*, *supra*, at 852.  Other courts applying analogous rules freely have granted leave to amend when necessary to allow cases to be heard on their merits.  In *Biogenix Laboratories, Inc. v. Ventana Medical Systems, Inc.*, *supra*, the court granted leave to amend preliminary contentions because it was "extremely reluctant to dispose of substantive infringement claims based on procedural defects" when there was no evidence of bad faith and despite "unreasonable conduct" by the plaintiff.

Here, this Court should have the same reluctance.  Defendants are keen to hamstring AntiCancer's ability to have the merits of its case heard by any means or motion possible.  That this motion was necessary is evidence of that fact.  Defendants' strenuous striving for tactical advantage cannot substitute for fair hearing of this case on its merits.  An order granting this motion will leave defendants free to argue that AntiCancer's claim constructions are wrong, that they should have summary judgment, that they have good defenses and/or counterclaims, and to do all the other things defendants in these cases ordinarily do in trying to crush plaintiffs in patent infringement cases.  This reality reinforces the propriety of granting this motion.  *See id*.

### D. An Order Granting This Motion Will Not Prejudice Defendants.

Defendants argue an order granting this motion will prejudice them because "[b]y the time AntiCancer served its proposed amended contentions, half the period for Merck to prepare responsive Invalidity Contentions had passed."  This argument proves too much (it admits that, despite the tardiness of AntiCancer's proffering of its amended contentions, defendants somehow were able to serve detailed and voluminous invalidity contentions anyway, on December 14, 2007).  It also ignores AntiCancer's repeated offers of stipulation

1   to an extension of time (to all defendants) to serve those same invalidity contentions.  It also
2   ignores the reality that defendants have several months in which to prepare for the *Markman*
3   hearing in this case (scheduled for April 22, 2008).  Defendants' attempted concocting of
4   prejudice fails.
5       Again, the pertinent case law provides helpful context here.  In *STMicroelectronics*,
6   plaintiff's in amending its contentions gave defendants one-sixth the normal time to respond.
7   *See STMicroelectronics, supra*, at 853.  Similarly, in *Berger*, several months passed (without
8   amended contentions) before plaintiff sought leave to amend.  *See Berger, supra*, at *4.
9   These situations bear no resemblance to this one, in which AntiCancer proffered amended
10  contentions four weeks after serving its initial versions – and well in advance of both the
11  deadline for service of defendants' invalidity contentions and the *Markman* hearing.
12      Merck complains that it has made a substantial investment in drafting and filing a
13  motion for summary judgment.  This may well be so; but it is no basis for denying
14  AntiCancer's motion.  This is because Merck was well aware of the fact that AntiCancer
15  intended to correct the deficiencies *before* it filed its summary judgment motion.  The
16  inference is strong that Merck made a tactical decision – to rush to file a summary judgment
17  motion based on defects in infringement contentions which it knew AntiCancer was
18  amending, and to resist in the meantime, and as strenuously as possible, those proffered
19  amendments.  Merck's able and experienced counsel made this tactical decision in full
20  knowledge of the potential consequences – which included an order granting this motion and
21  mooting Merck's summary judgment motion.  Rewarding tactical gamesmanship is not a
22  substitute for a fair hearing of this case on the merits.  Yet such would be the precise result of
23  an order denying this motion.
24      In *General Atomics, Diazyme Laboratories Division v. Axis-Shield ASA*, *supra*, the
25  court rejected the same argument Merck now makes while granting leave to amend
26  preliminary contentions.  In so doing, it reasoned:
27          While it is true that General Atomics [the alleged infringer] has
            incurred the substantial expense of a summary judgment motion,
28          it is also true that its motion for summary judgment was brought
            very early in the case, even before claim construction had

>occurred. Thus, any prejudice General Atomics suffers is also partially attributable to its own choice to bring a motion for summary judgment before Axis Shield's preliminary infringement contentions had been finalized."

*Id.*, at *2.

This case presents a situation practically identical to that in *General Atomics*. Thus the identical result should prevail – this motion should be granted.

II. NIBRI'S ACCUSATION OF SUPPOSED VIOLATION OF A "PROTECTIVE ORDER [SIC]" IS FRIVOLOUS.

NIBRI – who, ironically, has argued strenuously that this Court lacks any jurisdiction over it[5] – joins Merck's opposition to AntiCancer's motion (thus likely effecting a general appearance). NIBRI makes one argument: that AntiCancer's proffered amendments must be refused because they are based solely on deposition testimony protected by a "protective order [sic]" supposedly entered in another case, *AntiCancer, Inc., v. Novartis Institute for Biomedical Research, et al.*, San Diego Superior Court Case No. GIC 772297 (the "State court case"). This argument is frivolous.

First, there was no "protective order" (as NIBRI itself halfway admits when it writes that "it is unclear whether the Protective Order was ever entered by the Court"). *See* accompanying Lawton dec. (January 7, 2008) at ¶ 2. Second, NIBRI itself appends evidence to its own joinder that proves that **NIBRI's counsel in this case repeatedly refused to be**

---

[5] In November 2007, the Court denied without prejudice NIBRI's motion to dismiss and ordered jurisdictional discovery.

The ensuing jurisdictional discovery proved that NIBRI's contacts with California are so general, systematic, and continuous as to easily trigger the Court's jurisdiction over NIBRI. Among other things, the discovery revealed NIBRI's payment of scores of millions of dollars to California-based companies pursuant to written contracts; multiple acceptances of deliveries of laboratory animals and other materials from those California-based companies; consent to California choice-of-law provisions in written contracts; visits by NIBRI executives to California on NIBRI business; and the making of thousands of dollars in grants to students studying at California universities.

