TEODOR J. HOLMBERG (admitted *pro hac vice*)
**COHEN PONTANI LIEBERMAN & PAVANE LLP**
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 687-2770
Facsimile: (212) 972-5487
E-Mail: tidge@cplplaw.com

Attorneys for Defendant and Counterclaim-Plaintiff
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ANTICANCER, INC., a California corporation,

Plaintiff,

vs.

CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation; MERCK & CO., INC., a New Jersey corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH INC., a Delaware corporation; and DOES 17-50,

Defendants.

ANTICANCER, INC., a California corporation,

Plaintiff,

vs.

CARESTREAM HEALTH, INC., a Delaware corporation; and DOES 1-50,

Defendants.

AND RELATED COUNTERCLAIMS.

**Case No. 3:07-CV-00097-JLS-RBB**

**CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.'S REPLY TO THE SUPPLEMENTAL DECLARATION [D.E. 079] OF DAN LAWTON IN SUPPORT OF ANTICANCER, INC.'S MOTION [D.E. 065] FOR LEAVE TO AMEND ITS PRELIMINARY INFRINGEMENT CONTENTIONS**

Hearing Date: January 31, 2008
Time: 2:00 p.m.
Courtroom: B, 1st Floor

Judge: The Honorable Ruben B. Brooks

Pursuant to the Judge Brooks' comments at the Jan. 14th Hearing (*see*, *e.g.*, Transcript [D.E. 077], p. 43, ll. 15-17) and subsequently-issued Minute Order [D.E. 080], Defendant Cambridge Research & Instrumentation, Inc., ("CRI") hereby submits this reply to the supplemental declaration [D.E. 079] of Dan Lawton ("Lawton's Supp. Dec.") in support of AntiCancer's motion [D.E. 065] to amend its preliminary infringement contentions ("AntiCancer's Mot./Amd."). CRI joins in sections A and B of Merck's Reply, and sections A and B(1) of NIBRI's Joinder to Merck's Reply, both of which are being filed concurrently.

Because AntiCancer's filing papers provided no "explanation for why this information [*i.e.*, the newly-added material in AntiCancer's proposed amended contentions] was not included in the initial October 17th contentions", the Court required AntiCancer to submit a supplemental declaration explaining, *inter alia*, "why the initial contentions served on October 17th were not complete". Jan. 14, 2008 Hearing Transcript [D.E. 077], p. 5, lines 17-18; p. 43, lines 10-12.

AntiCancer's subsequently filed declaration refers to only two "flaws" in AntiCancer's initial October 17th contentions: "the lack of Merck- and NIBRI-related contentions" and "some inaccurate priority dates". *See* Lawton's Supp. Dec. [D.E. 079], p. 2, lines 17-18. The declaration does not explain how those flaws arose, but instead explains why AntiCancer's lead attorney Lawton did not catch these "flaws" in his review of the contentions before the contentions were served. *See* Lawton's Supp. Dec. [D.E. 079], *e.g.*, p. 2, lines 18-23. The primary reason proffered is that Lawton was too busy in "late September and all of October 2007". *See* Lawton's Supp. Dec. [D.E. 079], *e.g.*, p. 2, lines 19-21; p. 3, lines 7-10. In addition, AntiCancer's litigation "team" did not know "all of this data" and Dr. Robert M. Hoffman of AntiCancer was unavailable and thus "unable to collaborate" with the litigation team "after September 29 and for most of October 2007". *See* Lawton's Supp. Dec. [D.E. 079], *e.g.*, p. 3, lines 22-26; p. 4, lines 4-6.

## I. <u>No explanation for the proposed amended claim chart against CRI</u>

As noted by the Court at the January 14th Hearing, the newly-added material in the claim chart of AntiCancer's proposed amended contentions against CRI consisted of "new references to two articles and one abstract" (Jan. 14, 2008 Hearing Transcript [D.E. 077], p. 5, lines 2-3). AntiCancer's supplemental declaration makes no reference to these "new references" and offers no explanation for

their absence from the initial October 17th contentions. Because AntiCancer has once again offered no explanation for why its initial October 17th contentions against CRI were incomplete, AntiCancer's Mot./Amd. [D.E. 065] must be denied at least in regards to the proposed amended claim chart against CRI.

