# EXHIBIT B

1                  UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF CALIFORNIA

3

4  ANTICANCER, INC.,              )   Case No. 07CV0097-JLS(RBB)
                                  )
5           Plaintiff,            )   San Diego, California
                                  )
6       vs.                       )
                                  )   Thursday,
7                                 )   January 31, 2008
   CAMBRIDGE RESEARCH &           )
8  INSTRUMENTATION, INC., et al.,)
                                  )
9           Defendants.           )
   _____ )
10

11                  TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE RUBEN B. BROOKS
12                UNITED STATES MAGISTRATE JUDGE

13  APPEARANCES:

14  For the Plaintiff:           DANIEL LAWTON, ESQ.
                                 Lawton Law Firm
15                               555 West C Street, Suite 1400
                                 San Diego, California 92101
16                               (619) 595-1775

17

    For Defendant Cambridge:     ALLISON GODDARD, ESQ.
18                               TEODOR J. HOLMBERG, ESQ.
                                 Jaczko & Goddard, LLP
19                               4401 Eastgate Mall
                                 San Diego, California 92121
20                               (858) 550-6150

21

    For Defendant Novartis       JOHN COOLEY, ESQ.
22    Institutes:                Duane Morris, LLP
                                 101 West Broadway, Suite 900
23                               San Diego, California 92101
                                 (619) 744-2200

24

    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

ii

1 APPEARANCES: (Cont'd.)

2 For Defendant Merck:          JAMES PISTORINO, ESQ.
                               Howrey, LLP
3                              1950 University Avenue
                               Fourth Floor
4                              East Palo Alto, California
                                 94303
5                              (650) 798-3500

6

   Transcript Ordered by:      ALLISON GODDARD, ESQ.
7

8 Transcriber:                 Carol Abbott
                               Echo Reporting, Inc.
9                              6336 Greenwich Drive
                               Suite B
10                             San Diego, California 92122
                               (858) 453-7590
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

```
 1        SAN DIEGO, CALIFORNIA  THURSDAY, JANUARY 31, 2008

 2                          --oOo--

 3      (Call to order of the Court.)

 4            THE COURT:  May I have appearances, please?

 5            MR. LAWTON:  Thank you, your Honor.  Good

 6  afternoon.  Dan Lawton appearing on behalf of Plaintiff and

 7  Counter-defendant, Anticancer.

 8            THE COURT:  Good afternoon.

 9            MR. PISTORINO:  Good afternoon, your Honor.  James

10  Pistorino on behalf Merck.

11            THE COURT:  Good afternoon.

12            MS. GODDARD:  Good afternoon, your Honor.  Allison

13  Goddard on behalf of Cambridge Research and Instrumentation.

14            THE COURT:  Good afternoon.

15            MR. HOLMBERG:  Good afternoon, your Honor.  Ted

16  Holmberg of Cambridge Research and Instrumentation,

17  otherwise known as CRI.

18            THE COURT:  Thank you.

19            MR. COOLEY:  Good afternoon, your Honor.  John

20  Cooley on behalf of the Defendant --

21            THE COURT:  Good afternoon.  Counsel, as you know

22  from our prior hearings, my practice is to give you a

23  tentative ruling and let whoever would like to address it do

24  so.

25            First, by way of history, on November 20, 2007,
```

2

1  the Plaintiff filed its motion for leave to amend

2  preliminary infringement contentions pursuant to Local Rule

3  3.7 of the patent rules.  This was accompanied by a

4  memorandum of points and authorities and the declaration of

5  Mr. Lawton.

6          Defendant Merck filed a memorandum in opposition.

7  Likewise, Defendant Novartis Institutes (phonetic) opposed

8  the motion or the joinder to Merck's opposition, and

9  Defendant Cambridge also filed an opposition.  On January 7

10  of 2008, Anticancer filed a reply with a reply declaration

11  of Mr. Lawton and an accompanying exhibit.

12          The hearing on Plaintiff's motion was held on

13  January 14, and the Court indicated that its tentative

14  ruling was to deny leave to amend.

15          At the conclusion of the hearing, the Court

16  authorized the Plaintiff to file a supplemental declaration

17  addressing, one, why the infringement contentions served on

18  October 17, 2007 were incomplete, and two, why any

19  additional explanation was not included in Anticancer's

20  original moving or reply papers.

21          The Defendants were also authorized to submit a

22  supplemental opposition.  On January 21, 2008, counsel for

23  Anticancer filed a supplemental declaration of Dan Lawton.

24  Defendants Cambridge, Novartis Institutes and Merck each

25  filed their supplemental responses on January 28th.

3

1    The complaint in this matter was filed on

2 January 12, 2007.  Anticancer amended its complaint twice to

3 eliminate multiple defendants.  The second amended complaint

4 was filed on June 27, 2007.

5    Plaintiff is the owner of five patents.  In its

6 second amended compliant, Anticancer alleges that each of

7 the Defendants has infringed the five patents by using a

8 product created by Defendant Cambridge called Miestro Invivo

9 Imaging System, which is "a fully integrated system allowing

10 researchers to use real time imaging technology, including

11 Plaintiff's patented technology, to monitor and record

12 cellular and genetic activity within laboratory animals."

13    On April 26th of last year, the Court scheduled an

14 early neutral evaluation conference in this case for June

15 18.  The order setting the conference required that all

16 parties and non-lawyer representatives to attend with the

17 principal attorneys responsible for the litigation.  In

18 addition, they were to be legally and factually prepared to

19 discuss and resolve the case.

