James C. Pistorino (SBN 226496)
John F. Lynch (admitted *pro hac vice*)
Adam K. Whiting, Ph.D. (SBN 230083)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303
Telephone:  (650) 798-3500
Facsimile:   (650) 798-3600
E-Mail:  PistorinoJ@howrey.com
E-Mail:  LynchJ@howrey.com
E-Mail:  WhitingA@howrey.com

Attorneys for Defendant
MERCK & CO., INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation; MERCK & CO., INC., a New Jersey corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH INC., a Delaware corporation; and DOES 17-50,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | ) Case No. 3:07-CV-00097-JLS-RBB<br>)<br>)<br>)<br>) **MERCK & CO., INC.'S EVIDENTIARY**<br>) **OBJECTIONS TO THE DECLARATION OF**<br>) **ROBERT M. HOFFMAN AND TO**<br>) **EXHIBITS SUBMITTED BY**<br>) **ANTICANCER, INC.**<br>)<br>)<br>) Hearing Date:        May 8, 2008<br>) Time:                1:00 p.m.<br>) Courtroom:           6, 3rd Floor<br>) Judge:      Honorable Janis L. Sammartino<br>)<br>)<br>) |

Merck & Co., Inc. ("Merck") hereby makes evidentiary objections and moves to strike paragraphs 2 through 15 of the Declaration of Robert M. Hoffman in Support of Opposition of Plaintiff and Counterdefendant AntiCancer, Inc. to Defendants' Merck & Co., Inc.'s, Novartis Institutes for Biomedical Research, Inc.'s, and Carestream Health, Inc.'s Motions for Summary Judgment ("Hoffman Declaration"), filed on April 25, 2008 (Docket No. 108-4), and re-filed with errata on May 2, 2008 (Docket No. 111-2), and all Exhibits filed with AntiCancer's Opposition (Docket No. 108-7 through 108-10), filed on April 25, 2008, except Exhibits 28, 37, and 39.

## I.      Legal Standard

A party may present objections or a motion to strike to the Court to preserve evidentiary objections. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1003 (9th Cir. 2002). Declarations that would not be admissible are subject to objection and may be stricken. *See generally, Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). Accordingly, Merck hereby submits these Evidentiary Objections.

## II.      Objections To Declaration Of Robert M. Hoffman

AntiCancer, Inc. ("AntiCancer") is limited to its preliminary infringement contentions served on October 17, 2007. Any portions of the Hoffman Declaration purporting to show infringement by Merck beyond AntiCancer's contentions have no relevance in this litigation and should be stricken.

Merck also asserts specific evidentiary objections to paragraphs 2 through 15 of the Hoffman Declaration. Each of the paragraphs is set forth in full and discussed below. Merck only addresses paragraphs regarding Merck; Merck hereby incorporates in full any objections that any other party in this case or the consolidated *Carestream* case (Case No. 07 CV 1004) may have to the Hoffman Declaration.

2. AntiCancer engineers tumor cells which are encoded with these fluorescent proteins. These fluorescent tumor cells are later implanted into lab animals. When the cells fluoresce, they glow green, enabling scientists to track their growth and spread in the living animal in real time. The resolution of GFP-imaging technology is so powerful that even single cancer cells can be seen from outside the mouse's body. This enables drug researchers to see if a given drug is slowing or stopping tumor growth in the live mouse. AntiCancer licenses to other the right to image these fluorescing proteins in these animals. When a user images an intact lab animal which expresses a fluorescent protein, AntiCancer's patents are implicated. Among those patents are the '384, '038, and '159 patents (Exs. 33, 34, and 35), and equivalents worldwide. AntiCancer has to and does protect its patents vigorously. This is because of those patents' dear value to the company and its customers.

