1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11  ANTICANCER, INC.,

CASE NOS. 07CV97 JLS (RBB) and
07CV1004 JLS (AJB)

12                                    Plaintiff,

**ORDER (1) GRANTING MERCK'S**
13                                                          **MOTION FOR SUMMARY**
**JUDGMENT, (2) GRANTING**
14      vs.                                             **NIBRI'S MOTION FOR**
**SUMMARY JUDGMENT, (3)**
15                                                          **GRANTING IN PART, DENYING**
**IN PART CARESTREAM**
16                                                          **HEALTH'S MOTION FOR**
**SUMMARY JUDGMENT, (4)**
17                                                          **DENYING AS MOOT**
**ANTICANCER'S <u>EX PARTE</u>**
18                                                          **MOTION TO FILE REPLY BRIEF**
CAMBRIDGE RESEARCH &                **and (5) REQUESTING**
19  INSTRUMENTATION, INC.; MERCK &   **SUPPLEMENTAL BRIEFS ON**
CO., INC.; and NOVARTIS INSTITUTES  **SCHEDULE FOR CLAIM**
20  FOR BIOMEDICAL RESEARCH, INC.,   **CONSTRUCTION**

21                                    Defendants.
(Doc. Nos. 62, 95, & 114 in 07cv97;
Doc. Nos. 36 & 48 in 07cv1004)

22  ANTICANCER, INC.,

23                                    Plaintiff,

24      vs.

25  CARESTREAM HEALTH INC.,

26                                    Defendant.

27  //

28  //

- 1 -                                                              07cv97

**BACKGROUND OF THE PRESENT MOTIONS**

The matters presently before the Court arise from two partially consolidated actions.  In case number 07cv97 (a/k/a "the lower-numbered action"), plaintiff Anticancer, Inc. ("Anticancer") has alleged infringement of five of its solely-owned patents: United States Patent Nos. 6,232,523 ("523 patent"), 6,759,038 ("038 patent"), 6,235,968 ("968 patent"), 6,251,384 ("384 patent"), and 6,649,159 ("159 patent").  Anticancer has patented "methods which allow researchers to track the growth of tumor cells in living lab animals through the use of fluorescent proteins[.]" (Hoffman Decla. ¶ 1.)  The defendants in the lower-numbered action are Merck & Co., Inc. ("Merck"); Novartis Institutes for Biomedical Research, Inc. ("NIBRI"); and Cambridge Research & Instrumentation, Inc. ("CRI").  The operative complaint in this action alleges infringement by, "inter alia, CRI's Maestro In Vivo Imaging System (a fully-integrated system allowing researchers to use real time imaging technology, including plaintiff's patented technology, to monitor and record cellular and genetic activity within laboratory animals)." (Second Amended Complaint ("SAC") in 07cv97, e.g., ¶ 13.) Presently before the Court are (1) Merck's motion for summary judgment on all of Anticancer's causes of action for patent infringement and Merck's counterclaim of non-infringement; and (2) NIBRI's motion for summary judgment of non-infringement.

Anticancer served its preliminary infringement contentions ("PICs") on October 17, 2007.  Those PICs included allegations pertaining to CRI, but made no reference to Merck or NIBRI. (See Merck Exhibit B & NIBRI Exhibit D.)  On January 31, 2008, Magistrate Judge Ruben B. Brooks denied Anticancer's motion for leave to amend its PICs.  (Doc. No. 88 in 07cv97.)  On April 14, 2008, this Court denied Anticancer's motion to certify Magistrate Judge Brooks's decision for interlocutory appeal to the Federal Circuit.  (Doc. No. 106 in 07cv97.)

Merck moved for summary judgment on November 12, 2007.  (Doc. No. 62.)  When the Court referred Anticancer's motion to amend the PICs to Magistrate Judge Brooks on November 30, 2007, the Court also vacated the hearing date and suspended the briefing schedule on Merck's motion, pending Magistrate Judge Brooks's decision.  (Doc. No. 66.)  Following Magistrate Judge Brooks's order denying leave to amend, the Court reset Merck's motion for oral argument on May

1  8, 2008.[1]  (Doc. No. 89.)  Anticancer filed its opposition on April 25, 2008.  (Doc. No. 108.)

