J. CHRISTOPHER JACZKO (149317)
ALLISON H. GODDARD (211098)
**JACZKO GODDARD LLP**
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 404-9205
Facsimile: (858) 225-3500

MARTIN B. PAVANE (admitted *pro hac vice*)
TEODOR J. HOLMBERG (admitted *pro hac vice*)
**COHEN PONTANI LIEBERMAN & PAVANE LLP**
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 687-2770
Facsimile: (212) 972-5487
E-mail: mpavane@cplplaw.com
E-Mail: tidge@cplplaw.com

Attorneys for Defendant and Counterclaimant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTICANCER, INC., a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware Corporation; MERCK & CO., INC., a New Jersey Corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH, INC., a Delaware Corporation; and DOES 17-50,<br><br>Defendants. | **Case No. 07 CV 00097-JLS-RBB**<br><br>**MEMORANDUM IN SUPPORT OF CRI'S MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY REGARDING INFRINGEMENT AND QUASHING IMPROPER DISCOVERY** |
| CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.,<br><br>Counterclaimant<br><br>v.<br><br>ANTICANCER, INC.,<br><br>Counterdefendant | Hearing Date: July 21, 2008<br>Time: 10:00 AM<br>Courtroom: B (1st Floor)<br>Judge: Hon. Ruben B. Brooks |

# TABLE OF CONTENTS


**I. INTRODUCTION ....... 1**

**II. STATEMENT OF FACTS ....... 2**

A. AntiCancer Sues CRI, Merck, NIBRI, and Carestream for Infringement Of The Same Five Patents in Two Separate Actions, Which Are Consolidated For Purposes of Claim Construction ....... 2

B. AntiCancer Serves Deficient Preliminary Infringement Contentions (PICs) ....... 2

C. This Court's May 14, 2008 Order Grants Summary Judgment of Non-Infringement to Merck, NIBRI, and Carestream Based on AntiCancer's Deficient PICs ....... 3

*1. Carestream Is Granted Summary Judgment On Those Claims For Which AntiCancer's Claim Chart Did Not "Allege The Infringement of Specific Claim Limitations" ....... 3*

*2. This Court Rules That Discovery Regarding Infringement Can Not Cure AntiCancer's Deficient PICs ....... 4*

*3. CRI's Impending Motions for Summary Judgment of Non-Infringement and Invalidity of the '384, '038, and '159 Patents ....... 4*

D. The Present Discovery Dispute ....... 5

*1. AntiCancer's First Discovery Request to CRI ....... 5*

*2. The May 30, 2008 Telephonic Hearing Concerning the Present Discovery Dispute ....... 6*

E. The Present Status of AntiCancer's Discovery Requests ....... 7

*1. The Deposition Topics in AntiCancer's 30(b)(6) Notice ....... 7*

*2. The Document Requests Accompanying AntiCancer's 30(b)(6) Notice ....... 8*

*3. AntiCancer's 1st Set of Requests for Production of Documents and Tangible Things ....... 10*

**III. DISCOVERY ON THE ISSUE OF INFRINGEMENT SHOULD BE STAYED UNTIL CRI'S IMPENDING MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT IS RULED UPON ....... 13**

A. The Two-Prong Analysis for Granting a Stay in Discovery Based on a Pending Dispositive Motion ....... 13

B. First Prong: CRI's Impending Motion for Summary Judgment of Non-Infringement Based on AntiCancer's Deficient PICs is Dispositive on the Issue of Infringement ....... 14

C. Second Prong: CRI's Impending Motion for Summary Judgment of Non-Infringement Based on AntiCancer's Deficient PICs Can, And Indeed Must, Be Decided Without Additional Discovery ....... 14

D. A "Preliminary Peek" at the Merits of CRI's Impending Motion for Summary Judgment of Non-Infringement and The Previous Rulings In This Case Show That A Positive Ruling Is More Than "Clearly Possible" ....... 15

E. The Balancing of Harms Weighs In Favor of A Stay ....... 16

F. This Court Should Stay All Discovery Regarding Infringement Until After This Court Rules on CRI's Impending Motion for Summary Judgment of Non-Infringement of the '384, '038, and '159 Patents ....................17

**IV. DOCUMENT REQUESTS 2, 5/7, AND 5/8 ACCOMPANYING ANTICANCER'S 30(B)(6) NOTICE AND ALL OF THE REQUESTS IN ANTICANCER'S 1ST SET OF REQUESTS FOR PRODUCTION SHOULD BE QUASHED ....................18**

A. Document Request 2 Accompanying AntiCancer's 30(b)(6) Notice, and Document Requests 1-6 in AntiCancer's 1st Set of Requests for Production....................18

B. Document Requests 5/7 and 5/8 Accompanying AntiCancer's 30(b)(6) Notice, and Document Requests 7-14 in AntiCancer's 1st Set of Requests for Production...........19

C. Objects for Inspection 1-2 in AntiCancer's 1st Set of Requests for Production................20

**V. CONCLUSION ....................20**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Church of Scientology of San Francisco v. IRS*, 991 F.2d 560 (9th Cir. 1993).................................. 13
*Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977) .................................. 13
*Feldman v. Flood*, 176 F.R.D. 651 (M.D. Fla. 1997) ................................................................ 13
*GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284 (S.D.Cal. 2000)............................. 14, 16, 17
*Monsanto Co. v. Syngenta Seeds, Inc*., 503 F.3d 1352 (Fed. Cir. 2007) .......................................... 16
*Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670 (S.D. Cal. 2001).................................. 13
*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.*, 220 F.R.D. 349 (N.D. Cal. 2003) ............................ 13
*Qwest Communs. Corp. v. Herakles, LLC*, 2007 U.S. Dist. LEXIS 57757 (E.D. Cal. Aug. 7, 2007). ........................................................................................................ 13, 14
*Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*, 2007 U.S. Dist. LEXIS 32068 (E.D. Cal. 2007). ........................................................................................................ 13, 14
*Wahpeton Canvas Co., Inc. v. Frontier, Inc*., 870 F.2d 1546 (Fed. Cir. 1989) ................................. 16

## FEDERAL RULES

Fed. R. Civ. P. 26(c)(4)........................................................................................................ 13

## LOCAL RULES

Civil Local Rule 26.1(a) ........................................................................................................ 1
Civil Local Rule 7.1(f)(1) ........................................................................................................ 1
Patent Local Rule 3.1 ............................................................................................................ 2

Pursuant to CivLR 7.1(f)(1), defendant and counterclaimant Cambridge Research & Instrumentation, Inc. ("CRI") hereby files this Memorandum of Points and Authorities in support of CRI's motion for a protective order and stay of discovery on the issue of infringement.