Ironically, all of this proof contradicted NIBRI's counsel's representations to the Court on October 31 (before jurisdictional discovery was taken) that NIBRI "has no business in California [sic], . . . [and] does nothing in California [sic]," that "there is nothing going on for NIBRI in California [sic]," that "we don't do business there [sic]," that there is no "nexus between my client and California [sic]," and that NIBRI "doesn't avail itself to the benefits of [California][sic]."

**bound by the provisions of the stipulation (which never became a protective order because it was never entered by the court)**. Exhibit 1 to the Crawford declaration is the Lawton declaration of September 26, 2005, which reads in pertinent part: "Though I repeatedly invited Dr. Lassota's counsel[6] to agree to be bound by [the confidentiality stipulation's] provisions, **she has refused**." Ex. 1 to Crawford dec. at p. 2:6-7 (emphasis added). (The Crawford declaration nowhere contests this fact, and instead silently concedes it.) Thus NIBRI apparently now insists on adherence to a confidentiality stipulation **to which its counsel deliberately refused to agree**! The transcript of the Liau deposition (appended as Ex. E to the accompanying Lawton declaration) makes clear that attorney Crawford repeatedly resisted any agreement to be bound by the confidentiality stipulation – on the grounds (stated three separate times) that her client (a Novartis affiliate) wasn't a party to it! *See* Ex. E to accompanying Lawton dec. at 66:14-22, 67:12-21, 96:19-21. An example of Ms. Crawford's own words on the record at the Liau deposition (perhaps since forgotten by her) reflects the truth of her then-position concerning the confidentiality stipulation:

> MS. CRAWFORD: And I would, I would adopt those objections as well, and I would add, I would add, Mr. Lawton, **that my client is not a signatory to the, any confidentiality agreement in this case, and so you may very well have an agreement in place with other counsel, but it doesn't pertain to my client or any information that might be disclosed by my client in the context of this litigation as far as I know** . . .

*See* Ex. E at 66:14-22 (emphasis added).

Finally, reference to the Liau transcript (which bears no "CONFIDENTIAL" designation or other indicia such as called for by the confidentiality stipulation) makes clear that it is not (and was not ever intended to be) deemed confidential by anyone – not NIBRI, and not anyone else. *See* Ex. E to accompanying Lawton dec. The confidentiality stipulation provided precise means for designating State court case materials as confidential upon a party's election (i.e., stamping them "CONFIDENTIAL"). No party or attorney (not Ms.

---

[6] Karen Schichman Crawford of Duane Morris, the same lawyer who represents NIBRI here.

Case No. 3:07-CV-00097-B-RBB

8

Crawford, and not anybody else) ever used such means with respect to the Liau transcript. *See* accompanying Lawton dec., ¶ 3.

That NIBRI now would seek to bar evidence from this case based on a confidentiality stipulation which it adamantly resisted reflects either amnesia or a kind of brazen *chutzpah* – but not any legal argument grounded in good faith. NIBRI's invocation of a supposed "protective order" is frivolous and no basis for denying AntiCancer's motion.

III. **ANTICANCER DISCHARGED ITS DUTY TO MEET AND CONFER PRIOR TO FILING THIS MOTION.**

Defendants argue AntiCancer did not "meet and confer" regarding its proposed amended contentions. This is not true.

AntiCancer met and conferred with CRI, via a teleconference that CRI's counsel requested (on November 6); the parties couldn't work it out, and this motion followed two weeks later. *See* accompanying Lawton dec., ¶ 4.

As to Merck and NIBRI, AntiCancer circulated notice of the teleconference to all their counsel, who then blew off the teleconference. *See* accompanying Lawton dec., ¶ 4. (Ironically, NIBRI's counsel – Karen Schichman Crawford – no-showed the conference on the stated ground that her non-attendance would be "consistent with Judge Sammartino's ruling on our Motion to Dismiss, wherein she states that AntiCancer has not established personal jurisdiction for NIBRI[.]" Ex. G to accompanying Lawton dec. Since then, attorney Crawford apparently has reconsidered this position – weighing in on this motion with a joinder to Merck's opposition, apparently **inconsistent** with Judge Sammartino's "ruling on our Motion to Dismiss.")

The Rules do not oblige AntiCancer to force lawyers who do not wish to talk, to talk. The futility of meeting and conferring excuses the duty to meet and confer. *See United States v. Rempel*, 2001 U.S. Dist. LEXIS 11345 (D. Ak. 2001); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 1998 U.S. Dist. LEXIS 12, * 8 (S.D.N.Y. 1998); *Matsushita Electric Corp. v. 212 Copiers Corp.*, 1996 U.S. Dist. LEXIS 2221, * 3 (S.D.N.Y. 1996). So it is here as to Merck and NIBRI (who refused to meet and confer). *See ibid*.

Case No. 3:07-CV-00097-B-RBB

IV.   CONCLUSION.

For all the foregoing reasons, the Court should grant this motion and grant AntiCancer leave to serve its proposed amended infringement contentions in the form previously circulated to all defendants.

Respectfully submitted,

Dated: January 7, 2008          LAWTON LAW FIRM

By:   s/Dan Lawton
      Dan Lawton
      Matt Valenti
      Attorney for Plaintiff AntiCancer, Inc.