## II. **Errors or omissions are not sufficient to show good cause**

As noted by the Court, "errors or omissions are not sufficient to establish good cause to amend infringement [contentions]" (Jan. 14, 2008 Hearing Transcript [D.E. 077], p. 5, lines 23-25) (citing the *Rossignol* case). As stated in the case cited by the Court:

> In any event, giving plaintiffs the benefit of the doubt, the most they have established is that their counsel (who is still counsel of record) mishandled this case. Carelessness or mere errors, however, are insufficient to establish good cause. *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (holding that carelessness does not amount to "good cause" in the context of Federal Rule of Civil Procedure Rule 16(b)).
>
> Because plaintiffs have failed to establish "good cause" to amend their preliminary infringement contentions, plaintiffs' motion for leave to amend must be denied. Even if plaintiffs were found to have promptly sought leave to amend they still fail to satisfy this district's good cause standard as they have not provided any justification for the amendment, other than mere error. In fact, plaintiffs offer so little explanation that to permit amendment here would render the "good cause" requirement meaningless.

*Berger v. Rossignol Ski Co.*, 2006 U.S. Dist. LEXIS 23085, at *14-15 (N.D. Cal. Apr. 25, 2006)

Likewise here, the most that AntiCancer has established by Lawton's supplemental declaration is that Lawton has mishandled this case. In fact, as discussed further below, AntiCancer has offered so little explanation, other than mere error, that to grant AntiCancer's Mot./Amd. [D.E. 065] "would render the 'good cause' requirement meaningless".

## III. **AntiCancer had months, if not years, to establish its asserted priority dates**

The "explanation" offered in Lawton's Supp. Dec. [D.E. 079] for the "inaccurate priority dates" (p. 2, l. 18) is insufficient as a matter of law.* The "fact" that Lawton was busy and Hoffman

---

* AntiCancer is trying to amend the priority dates of its asserted patents in its amended contentions against each of the defendants in this case, and that amendment prejudices all defendants, including CRI. The Court's statement that "[CRI] does not argue that it will be prejudiced by the proposed filing" (Jan. 14, 2008 Hearing Transcript [D.E. 077], p. 9, lines 14-15) is not accurate: CRI's opposition specifically stated that "CRI joins Merck's opposition concerning the priority dates" (CRI's Opp. [D.E. 074], p. 3, n. 1).

was unavailable during late September and October does not explain why the priority date arguments, which rely purely on publicly available data regarding AntiCancer's own patents, were not made in the many months after the Complaint was filed and before the contentions were due. Under these circumstances, AntiCancer cannot possibly show diligence. As stated in *Softvault*:

> The earlier application date is not "new information" that SoftVault acquired from Microsoft during discovery--it is information that was publicly available *before* SoftVault filed suit. SoftVault cannot establish diligence in light of its failure to fully analyze this information. *See Connectel, LLC v. Cisco Sys., Inc., 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005)* (Davis, J.) ("Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement."). SoftVault has failed to show diligence, an important element of good cause. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys., 467 F.3d 1355, 1368 (Fed. Cir. 2006).*

*Softvault System, Inc. v. Microsoft Corp.*, 2007 WL 1342554, at *4-5 (E.D. Tex. May 4, 2007)

Likewise here, AntiCancer's supplemental declaration fails to show diligence because it provides no explanation for AntiCancer's "failure to fully analyze this [publicly available] information" before the filing of AntiCancer's initial October 17th contentions.