20    On June 4, Defendants filed a joint ex parte

21 motion to continue the scheduled conference.  The Court

22 granted the request in part and a telephone attorneys-only

23 conference was held on June 18, 2007, and an in-person early

24 neutral evaluation conference was set for August 22, 2007.

25 On August 14, Plaintiff and Defendants Cambridge and Merck

4

1  filed a joint motion to again continue the E&E, which was

2  granted, and the E&E was continued to September 27th.

3          On that date, the E&E and a case management

4  conference were held.  Mr. Lawton appeared as counsel for

5  the Plaintiff, Anticancer, and was accompanied by his client

6  representative.  Mr. Pistorino appeared as counsel for

7  Defendant Merck accompanied by Merck's client

8  representative.  Attorneys Chris Jacko and Martin Pervane

9  appeared for Cambridge and they were accompanied by its

10 client representatives.  Attorneys Karen Crawford and John

11 Cooley appeared on behalf of Defendant Novartis Institutes.

12 On that date, the Court issued a case management order,

13 which required Plaintiff to serve its preliminary

14 infringement contentions by October 15, 2007.

15          The Defendants were to serve their preliminary

16 invalidity contentions by September 14, 2007.  Each party's

17 preliminary contentions were to be deemed the party's final

18 contentions unless the party was granted leave of court to

19 amend.  Plaintiff's counsel mistakenly calendared the

20 deadline for serving the infringement contentions as October

21 17 rather than October 15.  So, Anticancer served its

22 preliminary contentions on October 17.

23          Counsel for Cambridge informed Plaintiff's counsel

24 of several deficiencies with the preliminary contentions.

25 The attorneys had a telephonic conference on November 6th to

5

1 discuss the deficiencies, and meet and confer letters

2 followed.  To address some of the deficiencies in its

3 preliminary contentions, Plaintiff forwarded its proposed

4 amended contentions and amended claim chart to Cambridge on

5 November 12th.

6         Plaintiff also sent proposed amended contentions

7 to Merck on November 13, the day after Merck filed its

8 motion for summary judgment.  Plaintiff sent proposed

9 amended contentions to Novartis Institutes on November 20.

10 On the same date, the Plaintiff filed the motion currently

11 before the Court.

12         In its motion, Anticancer requests leave to amend

13 its infringement contentions, in essence because they were

14 incomplete.  The patent local rules provide that a party's

15 infringement contentions or invalidity contentions may be

16 amended or modified "only by order of the Court, which will

17 be entered only upon a showing of good cause."

18         Good cause exists only where the parties seeking

19 to amend acted diligently.  That proposition was stated in

20 O2 Micro International, 467 F.3d 1355 at 1366 out of the

21 Federal Circuit in 2006.

22         In the same case, the Court indicated that the

23 moving party bears the burden of establishing that it has

24 good cause for amending its contentions, including

25 establishing diligence.

6

1        The good cause standing for amending infringement

2   contentions and invalidity contentions is "more conservative

3   than the lenient standard for amending pleadings."  That was

4   stated by Judge Briar in <u>Berger v. Rossignol</u>, 2006 Westlaw

5   1095914 at *3 from the Northern District of California,

6   decided April 25, 2006.

7        In the <u>Berger</u> case, Judge Briar stated that patent

8   rules that allow amendment only for good cause "are designed

9   to avoid vexatious shuffling of positions that could occur

10  if the parties are permitted to freely modify their

11  infringement contentions at any point in the action.

12       Under the patent local rules for the Southern

13  District of California, the party alleging patent

14  infringement is required to serve preliminary contentions

15  containing, among other items, a description of each claim

16  of each patent in suit that is allegedly infringed by each

17  opposing party.  It's Patent Local Rule 3.1(a).

18       Anticancer's preliminary infringement contentions

19  were deficient because they did not contain any allegations

20  relating to infringement by Defendants Merck or Novartis

21  Institutes.  Instead, the contentions served on October 17

22  only contain allegations concerning acts of infringement by

23  Defendant Cambridge.

24       Plaintiff concedes that its preliminary

25  contentions were incomplete.  In an attempt to correct the

7

1 deficiencies, Anticancer prepared separate proposed amended

2 contentions for each of the three Defendants.  All of the

3 contentions against Defendants Merck and Novartis, however,

4 are new assertions that were not included in the initial

5 October 17th contentions.  Anticancer's proposed amended

6 contentions directed Cambridge to include new references to

7 two articles in one abstract that were not mentioned in the

8 October 17th contentions.

9          Courts have found good cause to amend infringement

10 contentions when new evidence is uncovered during discovery

11 and a party diligently seeks to amend after discovering the

12 new evidence.  This statement is paraphrased again from the

13 O2 Micro case, 467 F.3d at 1366 through 67.  Similar

14 statements are found in the Integrated Circuit Systems case

15 at 308 F.Supp.2d 1106 and 1107, note 1, from the Northern

16 District of California decided in 2004.

17          New information justifying amendment consists of

18 new found facts and data rather than pre-existing documents.

19 That statement is from the Atno Corporation (phonetic) case,

20 1998 U.S. District Lexis at 17564*5-6, again from the

21 Northern District of California, decided November 5, 1998.

22          Here, the Plaintiff does not allege that its

23 proposed amendments are the result of newly discovered

24 evidence.  Indeed, Cambridge asserts that the information

25 added to Plaintiff's contentions against it was publicly

8

1 available before this lawsuit was filed.  Additionally, the

2 information contained in the claim chart directed to Merck

3 comes from the deposition testimony of two deponents taken

4 in a separate state lawsuit in December of 2005.