HOWREY LLP

MERCK'S EVIDENTIARY OBJECTIONS TO HOFFMAN
DECLARATION & EXHIBITS SUBMITTED BY ANTICANCER
Case No. 3:07-CV-00097-JLS-RBB                    -1-

Objections:

Merck objects to paragraph 2 on the grounds that it lacks relevance.  AntiCancer's research activities, licensing activities, and litigation activities, *inter alia*, are not relevant to the pending motion for summary judgment of non-infringement.  Merck further objects to paragraph 2 to the extent that it purports to define or describe the scope of the patents; claim construction is a question of law for the Court.  Merck objects to the extent that paragraph 2 attempts to state a legal conclusion that there is patent infringement.  Merck also objects to the extent that paragraph 2 attempts to set forth expert testimony; Dr. Hoffman has not been qualified as an expert on the issues therein.  Paragraph 2 should be stricken or disregarded by this Court.

3.  Infringement by Merck & Co., Inc.  In about 2000, I visited Merck facilities (in West Point, as I recall) and discussed AntiCancer's technology with Doug Pon, of Merck's licensing department.  Later I had at least three other meetings with Merck employees to discuss AntiCancer's work on GFP imaging, including a meeting with a Merck Vice President named Steve Friend in 2003.

Objections:

Merck objects to the phrase "Infringement by Merck & Co., Inc." on the grounds that it lacks relevance, lacks foundation, and is vague and ambiguous.  AntiCancer's discussions with Merck employees regarding AntiCancer's activities are not relevant to the non-infringement issues in Merck's motion for summary judgment.  The terms "AntiCancer's technology" and "AntiCancer's work on GFP imaging" are vague and ambiguous.  Dr. Hoffman provides only a conclusory statement and makes no connection between these terms and the specific AntiCancer patents at issue in Merck's motion for summary judgment.  Paragraph 3 should be stricken or disregarded by this Court.

4.  In about the second half of 2003 I received a telephone call from Raymond Gibson of Merck's imaging division. Mr. Gibson told me that Merck was interested in AntiCancer's GFP imaging technology.  He said that Merck was interested in taking a preliminary or exploratory license on AntiCancer's GFP technology.  Mr. Gibson would later confirm Merck's interest in acquiring a license at his deposition taken in the case of *AntiCancer v. Novartis Institute for Biomedical Research*, San Diego Superior Court Case No. GIC 772297.  *See* Exhibit 1.

Objections:

Merck objects to paragraph 4 on the basis that it lacks relevance, lacks foundation, includes hearsay and is vague and ambiguous.  Dr. Hoffman provides only a conclusory statement and makes no connection between the 2003 discussions regarding "AntiCancer's GFP imaging technology" or

HOWREY LLP

MERCK'S EVIDENTIARY OBJECTIONS TO HOFFMAN
DECLARATION & EXHIBITS SUBMITTED BY ANTICANCER
Case No. 3:07-CV-00097-JLS-RBB                -2-

"AntiCancer's GFP technology" and the specific AntiCancer patents at issue in Merck's motion for

summary judgment.  Merck notes that the '159 and '038 patents did not issue until November 18, 2003

and July 6, 2004, respectively.  Merck also objects that paragraph 4 is a violation of Rule 408 of the

Federal Rules of Evidence.  Merck objects to Dr. Hoffman's characterization and interpretation of Mr.

Gibson's deposition testimony as speculation and hearsay.  Mr. Gibson's deposition testimony speaks

for itself.  Paragraph 4 should be stricken in its entirety or disregarded by this Court.

> 5.  AntiCancer sent Mr. Gibson information on GFP imaging.  We sent a lot of our publications to him, including some of our CDs that show the imaging in real time.  During this time, Mr. Gibson indicated that he and his team at Merck (including Debbie Defeo-Jones) were anxious and excited to begin working with our technology.  This showed Merck had cell lines capable of expressing GFP when transplanted into mice.

Objections:

Merck objects to paragraph 5 on the basis that it lacks relevance, lacks foundation, includes

hearsay, is vague and ambiguous and offers speculation without basis in personal knowledge.  Dr.