2  Merck replied on May 2, 2008.  (Doc. No. 110.)

3  NIBRI moved for summary judgment on March 14, 2008.[2]  (Doc. No. 95.)  Anticancer

4  filed its opposition on April 25, 2008.  (Doc. No. 108-1.)  NIBRI filed its reply on May 2, 2008.

5  (Doc. No. 109.)

6  In case number 07cv1004 (a/k/a "the higher-numbered action"), Anticancer sued Eastman

7  Kodak, Inc. for infringement of all five patents-in-suit in the lower-numbered action, plus United

8  States Patent No. 6,905,831 ("831 patent").  In early 2007, Kodak sold the businesses that

9  comprise its "health group," and those businesses were reorganized as Carestream Health, Inc.

10  ("Carestream"). (Doc. No. 13 in 07cv1004.)  Carestream now sells the Image Station imaging

11  system, which is the allegedly infringing technology in this litigation.  (Id.)  Therefore, on October

12  15, 2007, the Court granted the parties' joint motion to substitute Carestream for Kodak.  (Doc.

13  No. 15 in 07cv1004.)  Subsequently, the Court granted Carestream's unopposed motion for partial

14  consolidation, such that the lower- and higher-numbered actions are now consolidated for

15  purposes of claim construction of the five common patents-in-suit.  The operative complaint

16  alleges that Carestream both directly infringed Anticancer's patents by manufacturing the Image

17  Station and induced other, anonymous defendants to infringe.  (Compl. in 07cv1004, e.g., ¶¶ 11,

18  14.)  Presently before the Court is Carestream's motion for summary judgment on all of

19  AntiCancer's causes of action for patent infringement and Carestream's counterclaim of non-

20  infringement.

21  Anticancer served its PICs in the higher-numbered action on November 14, 2007.  These

22  PICs included infringement allegations respecting the claims of the 159, 384, and 038 patents.

23  (Schuck Decla. ISO Motion, Exhibit A, at 2.)  The PICs did not allege infringement of any specific

24

25  [1] When the Court reset the hearing date on Merck's motion, the Court also addressed the
26  request of defense counsel in another action (case number 05cv448 JLS (AJB)) to postpone the
   Markman hearings in these actions.  That action, wherein Anticancer was also the plaintiff, has since
27  been dismissed with prejudice by the parties' stipulation.  (Doc. No. 264 in 05cv448.)

28  [2] When the Court reset the hearing date on Merck's motion for summary judgment, the Court
   assigned the same hearing date to NIBRI's renewed motion to dismiss for lack of personal jurisdiction.
   (See Doc. No. 87.)  NIBRI subsequently withdrew its jurisdictional motion.  (Doc. No. 91.)

1  claims of the 523, 831, or 968 patents.  (Id.)

2       Carestream moved for summary judgment on April 3, 2008.  (Doc. No. 36.)  Anticancer

3  filed its opposition on April 25, 2008.  (Doc. No. 40.)  Carestream filed its reply on May 2, 2008.

4  (Doc. No. 43.)

5       On May 8, 2008, the Court heard oral argument on all three motions.  In response to the

6  Court's tentative, which expressed the Court's inclination to deny in part Carestream's motion for

7  failure to allege the absence of any claim limitations in Anticancer's PICs concerning paritcular

8  independent claims, Carestream obtained leave of the Court to file supplemental demonstrative

9  claim charts.  Carestream filed a supplemental brief, including demonstrative claim charts, on May

10 9, 2008.[3]  (Doc. No. 47.)