Pursuant to CivLR 26.1(a), CRI certifies that counsel have met and conferred concerning all disputed issues, as explained in the Statement of Facts below.

## I. INTRODUCTION

The primary reason for this motion is Judge Sammartino's May 14, 2008 that AntiCancer could not use any evidence of infringement to oppose a summary judgment of non-infringement based on deficiencies in AntiCancer's preliminary infringement contentions. Immediately following that ruling, CRI informed AntiCancer that CRI would hold discovery in abeyance, pending this Court's ruling on CRI's impending motion for summary judgment of non-infringement. Before CRI could discuss the matter at a scheduled meet and confer discovery teleconference, and thus before CRI had a chance to move for a protective order, AntiCancer unilaterally approached the Court and established a briefing and hearing schedule concerning the dispute.

At the subsequent hearing/teleconference on May 30, 2008, this Court noted the vague and overbroad nature of the document requests accompanying AntiCancer's notice of 30(b)(6) deposition, and ordered AntiCancer and CRI to meet and confer to address those issues. The parties met and conferred on June 5 and 6, 2008, and resolved most, but not all, of those issues.

CRI's response to AntiCancer's first set of requests for production (served on May 20, 2008) are not due until next Monday, June 23, 2008. CRI informed AntiCancer that AntiCancer's first set of requests for production share the same problems of vagueness and overbreadth as the document requests accompanying AntiCancer's 30(b)(6) notice, and asked AntiCancer if it intended to fix those problems, in which event CRI would not raise those problems in this motion. Because AntiCancer did not respond to CRI's query, CRI is also moving in the present motion for a protective order based on the vagueness and overbreadth of AntiCancer's pending first set of requests for production — the unresolved issues of vagueness and overbreadth in AntiCancer's document requests are the secondary reason for this motion.

///

## II. STATEMENT OF FACTS

### A. AntiCancer Sues CRI, Merck, NIBRI, and Carestream for Infringement Of The Same Five Patents in Two Separate Actions, Which Are Consolidated For Purposes of Claim Construction

On January 12, 2007, AntiCancer initiated this action by filing a complaint solely against CRI for alleged infringement of AntiCancer's U.S. Patent Nos. 6,232,523 ("the '523 patent"), 6,759,038 ("the 038 patent"), 6,235,968 ("the '968 patent"), 6,251,384 ("the '384 patent"), and 6,649,159 ("the '159 patent"). *See* Cmplt. [D.E. 1]. AntiCancer subsequently amended the complaint twice, first adding sixteen other defendants, then removing fourteen of those defendants, finally leaving only CRI, Novartis Institutes For Biomedical Research, Inc. ("NIBRI") and Merck & Co. ("Merck") as defendants. *See* 1st Amd. Cmplt. [D.E. 3]; 2nd Amd. Cmplt. [D.E. 25-2]. The current operative complaint in this action alleges infringement by, "inter alia, CRI's Maestro *In Vivo* Imaging System [hereinafter, the "MAESTRO"]". *See* 2nd Amd. Cmplt. [D.E. 25-2], *e.g.*, ¶13.

On June 1, 2007, AntiCancer initiated another action by filing a complaint against Carestream Health, Inc. ("Carestream")[1] for alleged infringement of the same five patents in the present action, plus AntiCancer's U.S. Patent No. 6,905,831 ("the '831 patent"). *See* Cmplt. [D.E. 1] in S.D.Cal. Case No. 07cv1004. The two actions were subsequently consolidated for purposes of claim construction of the five common patents-in-suit. *See* Order [D.E. 60] (in this action).

### B. AntiCancer Serves Deficient Preliminary Infringement Contentions (PICs)

Both Patent Local Rule 3.1 and paragraph 2 of Judge Brooks October 3, 2007 Case Management Order required AntiCancer to serve, on each defendant, a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" (hereinafter, "PICs") which "must contain", *inter alia*, "[a] chart identifying specifically where each element of each asserted claim is found in each Accused Instrumentality". *See* PatLR 3.1(c); and CMC Order [D.E. 49], ¶2(c).

On October 17, 2007, two days after it was due, AntiCancer served its PICs, which had many deficiencies, including, *inter alia*, that the claim chart did not show where each element of each

[1] In early 2007, the original defendant, Eastman Kodak, Inc., sold the relevant portion of its business, which was reorganized as Carestream Health, Inc., and then substituted for Kodak in that action. *See* Order [D.E. 15] in 07cv1004.

asserted claim could be found in CRI's activities, materials, or products. *See, e.g.*, § III(B) below. CRI pointed out these deficiencies at the time, including the fact that "AntiCancer never attempts to make an element-by-element analysis" in its claim chart against CRI. *See* p. 3 of CRI's Nov. 1, 2007 Letter, Ex. 3 to CRI's Opp. [D.E. 74] to AntiCancer's Mot./Amd. PICs [D.E. 65]. When AntiCancer moved to amend its deficient PICs, its proposed amended PICs against CRI still did not show each element of each asserted claim. *See* AntiCancer's Prop. Amd. PICs, Ex. B to AntiCancer's Mot./Amd. PICs [D.E. 65]. AntiCancer's motion to amend its PICs was ultimately denied [D.E. 77].

Merck filed a motion [D.E. 62] for summary judgment of non-infringement based on Merck's complete absence from AntiCancer's PICs, and, after the denial of AntiCancer's motion to amend, NIBRI filed a motion [D.E. 95] for summary judgment of non-infringement on March 14, 2008 on the same basis as Merck.

On April 3, 2008, Carestream moved for summary judgment of non-infringement based on the deficiencies of AntiCancer's PICs in the partially consolidated action, including, *inter alia*, the omission of specific claim limitations in its claim chart against Carestream. *See* Carestream's S.J./Non-Infringement [D.E. 36] in S.D.Cal. Case No. 07cv1004, pp. 8-19.

### C. This Court's May 14, 2008 Order Grants Summary Judgment of Non-Infringement to Merck, NIBRI, and Carestream Based on AntiCancer's Deficient PICs

On May 14, 2008, Judge Sammartino issued her ruling [D.E. 115] on all three motions for summary judgment. Judge Sammartino granted summary judgment of non-infringement to Merck and NIBRI based on their complete absence from AntiCancer's PICs. *See* Order [D.E. 115], pp. 5-8.

#### *1. Carestream Is Granted Summary Judgment On Those Claims For Which AntiCancer's Claim Chart Did Not "Allege The Infringement of Specific Claim Limitations"*

Judge Sammartino granted summary judgment of non-infringement to Carestream on those claims for which the claim chart in AntiCancer's PICs against Carestream did "not allege the infringement of specific claim limitations". *See* Order [D.E. 115], p. 8, lines 14-16. Because the Court found claim limitations missing for some, but not all, of the independent claims in

AntiCancer's claim chart against Carestream, the Court only granted partial summary judgment. *See* Order [D.E. 115], pp. 9-10.