## IV. <u>AntiCancer's "explanations" remain fatally inadequate and incomplete</u>

The fact pattern in *Berger* is directly applicable here:

> Plaintiffs rely on the declaration of their counsel, Mr. Allen, to establish grounds for amendment. Mr. Allen declares: "I believe I made errors in the preliminary contentions. The infringement contentions were belated in their production due to having to obtain information from distant locations around this and other states, and in reviewing this information, I neglected to include any claims from the 569 Patent." Allen Declaration, Docket 52, P 3. …
>
> …
>
> Mr. Allen's declaration does not establish "good cause." First, plaintiffs offer no explanation as to why the "errors" were made in the first place, and, in particular, how they could have "mistakenly" omitted any contentions as to the 569 [patent]. Mr. Allen's claim that the contentions were late because they had to obtain information "from distant locations around this and other states" does not explain the errors, and, in any event, also does not adequately explain the delay. Mr. Allen does not identify what information plaintiffs needed to gather; nor does he explain how that information was used in the contentions. This omission is especially glaring given that plaintiffs first accused defendant of infringement more than seven years ago. And they filed this lawsuit in June 2005. Plaintiffs have had more than adequate time to develop their infringement contentions.

*Berger v. Rossignol Ski Co.*, 2006 U.S. Dist. LEXIS 23085, at *8-9,10 (N.D. Cal. Apr. 25, 2006)

Likewise here, AntiCancer relies upon the declaration of its attorney in order to establish the grounds for amending its contentions, and that attorney claims that when "reviewing" the contentions before service, he "neglected" to include "accurate priority dates" or the contentions against NIBRI and Merck. To the extent AntiCancer offers any explanation for how these "errors" arose in the first place, or "how they could have 'mistakenly' omitted any contentions as to" Merck and NIBRI, the explanations are entirely inadequate.

As stated above, AntiCancer's first proffered "explanation", *viz.*, the mishandling of the case by lead attorney Lawton, does not constitute a valid explanation, but rather an admission that there is no good cause. AntiCancer's second proffered "explanation", *viz.*, its litigation team's "inability to collaborate with [Hoffman] on the October 17 contentions during the period between September 29 and October 17" (Lawton's Supp. Dec. [D.E. 079], p. 4, lines 19-20), does not survive even modest scrutiny. Regarding the first error (*i.e.*, the "inaccurate priority dates"), AntiCancer, similar to plaintiffs in *Berger*, does not explain what knowledge Hoffman had regarding the asserted priority dates which was not otherwise available to AntiCancer's litigation team.

Ascribing the second error (*i.e.*, the complete lack of contentions against Merck and NIBRI) to the litigation team's "inability to collaborate" with Hoffman strains credulity. The new claim charts in AntiCancer's proposed amended contentions against Merck and NIBRI rely entirely on the transcripts of depositions ***attended by attorneys on AntiCancer's litigation team***. Moreover, two of those deponents (Bednar and DeFeo-Jones) were listed as people "likely to have discoverable information" in AntiCancer's Rule 26(a)(1) disclosure, served a month before its initial October 17 contentions, and all three deponents and their depositions were identified in a declaration executed by Hoffman in a presently pending related case on the same patents-in-suit—a declaration in which Hoffman asserts that he "had detailed discussions with Mr. Lawton regarding each witness's testimony and the connection of that testimony to the AntiCancer patents, including the claims of the patents." *See* Hoffman's April 2, 2007 Declaration [D.E. 188-4], p. 4, lines 16-18, in *AntiCancer v. Xenogen et al.*, Case No. 3:05-cv-00448-JLS-AJB; *see also, e.g.*, p. 9, lines 13-15, therein (referring to Bednar and DeFeo-Jones depositions); p. 7, line 24, to p. 8, line 2, therein (referring to Liau deposition). In light of this, it seems clear that the relevant information about these three depositions (the only new material in

the claim charts against Merck and NIBRI) was already known to AntiCancer's litigation team – and particularly to Mr. Lawton, lead counsel – before September 29th, when Hoffman went *incommunicado*.

In conclusion, because AntiCancer has still not offered an explanation sufficient to show "good cause" for correcting the flaws in its initial October 17 contentions, AntiCancer's Mot./Amd. [D.E. 065] should be denied.

Respectfully submitted,

COHEN PONTANI LIEBERMAN & PAVANE LLP

Dated: January 28, 2008

By /s Teodor J. Holmberg
Teodor J. Holmberg
Attorneys for Defendant/Counterclaimant
**CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing JOINT HEARING STATEMENT was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Dated: January 28, 2008

By: /s Teodor J. Holmberg
Teodor J. Holmberg
Attorney for Defendant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.
e-mail: tidge@cplplaw.com