5        The information used to create the claim chart

6 against Novartis Institutes came from the deposition of

7 Dr. Gene Leau (phonetic) also taken in a separate lawsuit in

8 August of 2005.

9        In his supplemental declaration, Plaintiff's

10 counsel addresses why Anticancer's infringement contentions

11 were incomplete.  Commendably, he states, "Fault for the

12 lapses described in this declaration are mine and mine

13 alone."  In counsel's declaration, he continues.  "In late

14 September 2007, I delegated the drafting of our client's

15 preliminary infringement contentions to other attorney

16 members of our team.  On October 15 or 16, I read the draft

17 contentions for the first time.  On that date, I believed

18 the contentions were complete.  Obviously, I was wrong and

19 overlooked the flaws in the contentions."

20        Mr. Lawton continues, "My review was obviously not

21 as thorough as it should have been.  The reason for this is

22 as follows.  During late September and all of October, 2007,

23 and at the same time that our team was drafting the October

24 17th contentions, I was preparing for there back-to-back-to-

25 back trials, two of them out of town and two of them jury

9

1 trials, and in the midst of two plaintiff's depositions in a

2 fourth case."  The cases that Mr. Lawton refers to are, one,

3 the Gong case, which he indicates was set for a multi-week

4 jury trial on October 26th in San Diego Superior Court; the

5 Miller trial set for a two-week jury trial in Riverside on

6 November 20; the Mildred Gordon Living Trust case set for a

7 bench trial on November 30th in Ventura Superior Court.  And

8 the fourth case was Kobey Holdings, where Mr. Lawton states,

9 "I spent most of October 15, 16 and 17, the same period in

10 which the October 17 contentions were being finalized,

11 attending and taking the deposition of Plaintiff Audrey

12 Bachurby (phonetic) and Ben Smargen (phonetic)."  He

13 continues, "The result was my overlooking the flaws in the

14 draft October 17th contentions while at the same time trying

15 to serve the above-listed competing client commitments."

16        Mr. Lawton also states, "We could had would have

17 eliminated the flaws via addition of the Merck and

18 Nibrey (phonetic) related contentions from the raw data

19 which we had on our computer network and from additional

20 data our client, who was out of the country and essentially

21 incommunicado during this time, had."

22        According to Mr. Lawton, "Another factor was our

23 team's inability to collaborate with our client on the

24 October 17 contentions during the period between September

25 29 and October 17h.  It is our practice to collaborate

10

closely with our client in preparing all infringement

contentions, claim constructions, pleadings and briefs.

Company business required our client's most knowledgeable

person concerning infringement contentions, Dr. Robert M.

Hoffman, to be absent on overseas and out-of-town travel

after September 29 and for most of October 2007."

This declaration, however, does not explain why

the other attorneys working on the draft contentions did not

include infringement contentions directly to Defendants

Merck or Novartis Institutes or include the new priority

dates and new references to articles and one abstract.

Judge Briar in the <u>Berger</u> case noted that errors

or omissions are not sufficient to establish good cause to

amend infringement contentions.

This Court also notes that the Plaintiff,

Anticancer, bears its share of responsibility for the

deficiencies in its contentions.  The Plaintiff's client

representative attended the conference this Court held on

September 27th.  At that time, the October 15th deadline for

the infringement contentions was set.  Yet, it appears that,

between September 29th, two days after the Court's

conference, and most of October, Anticancer's president,

Dr. Hoffman, was pursuing other business matters and not

conferring with counsel about the contents of the

infringement contentions directed to three defendants.

1      Mr. Lawton's trial schedule, the lapse by other

2  attorney members of the team, Dr. Hoffman's failure to

3  devote his attention to this case do not add up to good

4  cause.  None of these reasons is good cause for the new

5  information not being included in the infringement

6  contentions served on October 17th.

7      In the case of <u>Johnson v. Mammoth Recreations</u>, 975

8  F.2d 604 at 609, the Ninth Circuit case decided in 1992, the

9  Ninth Circuit discussed good cause to amend a Rule 16(b)

10  scheduling order.  The Court explained that "carelessness is

11  not compatible with a finding of diligence and offers no

12  reason for grant of relief."  The court continued that,

13  "Although the existence or degree of prejudice to the party

14  opposing the modification might supply additional reasons to

15  deny a motion.  The focus of the inquiry is upon the moving

16  party's reasons for seeking modification.  If that party was

17  not diligent, the inquiry should end."

18      In Moore's Federal Practice, Professor Moore

19  cautions, "Nor does an attorney's otherwise busy schedule

20  constitute excusable neglect or good cause for failure to

21  meet the scheduling order deadlines."  It's 3 Moore's

22  Federal Practice, Sections 16.14[1][b] at Page 16-74 to 75.

23  It's the Third Edition, 2007, citing the <u>Arnold v. Krause</u>

24  case at 232 FRD 58, Page 65 in the Western District of New

25  York decided in 2004.

12

1          Professor Moore continues that, generally,

2   prejudice is irrelevant to the moving party's exercise of

3   diligence and does not show good cause.  Anticancer attempts

4   to establish diligence by explaining that Plaintiff's

5   counsel was busy preparing for trials in other cases and

6   Anticancer's president was out of the country and difficult

7   to reach.  This does not rise to the level of good cause for

8   the new information not being included in the original

9   contentions.

10          In the ST Micro Electronics case at 307 F.Supp.2d

11   845, Pages 850-51 at note 6, from the Eastern District of

12   Texas decided in 2004, the court found it "particularly

13   disturbing" that the plaintiff did not give any explanation

14   for its failure to include 26 new claims in its preliminary

15   infringement contentions, because it was the party who had

16   control over the suit -- over when the suit was filed, and

17   no explanation was given for why the investigation that

18   discovered the new claims was not completed before

19   preliminary contentions were due.