Hoffman does not provide a foundation of personal knowledge.  Dr. Hoffman does not say who at

AntiCancer sent the information, what information was sent, when it was sent, or how it is related to

the AntiCancer patents at issue.  Nor does Dr. Hoffman offer evidence that Mr. Gibson or anyone at

Merck received the information.  Dr. Hoffman does not say to whom "Mr. Gibson indicated" or what

"our technology" means with relation to the specific AntiCancer patents at issue.  Dr. Hoffman offers

inadmissible speculation and opinion that being "anxious and excited to begin working" indicates that

"Merck had cell lines capable of expressing GFP when transplanted into mice."  Dr. Hoffman provides

only a conclusory statement and makes no connections between such cell lines, if Merck had them, and

the specific patents at issue.  Merck also objects to the extent that paragraph 5 attempts to set forth

expert testimony; Dr. Hoffman has not been qualified as an expert on the issues therein.  Paragraph 5

should be stricken in its entirety or disregarded by this Court.

> 6.  Eventually, Jennifer Loebach replaced Mr. Gibson in this process. Ms. Loebach told AntiCancer that Merck had allocated $150,000.00 for this license, and that the negotiations were essentially complete but for some paperwork.

Objections:

Merck objects to paragraph 6 on the basis that it lacks relevance, lacks foundation, includes

hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

1  Hoffman provides only a conclusory statement and makes no connection between the alleged license

2  negotiation and any patent at issue.  Dr. Hoffman does not provide a foundation of personal

3  knowledge.  Dr. Hoffman does not specify with whom Ms. Loebach spoke at AntiCancer.  Dr.

4  Hoffman's reference to "this license" is vague and ambiguous.  Nor does Dr. Hoffman say who are the

5  parties to the "negotiations" referenced.  Merck notes that Dr. Hoffman has offered no documentary

6  evidence of a "license" that would provide the best evidence of it being "essentially complete."  Merck

7  also objects that paragraph 6 is a violation of Rule 408 of the Federal Rules of Evidence.  Paragraph 6

8  should be stricken in its entirety or disregarded by this Court.

9        7.  Around the end of 2003 or early in 2004 Merck told AntiCancer that Merck was not
   going to take a license after all.  *See* Exhibit 2.  When I asked Jennifer Loebach why, she
10   refused to give an answer other than the "patent landscape" had changed.

11  Objections:

12  Merck objects to paragraph 7 on the basis that it lacks relevance, lacks foundation, includes

13  hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

14  Hoffman does not provide a foundation of personal knowledge.  Dr. Hoffman does not specify who at

15  Merck told who at AntiCancer about not taking a license.  The reference to "a license" is vague and

16  ambiguous.  The reference to the "patent landscape" is vague.  Dr. Hoffman provides only a

17  conclusory statement and makes no connection between the license, the "patent landscape" statement,

18  and any AntiCancer patent at issue.  Paragraph 7 should be stricken in its entirety or disregarded by

19  this Court.

20        8.  I knew at that time there was intense interest from Merck in GFP imaging.  I knew
   that there were people in the lab ready to do it or already doing it.
21

22  Objections:

23  Merck objects to paragraph 8 on the basis that it lacks relevance, lacks foundation, is vague and

24  ambiguous, and offers speculation without basis in personal knowledge.  Dr. Hoffman does not say

25  who were "people," in what "lab," exactly what type of "GFP imaging" they were "ready to do" or

26  "already doing."  Nor does Dr. Hoffman say how he knew they were doing it.  Dr. Hoffman provides

27  only a conclusory statement and makes no connections between what he allegedly knew Merck was

28  doing and the specific patents at issue.  Merck also objects to the extent that paragraph 8 attempts to set

1   forth expert testimony; Dr. Hoffman has not been qualified as an expert on the issues therein.

2   Paragraph 8 should be stricken in its entirety or disregarded by this Court.

3            9.  Shortly thereafter I learned that Merck made an extensive licensing deal with
         Xenogen, one of AntiCancer's competitors whom AntiCancer was then pursuing in State court
4        for business torts.  I believe Merck bought nine of Xenogen's IVIS imaging instruments – all
         capable of imaging using GFP.
5

6   Objections:

7   Merck objects to paragraph 9 on the basis that it lacks relevance, lacks foundation, includes

8   hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

9   Hoffman provides only a conclusory statement and makes no connection between Merck's licensing

10  deal with Xenogen and the patents at issue.  The fact that AntiCancer was pursuing Xenogen in state

11  court for business torts also is not relevant.  Dr. Hoffman offers no evidence that Merck was using any

12  IVIS imaging instrument for "imaging using GFP" much less for any method according to any of the

13  patents at issue.  Paragraph 9 should be stricken in its entirety or disregarded by this Court.