**LEGAL STANDARD**

12       Summary judgment is appropriate where "there is no genuine issue as to any material fact

13 and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);

14 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  To determine the existence of a genuine

15 question of material fact, the Court views the evidence and resolves doubt in favor of the non-

16 moving party.  Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001) (citing Chiuminatta

17 Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307 (Fed. Cir. 1998)).  In the

18 context of patent litigation, "[i]nfringement is assessed by comparing the accused device to the

19 claims; the accused device infringes if it incorporates every limitation, either literally or under the

20 doctrine of equivalents.  If, however, even one claim limitation is missing or not met, there is no

21 literal infringement."  MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1352 (Fed. Cir.

22 2005) (internal quotations and citations omitted); accord Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d

23 1562, 1565 (Fed. Cir. 1997).

24 //

25 //

26 _____

27 [3] Also presently before the Court are each moving defendant's evidentiary objections.  (See Doc. Nos. 109-1 (NIBRI) & 112 (Merck) in 07cv97; Doc. No. 45 (Carestream) in 07cv1004.)  In
28 deciding the present motions, the Court has only considered admissible evidence.  Where the Court cites to evidence in the record to which any defendant objects, the Court impliedly overrules that objection.

**DISCUSSION**

**A.    Merck's Motion**

Anticancer does not oppose the entry of summary judgment on the 523 and 968 patents. (See Memo. IOT Merck motion, at 4:19-21.)

As for the remaining patents-in-suit, Merck predicates its motion for summary judgment on one primary issue: whether the plaintiff can survive a defendant's motion for summary judgment when the plaintiff's preliminary infringement contentions do not mention the moving defendant. Pursuant to Patent Local Rule 3.1(a)-(c), the PICs "must contain" the following: "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party", each "Accused Instrumentality" (i.e., the accused processes or methods) "of each opposing party of which the party is aware", and "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." In the lower-numbered action, the PICs confine their allegations to CRI's Maestro machine. No reference to infringement by "Merck" appears in the PICs.[4] Because Anticancer has not identified any Merck product or process that infringes Anticancer's patents, Merck argues that Anticancer cannot prove Merck's infringement of any limitation, much less every limitation, of the asserted claims in Anticancer's patents. In other words, Anticancer has not shown that "every limitation" is found in Merck's "accused device" because, with respect to Merck, Anticancer has failed even to identify an "accused device". See Glaxo, 110 F.3d at 1565.

Summary judgment is appropriate against a party who bases its opposition on theories omitted from its infringement contentions. See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1368 (Fed. Cir. 2006) (entering summary judgment for defendant premised on affirmance of district court's denial of leave to amend contentions to add new theory of infringement); Lucent Techs., Inc. v. Gateway, Inc., 2007 WL 1877982, at *4 (S.D. Cal. June 27, 2007) (Brewster, J.) (granting summary judgment because plaintiff could not succeed on infringement theory that the plaintiff did not set forth in its infringement contentions); Berger v.

---

[4] The absence of substantive allegations concerning Merck continues a pattern that began in the operative complaint, wherein Anticancer identified no infringing device besides CRI's Maestro machine.

07cv97

1  Rossignol Ski Co., Inc., 2006 WL 1095914, at *6 (N.D. Cal. Apr. 25, 2006) (where plaintiffs

2  conceded at oral argument that they had offered an "absurd" original infringement contention and

3  court denied leave to amend, defendant's motion for summary judgment of non-infringement was

4  granted).  This line of precedent effectively forecloses Anticancer's attempts to proceed against

5  Merck in the lower-numbered action.  Here, Anticancer has not omitted a particular theory of

6  infringement, but has globally omitted a party from all its theories of infringement.

7       In its briefing, and at oral argument, Anticancer's counsel cited a statement from the

8  Court's prior Order denying Anticancer's motion to certify Magistrate Judge Brooks's Order for

9  interlocutory appeal to the Federal Circuit: "Here, denial of leave to amend [the PICs] does not

10 extinguish plaintiff's infringement claims on its own: defendant(s) must still prevail on summary

11 judgment."  (See Doc. No. 106, at 7:25-26.)  Anticancer construed this statement to mean that the

12 Court "has already ruled out Merck's theory of deliberate blinding" and would not grant summary

13 judgment without reviewing the evidence Anticancer submitted in its opposition to Merck's

14 motion.  (Memo. IOT Merck MSJ, at 16:6-12.)