*2. This Court Rules That Discovery Regarding Infringement Can Not Cure AntiCancer's Deficient PICs*

In response to AntiCancer's Rule 56(f) request for further discovery, Judge Sammartino ruled:

> Anticancer requests a denial or continuance of the pending motions pursuant to FRCP 56(f) so that Anticancer can collect more evidence of infringement by, inter alia, deposing more witnesses and having defendants produce more documents. The Court rejects Anticancer's request to deny or continue these motions for summary judgment because, in the words of FRCP 56(f), nothing that Anticancer discovered would be "essential to justify its opposition". Merck, NIBRI, and Carestream (in part) are entitled to summary judgment because of fatal defects in Anticancer's PICs. In other words, Anticancer's infringement allegations failed to make out a prima facie case of patent infringement because Anticancer omitted certain parties and/or specific claim limitations. Additional evidence will not cure these allegations, which are legally insufficient regardless of the amount of evidence that Anticancer might be able to muster in support of them.

Order [D.E. 115], p. 12, line 17, to p. 13, line 1 (footnotes omitted)

*3. CRI's Impending Motions for Summary Judgment of Non-Infringement and Invalidity of the '384, '038, and '159 Patents*

Judge Sammartino's May 14, 2008 ruling on Merck's, NIBRI's, and Carestream's summary judgment motions invited the parties to file supplemental briefs regarding "an appropriate timeline for the claim construction phase of this case". *See* Order [D.E. 115], p. 13, line 11.[2]

In CRI's supplemental brief filed on May 21, 2008, CRI stated that it would (a) move for summary judgment of non-infringement of the '523 and '968 patents-in-suit based on the fatal deficiencies of AntiCancer's PICs against CRI[3] and move for summary judgment of invalidity of the '384, '038, and '159 patents-in-suit based on AntiCancer's own prior art references[4] (CRI's Supp. Brief [D.E. 119], pp. 2-3); and (b) defer moving for summary judgment of non-infringement of the

---

[2] Judge Sammartino had previously vacated the March-April 2008 claim construction briefing and hearing schedule set by CMC Order [D.E. 49], and indicated that a new claim construction schedule would be set after ruling on, *inter alia*, Merck's motion for summary judgment (*See* Order [D.E. 89], p. 3).

[3] This motion was filed on June 9, 2008 at [D.E. 126].

[4] These motion(s) will be filed by June 30th.

'384, '038, and '159 patents-in-suit based on deficiencies in AntiCancer's PICs against CRI, because of CRI's concerns that "if CRI first obtains a judgment of non-infringement of the '384, '038, and '159 patents, the Court may prevent CRI from pursuing a judgment of invalidity of the '384, '038, and '159 patents" (*id.*, p. 3, lines 15-18).[5] To minimize that risk, CRI will move for summary judgment of non-infringement of the '384, '038, and '159 patents-in-suit based on AntiCancer's deficient PICs after CRI moves this month for summary judgment of invalidity of the '384, '038, and '159 patents-in-suit.[6] CRI expects to move for summary judgment of non-infringement of the '384, '038, and '159 patents-in-suit before the scheduled hearing date for the prsent motion, July 21, 2008.

**D. The Present Discovery Dispute**

*1. AntiCancer's First Discovery Request to CRI*

On April 9, 2008, AntiCancer served its first discovery request on CRI, a notice of Rule 30(b)(6) deposition of CRI, with five accompanying requests for documents. *See* AntiCancer's Notice of 30(b)(6) Deposition of CRI ("30(b)(6) Notice"), **Exhibit 1** hereto. On April 25, 2008, CRI informed AntiCancer that the document requests were "overly broad (*e.g.*, 'All Documents concerning Maestro')" and that it was likely none of the designated 30(b)(6) witnesses would be available on the noticed date of May 15, 2008 — which CRI confirmed on May 7, 2008. *See* CRI's

---

[5] CRI also asked for an indication from the Court whether it would indeed prevent CRI's pursuit of its invalidity counterclaims based on a ruling of non-infringement. CRI's Supp. Brief [D.E. 119], p. 3, n. 2 ("If it were clarified that a judgment of non-infringement would have no effect on CRI's ability to pursue its counterclaims of invalidity, CRI would not defer, but instead presently move for, summary judgment of non-infringement of the '384, '038, and '159 patents, thereby eliminating and narrowing the issues as this action goes forward.").

[6] A judgment of non-infringement does not, as matter of law, prevent CRI from pursuing its counterclaims of invalidity. *See*, *e.g.*, *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed.Cir.2005) (holding that district court erred in determining that jury verdict of non-infringement divested district court of jurisdiction to hear unenforceability counterclaim). Moreover, AntiCancer's past and present behavior, and the threat of litigation against CRI's customers, show that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" on CRI's invalidity counterclaims. *MedImmune Inc. v. Genentech, Inc.*,127 S.Ct. 764, 771 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). It is appropriate for the Court to consider validity, even after a ruling of non-infringement. *See*, *e.g.*, *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945) ("There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. … It has come to be recognized, however, that of the two questions, validity has the greater public importance, … and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent.'"); *see also Nestier Corp. v. Menasha Corp.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984), *cert. denied*, 105 S.Ct. 1756 (1985) (both validity and infringement issues should be treated together, given the public interest in the validity issue).

Correspondence concerning AntiCancer's 30(b)(6) Notice ("CRI's Corresp. re 30(b)(6)"), **Exhibit 2** hereto. On May 12, 2008, CRI requested a one-week extension (*i.e.*, from May 12, 2008, to May 19, 2008) for CRI's written response to the document requests accompanying AntiCancer's 30(b)(6) Notice. *See* CRI's Corresp. re 30(b)(6), **Ex. 2**.

On Monday, May 19, 2008, CRI served its written response to AntiCancer's 30(b)(6) Notice, and informed AntiCancer that it was "holding all further discovery in abeyance", based on the Court's May 14, 2008 ruling that, *inter alia*, "[a]dditional evidence will not cure [AntiCancer's] allegations [of infringement], *which are legally insufficient regardless of the amount of evidence that Anticancer might be able to muster in support of them*" (Order [D.E. 115], p. 12, line 25, to p. 13, line 1 (emphasis added)). *See* CRI's Objections and Responses ("CRI's Writ. Objs."), **Exhibit 3** hereto; and E-mail correspondence between AntiCancer and CRI regarding discovery ("E-mail re discovery"), **Exhibit 4** hereto. Later that same evening, AntiCancer stated that CRI's discovery hold was "unacceptable" and demanded that CRI attend a discovery teleconference within 48 hours (*i.e.*, on Tuesday or Wednesday). *See* E-mail re discovery, **Ex. 4**.