20          Similarly, in the Softvault Systems (phonetic)

21   case, 2007 WEstlaw at 1342554 at *1, again from the Eastern

22   District of Texas, decided on May 7, 2007, the court found a

23   lack of diligence because the plaintiff could not explain

24   its failures to include the correct priority date in its

25   initial contentions, and the newly asserted priority date

13

1 could have been discovered before initial contentions were

2 served.

3         This case is similar to Berger v. Rossignol, 2006

4 Westlaw 1095914, again from the Northern District of

5 California.  There, the plaintiffs sought leave to amend

6 their preliminary infringement contentions because

7 plaintiff's counsel made errors and neglected to include any

8 claims from one of the patents in suit.  The court found

9 that neglect did not constitute good cause to amend,

10 especially in light of the fact that plaintiffs filed the

11 lawsuit ten months earlier which was adequate time to

12 develop their infringement contentions.  Judge Briar stated,

13 "Even if plaintiffs were found to have promptly sought leave

14 to amend, they still fail to satisfy this District's good

15 cause standard because they have not provided any

16 justification for the amendment other than mere error."

17         Similarly, Anticancer tries to justify amendment

18 of its contentions based on counsel's error in serving

19 incomplete infringement contentions.  The discussion today

20 would not be complete without addressing prejudice to these

21 Defendants in greater detail.  In Chancelor v. Potts Grove

22 School District, 501 F.Supp.2d 695, at Page 702, note 6,

23 from the Eastern District of Pennsylvania decided in 2007,

24 the court citing the Johnson case from the Ninth Circuit

25 discussed whether prejudice was a factor to consider.  The

14

1   District Court continued and stated, "It is unclear whether

2   the existence or degree of prejudice to the opposing party

3   plays a role in a Rule 16(b) good cause calculus.  The Ninth

4   Circuit has held that it does not.  Although prejudice to

5   the opposing party might supply an additional reason to deny

6   a motion to amend.  The Sixth Circuit, on the other hand,

7   has held that while the good cause analysis focuses

8   primarily on whether the party was diligent in seeking the

9   amendment, it also factors in whether the opposing party

10  will suffer prejudice by virtue of the amendment."

11          Similarly, when discussing amending a pleading

12  after the deadline in a scheduling order has passed, the

13  Fifth Circuit considers four factors.  One, the explanation

14  for the failure to timely move to amend.  Two, the

15  importance of the amendment.  Three, potential prejudice in

16  allowing the amendment.  And four, the availability of a

17  continuance to cure the prejudice.  This is described in

18  Southwestern Bell at 346 F.3d 541 at Page 546 out of the

19  Fifth Circuit decided in 2003.

20          I will now address prejudice as to each of these

21  Defendants.  At the hearing on January 14, 2008, the Court's

22  tentative conclusion was that any prejudice to the three

23  Defendants was minimal.  In their supplemental opposition

24  memoranda, the Defendants attempt to bolster their claims of

25  prejudice.

15

1    Merck states that it spent "nearly a month
2 reviewing infringement contentions that had nothing to do
3 with Merck activities that Anticancer now seeks to accuse."
4 Previously, Merck had argued that had undertaken the time
5 and expense to prepare and file a summary judgment motion
6 based on Anticancer's initial contentions, and the motion
7 would be moot if Plaintiff were allowed to amend its
8 contentions.

9    It is true that one of the two bases of Merck's
10 summary judgment motion is the fact that the infringement
11 contentions did not accuse Merck of infringing any of the
12 claims of the patents in suit.  The Court in <u>General</u>
13 <u>Atomics</u>, the 2006 U.S. District Lexis decision, 58989 at *6
14 from the Northern District of California decided August 9,
15 2006, specifically rejected this type of argument stating,
16 "While it is true that General Atomics has incurred the
17 substantial expense of a summary judgment motion, it is also
18 true that its motion for summary judgment was brought very
19 early in the case, even before claim construction had
20 occurred."  The court attributed some of the prejudice
21 suffered by the plaintiff to its decision to bring the
22 summary judgment motion early.

23    Here, the same is true.  Defendant Merck chose to
24 file a summary judgment motion only a month after receiving
25 Plaintiff's preliminary infringement contentions, knowing

16

that the Plaintiff intended to at least attempt to amend

contentions, and Merck filed the motion before any

significant discovery was completed.  Some of the prejudice

occasioned by Merck's decision should be attributed to its

activities.

Turning to Novartis Institutes, this Defendant

makes the same claim of prejudice as Merck, that it spent

time reviewing infringement contentions that had nothing to

do with its activities or the activities that Anticancer

seeks to assert in the amended infringement contentions.

Novartis Institutes also argues that it relied on the

application-based priority dates for the 384 and 038

patents.  Those dates are January 7, 1989 and May 29, 2001,

respectively.  That Novartis relied on these dates in

conducting prior art searches and in analyzing written

description and enablement defenses.

Novartis continues, "In its proposed substituted

infringement contentions, Anticancer seeks to change the

priority dates for both the 038 and 384 patents yet again to

March 27, 1998."  Defendants Novartis and Merck have both

argued that prejudice associated with changes to priority

dates has been recognized by other courts.  For example, in

the Softvault System case the Court previously cited, the

court noted that "the potential prejudice in allowing the

thing that would be excluded weighs against granting the

17

motion.  Softvault could have asserted the earlier priority date at the outset of this suit, but did not, either by choice or through a lack of diligence, allowing Softvault to assert an earlier priority date at this time with prejudice to Microsoft by forcing Microsoft to incur additional expense in reassessing its invalidity analyses based on an earlier priority date.  Microsoft would also likely lose the ability to use references that are prior art under the currently asserted priority date.