14           10.  During the State court litigation against Xenogen (described by case number
         above), AntiCancer deposed Dr. Bohumil Bednar and Ms. Debbie Defeo-Jones.  Their
15       deposition testimony convinced me that Merck had indeed done GFP imaging research in mice
         that infringed upon AntiCancer's patents.  Exhibit 3 are excerpts of the transcript of Dr.
16       Bednar's deposition.  Exhibit 4 are excerpts of the transcript of Ms. Defeo-Jones' deposition.
         The highlighted portions make clear that Merck was doing imaging of GFP-expressing tumor
17       cells in mice – a clear infringement of AntiCancer's patents.

18  Objections:

19  Merck objects to paragraph 10 on the basis that it lacks relevance, lacks foundation, includes

20  hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

21  Hoffman provides only a conclusory statement and fails to make a connection between the Bednar and

22  Defeo-Jones deposition testimony and his conclusion that Merck had "done GFP imaging research in

23  mice" or "was doing imaging of GFP-expressing tumor cells in mice."  Nor does Dr. Hoffman make

24  the connection between the alleged admissions of Bednar and Defeo-Jones and any specific claims of

25  the AntiCancer patents at issue.  Merck objects to Dr. Hoffman's characterization and interpretation of

26  Dr. Bednar's and Ms. Defeo-Jones' deposition testimony as offering inadmissible opinion, speculation,

27  and hearsay testimony.  Their deposition testimony speaks for itself.  Merck further objects on the

28  grounds that paragraph 10 purports to state a legal conclusion of infringement.  Merck also objects to

HOWREY LLP

MERCK'S EVIDENTIARY OBJECTIONS TO HOFFMAN                    -5-
DECLARATION & EXHIBITS SUBMITTED BY ANTICANCER
Case No. 3:07-CV-00097-JLS-RBB

the extent that paragraph 10 attempts to set forth expert testimony; Dr. Hoffman has not been qualified

as an expert on the issues therein.  Paragraph 10 should be stricken in its entirety or disregarded by this

Court.

11.  At a Society for Molecular Imaging meeting in Cologne, Germany, in September 2005, Merck distributed a poster entitled "Optical Imaging Tumor Models for Drug Discovery Based on Rat Adenocarcinoma Cells MAT BIII Constitutively Expressing GFP, DsRed, or Firefly Luciferase."  *See* Exhibit 5.  The poster compares imaging techniques using cancer cells expressing three different compounds: GFP, DsRed (the most common red fluorescent protein), and luciferase.  (Luciferase is a luminous enzyme occurring naturally in fireflies and certain bacteria. It produces light via a chemical reaction.)

Objections:

Merck objects to paragraph 11 on the basis that it lacks relevance, lacks foundation, includes

hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

Hoffman provides only a conclusory statement and does not make a connection between the

information in the poster and any specific claims of the AntiCancer patents at issue.  Merck objects to

Dr. Hoffman's characterization and interpretation of the poster as offering inadmissible opinion,

speculation, and hearsay testimony.  Their poster speaks for itself.  Merck also objects to the extent

that paragraph 11 attempts to set forth expert testimony; Dr. Hoffman has not been qualified as an

expert on the issues therein.  Paragraph 11 should be stricken in its entirety or disregarded by this

Court.

12.  This poster shows that Merck researchers implanted breast cancer cells expressing GFP, Ds Red and luciferase into mice, and then tried to show the relative effectiveness of each method.  Merck got and displayed non-invasive images as well as open images.  AntiCancer's '384, '038, and '159 patents claim the processes whereby such imaging using both GFP and red fluorescent proteins is done.  The '159 patent very clearly applies to the imaging of **any** fluorescent protein in animals, including GFP and Ds Red.  This poster plainly proved Merck's infringement of these three patents.