15      Reviewed in context, the statement from the Court's prior Order does not carry the weight

16 that Anticancer would like, for the following reasons.  First, the statement appeared in the Court's

17 discussion of what standard the Court would apply if the Court construed Anticancer's motion for

18 certification of an interlocutory appeal as an objection to Magistrate Judge Brooks's Order.[5]  That

19 statement had no bearing on the Court's reasons for denying Anticancer's motion for certification

20 of an interlocutory appeal.  Indeed, in its application of the standard for certifying an interlocutory

21 appeal, the Court scrupulously declined to consider the merits of the summary judgment motions.

22 (See Doc. No. 106, at 6 n.6 ("To reiterate, nothing in the Court's analysis of the interlocutory

23 appeal should be construed as an indication of how the Court will rule on the pending motions for

24 summary judgment.").)  The denial of certification of an interlocutory appeal had the effect of

25 enforcing (at this stage of the litigation) Magistrate Judge Brooks's denial of leave to amend the

26

27      [5] Anticancer first invited the Court to construe Anticancer's motion for certification of an
   interlocutory appeal as an objection to Magistrate Judge Brooks's Order in its reply brief in support
28 of that certification motion.  This argument appeared in Anticancer's reply after Merck and NIBRI
   had argued in their respective oppositions that Anticancer waived its right to appeal the Magistrate
   Judge's Order by failing to object timely.

1   PICs.

2        Second, the Court's prior statement about the proper standard of review does not alter the

3   record currently before the Court on these summary judgment motions.  In determining whether

4   Magistrate Judge Brooks's Order denying leave to amend was dispositive, the Court began by

5   recognizing "[t]he typical rule . . . that motions to amend pleadings are non-dispositive pretrial

6   matters."[6] (Doc. No. 106, at 7:13-14.)  The Court made the statement relied on by Anticancer

7   while distinguishing out-of-circuit authorities that treated certain motions to amend as

8   "dispositive" (and thus subject to <u>de novo</u> district court review of the magistrate judge's order).

9   Upon closer review, those out-of-circuit authorities did not create a bright-line legal rule which

10  would require this Court to treat Magistrate Judge Brooks's Order as "dispositive" pursuant to

11  FRCP 72.  <u>See</u> <u>Lundy v. Adamar of N.J., Inc.</u>, 34 F.3d 1173, 1183 n.13 (3d Cir. 1994) (granting

12  leave to amend "was dispositive of [defendant's] statute of limitations defense and the district

13  court, accordingly, was free [not 'required' or 'obligated'] to rule <u>de novo</u> on the issue

14  presented"); <u>Elrod v. Swanson</u>, 478 F. Supp. 2d 1252, 1259 (D. Kan. 2007) ("[w]hen the

15  magistrate judge's order denying leave to amend . . . removes a defense or claim from the case, it

16  <u>may well be</u> a dispositive ruling") (emphasis added and internal quotation omitted).  Therefore,

17  even without the talismanic sentence, the Court's prior decision to apply a "clearly erroneous" or

18  "contrary to law" standard of review to Magistrate Judge Brooks's Order remains intact.  And,

19  applying that standard, the Court affirmed the Magistrate Judge's denial of leave to amend.

20  Because of that denial, Anticancer must proceed in this litigation with PICs that do not mention

21  Merck.

22        In such a posture, summary judgment for Merck is the result dictated by the precedent set

23  by <u>O2 Micro</u> and federal district courts within California.  Just as these cases granted summary

24  judgment because the non-moving party relied on theories absent from the infringement

25  contentions, this Court grants summary judgment to Merck because it is a party absent from

26  Anticancer's PICs.  The Court bases its grant of summary judgment on what is alleged (or, more

27

28        [6] The district court can reverse the magistrate judge's order on a non-dispositive matter only
   if the ruling "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).