The next day, Tuesday, May 20, 2008, CRI responded that it was not available on Tuesday or Wednesday, but it was available at 1 PM on Thursday, May 22nd. *See* E-mail re discovery, **Ex. 4**. That afternoon, AntiCancer announced that it was "not willing to wait until then" and that AntiCancer would "call the Magistrate Judge's chambers today". *Id.* Despite CRI's protests that such a call was premature, as the parties had not yet "met and conferred concerning all disputed issues", AntiCancer called this Court *ex parte* and set up a briefing schedule and a teleconference hearing date/time. *Id.* On Wednesday, May 21, 2008, this Court issued an ECF Minute Order [D.E. 116], setting a briefing and hearing schedule for the discovery dispute, pursuant to which AntiCancer submitted a letter/brief [D.E. 122] regarding the discovery dispute on May 23, 2008, and CRI submitted a letter/brief [D.E. 121] on May 28, 2008.

### 2. *The May 30, 2008 Telephonic Hearing Concerning the Present Discovery Dispute*

At the May 30, 2008 telephonic hearing, the Court indicated that, even if it wanted to compel CRI to respond to AntiCancer's discovery requests, the Court would not compel CRI to comply with

AntiCancer's discovery requests as written, because they were vague and overbroad. The Court indicated that the hearing/teleconference would not be the forum for arguing the merits of the discovery dispute, and that AntiCancer and CRI should first meet and confer in order to narrow down and otherwise fix AntiCancer's discovery requests, and then, if there are still disputes remaining, CRI should file a motion for a protective order by June 16, 2008. *See, e.g.*, Minute Order [D.E. 120].

### E. The Present Status of AntiCancer's Discovery Requests

Pursuant to this Court's Order [D.E. 120], CRI and AntiCancer had two meet and confer teleconferences to, *inter alia*, correct the vague and overbroad wording of AntiCancer's 30(b)(6) Notice and accompanying document requests. The details of those conferences are evidenced by CRI's e-mail correspondence ("CRI's discovery e-mail"), attached as **Exhibits 5** and **6** hereto. A summary of the results concerning each of AntiCancer's discovery requests follows:

#### *1. The Deposition Topics in AntiCancer's 30(b)(6) Notice*

As shown in the summary table below,[7] CRI is producing a designated witness for five of the twelve deposition topics; AntiCancer withdrew one deposition topic; AntiCancer and CRI resolved the issues regarding one deposition topic; and CRI is presently seeking a protective order on the remaining five deposition topics because they relate only to infringement. *See*, *e.g.*, AntiCancer's 30(b)(6) Notice, **Ex. 1**; and CRI's discovery e-mail, **Exs. 5-6**.

**<u>Table 1: 30(b)(6) Deposition Topics</u>**

| No. | 30(b)(6) Deposition Topic | Status |
|---|---|---|
| **1** | CRI's Corp./Org. Structure | CRI will produce a witness |
| **2** | CRI's Computer Systems | CRI will produce a witness |
| **3** | CRI's Storage | CRI will produce a witness |
| **4** | CRI's Mgmt./Procedures for Monitoring Technology | CRI is presently seeking a ***stay*** as this topic is only relevant to infringement |
| **5** | CRI's Monitoring of CRI's Competitors | CRI is presently seeking a ***stay*** as this topic is only relevant to infringement |

[7] CRI forwarded earlier drafts of Tables 1 and 2 to AntiCancer last Wednesday, July 11, 2008, for comment and correction. *See*, *e.g.*, CRI's June 11, 2008 e-mail with attached draft tables, **Ex. 6**.

| No. | 30(b)(6) Deposition Topic | Status |
|---|---|---|
| **6** | CRI's Mgmt./Procedures for Presentations, Publications, & Website | CRI is presently seeking a ***stay*** as this topic is only relevant to infringement |
| **7** | CRI's Answer/Counterclaims | CRI will produce a witness |
| **8** | CRI's Rule 26(a)(1) Initial Disclosures | CRI will produce a witness |
| **9** | *Documents CRI Has Already Produced* | *AntiCancer withdrew this topic* |
| **10** | Defendants' Joint Prelim. Invalidity Contentions | The parties resolved the issues regarding this topic, *i.e.*, any expert used will be subject to deposition |
| **11** | CRI's Products/Services | CRI is presently seeking a ***stay*** as this topic is only relevant to infringement |
| **12** | CRI's Use of Fluorescing Proteins | CRI is presently seeking a ***stay*** as this topic is only relevant to infringement |

*2. The Document Requests Accompanying AntiCancer's 30(b)(6) Notice*

There were five document requests accompanying AntiCancer's 30(b)(6) Notice, but request 5 was for "ALL DOCUMENTS CONCERNING the 'Deposition Topics'", and thus included each of the twelve deposition topics listed above. The phrase "request 5/n", where "n" is a number from 1 to 12, will be used herein to indicate document request 5, insofar as it relates to deposition topic "n".

As shown in the summary table below, AntiCancer (a) agreed to the corrected wording proposed in CRI's May 19, 2008 written objections for document requests 3, 4, 5/1, 5/2, 5/4, 5/5, 5/6, 5/11, and 5/12 (with a slight change in wording suggested by CRI during the discovery teleconferences); (b) agreed to the corrected wording for document requests 1 and 5/3 as suggested by CRI during the discovery teleconferences; (c) withdrew request 5/9; and (d) resolved with CRI the issues regarding request 5/10. *See*, *e.g.*, AntiCancer's 30(b)(6) Notice, **Ex. 1**; CRI's Writ. Objs., **Ex. 3**; and CRI's discovery e-mail, **Exs. 5-6**. CRI is presently seeking a protective order to quash remaining unresolved document requests 2, 5/7, and 5/8 because they are vague, overbroad, and unduly burdensome.

CRI is producing materials responsive to corrected requests 5/1, 5/2, and 5/3, and is presently moving for a stay regarding corrected requests 1-4, 5/4-5/6, and 5/11-5/12, because these requests are relevant only to infringement.