The final factor, the availability of continuance to avoid any prejudice, weighs against granting the motion. Granting a continuance would allow Microsoft time to reassess its invalidity contentions.  However, a continuance would not cure prejudice to Microsoft arising from a narrow body of prior art.  Softvault had access to the earlier application before filing suit and has not shown good cause to alter the asserted patent's priority date.

According to Novartis Institutes, changing the priority dates would prejudice all the Defendants forcing them to occur additional expense in reassessing their validity analyses based on earlier priority dates, and the Defendants would lose the ability to use references that are prior art under the May 29, 2001 and January 7, 1999 priority dates.

While I'm on the subject of Novartis Institutes, I

18

feel the need to discuss one additional point.  The scope of
this continued hearing is narrow.  Nevertheless, Novartis
again asserts that the protective order in effect and what
it refers to as Anticancer One prohibits the use of
Dr. Leau's deposition testimony here.  At the last hearing,
the Court was not convinced that this was the case.  I did
not ask for supplemental briefing on this point.

In spite of the additional argument that Novartis
raises, the Court remains unconvinced.  Finally, it does not
matter.  Even if the prior protective order should preclude
Anticancer from making reference to Dr. Leau's testimony
here, Novartis's remedy is to bring the claim violation of
the protective order to the attention of the state court
judge presiding over Anticancer One, or who presided over
Anticancer One.

Returning to a discussion of prejudice, Defendant
Cambridge does not strenuously argue that it will be
prejudiced.  It has, however, joined in Merck's argument.
Nevertheless, the Court concludes that any prejudice these
three Defendants would suffer from the filing of amended
infringement contentions is modest and curable.  The time
and expense incurred by the Defendants in relying on later
priority dates can be cured by shifting expenses they
incurred to the Plaintiff.  The passage of time can be cured
by allowing the Defendants an opportunity to file amended

19

1 invalidity contentions and extending the schedule that has

2 previously been set.

3       This Court disagrees with the decision from the

4 Eastern District of Texas in <u>Softvault</u>.  In my opinion, if

5 due diligence for amended contentions exist and prejudice

6 can be cured, the fact that there is a "narrow body of prior

7 art" necessarily follows, and that should not preclude the

8 filing of amended contentions.

9       From this Court's view of the case law, it appears

10 that in at least the Fifth and Sixth Circuits, prejudice is

11 the factor to consider in deciding whether to permit the

12 amendment of infringement contentions after the expiration

13 of deadlines contained in the scheduling order.

14       The Ninth Circuit in <u>Johnson v. Mammoth</u>

15 <u>Recreation</u>, however, made it clear that, although prejudice

16 to the party opposing modification might supply additional

17 reasons to deny a motion.  The focus on the inquiry is upon

18 the moving party's reasons for seeking modification.  If

19 that party was not diligent, the inquiry should end.

20       More recently, Judge Briar, in <u>Berger</u>, decided in

21 the Northern District of California, cited <u>Johnson</u> and

22 denied an analogous motion for leave to amend Plaintiff's

23 infringement contentions.  Under the facts of this case and

24 the case law in this circuit, Anticancer has not met its

25 case development responsibilities.  This lawsuit was filed

20

1  on January 12, 2007.  Over nine months later when

2  infringement contentions were served, they were deficient.

3  Contentions directed to Defendants Merck and Novartis were

4  not made.

5          Priority dates for the 384 and 038 patents were

6  the application dates of January 7, 1999 and May 29, 2001.

7  When the proposed amended contentions were submitted to

8  these Defendants three to four weeks later, the priority

9  dates for the 384 and 038 patents were stated to be

10 March 27, 1998.  Contentions against Defendants Merck and

11 Novartis Institutes were alleged, and new references to two

12 articles and one abstract were added to the Cambridge

13 contentions.  Anticancer has not established that good cause

14 exists to permit it to file its proposed amended

15 infringement contentions.

16         Good cause has not been shown to excuse the

17 failure of the Plaintiff's attorney team members who were

18 working on the contentions from late September through mid-

19 October to belatedly include contentions against Merck and

20 Novartis Institutes to include new references and to assert

21 earlier priority dates.

22         Good cause has not been shown to excuse the

23 inattention of the client who was at the September 27th

24 conference when the October 15th deadline for infringement

25 contentions were set, yet left the country on other business

21

1   for an extended period two days later.  Although Mr. Lawton

2   reviewed the draft contentions on October 15th or 16th, the

3   press of other business likewise does not constitute good

4   cause.  For all these reasons, the tentative ruling is to

5   deny the motion.

6           If anyone would care to address the ruling, you

7   may.

8           MR. LAWTON:  I wanted to make clear in my

9   supplemental declaration and I want to reiterate to the

10  Court because your Honor spoke of the failure attorney team

11  members.  These failures are my failures, failures I am

12  responsible for.  I have an excellent team, and to the

13  degree there were failures here, they were mine and no one

14  else should be blamed for that.  I don't blame anyone else

15  for it, and I ask the Court not to do it, either.

16          I do want to address what I think is the

17  Court's -- and I want to thank the Court for what I know

18  must have been a very time-consuming and involved period of

19  study on this motion, and the Court's comments reflect that

20  a great deal of time obviously went into that, and I

21  appreciate that.