Objections:

Merck objects to paragraph 12 on the basis that it lacks relevance, lacks foundation, includes

hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

Hoffman provides only a conclusory statement and does not make a connection between the

information in the poster and any specific claims of the AntiCancer patents at issue.  Merck further

objects on the grounds that paragraph 12 purports to state a legal conclusion of infringement.  Merck

also objects to the extent that paragraph 12 attempts to set forth expert testimony; Dr. Hoffman has not

HOWREY LLP

MERCK'S EVIDENTIARY OBJECTIONS TO HOFFMAN
DECLARATION & EXHIBITS SUBMITTED BY ANTICANCER
Case No. 3:07-CV-00097-JLS-RBB          -6-

1    been qualified as an expert on the issues therein.  Paragraph 12 should be stricken in its entirety or

2    disregarded by this Court.

3            13.  In September of 2007, at a meeting of the Society for Molecular Imaging in
     Providence, Rhode Island, Dr. Bednar of Merck visited AntiCancer's booth.  We had a

4    discussion.  During it, he freely admitted Merck's use of GFP and RFP (red fluorescent protein)
     in his laboratory at Merck, claiming that he got better results with luciferase.  This too showed

5    Merck's infringement of our patents.

6    Objections:

7    Merck objects to paragraph 13 on the basis that it lacks relevance, lacks foundation, includes

8    hearsay and is vague and ambiguous.  Dr. Hoffman provides only a conclusory statement and does not

9    make a connection between "Merck's use of GFP and RFP" and any specific claims of the AntiCancer

10   patents at issue.  Merck further objects on the grounds that paragraph 13 purports to state a legal

11   conclusion of infringement.  Merck also objects to the extent that paragraph 13 attempts to set forth

12   expert testimony; Dr. Hoffman has not been qualified as an expert on the issues therein.  Paragraph 13

13   should be stricken in its entirety or disregarded by this Court.

14           14.  At the recent American Association for Cancer Research (AACR) meeting held in
     San Diego between April 12th and April 16th, I received a handout from Carestream personnel

15   at their booth, entitled "Co-Registration of Multi-Modal Images of Small Animals." *See* Exhibit
     6.  Dr. Bednar (of Merck) co-authored this handout.  This handout showed Carestream and

16   Merck's joint research using unidentified fluorophores.  It described a series of fluorescent
     images as being captured using a Carestream Image Station *in-vivo* FX model.  The handout

17   says that the images are courtesy of Dr. Bednar of Merck.

18   Objections:

19   Merck objects to paragraph 14 on the basis that it lacks relevance, lacks foundation, includes

20   hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Dr.

21   Hoffman acknowledges that the fluorophores in the poster are "unidentified."  Dr. Hoffman provides

22   only a conclusory statement and makes no connection between the information in the poster and any

23   specific claims of the AntiCancer patents at issue.  Merck objects to Dr. Hoffman's characterization

24   and interpretation of the poster as offering inadmissible opinion, speculation, and hearsay testimony.

25   Their poster speaks for itself.  Merck also objects to the extent that paragraph 14 attempts to set forth

26   expert testimony; Dr. Hoffman has not been qualified as an expert on the issues therein.  Paragraph 14

27   should be stricken in its entirety or disregarded by this Court.

28

HOWREY LLP

MERCK'S EVIDENTIARY OBJECTIONS TO HOFFMAN          -7-
DECLARATION & EXHIBITS SUBMITTED BY ANTICANCER
Case No. 3:07-CV-00097-JLS-RBB