1   specifically, what is <u>not</u> alleged) in the PICs.  The Court neither attempts to construe the language

2   of the allegedly infringed claims nor analyzes the evidence that Anticancer submitted in opposition

3   to this motion.  Consideration of that evidence would presuppose the Court's acceptance of

4   Anticancer's rejected amended contentions containing allegations of infringement as to Merck.

5   **B.      NIBRI's Motion**

6          As NIBRI is likewise omitted from Anticancer's PICs in the lower-numbered action, the

7   Court grants NIBRI's motion for summary judgment.  Because the Court's reasoning in granting

8   Merck's motion for summary judgment is equally applicable to NIBRI, the Court incorporates by

9   reference its analysis <u>supra</u>.

10  **C.      Carestream's Motion**

11         Anticancer does not oppose the entry of summary judgment on the 523, 968, or 831

12  patents, as Anticancer's PICs included no allegations concerning those patents.   (Memo. IOT

13  Carestream motion, at 2 n.1.)

14         With respect to the remaining patents-in-suit, Carestream argues that Anticancer's PICs in

15  the higher-numbered action are fatally defective because they do not allege the infringement of

16  specific claim limitations.  See <u>BMC Res., Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373, 1379 (Fed.

17  Cir. 2007) (citing <u>Joy Techs., Inc. v. Flakt, Inc.</u>, 6 F.3d 770, 773 (Fed. Cir. 1993)) ("[f]or process

18  patent or method patent claims, infringement occurs when a party performs all the steps of the

19  process").  Carestream focuses its arguments on inadequacies in the infringement allegations

20  concerning the independent claims of Anticancer's patents.  See <u>Monsanto Co. v. Syngenta Seeds,</u>

21  <u>Inc.</u>, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quoting <u>Wahpeton Canvas Co., Inc. v. Frontier, Inc.</u>,

22  870 F.2d 1546, 1552 (Fed. Cir. 1989)) (explaining that a defendant who does not infringe an

23  independent claim cannot possibly infringe an associated dependent claim).

24         Specifically, with respect to Claim 1 of each of the three remaining patents-in-suit,

25  Carestream identifies a limitation absent from Anticancer's PICs: in the 159 patent, "a method to

26  <u>monitor</u> the ability of a promoter to promote expression" (Carestream Memo. ISO Motion, at

27  10:14-15) (emphasis added); in the 038 patent, "a <u>control</u>, which contains a similar tumor that

28  expresses green fluorescent protein" (<u>id.</u> at 13:9-10) (emphasis added); and, in the 384 patent,

1   "administering said protocol or drug to a mammalian subject" (id. at 18:19-20) (emphasis added).

2   In opposition, Anticancer fails to make any particularized showing that the omitted claim

3   limitations actually appear in its PICs.  The Court has independently reviewed the PICs and found

4   no reference to these limitations.  (See Lawton Decla. ISO Motion, Exhibit 32.)

5          Because Anticancer does not allege infringement of all steps of its patented processes, the

6   Court grants Carestream's motion for summary judgment as to claim 1 of the 159, 038, and 384

7   patents, as well as all claims that are dependent on claim 1 in each patent.  To be precise, in the

8   159 patent, all the other claims allegedly infringed (i.e., claims 2-3, 5, 7-8) are dependent on claim

9   1; therefore, the entry of summary judgment as to claim1 effectively means that the 159 patent

10  drops out of the case.  No other allegedly infringed claims of the 384 patent are dependent on

11  claim 1.  Allegedly infringed claims 2-3 of the 038 patent are dependent on claim 1: therefore, the

12  Court enters summary judgment as to claims 2-3 of the 038 patent.

13         On the remaining independent claims (i.e., claims 4-5 of the 384 patent, and claims 5 and 9

14  of the 038 patent) and associated dependent claims (i.e., claims 6-7 and 11 of the 038 patent), the