///

///

**Table 2: Requests Accompanying 30(b)(6) Notice**

| No. | Document Request accompanying the 30(b)(6) Notice | Outcome of the Meet and Confer | Status |
|---|---|---|---|
| **1** | MAESTRO | Corrected, per CRI's suggestion[8] | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |
| **2** | GFP and/or any fluorescing proteins | ***CRI has suggested correction[9]; no response from AntiCancer*** | CRI is presently seeking to ***quash*** this request because it's vague, overbroad, and overly burdensome; CRI is also seeking a ***stay***, as it seems to be relevant only to infringement |
| **3** | Sales of MAESTRO | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 12, l. 27 – p. 13, l. 4. | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |
| **4** | Customers of MAESTRO | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 14, l. 27 – p. 15, l. 4. | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |
| **5/1** | CRI's Corp./Org. Structure | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 17, l. 12-18. | CRI is producing materials pursuant to the corrected scope of production |
| **5/2** | CRI's Computer Systems | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 19, l. 4-10. | CRI is producing materials pursuant to the corrected scope of production |
| **5/3** | CRI's Storage | Corrected, per CRI's Suggestion[10] | CRI is producing materials pursuant to the corrected scope of production |
| **5/4** | CRI's Mgmt./Procedures for Monitoring Technology | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p.22, l. 3-8. | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |
| **5/5** | CRI's Monitoring of CRI's Competitors | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 24, l. 1-6. | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |
| **5/6** | CRI's Mgmt./Procedures for Presentations, Publications, & Website | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 26, l. 4-9. | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |

---

[8] Replacing "ALL DOCUMENTS concerning MAESTRO" with "drawings sufficient to show the operation of the MAESTRO" and "at least one copy of each brochure of the MAESTRO", subject to all of the objections and conditions made for the other requests in CRI's written objections. *See* Declaration of Teodor J. Holmberg ("Holmberg Dec.") attached hereto, ¶8.

[9] On June 10, 2008, CRI proposed the wording of a revised request. *See* CRI's discovery e-mail, **Ex. 6**, p. 2, CRI's June 10th e-mail.

[10] Replacing the preface "ALL DOCUMENTS concerning … " with "materials sufficient to show … ", subject to all of the objections and conditions made for the other requests in CRI's written objections (*e.g.*, "to the extent any such materials exists, and are reasonably accessible" and "[t]o the extent any such materials do not exist, CRI expects CRI's designated 30(b)(6) witness will be able to provide information …"). *See* Holmberg Dec., ¶9.

| No. | Document Request accompanying the 30(b)(6) Notice | Outcome of the Meet and Confer | Status |
|---|---|---|---|
| **5/7** | CRI's Answer/Counterclaims | ***Uncorrected*** | CRI is producing witness on this topic, but the topic as document request is vague, overbroad, and overly burdensome; CRI is presently seeking to ***quash*** on that basis |
| **5/8** | CRI's Rule 26(a)(1) Initial Disclosures | ***Uncorrected*** | CRI is producing witness on this topic, but this topic as document request is vague, overbroad, and overly burdensome; CRI is presently seeking to ***quash*** on that basis |
| **5/9** | *Documents CRI Has Produced* | *Withdrawn* | *AntiCancer withdrew this request/topic* |
| **5/10** | Defendants' Joint Prelim. Invalidity Contentions | *Resolved* | The parties agreed any relevant non-privileged materials will be produced, pursuant to the Fed'l and Local Rules |
| **5/11** | CRI's Products/Services | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 33, l. 3-19. | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |
| **5/12** | CRI's Use of GFP and/or Fluorescing Proteins | Corrected, per CRI's Writ. Objs. (**Ex. 3**), p. 34, l. 18-24; and CRI's suggestion to change "Green Fluorescent Protein or 'GFP'" on p. 34, l. 19-20, to "fluorescing protein". | CRI is presently seeking a ***stay*** on the corrected scope of production, as it is only relevant to infringement |

*3. AntiCancer's 1st Set of Requests for Production of Documents and Tangible Things*

AntiCancer served its first set of requests for production on May 20, 2008, and CRI's response thereto is not due until June 23, 2008. *See* AntiCancer's 1st Set Reqs./Prod., **Exhibit 7** hereto. CRI's May 28, 2008 letter/brief informed AntiCancer that "[s]ome document requests are so vague and broad as to be meaningless—*e.g.*, 'ALL DOCUMENTS CONCERNING DRAWINGS' and 'ALL DOCUMENTS CONCERNING PHOTOGRAPHS'" while "[o]ther requests are vague, broad, and clearly seek privileged/protected material—*e.g.*, 'ALL DOCUMENTS CONCERNING YOUR first affirmative defense contained in YOUR ANSWER'". *See* CRI's Ltr/Brf [D.E. 121], p. 3, n. 3.

///

On June 10, 2008, CRI informed AntiCancer that "[s]ince Judge Brooks has already set the briefing schedule, and it is exactly the same issue, CRI's motion for a protective order on Monday will also address, *inter alia*, the vague overbreadth of document requests #1-14 in AntiCancer's pending first set of document requests, as well as the undue burden of bringing a MAESTRO to San Diego for AntiCancer's inspection on June 24th (especially when anything derived therefrom would be irrelevant)." *See* CRI's discovery e-mail, **Ex. 6**, p. 3, CRI's June 10th e-mail. On June 11, 2008, CRI advised AntiCancer that "if you intend to fix/amend the problems of vague overbreadth and impropriety, please inform us by Friday so those grounds will not be included in CRI's motion for a protective order on Monday." *See* CRI's discovery e-mail, **Ex. 6**, p. 1, CRI's June 11th e-mail. Despite AntiCancer's indication that it would respond, it did not do so. *See* AntiCancer's June 11th e-mail, **Exhibit 8** hereto ("I will read your material and respond"). Accordingly, CRI presently seeks a protective order in regards to AntiCancer's document requests 1-14 and inspection requests 1-2 in AntiCancer's 1st set of requests for production as summarized in the tables below.