22          However, I believe that the law is different than

23  the Court now perceives it.  And it is that law that

24  controls the outcome of this motion and requires an order

25  granting this motion.  We are talking about two cases that

22

1  the Court has not identified in its tentative ruling and

2  those cases are Teserra (phonetic) and General Atomics.

3  Those cases are significant, your Honor, because they

4  involve periods of time much greater than those involved in

5  this case, and amendments allowed by the District Courts.

6        In the General Atomics case, you had a plaintiff

7  who requested leave to amend after a hearing was held on a

8  defense summary judgment motion.  So, in that case, you have

9  the plaintiff seeking Rule 3.7 relief after summary

10 judgment, not before.  It was still pre-Markman, just like

11 in this situation we're over two months away from the

12 Markman hearing.

13        The time period that passed from the preliminary

14 infringement contentions to the proposed amended contentions

15 exceeded significantly the period in this case.  Three

16 months went by and still the court found good cause and said

17 the case is relatively young.  I know your Honor is

18 concerned with the -- of this case.  The Court points out

19 the case was filed in January of 2007 and amended -- or

20 proposed amended contentions weren't served until November.

21 Everything is relative.  In the General Atomics case, the

22 case was ten months old at the time that the plaintiff

23 delivered proposed amended contentions.  The Teserra case

24 was 18 months old by comparison at the time the plaintiff

25 sought amendment.  It was actually the defendants in that

23

1  case who sought the same relief under Rule 3.7.  They were

2  seeking leave to amend their invalidity contentions.  In

3  that case, eight months passed from the preliminary

4  invalidity contentions to the service of the proposed

5  amended, and still the Court said, even though the case is

6  not near its outset, even though the case is 18 months old,

7  the case ought to be decided on the merits and these

8  amendments ought to be allowed.

9          The Court perceives that cases holding good cause

10 or cases in which good cause have been found are cases in

11 which there is belatedly discovered information that

12 warrants the amendment.  But, that is not the same thing,

13 your Honor, as saying that the only time good cause can be

14 found is when there is later discovered evidence that

15 prompts the amendment, because that is not the situation.

16         That is not the case in <u>General Atomics</u>.  There

17 was nothing belatedly discovered in that case, and yet, the

18 court found that there was good cause for the amendment.  In

19 fact, in that case, the reason for the amendment was the

20 moving party, that when it got invalidity contentions from

21 the other side, thought up a new theory of infringement.

22         So, there was no new evidence in that case, no

23 deposition take, no document discovered that prompted the

24 amendment.  It was plaintiff's counsel saying here's what

25 they're saying is the invalidity of our patent, we ought to

24

1   try to amend our infringement contentions based on that, and

2   the court allowing it and finding good cause for it.  And by

3   the same token, in <u>Teserra</u>, which is also decided in this

4   Circuit, both <u>General Atomics</u> and <u>Teserra</u> come out of the

5   Northern District, the same District as Judge Briar.

6           Again, there was no discovery that prompted the

7   Court to find good cause or that prompted the amendment.  In

8   that case, the amendment was prompted again by something

9   that the defendants found after the plaintiff filed

10  invalidity contentions.  The defendants read something in

11  the invalidity contentions that prompted them to say "we

12  need to amend our invalidity contentions because there's

13  something in here that we hadn't thought of before."  In

14  that case, the court said the defendants admitted that they

15  were aware of the information that they sought to add by the

16  amendment before filing their first filed or their first

17  served invalidity contentions, and it didn't matter.  The

18  court said, we're still going to find good cause.

19          So, it is not the law that good cause can be found

20  only when there is discovery and then an amendment based on

21  the discovered information.

22          THE COURT:  Mr. Lawton?

23          MR. LAWTON:  Yes, your Honor.

24          THE COURT:  I know that, and perhaps I gave you

25  the misimpression that I thought that was only the case.

25

1          MR. LAWTON:  Sorry I misunderstood.

2          THE COURT:  That was a representative set of cases

3 I was trying to highlight.  So, I know that there are other

4 instances for good cause.

5          MR. LAWTON:  Very well, your Honor.  This

6 situation is much more akin to General Atomics and Teserra

7 and involves shorter periods of delay than those cases.  The

8 Court talks about Softvault and I want to talk about

9 Softvault to address that.  The Softvault case, which is

10 mentioned by the Court as supporting a finding of a lack of

11 good cause, you had a six-month period there that passed

12 between preliminary infringement contentions and the

13 amended, and in that case, the plaintiff filed no supporting

14 affidavits at all.  There was simply a barren record of what

15 the facts were underlying the tardy offered amendment.

16          And in that case, you had an attempt to add

17 earlier priority dates rather than later priority dates, as

18 we have in this case, which is a very different situation

19 involving a much heavier burden on the non-moving party than

20 we have here.  And speaking of that burden, I should point

21 out, remind the Court that these are not Defendants that are

22 struggling at a disadvantage in this case because of my

23 tardiness.  We have been preparing for the Markman hearing.

24 We exchanged responses, claim constructions on January 15th.

25 We filed with the Court on January 25th our joint claim

26

1  constructions or worksheet and our hearing statement.

2         In that process, somehow, these Defendants, with

3  the priority dates that they have, have managed to do a

4  remarkably thorough job, and that is perfectly in line with

5  the Court's finding that any prejudice here is quite

6  minimal.  The <u>Softvault</u> case is distinguishable on the basis

7  that I said.

8         <u>Berger v. Rossignol</u>, Judge Briar's decision, is

9  also distinguishable.  Again, a completely different

10 situation where the plaintiffs waited until after summary

11 judgment has been granted to seek leave to amend their

12 infringement contentions and waited until after they had

13 filed a motion to vacate the summary judgment under Rule 60

14 before thinking up a Local Rule 3.7 motion.  Not diligent

15 people.  Not parties who realized they'd made a mistake,

16 came into court, filed a motion, did what they were supposed

17 to do, did it before any dispositive motions were teed up

18 before the court or any claim construction, waited until all

19 of that was over.