15.  While the handout does not identify the fluorophore shown in the images, it is clear to me that the reporter used was red fluorescent protein, and perhaps yellow fluorescent protein. AntiCancer's '384, '038, and '159 patents claim the use of these proteins for *in vivo* imaging of the precise sort depicted in Dr. Bednar's images.  I arrive at this conclusion for two reasons.  First, Carestream clearly identified the fluorophores that were **not** GFP or RFP in other similar handouts.  *See* Exhibit 7 for an example.  Second, the 515 nanometer excitation and 600 nanometer emission filters depicted in Ex. 5 are perfect for popular versions of red fluorescent protein.  They could be used for other fluorophores but it doesn't seem to be the case here.  This is because the tumor cells shown in Ex. 5 are metastatic cancer.  There is a figure on position imaging that shows two optical-signal-generating metastatic lesions located in the cranial region of the mouse.  The highly specific and precisely localized label shown here almost certainly would have to be a genetic reporter expressed by these metastases.  Since the Carestream Image Station only performs X-ray and fluorescent imaging, the genetic reporter used must have been a fluorescent protein.

Objections:

Merck objects to paragraph 15 on the basis that it lacks relevance, lacks foundation, includes hearsay, is vague and ambiguous, and offers speculation without basis in personal knowledge.  Merck objects to Dr. Hoffman offering speculation without personal knowledge of the identity of the fluorophores in the poster which he acknowledges are "unidentified."  Dr. Hoffman provides only a conclusory statement and makes no connection between the information in the poster and any specific claims of the AntiCancer patents at issue.  Merck objects to the Dr. Hoffman's characterization and interpretation of the poster as offering inadmissible opinion, speculation, and hearsay testimony.  The poster speaks for itself.  Merck further objects on the grounds that paragraph 15 purports to state a legal conclusion of infringement.  Merck also objects to the extent that paragraph 15 attempts to set forth expert testimony; Dr. Hoffman has not been qualified as an expert on the issues therein.  Paragraph 15 should be stricken in its entirety or disregarded by this Court.

**III.    Objections To Exhibits**

Merck objects to the Exhibits submitted in conjunction with AntiCancer's opposition to Merck's pending motion for summary judgment (Docket No. 108, attachments 7 through 11) on the grounds that they are not properly authenticated and hearsay.  The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) (*citing Cristobal v. Siegel*, 25 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d at 1542, 1550-51 (9th Cir. 1989); *Beyne v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); *Canada v. Blain's*

1   *Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d

2   684, 686 (9th Cir. 1976)).

3        Except for Exhibits 28, 37, and 39 which appear to be authenticated by the Declaration of Dan

4   Lawton (Docket No. 108, attachment 5), none of the Exhibits submitted in conjunction with

5   AntiCancer's opposition, or referenced by the Hoffman Declaration, have been adequately

6   authenticated.  Accordingly, Merck requests that the Court strike or disregard all Exhibits except for

7   Exhibits 28, 37, and 39.

8   **IV.    Conclusion**

9        For the foregoing reasons, Merck objects to paragraph 2 through 15 of the Declaration of

10   Robert M. Hoffman and requests that those paragraphs be stricken and/or disregarded by the Court.

11   Merck also requests that all Exhibits, except Exhibits 28, 37, and 39, be stricken and/or disregarded by

12   the Court.

13

14   Dated:  May 7, 2008                                    Respectfully submitted,

15                                                          HOWREY LLP

16

17                                              By:   /s/ James C. Pistorino
                                                      James C. Pistorino
18                                                    John F. Lynch (admitted *pro hac vice*)
                                                      Adam K. Whiting, Ph.D.
19
                                                      Attorneys for Defendant
20                                                    MERCK & CO., INC.

21

22

23

24

25

26

27

28   21215096

HOWREY LLP

MERCK'S EVIDENTIARY OBJECTIONS TO HOFFMAN                    -9-
DECLARATION & EXHIBITS SUBMITTED BY ANTICANCER
Case No. 3:07-CV-00097-JLS-RBB

***AntiCancer, Inc. v. Cambridge Research & Instrumentation, Inc., et al.***
**U.S.D.C. – S. D. Cal. Case No. 3:07-CV-00097-JLS-RBB**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of May, 2008 with a copy of this document via the Court's CM/ECF system.  I certify that all parties in this case that have made an appearance to date are represented by counsel who are CM/ECF participants.


By:   <u>/s/ James C. Pistorino</u>
        James C. Pistorino