15  Court denies summary judgment.  In its briefing and at oral argument, Carestream argued that

16  Anticancer's PICs are globally deficient because they do not allege that Carestream performed the

17  acts of infringement.  (See Carestream Memo. ISO Motion, at, e.g., 15:7-13.)  However, that

18  argument cannot prevail on summary judgment because of Anticancer's allegations and proof of

19  Carestream's indirect infringement.  Carestream concedes that Anticancer bases the PICs on an

20  image that appears in a Kodak brochure.  (Id. at 8:23-24, & Schuck Decla. ISO Motion, Exhibit A,

21  at A-27.)  Admittedly, that image is "courtesy of" people whom Carestream does not employ, but

22  that fact does not preclude Anticancer from prevailing on its claims of indirect infringement.  To

23  establish liability for indirect infringement, the patentee must show (1) direct infringement and (2)

24  knowing inducement of infringement by one with specific, affirmative intent to cause direct

25  infringement.  35 U.S.C. § 271(b) (2007); Symantec Corp. v. Computer Assocs. Int'l, Inc., — F.3d

26  —, 2008 WL 1012443, at *8 (Fed. Cir. Apr. 11, 2008).  Where a third party allegedly committed

27  the direct infringement, Anticancer's PICs did not have to allege that Carestream committed the

28  allegedly infringing acts because the second element of the indirect infringement test contemplates

1  "intent to encourage <u>another's</u> infringement."  <u>Minn. Mining & Mfg. Co. v. Chemque, Inc.</u>, 303

2  F.3d 1294, 1305 (Fed. Cir. 2002) (emphasis added).

3       The specific issues are whether Anticancer has created triable disputes of fact as to (1) a

4  third party's direct infringement and (2) Carestream's intent to cause that direct infringement.  To

5  simplify the analysis, the Court addresses the second issue first.  In order to show the necessary

6  intent, Anticancer must present "evidence of [Carestream's] culpable conduct, directed to

7  encouraging another's infringement[.]"  <u>DSU Med. Corp. v. JMS Co., Ltd.</u>, 471 F.3d 1293, 1306

8  (Fed. Cir. 2006) (en banc).  The Court finds sufficient evidence, viewed in the light most favorable

9  to non-movant Anticancer, of Carestream's intent in its production of a brochure with photographs

10  depicting others' infringing activity, when the same brochure page includes telephone numbers

11  and an Internet address where the reader can go "for additional information."  (Schuck Decla. ISO

12  Motion, Exhibit A, at A-27.)  Furthermore, Mr. William E. McLaughlin, Carestream's deponent,

13  testified that Carestream's user manuals "tell Carestream's customers how to use" Carestream's

14  technology "to image fluorophores [<u>i.e.</u>, fluorescent proteins] in lab animals in-vivo[.]"  (Lawton

15  Decla., Exhibit 26, at 68:23-25; <u>see</u> Exhibits 18 & 23 (Carestream user manuals).)  <u>See</u> <u>Cohesive</u>

16  <u>Techs., Inc. v. Waters Corp.</u>, 526 F. Supp. 2d 84, 111 (D. Mass. 2007) (citing <u>Snuba Int'l, Inc. v.</u>

17  <u>Dolphin World, Inc.</u>, 2000 WL 961363, at *7 (Fed. Cir. July 11, 2000)) (holding that promotional

18  material is sufficient evidence of induced infringement, especially when accompanied by

19  instruction on how to infringe the patent-in-suit); <u>Smith & Nephew, Inc. v. Synthes (U.S.A.)</u>, 466

20  F. Supp. 2d 978, 990 (W.D. Tenn. 2006) (prohibiting publication or distribution of product

21  manuals, promotional materials, etc. as part of injunction against induced infringement); <u>Third</u>

22  <u>Wave Techs., Inc. v. Stratagene Corp.</u>, 405 F. Supp. 2d 991, 1008-09 (W.D. Wis. 2005) (affirming

23  jury verdict of indirect infringement because user manuals introduced into evidence encouraged

24  infringing uses).