**Table 3A: AntiCancer's 1st Set of Requests for Production - Documents**

| No. | Document Requests in 1st Set of Requests for Production | Status |
|---|---|---|
| **1** | "ALL DOCUMENTS CONCERNING SALES" | CRI is presently seeking to ***quash*** this request because it's vague, overbroad, and overly burdensome; CRI is also seeking a ***stay***, as it seems to be relevant only to infringement |
| **2** | "ALL DOCUMENTS CONCERNING DRAWINGS" | " |
| **3** | "ALL DOCUMENTS CONCERNING GFP-based imaging of tumor cells in live laboratory animals." | " |
| **4** | "ALL DOCUMENTS CONCERNING USER MANUALS" | " |
| **5** | "ALL DOCUMENTS CONCERNING PHOTOGRAPHS" | " |
| **6** | "ALL DOCUMENTS CONCERNING use of MAESTRO for EXPERIMENTAL OR NONPROFIT PURPOSE" | " |
| **7** | "ALL DOCUMENTS CONCERNING [CRI's] first affirmative defense contained in [CRI's] ANSWER." | CRI is presently seeking to ***quash*** this request because it's vague, overbroad, and overly burdensome; CRI is also seeking a ***stay***, as it is relevant only to infringement |

| No. | Document Requests in 1st Set of Requests for Production | Status |
|---|---|---|
| **8** | "ALL DOCUMENTS CONCERNING [CRI's] second affirmative defense contained in [CRI's] ANSWER." | CRI is presently seeking to ***quash*** this request because it's vague, overbroad, and overly burdensome |
| **9** | "ALL DOCUMENTS CONCERNING [CRI's] third affirmative defense contained in [CRI's] ANSWER." | " |
| **10** | "ALL DOCUMENTS CONCERNING [CRI's] fourth affirmative defense contained in [CRI's] ANSWER." | " |
| **11** | "ALL DOCUMENTS CONCERNING [CRI's] fifth affirmative defense contained in [CRI's] ANSWER." | " |
| **12** | "ALL DOCUMENTS CONCERNING [CRI's] sixth affirmative defense contained in [CRI's] ANSWER." | " |
| **13** | "ALL DOCUMENTS CONCERNING [CRI's] seventh affirmative defense contained in [CRI's] ANSWER." | " |
| **14** | "ALL DOCUMENTS CONCERNING [CRI's] eighth affirmative defense contained in [CRI's] ANSWER." | " |

**<u>Table 3B: AntiCancer's 1st Set of Requests for Production - Inspection</u>**

| No. | Objects To Be Inspected in 1st Set of Requests for Production | Status |
|---|---|---|
| **1** | "CRI must produce and permit plaintiff to inspect and to copy, attest, and sample each of the following objects: MAESTRO." | CRI is presently seeking to ***quash*** this request because it's overly burdensome and unnecessary; CRI is also seeking a ***stay***, as it seems to be relevant only to infringement |
| **2** | "CRI must produce MAESTRO and permit its inspection on June 24, 2008, at 9:30 a.m., at the offices of AntiCancer's counsel at Emerald Plaza, 402 West Broadway, Suite 1860, San Diego, California 92101." | " |

///

///

///

///

## III. DISCOVERY ON THE ISSUE OF INFRINGEMENT SHOULD BE STAYED UNTIL CRI'S IMPENDING MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT IS RULED UPON

### A. The Two-Prong Analysis for Granting a Stay in Discovery Based on a Pending Dispositive Motion

District courts have broad discretion to stay discovery in a case while a dispositive motion is pending. *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977)). The Court may limit discovery so "that certain matters [may] not be inquired into, or that the scope of disclosure or discovery be limited to certain matters" upon a showing of good cause or where ". . . justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed. R. Civ. P. 26(c)(4).

> In deciding whether to grant a protective order staying discovery before other pending motions can be heard, the Court must apply a two-prong analysis:
>
> > 1) The pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed.
> >
> > 2) The Court must determine whether the pending dispositive motion can be decided absent additional discovery.
>
> *See Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.*, 220 F.R.D. 349, 352 (N.D. Cal. 2003) (citing *Church of Scientology of San Francisco v. IRS*, 991 F.2d 560, 563 (9th Cir. 1993).
>
> If the Court answers these two questions in the affirmative, a protective order may issue. However, before issuing a protective order, the Court must first "peek" at the merits of the pending dispositive motion in order to assess the validity of the stay of discovery motion. *Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*, 2007 U.S. Dist. LEXIS 32068 at *5-6 (E.D. Cal. 2007).

*Qwest Communs. Corp. v. Herakles, LLC*, 2007 U.S. Dist. LEXIS 57757, at *5-6 (E.D. Cal. Aug. 7, 2007).

The standard for the "preliminary peek" at the merits of the pending motion is whether there is an "immediate and clear possibility" that it will be granted. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (the Court should ". . . take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an *immediate and clear possibility* that it will be granted") (emphasis added). This Court has interpreted this standard to mean a positive

outcome on the pending dispositive motion is "clearly possible" — a threshold which is beneath the more-likely-than-not standard, as it can be met when the "Defendant's motion is nearly below but does not necessarily exceed a 'fifty percent chance' of success'". *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 287 (S.D.Cal. 2000).

If, based on the "preliminary peek at the merits", a grant of the pending dispositive motion is "clearly possible", the Court should "properly exercise its discretion to block discovery and prevent the wasting of resources and time". *Qwest Communs. Corp.*, 2007 U.S. Dist. LEXIS at *8 (citing *Seven Springs L.P.*, 2007 U.S. Dist. LEXIS at *5-6 (E.D. Cal. 2007)).

### B. First Prong: CRI's Impending Motion for Summary Judgment of Non-Infringement Based on AntiCancer's Deficient PICs is Dispositive on the Issue of Infringement

There are several motions pending that will dispose of the issue of infringement/non-infringement in regards to two of the five patents-in-suit—the '523 and '968 patents—regardless of who wins those motions. *See* CRI's S.J./Non-Infringement [D.E. 126] and CRI's Mot./Strike [D.E. 127] AntiCancer's Dismissal [D.E. 123]. And CRI's impending motion for summary judgment of non-infringement of the '384, '038, and '159 patents-in-suit will dispose of the issue of infringement/non-infringement in regards to the remaining three patents-in-suit—resulting in the complete elimination of the issue of infringement/non-infringement from this case.

### C. Second Prong: CRI's Impending Motion for Summary Judgment of Non-Infringement Based on AntiCancer's Deficient PICs Can, And Indeed Must, Be Decided Without Additional Discovery

As noted above, this Court forbade AntiCancer from using any additional evidence in opposing Merck's, NIBRI's, and Carestream's motions for summary judgment of non-infringement. CRI's impending motion for summary judgment of non-infringement is likewise based entirely on the "fatal defects in Anticancer's PICs", which cannot be cured by any additional evidence. Order [D.E. 115], p. 12, line 21 - p. 13, line 1 ("Additional evidence will not cure these allegations, which are legally insufficient *regardless of the amount of evidence that Anticancer might be able to muster in support of them*") (emphasis added); *see also* Order [D.E. 115], p. 8, lines 1-4 ("The Court … [does not] analyze[] the evidence that Anticancer submitted in opposition to [Merck's] motion [because] [c]onsideration of that evidence would presuppose the Court's acceptance of AntiCancer's

rejected amended contentions containing allegations of infringement as to Merck"). The only relevant evidence AntiCancer can proffer in opposition to CRI's impending motion for summary judgment of non-infringement is the content of AntiCancer's present deficient PICs. Therefore, and contrary to AntiCancer's May 23, 2008 letter/brief, no amount of discovery regarding infringement can save AntiCancer from its own fatally defective PICs. *Cf.* AntiCancer's Ltr/Brf [D.E. 122], p. 3 ("AntiCancer cannot … prepare properly to oppose the threatened summary judgment motion … without taking discovery").