20         That is not diligence and that is not this case,

21 either, where we are so far ahead of Markman and we are so

22 far ahead of summary judgment, and we did what the local

23 rule asks us to do, which is come into the Court and apply

24 for relief once you determine that you've made a mistake,

25 not something that was done in <u>Berger</u>.

27

1         The Court essentially says you made a mistake and

2  your mistake is not good cause and that's it.  And the

3  policy of that or what flows from that when we juxtapose it

4  with Rule 3.7 and Rule 60 and, on the state court side, CCP

5  Section 437(c) and cases like the case out of the Ninth

6  Circuit involving the Court -- you know, letting an attorney

7  out of blowing a deadline for the filing of a notice of

8  appeal.

9         The policy inherent in all of those statutes and

10  rules is that we don't live in a perfect world.  We live in

11  a world where lawyers regrettably make mistakes, mistakes

12  that they're ashamed of, mistakes that they're embarrassed

13  about, mistakes that shouldn't happen, and mistakes

14  hopefully that they take measures so as to prohibit in the

15  future from happening, as has been done in this case.

16         But, we don't live in a mistake-free system.  When

17  mistakes are made, there ought to be a way to address them

18  so long as people are not prejudiced, so that cases can be

19  decided on their merits.  And I'm afraid that the tentative

20  ruling that the Court is making asks of all of us that we

21  have a mistake-free practice at all times, and tells us that

22  when we run afoul of that or when we do make a mistake,

23  there is no recourse.  That's it, and as a consequence of

24  that, the case is not going to be decided on the merits.  A

25  defendant is going to exit a case without any determination

28

1   made by a judicial officer or a jury about the culpability

2   and the damages caused by that defendant because of an

3   attorney mistake.  And I don't believe that that's our law

4   and I believe, if it were our law, we wouldn't have Rule 3.7

5   and we wouldn't have rules like Rule 60 in the state court

6   statute that I identified, and we wouldn't have cases like

7   Teserra and General Atomics.

8           Once the Court had determined that attorneys like

9   the attorneys in General Atomics should have thought of that

10  theory before you read the Defendant's invalidity

11  contentions, it would be over.  Every motion filed under

12  Rule 3.7 can be seen as a motion based on infringement

13  contentions that were deficient in some way.  Otherwise, you

14  wouldn't have Rule 3.7 motions, unless attorneys made

15  mistakes, unless attorneys left things out, unless attorneys

16  got a priority date wrong.  But, we do have that rule and we

17  do have cases like Teserra and General Atomics, and the

18  Court's tentative ruling cannot be squared with those cases.

19          Prejudice is something that the Court says is not

20  related to good cause, and we talked about this at the

21  hearing that we had on January 14th, and at that time, I

22  told your Honor that prejudice and good cause are

23  intertwined, and the Court disagrees with me on that and I

24  respect that.  But, when you look closely at the decisions

25  of the courts in General Atomics and Teserra, you see that

29

1 those courts don't believe that prejudice and good cause are

2 unrelated or can be decoupled.  Those courts tie the

3 prejudice finding or the no prejudice finding to whether or

4 not good cause exists.

5        When you look at Teserra, on the very last page of

6 it right after *9, there's two sentences that highlight it

7 very clearly, and I quote, "Allowing them to amend their

8 contentions at this point in the litigation will promote the

9 fair resolution of this case without causing any prejudice

10 to the plaintiff.  Therefore, the court finds that the

11 defendants have established good cause to amend their

12 preliminary contentions."  I don't think the court can state

13 it any more clearly than that, when it says, therefore,

14 since we find there's no prejudice, we find that there is

15 good cause to allow the amendment of these contentions, and

16 that is a case decided in our Circuit.

17        The General Atomics case doesn't say it as clearly

18 as that at *4, but it says, and I quote, "Because this case

19 is still relatively young, the court finds that -- has

20 demonstrated good cause."

21        The Court identifies a Fifth Circuit case with the

22 four factors and takes us through the four factors.  I think

23 we ought to look at a case out of the Ninth Circuit that is

24 cited in the Berger case that gives us four factors that are

25 different than the factors cited in the Fifth Circuit case.

1         Even the <u>Berger</u> case says, citing a Ninth Circuit

2  case, <u>Briones v. Riviera Hotel</u>, there's four factors when we

3  look at whether we're going to excuse this type of problem

4  when it comes to amending contentions.  One, the prejudice

5  to the non-moving party.  Number two, the length of the

6  delay and its potential impact on the judicial proceedings.

7  This is at *7 of the <u>Berger</u> case.  Three, the reason for the

8  delay and, four, whether the movant acted in good faith

9  citing <u>Briones</u>.

10         When you look at those factors, they are satisfied

11 in this case.  Factor one, prejudice to the non-moving

12 party, there is none, or what there is is minimal and the

13 Court's correct on that.  Number two, the length of the

14 delay and its potential impact on the judicial proceeding.

15         What is the length of the delay involved here?

16 Not the delay between the filing of the complaint and the

17 amended contentions, the length of the delay between the

18 preliminary contentions and the amendments.  Well, here,

19 that length of time is not three months, it is not six

20 months, as in cases like <u>Berger</u> and <u>O2</u>.  It's 26 days.  And

21 the impact of that delay on the judicial proceeding, we have

22 to look at that.  Are we after Markman?  Are we on the even

23 of Markman?  Are we at summary judgment?  No.  We're months

24 away from any of those events, so that factor weighs in

25 favor of granting the motion.