25       As for whether Anticancer has created a triable dispute as to a third party's direct

26  infringement, Carestream argues that Anticancer's PICs are inadequate.  At oral argument,

27  Carestream responded to the Court's tentative opinion that Carestream failed to identify specific

28  claim limitations absent from the PICs concerning independent claims other than claim 1 of each

- 10 -                                                    07cv97

1    of the three remaining patents-in-suit.  In particular, Carestream opined that the Court must have

2    relied on the demonstrative claim charts that Carestream submitted for claim 1 of the 159, 384, and

3    038 patents, respectively, in reaching the tentative.  Carestream requested leave to file similar

4    demonstrative charts for the other independent claims of these patents that Carestream allegedly

5    infringed.  The Court granted Carestream's request.

6         However, Carestream's supplemental filing exceeded the leave granted by the Court in two

7    ways.  First, the demonstrative charts in Carestream's supplemental filing do not look the same as

8    the demonstratives in Carestream's opening memorandum.  The original demonstratives contain

9    two columns: "Claim Language" and "AntiCancer's Infringement Contentions".   (Carestream

10   Memo. ISO Motion, at 9:16-17, 12:4-5, & 16:1-2.)  In its supplemental filing, however,

11   Carestream adds a third column: "Omissions in Contention."  (Carestream Post-Hearing

12   Submission, at 1:17-18, 3:20-21, & 5:21-22.)  This column identifies purported omissions from

13   Anticancer's PICs.  Second, Anticancer went beyond supplemental demonstratives and essentially

14   filed another brief expounding on omitted elements of the remaining independent claims from

15   Anticancer's PICs and repeating prior arguments concerning the purportedly speculative and

16   conclusory nature of the PICs.

17        In summary, Carestream's supplemental filing upgrades its demonstrative claim charts and

18   provides unsolicited argument tailored to the Court's tentative.  To put it colloquially, Carestream

19   is taking a second bite at the apple so that it can introduce new arguments.  The Court declines to

20   allow this, especially since the partial denial of Carestream's motion will be without prejudice.

21   Therefore, the Court will only consider the sections that it allowed Carestream to file, i.e., the

22   material under the columns "Claim Language" and "AntiCancer's Infringement Contentions" in

23   the supplemental demonstrative charts.

24        These supplemental demonstratives, however, are no more persuasive to the Court than the

25   demonstrative charts submitted with Carestream's original motion.  In preparing its tentative, the

26   Court actually relied on the written arguments in Carestream's motion concerning the absence of

27   specific limitations from Anticancer's PICs.  (See Carestream Memo. ISO Motion, at 10:9-18,

28   13:4-16, and 17:19-24.)  Those arguments are supported by the Court's independent review of the

1    PICs (see Lawton Decla. ISO Motion, Exhibit 32) and are not specifically refuted by Anticancer's

2    opposition memorandum.  In preparing its tentative, the Court did not rely on Carestream's

3    demonstrative claim charts.  Those demonstrative charts are not persuasive because they alter the

4    format and organization of Anticancer PICs.  Since the original demonstrative charts were not

5    persuasive, their counterparts in Carestream's supplemental filing are likewise unpersuasive.

6    Because the Court finds that the admissible portions of Carestream's supplemental filing provide

7    an insufficient basis to grant summary judgment, the Court will deny as moot Anticancer's ex

8    parte motion for leave to file a reply.  (See Doc. No. 114 in 07cv97; Doc. No. 48 in 07cv1004.)

9        Finally, the Court rejects Carestream's arguments that Anticancer's PICs are globally

10    speculative and conclusory and in violation of the Local Patent Rules.  Besides the requirement of

11    evidence sufficient to create a triable question of fact on infringement, the law does not require

12    that the PICs contain a particular level of detail or be worded in a particular way.  Furthermore, the

13    Court finds that Anticancer's charts provide adequate allegations showing "where each element of

14    each asserted claim is found within each Accused Instrumentality," Patent Local Rule 3.1(c), and

15    claiming literal infringement or infringement under the doctrine of equivalents, id. 3.1(d).