### D. A "Preliminary Peek" at the Merits of CRI's Impending Motion for Summary Judgment of Non-Infringement and The Previous Rulings In This Case Show That A Positive Ruling Is More Than "Clearly Possible"

The grounds for CRI's motion are identical to the grounds on which this Court awarded summary judgment of non-infringement to Carestream—namely, that the allegations in AntiCancer's PICs against CRI have missing claim limitations. Concerning AntiCancer's PICs against Carestream, the Court found that "with respect to Claim 1 of each of the three remaining patents-in-suit, … [there is] a limitation absent from AntiCancer's PICs: in the 159 patent, 'a method to <u>monitor</u> the ability of a promoter to promote expression" … (emphasis added); in the 038 patent, 'a <u>control</u>, which contains a similar tumor that expresses green fluorescent protein" … (emphasis added); and, in the 384 patent, '<u>administering</u> said protocol or drug to a mammalian subject' … (emphasis added)". Order [D.E. 115], p. 8, line 24 – p. 9, line 1.

Likewise, for independent Claim 1 of the '159 patent in the claim chart in AntiCancer's PICs against CRI, there are no allegations (in the box on the right-hand side of the chart corresponding to Claim 1) concerning the claim limitations of a "method to monitor", a "promoter", or anything that "promotes expression". *See* Claim Chart in AntiCancer's PICs against CRI ("Claim Chart"), **Exhibit 9** hereto, p. 1. Claim 1 is the only independent claim in the '159 patent-in-suit.

The '384 patent-in-suit has three independent claims: Claims 1, 3, and 4. For independent Claim 1 of the '384 patent, there are no allegations in the claim chart in AntiCancer's PICs against CRI concerning "administering [a] protocol or drug to a mammalian subject" (Claim Chart, **Ex. 9**, pp. 5-6); for Claim 4 on the '384 patent, there are no allegations concerning "wherein said subject has been modified to contain said tumor that expresses GFP by surgical orthotopic implantation"

(Claim Chart, **Ex. 9**, p. 7); for Claim 5 of the '384 patent, there are no allegations concerning "a primary tumor [which] is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor" (Claim Chart, **Ex. 9**, p. 8).

The '038 patent-in-suit has three independent claims: Claims 1, 5, and 9. For independent Claim 1 of the '038 patent, there are no allegations in the claim chart in AntiCancer's PICs against CRI concerning a "control" (Claim Chart, **Ex. 9**, pp. 9-10); for Claim 5 of the '038 patent, there are no allegations concerning a "method to monitor metastasis" or a "subject [which] is a genetically immunocompromised mouse, rat, or rabbit" (Claim Chart, **Ex. 9**, p. 11); and, for Claim 9 of the '038 patent, there are no allegations concerning "a primary tumor [which] is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor" (Claim Chart, **Ex. 9**, p. 13).

Thus, for each and every independent claim in the '384, '038, and '159 patents, there are one or more claim limitations missing in AntiCancer's PICs against CRI. Because, as pointed out in Judge Sammartino's May 14, 2008 ruling, a defendant that does not infringe an independent claim cannot infringe an associated dependent claim, AntiCancer has not alleged that CRI infringes any of the claims in the '384, '038, and '159 patents. *See, e.g.*, Order [D.E. 115], p. 8, lines 19-23 (citing *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007), which quoted *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989)).

It is "clearly possible" that CRI will win its impending motion for summary judgment of non-infringement based on the missing limitations from every independent claim in AntiCancer's claim chart against CRI. *See GTE Wireless*, 192 F.R.D. at 287.

### E. The Balancing of Harms Weighs In Favor of A Stay

Some district courts also consider the balancing of harms when analyzing whether to grant a stay in discovery based on a pending dispositive motion. *GTE Wireless*, 192 F.R.D. at 289 (" … the Court should inevitably balance the harm of staying discovery with the benefit of allowing discovery to continue") (citing *Feldman*, 176 F.R.D. at 652). As shown above, staying discovery on the issue of infringement will not harm AntiCancer, and continuing discovery on that issue would not benefit

AntiCancer, because any discovery on infringement presently sought by AntiCancer will have "no probative value whatsoever in determining whether [AntiCancer] would successfully defeat [CRI's] summary adjudication motion [concerning non-infringement]" (*GTE Wireless*, 192 F.R.D. at 289).

A stay in discovery will cause no harm to AntiCancer in terms of scheduling, because this case has been frozen at the initial stages since the Court vacated the claim construction briefing schedule in February of this year (Order [D.E. 89], p. 3).[11] Considering that the claim construction briefing and hearing schedule have yet to be set (and all subsequent deadlines, such as the end of fact discovery, depend on the claim construction schedule), a stay in AntiCancer's discovery regarding issues of infringement will not harm AntiCancer.

By contrast, CRI will be harmed if discovery concerning infringement goes forward. Unlike its co-defendants Merck, NIBRI, and Carestream, CRI is a relatively small company, with no litigation department or in-house counsel, and the costs of discovery—in money, time, and resources—are significant. Yet the Court in this case has already made a clear ruling that AntiCancer cannot use any evidence gathered in discovery to correct and ameliorate the fatal defects of AntiCancer's PICs. *See* Order [D.E. 115], p. 12, line 17, to p. 13, line 1 (quoted in §II(C)(2) above). Thus, even before CRI's impending motion for summary judgment of non-infringement is granted, we know *a fortiori* that all of CRI's time, effort, and money expended in searching for, gathering, and producing the materials responsive to AntiCancer's discovery requests concerning infringement "will have been wasted" (*GTE Wireless*, 192 F.R.D. at 289).