1        The reason for the delay.  The reason for the

2 delay, we've been over that.  My mistake.  There's no

3 putting a pretty face on it.  And four, the fourth factor

4 cited by <u>Berger</u>, Judge Briar, is whether the movant acted in

5 good faith.  You can say that I didn't do a good job in

6 October and that would be a fair statement.  But, I don't

7 think anybody could say that we didn't act in good faith.

8 To the contrary, we realized the mistake and we did

9 something about it.  My supplemental declaration makes that

10 clear, and none of these Defendants can contradict that.

11        This is not a situation involving gamesmanship, as

12 Judge Briar found in <u>Berger</u>, where there's an inference that

13 the plaintiff is trying to play games to get a procedural

14 advantage.  This is not that situation.  Those are the cases

15 in which relief is denied, where there is a strong inference

16 of gamesmanship or intentional effort to torpedo a defense

17 or to hamper or impair a defense.  And there is nothing that

18 would enable this Court to find that that exists in this

19 case.  Thank you, your Honor.

20        MR. PISTORINO:  I just wanted to briefly address

21 it.  Your Honor, we believe the Court's tentative ruling is

22 correct, and we appreciate the Court's time and very careful

23 consideration of the issues and clear research.  The Court

24 clearly did some in-depth research on this matter.  We

25 believe it to be correct, although we disagree,

32

1   respectfully, on the matter of prejudice.  Nevertheless, we

2   believe the tentative ruling to be correct and I thank the

3   Court for its time.  Thank you.

4           THE COURT:  Ms. Goddard, anything for your client?

5           MS. GODDARD:  No, your Honor.

6           THE COURT:  Mr. Cooley?

7           MR. COOLEY:  No, your Honor.

8           THE COURT:  All right.  The <u>Teserra</u> and <u>General</u>

9   <u>Atomics</u> cases were cases that I read in connection with our

10  first hearing.  What I want to do is look at them again.

11  I'm going to take a brief recess.  If you all would like to

12  come back at 3:15, I'll resume at that time.

13          COUNSEL:  Thank you, your Honor.

14      (Proceedings recessed briefly.)

15          THE COURT:  I need to make a couple of additional

16  comments.  First, we're talking about three essential

17  changes.  One is the addition of infringement contentions

18  against two Defendants.  The second is the addition of new

19  references, and the third is a change of priority dates.

20          In discussing due diligence, these three items

21  were not specifically dealt with on an individual basis.

22  Instead, a general claim of diligence was made, and I still

23  find that good cause has not been established for any of

24  these three categories of changes.

25          Next, it's laudable that Mr. Lawton is willing to

33

1  assume complete responsibility for the omissions and the

2  changed date that we're talking about today.  But, I cannot

3  help but conclude that, if there were attorneys licensed to

4  practice law who were working on the contentions before

5  Mr. Lawton saw them, good cause would require to show that

6  they acted diligently as well and that has not been

7  established.  I continue to believe that the client bears

8  some responsibility for the shortcomings, because Anticancer

9  was in attendance on September 27th when the dates were set,

10  and yet did not devote its attention to infringement

11  contentions, which would be due shortly.

12          Next, I again looked at the cases that were cited

13  by the Plaintiff, starting with the Teserra case.  As I read

14  Teserra, Judge Wilkins found that the Defendants did act

15  diligently in trying to identify the prior art.  She noted

16  that, in January of 2006, two of the Defendants hired an

17  independent search firm to search for prior art.  Yet, the

18  Defendants did not locate seven of the nine prior art

19  references until after they served their preliminary

20  invalidity contentions which contain 180 references.

21          Hiring a third party expert, if you will, to

22  assist the search and the third party, was not able to

23  locate prior art, and subsequently discovering it apparently

24  to Judge Wilkins was sufficient to establish diligence.  She

25  also noted that two other references only became apparent

34

1  after the invalidity contentions were filed.  I think this

2  case is not that all the items that we're talking about, the

3  existence of Merck as a Defendant and Novartis as a

4  Defendant was no -- there's no showing that the priority

5  dates were not known.  There's no showing that the

6  references were not previously known.

7          Turning to General Atomics, in the General Atomics

8  case, Judge Ilsten (phonetic) wrote, "Access Shield argues

9  that it has met this requirement because it did not conceive

10 of the infringement theory it seeks to add until the parties

11 exchange preliminary claim construction statements.  Because

12 this case is still relatively young, the court finds that

13 Access Shield has demonstrated good cause."

14         As I read Judge Ilsten's discussion in General

15 Atomics, her analysis is analogous to a discussion of newly-

16 discovered evidence.  And as she saw it, that was sufficient

17 to establish good cause.  Again, I do not think our case is

18 similar to General Atomics.

19         I feel compelled to follow the guidelines set

20 forth in Johnson, and after reviewing all the papers and

21 hearing argument of counsel and re-reading the Teserra and

22 General Atomics case, the tentative ruling of the Court will

23 be the ruling.  I will just issue a minute order indicating

24 that, for the reasons stated on the record, the motion to

25 amend is denied.

35

1          COUNSEL:  Thank you, your Honor.

2       (Proceedings concluded.)

3

4          I certify that the foregoing is a correct

5    transcript from the electronic sound recording of the

6    proceedings in the above-entitled matter.

7

8    _____          _____
     Transcriber                               Date
9

10   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

11

12   _____
     L.L. FRANCISCO, President
     Echo Reporting, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*