16    **D.**      **Anticancer's FRCP 56(f) Request**

17        Anticancer requests a denial or continuance of the pending motions pursuant to FRCP

18    56(f)[7] so that Anticancer can collect more evidence of infringement by, inter alia, deposing more

19    witnesses and having defendants produce more documents.  The Court rejects Anticancer's request

20    to deny or continue these motions for summary judgment because, in the words of FRCP 56(f),

21    nothing that Anticancer discovered would be "essential to justify its opposition".  Merck, NIBRI,

22    and Carestream (in part) are entitled to summary judgment because of fatal defects in Anticancer's

23    PICs.  In other words, Anticancer's infringement allegations failed to make out a prima facie case

24    of patent infringement because Anticancer omitted certain parties and/or specific claim limitations.

25    Additional evidence will not cure these allegations, which are legally insufficient regardless of the

26

27

28        [7] The text of Rule 56(f) states: "If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

       07cv97

1  amount of evidence that Anticancer might be able to muster in support of them.[8]

2  **E.      Claim Construction Schedule**

3      In a prior Order, the Court indicated that it would issue dates for the Markman hearing and

4  filing of claim construction briefs in its Order on Merck's motion for summary judgment.  Since

5  that time, however, NIBRI withdrew its jurisdictional motion and filed for summary judgment, and

6  Carestream likewise filed for summary judgment.  Furthermore, the Court's disposition of these

7  motions changes the landscape of this case: Merck and NIBRI are out of the case entirely;

8  Carestream is still in the case, but only with respect to certain independent claims in two patents;

9  and CRI remains a defendant with respect to all allegedly infringed claims in all patents cited in

10  the lower-numbered action.  Therefore, the Court will invite supplemental briefing from all parties

11  in both actions concerning an appropriate timeline for the claim construction phase of this case.

12                                   **CONCLUSION**

13      Because of Anticancer's failure to provide preliminary infringement contentions alleging

14  that Merck and NIBRI infringed any of the patents-in-suit, the Court **GRANTS** Merck's motion

15  for summary judgment and NIBRI's motion for summary judgment.

16      Because of Anticancer's failure to provide preliminary infringement contentions alleging

17  Carestream's infringement of any or all steps of Anticancer's patented processes, the Court

18  **GRANTS** Carestream's motion for summary judgment with respect to the 159, 523, 831, and 968

19  patents in their entirety.  Furthermore, the Court **GRANTS** Carestream's motion for summary

20  judgment with respect to claim 1 of the 038 and 384 patents, and all dependent claims associated

21  with claim 1 in each patents.  The Court **DENIES WITHOUT PREJUDICE** Carestream's

22  motion as to the other claims at issue in the 038 and 384 patents, i.e. claims 4-5 of the 384 patent,

23  and claims 5-7, 9, and 11 of the 038 patent.  Because the Court's grant of summary judgment to

24  Carestream is not based on the arguments submitted in Carestream's supplemental filing, the Court

25  **DENIES AS MOOT** Anticancer's ex parte motion to reply to Carestream's supplemental filing.

26  //

27

28      [8] With respect to the remaining claims at issue, the Court reminds the parties of their ability
to resolve discovery-related disputes before the magistrate judge in each respective action.

1    Within seven (7) calendar days of the date that this Order is electronically docketed, any

2  party in the lower- or higher-numbered action may file a supplemental brief (1) addressing

3  whether these actions should remain partially consolidated for purposes of claim construction and

4  (2) proposing a timeline for the claim construction briefs and the Markman hearing.  Upon the

5  receipt of any supplemental brief(s), the Court will then issue a Scheduling Order for the claim

6  construction phase of the litigation.

7        IT IS SO ORDERED.

8

9  DATED:  May 14, 2008

10                                                                    Janis L. Sammartino
                                                                   Honorable Janis L. Sammartino
11                                                                   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28