**F. This Court Should Stay All Discovery Regarding Infringement Until After This Court Rules on CRI's Impending Motion for Summary Judgment of Non-Infringement of the '384, '038, and '159 Patents**

Because CRI's impending motion for summary judgment of non-infringement of the '384, '038, and '159 patents-in-suit based AntiCancer's deficient PICs (a) is dispositive on the issue of infringement; (b) can, and must, be decided without additional discovery; (c) has more than a "clearly possible" chance it will be granted; and (d) there will be no harm to AntiCancer if discovery

[11] Although this order did not vacate the dates after the claim construction briefing, such as the end of fact discovery (presently set at August 4, 2008 in the CMC Order [D.E. 49]), the Court's re-scheduling of claim construction will necessarily result in moving all such dates forward, as those previously-set dates were based on the claim construction briefing/hearing being completed in March-April, 2008.

regarding infringement is stayed (and. conversely, there will be no benefit to AntiCancer if discovery on infringement continues), while there will be harm to CRI if discovery regarding infringement continues, this Court should stay discovery on the issue of infringement, *i.e.*, stay CRI's production of witnesses pursuant to AntiCancer's 30(b)(6) deposition topics 4-6 and 11-12, stay CRI's production in response to document requests 1-4, 5/4-5/6, and 5/11-5/12 accompanying AntiCancer's 30(b)(6) Notice, stay CRI's production in response to requests for production 1-7 in AntiCancer's 1st set of requests for production, and stay CRI's production and inspection in response to requests for inspection 1 and 2 in AntiCancer's 1st set of requests for production. To the extent that any present or future discovery request is related only to infringement, the Court should also stay discovery on it.

## IV. DOCUMENT REQUESTS 2, 5/7, AND 5/8 ACCOMPANYING ANTICANCER'S 30(b)(6) NOTICE AND ALL OF THE REQUESTS IN ANTICANCER'S 1ST SET OF REQUESTS FOR PRODUCTION SHOULD BE QUASHED

### A. Document Request 2 Accompanying AntiCancer's 30(b)(6) Notice, and Document Requests 1-6 in AntiCancer's 1st Set of Requests for Production

Document request 2 accompanying AntiCancer's 30(b)(6) Notice asks for "ALL DOCUMENTS CONCERNING GFP AND/OR any fluorescing protein of any kind". *See* AntiCancer's 30(b)(6) Notice, **Ex. 1**, p. 6. As stated in CRI's written objections thereto, "because there are no meaningful limits on this request — in time, in space, in category, in format or type of material, in relevance to this litigation in general or to any particular claim or counterclaim thereof — its breadth and scope renders it, for all practical purposes, meaningless". *See* CRI's Writ. Objs., **Ex. 3**, p. 11, lines 10-13. CRI has proposed an appropriate scope of production, but AntiCancer has not responded to CRI's proposal. *See* CRI's discovery e-mail, **Ex. 6**, p. 2, CRI's June 10th e-mail. To the extent the parties and/or the Court adopt CRI's suggested correction, CRI moves to stay the corrected document request 2 because it relates only to infringement. Otherwise, CRI moves to quash this request as vague, overly broad, and unduly burdensome.

Document requests 1-6 in AntiCancer's 1st set of requests for production ask for "ALL DOCUMENTS CONCERNING SALES"; "ALL DOCUMENTS CONCERNING DRAWINGS";

"ALL DOCUMENTS CONCERNING GFP-based imaging of tumor cells in live laboratory animals"; "ALL DOCUMENTS CONCERNING USER MANUALS"; "ALL DOCUMENTS CONCERNING PHOTOGRAPHS"; and "ALL DOCUMENTS CONCERNING use of MAESTRO for EXPERIMENTAL OR NONPROFIT PURPOSE"; and "ALL DOCUMENTS CONCERNING GFP AND/OR any fluorescing protein of any kind". *See* AntiCancer's 1st Set Reqs./Prod., **Ex. 7**, pp. 4-5. Similarly to AntiCancer's document request 2 accompanying AntiCancer's 30(b)(6) Notice, the lack of meaningful limits on these requests render them meaningless. Because CRI's written objections are not due until next week, CRI has not yet re-written these requests within an appropriate scope, and AntiCancer did not commit to fixing/amending these requests before this motion for a protective order was scheduled to be filed. Accordingly, CRI moves to quash these requests as vague, overly broad, and unduly burdensome.

### B. Document Requests 5/7 and 5/8 Accompanying AntiCancer's 30(b)(6) Notice, and Document Requests 7-14 in AntiCancer's 1st Set of Requests for Production

Document requests 5/7 and 5/8 accompanying AntiCancer's 30(b)(6) Notice ask for "ALL DOCUMENTS CONCERNING … [CRI's] 'Answer and Counterclaims to Plaintiff AntiCancer, Inc.'s Second Amended Complaint' filed in this civil action, … " and "ALL DOCUMENTS CONCERNING … [CRI's] 'Initial Disclosures Pursuant to Fed.R.Civ.P. 26(a)(1)' served in this civil action, …". *See* AntiCancer's 30(b)(6) Notice, **Ex. 1**, p. 5 (topics 7-8) and p. 6 (request 5). Document request 7 in AntiCancer's 1st set of requests for production ask for "ALL DOCUMENTS CONCERNING [CRI's] first affirmative defense contained in [CRI's] ANSWER", and the following requests 8-14 ask for the same, respectively, of CRI's second through eighth affirmative defenses. *See* AntiCancer's 1st Set Reqs./Prod., **Ex. 7**, p. 5.

These requests are vague and overly broad. AntiCancer's intent may be to discover materials that support or undermine CRI's claims or defenses. If this is the case, CRI suggests (as CRI suggested at the discovery teleconferences) that the document requests be re-written to focus on the factual allegations underlying CRI's claims and defenses, rather than merely asking for "all documents concerning" a claim or defense.

///

**C. Objects for Inspection 1-2 in AntiCancer's 1st Set of Requests for Production**

Objects to be inspected 1-2 in AntiCancer's 1st set of requests for production state that "CRI must produce and permit plaintiff to inspect and to copy, attest, and sample each of the following objects: MAESTRO" and "CRI must produce MAESTRO and permit its inspection on June 24, 2008, at 9:30 a.m., at the offices of AntiCancer's counsel at Emerald Plaza, 402 West Broadway, Suite 1860, San Diego, California 92101." *See* AntiCancer's 1st Set Reqs./Prod., **Ex. 7**, p. 5. These requests are overly burdensome and unnecessary.

Accordingly, CRI moves to quash document requests 2, 5/7, and 5/8 accompanying AntiCancer's 30(b)(6) Notice and document requests 1-14 in AntiCancer's 1st set of requests for production as vague, overly broad, and unduly burdensome, and moves to quash requests for inspection 1-2 in AntiCancer's 1st set of requests for production as overly burdensome and unnecessary.

## V. CONCLUSION

For the foregoing reasons, CRI's motion for a protective order should be granted.

COHEN PONTANI LIEBERMAN & PAVANE LLP

Dated: June 16, 2008

By: /s Teodor J. Holmberg
Martin B. Pavane
Teodor J. Holmberg
Attorneys for Defendant and Counterclaimant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Dated: June 16, 2008 By: /s Teodor J. Holmberg

Teodor J. Holmberg
Attorney for Defendant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.
e-mail: tidge@cplplaw.com