J. CHRISTOPHER JACZKO (149317)
ALLISON H. GODDARD (211098)
**JACZKO GODDARD LLP**
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 404-9205
Facsimile: (858) 225-3500

MARTIN B. PAVANE (admitted *pro hac vice*)
TEODOR J. HOLMBERG (admitted *pro hac vice*)
**COHEN PONTANI LIEBERMAN & PAVANE LLP**
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 687-2770
Facsimile: (212) 972-5487
E-mail: mpavane@cplplaw.com
E-Mail: tidge@cplplaw.com

Attorneys for Defendant and Counterclaimant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTICANCER, INC., a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware Corporation; MERCK & CO., INC., a New Jersey Corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH, INC., a Delaware Corporation; and DOES 17-50,<br><br>Defendants. | **Case No. 07 CV 00097-JLS-RBB**<br><br>**MEMORANDUM IN SUPPORT OF CRI'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '384, '038, AND '159 PATENTS BASED ON ANTICANCER'S DEFICIENT PICS** |
| CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.,<br><br>Counterclaimant<br><br>v.<br><br>ANTICANCER, INC.,<br><br>Counterdefendant | Hearing Date: August 21, 2008<br>Time: 1:30 PM<br>Courtroom: 6 (3rd Floor)<br>Judge: Hon. Janis L. Sammartino |

## TABLE OF CONTENTS

**I. STATEMENT OF FACTS ...... 3**

A. PLAINTIFF ANTICANCER SUES DEFENDANTS CRI, MERCK, NIBRI, AND CARESTREAM FOR INFRINGEMENT OF THE FIVE PATENTS-IN-SUIT ...... 3

B. ANTICANCER'S DEFICIENT PRELIMINARY INFRINGEMENT CONTENTIONS ("PICS") ...... 4

C. MERCK, NIBRI, AND CARESTREAM ARE GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON ANTICANCER'S DEFICIENT PICS ...... 6

D. CRI'S OTHER PENDING MOTIONS FOR SUMMARY JUDGMENT ...... 7

**II. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE ANTICANCER'S PICS FAIL TO ALLEGE INFRINGEMENT BY CRI OF EVERY CLAIM LIMITATION IN THE '384, '038, AND '159 PATENTS ...... 8**

A. SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON DEFICIENT PICS ...... 8

B. ANTICANCER'S CLAIM CHART IS MISSING CLAIM LIMITATIONS FROM INDEPENDENT CLAIM 1 IN EACH OF THE '384, '038, AND '159 PATENTS ...... 9

1. *This Court's Grant of Carestream's Motion In Regards To These Claims* ...... *9*
2. *Independent Claim 1 of the '159 Patent* ...... *10*
3. *Independent Claim 1 of the '038 Patent* ...... *11*
4. *Independent Claim 1 of the '384 Patent* ...... *13*

C. ANTICANCER'S CLAIM CHART IS MISSING CLAIM LIMITATIONS FROM INDEPENDENT CLAIMS 4 AND 5 IN THE '384 PATENT, AND INDEPENDENT CLAIMS 5 AND 9 IN THE '038 PATENT ...... 15

1. *This Court's Denial of Carestream's Motion In Regards To These Claims* ...... *15*
2. *Independent Claim 4 of the '384 Patent* ...... *17*
3. *Independent Claim 5 of the '384 Patent* ...... *18*
4. *Independent Claim 5 of the '038 Patent* ...... *20*
5. *Independent Claim 9 of the '038 Patent* ...... *22*

D. THE DEPENDENT CLAIMS FALL WITH THE INDEPENDENT CLAIMS ...... 24

**III. CONCLUSION ...... 24**

# TABLE OF AUTHORITIES

**CASES**

*02 Micro International Limited, v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir 2006) ........ 6
*Berger v. Rossignol Ski Company, Inc.,* 2006 U.S. Dist. LEXIS 23085 (N.D. Cal. 2006) ........ 7
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 6
*Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340 (Fed.Cir.2005) ........ 6
*Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997) ........ 7
*Lucent Technologies, Inc. v. Gateway, Inc.*, 2007 U.S. Dist. LEXIS 46862 (S.D. Cal. 2007) ........ 6
*Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270 (1941) ........ 6
*MedImmune Inc. v. Genentech, Inc.,*127 S.Ct. 764 (2007) ........ 6
*MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005) ........ 7
*Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352 (Fed. Cir. 2007) ........ 7, 22
*Nestier Corp. v. Menasha Corp.*, 739 F.2d 1576 (Fed. Cir. 1984) ........ 6
*Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327 (1945) ........ 6
*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989 ........ 7

**FEDERAL RULES**

Fed.R.Civ.P. 56(c) ........ 8

**LOCAL RULES**

Civil Local Rule 7.1(f)(1) ........ 1
Patent Local Rule 3.1(c) ........ 2, 4

Pursuant to CivLR 7.1(f)(1), defendant and counterclaimant Cambridge Research & Instrumentation, Inc. ("CRI") hereby files this Memorandum of Points and Authorities in support of its motion for summary judgment of non-infringement of AntiCancer's U.S. Patent Nos. 6,759,038 ("the 038 patent"), 6,251,384 ("the '384 patent"), and 6,649,159 ("the '159 patent").

## I. STATEMENT OF FACTS

### A. Plaintiff AntiCancer Sues Defendants CRI, Merck, NIBRI, and Carestream for Infringement of the Five Patents-in-Suit

On January 12, 2007, AntiCancer filed a complaint initiating this action against CRI for alleged infringement of AntiCancer's U.S. Patent Nos. 6,232,523 ("the '523 patent"), 6,759,038 ("the 038 patent"), 6,235,968 ("the '968 patent"), 6,251,384 ("the '384 patent"), and 6,649,159 ("the '159 patent"). *See* Cmplt. [D.E. 1]. AntiCancer subsequently amended the complaint twice, adding sixteen other defendants, then removing fourteen of those defendants, finally leaving only CRI, Novartis Institutes For Biomedical Research, Inc. ("NIBRI") and Merck & Co. ("Merck") as defendants. *See* 1st Amd. Cmplt. [D.E. 3]; 2nd Amd. Cmplt. [D.E. 25-2] (entered by Order [D.E. 26]).

On June 1, 2007, AntiCancer initiated another action by filing a complaint against Carestream Health, Inc. ("Carestream")[1] for alleged infringement of the same five patents in the present action, plus AntiCancer's U.S. Patent No. 6,905,831 ("the '831 patent"). *See* Cmplt. [D.E. 1] in S.D.Cal. Case No. 07cv1004. The two actions were subsequently consolidated for purposes of claim construction of the five common patents-in-suit. *See* Order [D.E. 60] (in this action).

The "Second Claim For Relief (Infringement of Patent)" in AntiCancer's current complaint in this action alleges that CRI is infringing the '038 patent by "making, using, selling, offering for sale, and/or licensing products and services" including CRI's Maestro™ *In Vivo* Imaging System for imaging of laboratory animals ("Maestro"), that the infringement is willful, and that CRI is "inducing and/or contributing to infringement of the '038 Patent by others, including [co-defendants

---

[1] In early 2007, the original defendant, Eastman Kodak, Inc., sold the relevant portion of its business, which was reorganized as Carestream Health, Inc., and then substituted for Kodak in that action. *See* Order [D.E. 15] in 07cv1004.

Merck and NIBRI]". 2nd Amd. Cmplt. [D.E. 25-2], pp. 4-5, ¶¶22-25. The fourth and fifth claim for relief allege the same of CRI concerning the '384 patent and '159 patent, respectively. 2nd Amd. Cmplt. [D.E. 25-2], pp. 6-8, ¶¶40-43, 49-52.

On July 23, 2007, CRI filed an answer and counterclaims, including a third counterclaim of, *inter alia*, non-infringement of the '384 patent, a fourth counterclaim of, *inter alia*, non-infringement of the '159 patent, and a fifth counterclaim of, *inter alia*, non-infringement of the '038 patent. CRI's Ans./C-clms. [D.E. 30], pp. 8-9, ¶¶15, 19, 23.

### B. AntiCancer's Deficient Preliminary Infringement Contentions ("PICs")

Paragraph 2 of this Court's October 3, 2007 Case Management Order required AntiCancer to serve, on each defendant, a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" (hereinafter, "PICs") which "must contain", *inter alia*, "[a] chart identifying specifically where each element of each asserted claim is found in each Accused Instrumentality". *See* CMC Order [D.E. 49], ¶2(c); *see also* PatLR 3.1(c).

On October 17, 2007, two days after it was due, AntiCancer served its PICs, which had numerous deficiencies. *See* AntiCancer's PICs, attached as **Exhibit 1A/B** hereto. After receiving AntiCancer's PICs, CRI informed AntiCancer of the deficiencies, including, but not limited to:

(1) AntiCancer's PICs against CRI failed to make allegations concerning each and every claim limitation—*i.e.*, AntiCancer's claim chart was missing claim limitations. *See* AntiCancer's PICs/Clm. Chrt. (**Ex. 1B**); *and* CRI's Nov. 1, 2007 Letter, attached as **Exhibit 2A** hereto, pp. 3-6, *e.g.*, p. 3 ("AntiCancer never attempts to make an element-by-element analysis"); and

(2) The majority of AntiCancer's claim chart — 22 out of 35 paragraphs — consists of AntiCancer's description of its own article, "the Hoffman article".[2] *See* AntiCancer's PICs/Clm. Chrt. (**Ex. 1B**); *and* CRI's Nov. 1, 2007 Letter (**Ex. 2A**), pp. 3-6, *e.g.*, p. 4 ("But AntiCancer's chart shows no direct infringement by CRI or a third party—to

---

[2] Hoffman, R. (AntiCancer's president), "Green fluorescent protein imaging of tumor growth, metastasis, and angiogenesis in mouse model", Lancet Oncology, vol. 3, issue 9, pp. 546-56 (2002); attached hereto as **Exhibit 1C**.

> the contrary, and as discussed in more detail below, the only performance of these steps that AntiCancer appears to allege is by AntiCancer's own personnel, specifically Robert Hoffmann, in Hoffman's article concerning GFP.").

At the November 6, 2007 discovery teleconference requested by CRI to discuss the deficiencies in AntiCancer's PICs, AntiCancer demurred any discussion of the defects pointed out by CRI, and instead replied in writing the next day, with the blanket assertion that there were no defects in AntiCancer's PICs. *See* AntiCancer's Nov. 7, 2007 letter, attached as **Exhibit 2B** hereto; CRI's Nov. 9, 2007 letter, attached as **Exhibit 2C** hereto; *see also* CRI's Opp. [D.E. 74], pp. 6-7.

On November 20, 2007, AntiCancer moved for leave to amend its PICs, not to fix the flaws and defects pointed out by CRI, but rather to amend its PICs against CRI to (1) change the effective filing dates asserted for the patents-in-suit; and (2) add "three boilerplate paragraphs [to its claim chart against CRI] describing three 'new' references and a fourth paragraph making the general assertion that 'CRI's published articles and images in the Hoffman article and CRI's website shows mice subjects which are mammals'" (CRI's Opp. [D.E. 74], p. 7). *See* AntiCancer's Mot./Amd. PICs [D.E. 65]. Two of the "new" references had been publicly available (*e.g.*, on CRI's website) since before the litigation began, while the third "new" reference (elliptically referred to as "the second reference" in AntiCancer's proposed amended claim chart) was "an abstract from a 2004 presentation made by Hoffman (the aforementioned president of AntiCancer), Meng Yang (a co-inventor on AntiCancer's asserted patents and past/present employee of AntiCancer), and Richard Levenson (an employee of CRI)." CRI's Opp. [D.E. 74], pp. 7-8; *see also* Ex. 2 thereto, AntiCancer's Prop. Amd. Clm. Chart (AntiCancer's proposed additions are highlighted); Ex. 10 thereto, the abstract of the 2004 joint presentation of AntiCancer and CRI personnel (*i.e.*, AntiCancer's new "second reference").

In spite of CRI's previous identification of defects, the claim chart in AntiCancer's proposed amended PICs kept the "deficiencies of the originally served contentions entirely intact" (CRI's Opp. [D.E. 74], p. 8) — *i.e.,* the proposed amended PICs still did not "identify[] specifically where each element of each asserted claim" was infringed, either directly or indirectly, by CRI (CMC

Order [D.E. 49], ¶2(c)), and still relied on AntiCancer's own Hoffman article. *See* AntiCancer's Prop. Amd. Clm. Chart, Ex. 2 to CRI's Opp. [D.E. 74].

On January 31, 2008, this Court (*i.e.*, Judge Brooks) denied AntiCancer's motion for leave to amend, finding that AntiCancer had not shown "good cause" to amend its deficient PICs because "its proposed amendments [concerning CRI were not] the result of newly discovered evidence [but rather added material that] was publicly available before this lawsuit was filed". *See*, *e.g.*, Jan. 31, 2008 Hearing Transcript [D.E. 92], pp. 7-8.

**C. Merck, NIBRI, and Carestream Are Granted Summary Judgment of Non-Infringement Based on AntiCancer's Deficient PICs**

On March 14, 2008, NIBRI moved for summary judgment of non-infringement based on the fact AntiCancer's PICs never mention NIBRI. *See* NIBRI's Mot. for S.J./Non-Infringement [D.E. 95]; *see also* Merck's Mot. for S.J./Non-Infringement [D.E. 62] (previously filed on same grounds).

On April 3, 2008, Carestream moved for non-infringement based on the deficiencies of AntiCancer's PICs against Carestream in the partially consolidated related action, including, *inter alia*, the omission of specific claim limitations in AntiCancer's claim chart against Carestream. *See* Carestream's Mot. for S.J./Non-Infringement [D.E. 36] in S.D.Cal. Case No. 07cv1004, pp. 8-19.

On April 25, 2008, AntiCancer filed its oppositions to Merck's, NIBRI's, and Carestream's motions for summary judgment. *See* AntiCancer's Opp. [D.E. 108-1] to Merck's Mot. for S.J./Non-Infringement [D.E. 62]; AntiCancer's Opp. [D.E. 108-2] to NIBRI's Mot. for S.J./Non-Infringement [D.E. 95]; and AntiCancer's Opp. [D.E. 108-3] to Carestream's Mot. for S.J./Non-Infringement. AntiCancer submitted evidence not asserted in its PICs as "proof" of infringement, and argued, *inter alia*, that AntiCancer needed to conduct further discovery (because the defendants had refused, *e.g.*, to produce 30(b)(6) deponents), and that summary judgment was "premature" because there had not yet been claim construction. *See*, *e.g.*, AntiCancer's Opp. [D.E. 108-1], pp. 1-2; *and* AntiCancer's Opp. [D.E. 108-3], pp. 7-8; 20-22.

On May 14, 2008, this Court rejected those arguments, and awarded summary judgment of non-infringement in favor of Merck, NIBRI, and Carestream. *See* Order [D.E. 115], *e.g.*, p. 8, lines 1-2 ("The Court neither attempts to construe the language of the allegedly infringing claims nor

analyzes the evidence that AntiCancer submitted in opposition to this motion."). Carestream only obtained partial summary judgment (without prejudice to later seeking full summary judgment),[3] *i.e.*, this Court found for Carestream on all of those independent claims for which the claim chart in AntiCancer's PICs against Carestream did "not allege the infringement of specific claim limitations", but denied summary judgment on those independent claims for which there appeared to be "triable disputes of fact as to (1) a third party's direct infringement and (2) Carestream's intent to cause that direct infringement." Order [D.E. 115], p. 8, lines 14-16, pp. 9-10; *see also* Sect. II.C.1 below.

### D. CRI's Other Pending Motions for Summary Judgment

CRI's May 21, 2008 supplemental brief, filed in response to this Court's invitation to the parties to file briefs regarding "an appropriate timeline for the claim construction phase of this case" (Order [D.E. 115], p. 13, line 11),[4] stated CRI's intent to:

(a) move for summary judgment of non-infringement of the '523 and '968 patents-in-suit based on the fatal deficiencies of AntiCancer's PICs against CRI. *See* CRI's Supp. Brief [D.E. 119], pp. 2-3. This motion was subsequently filed on June 9, 2008. *See* CRI's Mot. for S.J./Non-Infringement of '523 and '968 patents [D.E. 126].

(b) move for summary judgment of invalidity of the '384, '038, and '159 patents-in-suit based on AntiCancer's own prior art references. CRI's Supp. Brief [D.E. 119], pp. 2-3. These motions were subsequently filed on June 30, 2008 (for the '038 and '159 patents) and July 13, 2008 (for the '384 patent). *See* CRI's Mot. for S.J./Invalidity of '038 and '159 patents [D.E. 134]; *and* CRI's Mot. for S.J./Invalidity of '384 patent [D.E. 137]; and

(c) then move for summary judgment of non-infringement of the '384, '038, and '159 patents-in-suit based on deficiencies in AntiCancer's PICs against CRI (*i.e.*, the present motion).

---

[3] Carestream subsequently filed a motion for summary judgment of non-infringement on the remaining claims at issue in its case. *See* Carestream's Mot. for S.J./Non-Infringement [D.E. 53] in S.D.Cal. Case No. 07cv1004.

[4] This Court had previously vacated the March-April 2008 claim construction briefing and hearing schedule set by CMC Order [D.E. 49], and indicated that a new claim construction schedule would be set after ruling on, *inter alia*, Merck's motion for summary judgment (*See* Order [D.E. 89], p. 3).

CRI delayed moving for summary judgment of non-infringement until now because of CRI's concern that "if CRI first obtains a judgment of non-infringement of the '384, '038, and '159 patents, the Court may prevent CRI from pursuing a judgment of invalidity of the '384, '038, and '159 patents". CRI's Supp. Brief [D.E. 119], p. 3, lines 15-18.[5] With motions concerning both invalidity and non-infringement presently pending, CRI is entitled to judgment on both issues.[6]

## II. <u>SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE ANTICANCER'S PICS FAIL TO ALLEGE INFRINGEMENT BY CRI OF EVERY CLAIM LIMITATION IN THE '384, '038, AND '159 PATENTS</u>

### A. Summary Judgment of Non-Infringement Based on Deficient PICs

Summary judgment is appropriate when there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-3 (1986). In a patent infringement case before a District Court with Local Rules requiring Preliminary Infringement Contentions ("PICs"), summary judgment of non-infringement is appropriate when a plaintiff attempts to rely on infringement theories omitted from its PICs. *See 02 Micro International Limited, v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366 (Fed. Cir 2006) (entering summary judgment for defendant after refusing to consider plaintiff's evidence for a theory not disclosed in infringement contentions); *Lucent Technologies, Inc. v. Gateway, Inc*., 2007 U.S. Dist. LEXIS 46862, *20-21 (S.D. Cal. June 27, 2007) (Brewster, J.)

---

[5] CRI also asked for an indication from the Court whether it would indeed prevent CRI's pursuit of its invalidity counterclaims based on a ruling of non-infringement. CRI's Supp. Brief [D.E. 119], p. 3, n. 2.

[6] A judgment of non-infringement does not, as matter of law, prevent CRI from pursuing its counterclaims of invalidity. *See*, *e.g.*, *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1348 (Fed.Cir.2005) (holding that district court erred in determining that jury verdict of non-infringement divested district court of jurisdiction to hear unenforceability counterclaim). Moreover, AntiCancer's past and present behavior, and the threat of litigation against CRI's customers, show that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" on CRI's invalidity counterclaims. *MedImmune Inc. v. Genentech, Inc.,*127 S.Ct. 764, 771 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). It is appropriate for the Court to consider validity, even after a ruling of non-infringement. *See*, *e.g.*, *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945) ("There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. … It has come to be recognized, however, that of the two questions, validity has the greater public importance, … and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent.'"); *see also Nestier Corp. v. Menasha Corp.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984), *cert. denied*, 105 S.Ct. 1756 (1985) (both validity and infringement issues should be treated together, given the public interest in the validity issue).

(granting summary judgment because plaintiff could not succeed on infringement theory that the plaintiff did not set forth in its PICs); *Berger v. Rossignol Ski Company, Inc.,* 2006 U.S. Dist. LEXIS 23085, *15 (N.D. Cal. 2006) (granting defendant's motion for summary judgment of non-infringement where plaintiffs conceded at oral argument that they had offered an "absurd" original infringement contention and court denied leave to amend).

In the context of patent litigation, "[i]nfringement is assessed by comparing the accused device to the claims; the accused device infringes if it incorporates every limitation, either literally or under the doctrine of equivalents. If, however, even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy, Inc. v. Bus. Objects, S.A*., 429 F.3d 1344, 1352 (Fed. Cir. 2005) (internal quotations and citations omitted); *accord Glaxo, Inc. v. Novopharm, Ltd*., 110 F.3d 1562, 1565 (Fed. Cir. 1997). If there is no infringement of an independent claim, there can be no infringement of any claim depending therefrom. *See Monsanto Co. v. Syngenta Seeds, Inc*., 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quoting *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989)) (explaining that a defendant who does not infringe an independent claim cannot possibly infringe an associated dependent claim).

In this case, this Court has already ruled that summary judgment of non-infringement by a defendant is appropriate when the plaintiff has failed to make allegations concerning specific claim limitations in its PICs against that defendant. *See* Order [D.E. 115], pp. 8-9.

### B. AntiCancer's Claim Chart is Missing Claim Limitations From Independent Claim 1 in Each of the '384, '038, and '159 Patents

#### *1. This Court's Grant of Carestream's Motion In Regards To These Claims*

This Court granted Carestream's motion for summary judgment of non-infringement based on AntiCancer's PICs in regards to Claim 1 in each of the '384, '038, and '159 patents, stating as follows:

> Specifically, with respect to Claim 1 of each of the three remaining patents-in-suit, Carestream identifies a limitation absent from Anticancer's PICs: in the 159 patent, "a method to <u>monitor</u> the ability of a promoter to promote expression" (Carestream Memo. ISO Motion, at 10:14-15) (emphasis added); in the 038 patent, "a <u>control</u>, which contains a similar tumor that expresses green fluorescent protein"

> (id. at 13:9-10) (emphasis added); and, in the 384 patent, "administering said protocol or drug to a mammalian subject" (id. at 18:19-20) (emphasis added). In opposition, Anticancer fails to make any particularized showing that the omitted claim limitations actually appear in its PICs. The Court has independently reviewed the PICs and found no reference to these limitations. (See Lawton Decla. ISO Motion, Exhibit 32.)
>
> Because Anticancer does not allege infringement of all steps of its patented processes, the Court grants Carestream's motion for summary judgment as to claim 1 of the 159, 038, and 384 patents, as well as all claims that are dependent on claim 1 in each patent.

Order [D.E. 115], p. 8, line 24 – p. 9, line 9 (emphasis in original)

Each independent Claim 1 in AntiCancer's PICs against CRI is missing the exact same limitation as was found missing from AntiCancer's PICs against Carestream. *See* below for specifics. The self-evident lack of the same limitations as the Court has already ruled were missing from AntiCancer's PICs against Carestream constitutes sufficient grounds for summary judgment; however, AntiCancer's PICs against CRI are also missing other claim limitations, which do not appear to be missing from AntiCancer's PICs against Carestream, and some of these other missing claim limitations are also pointed out herein. In addition, and contrary to AntiCancer's PICs against Carestream, which rely primarily on a Carestream brochure and a photograph therefrom, AntiCancer's PICs against CRI rely primarily on AntiCancer's own Hoffman article—13 of AntiCancer's 19 paragraphs concerning the independent claims in its claim chart describe the Hoffman article. *See* Sect. C.1 below for full discussion.

### *2. Independent Claim 1 of the '159 Patent*

Since this Court has found that "a method to monitor the ability of a promoter to promote expression" is missing from AntiCancer's PICs against Carestream in regards to Claim 1 of the '159 patent, that same limitation must be found missing from AntiCancer's PICs against CRI in regards to Claim 1 of the '159 patent. *See* Table 1 below (limitation highlighted in green). Moreover, by contrast to AntiCancer's PICs against Carestream, AntiCancer's PICs against CRI are missing the limitations in Claim 1 of the '159 patent of, *inter alia*, "a fluorophore operatively linked to a promoter" — in fact, the word "promoter" is entirely missing from AntiCancer's PICs against CRI (as well as "expression", "whereby the ability of a promoter to promote expression is monitored", "endogenous gene", etc.).

**Table 1: Claim 1 of the '159 Patent**

| **Claim 1 of the '159 patent** | **AntiCancer's PICs against Carestream** (**Ex. 3**, p. A-5) (ruled to be missing "a method to monitor the ability of a promoter to promote expression" in Order [D.E. 115], p. 8) | **AntiCancer's PICs against CRI** (**Ex. 1B**, p. 1) (missing the same limitation; moreover, missing a "promoter", etc. *See* above.) |
|---|---|---|
| 1. A method to monitor the ability of a promoter to promote expression in an animal of an endogenous gene that is controlled by said promoter, which method comprises:<br>a) delivering, to an animal, cells containing a nucleic acid encoding a fluorophore operatively linked to the promoter of said endogenous gene whose ability to promote expression is to be analyzed; and<br>b) observing the presence, absence or intensity of a fluorescence generated by said fluorophore at various locations in said animal by whole-body external fluorescent optical imaging, whereby the ability of said promoter to promote expression is monitored, and<br>wherein said fluorophore is a protein that is autofluorescent such that no substrates or cofactors are needed for its to fluoresce. | In the document entitled "Kodak Image Station Multimodal Imaging System, Application Gallery" under the heading "In Vivo Green Fluorescent Imaging" the first picture is entitled "EGFP Tumors in vivo."<br><br>• This picture shows that EGFP, a fluorophore, was delivered to one or two intact mice by way of tumor cells containing a fluorophore gene, the nucleic acid encoding the EGFP, which appears to have been operatively linked to a promoter because the fluorophore has been expressed in the mice, and the picture shows the spread of the EGFP tumor by observation of the presence, absence, or intensity of the fluorescence generated by the fluorophore at various locations in the mice by whole-body fluorescence imaging. | • The article entitled "Distinguishing Photons: The Maestro™ in-vivo fluorescent imaging system" from the CRI's website includes a section heading "MSI in in-vivo fluorescent imaging" on page 3, where it is described that "fluorophores can be generated in transgenic animals or transfected and implanted cells, 10, 11." The cited reference 10 is "Hoffman, R., Green fluorescent protein imaging of tumor growth, metastasis, and angiogenesis in mouse model, Lancet Oncol 2002; 3(9):545-56: ("The Hoffman article"). The Hoffman article, for example of pages 551-552, describes methods for whole body imaging or tumor growth by delivering transduced cells containing a fluorophore such as GFP to an animal and observing the presence, absence, or intensity of fluorescence by whole-body external imaging.<br><br>• The image entitled "GFP Labeled Colon Tumor" shows whole-body external fluorescent imaging of mice having tumors containing GFP. See Figure 1. |

### *3. Independent Claim 1 of the '038 Patent*

Since this Court ruled that the limitation "a control, which contains a similar tumor that expresses green fluorescent protein" is missing from AntiCancer's PICs against Carestream in regards to Claim 1 of the '038 patent, that same limitation must be found missing from AntiCancer's PICs against CRI in regards to Claim 1 of the '038 patent. *See* Table 2 below (limitation highlighted

in green). Moreover, AntiCancer's PICs against CRI are missing the limitations in Claim 1 of the '038 patent of, *inter alia*, (1) two different subjects (the "treated subject" and the "control subject"); (2) the two subjects are "immunocompromised" or "syngeneic" to said tumor; and (3) the step of comparing the metastases in the two different subject mice. *See* Table 2 below (limitations highlighted in yellow).

**Table 2: Claim 1 of the '038 Patent**

| **Claim 1 of the '038 patent** | **AntiCancer's PICs against Carestream** (**Ex. 3**, p. A-10) (ruled to be missing "a control, which contains a similar tumor that expresses green fluorescent protein" in Order [D.E. 115], pp. 8-9) | **AntiCancer's PICs against CRI** (**Ex. 1B**, p. 9) (missing the same limitation; also missing other limitations) |
|---|---|---|
| **1.** A method to evaluate a candidate protocol or drug for the inhibition of metastasis of a primary tumor which method comprises:<br>administering said protocol or drug to a subject which is a mouse, rat or rabbit which contains a primary tumor that stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor metastasizes and<br>monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence at various locations in the treated subject;<br>wherein said subject contains said tumor that expresses GFP and wherein said subject is a genetically immuno-compromised mouse, rat or rabbit, or a mouse, rat or rabbit which is syngeneic to said tumor;<br>monitoring the progression of metastasis in a control, which contains a similar tumor that expresses green fluorescent protein;<br>wherein said control subject contains said tumor that expresses GFP wherein said control subject is an immuno-compromised mouse, rat or rabbit, or a mouse, rat or rabbit which is syngeneic to said tumor; and | In the document entitled "Kodak Image Station Multimodal Imaging System, Application Gallery" under the heading "In Vivo Green Fluorescent Imaging" the first picture is entitled "EGFP Tumors in vivo."<br><br>• This picture shows what appears to be a comparison of two intact mice which contain tumors that stably express EGFP<br><br>• The picture shows the spread of the EGFP tumor – metastasis – through both mice and their progression being monitored by observation of the presence, absence, or intensity of the fluorescence at various locations in the intact mice by fluorescence imaging.<br><br>• The picture shows that there are two intact mice that contain tumors expressing EGFP being monitored and compared for the progression of metastasis by way of fluorescence imaging, and the mice appear to be immunocompromised mice that are syngenic –compatible for the transplant– to the tumor. | • The Hoffman article describes that imaging metastases in mice by use of GFP expressing tumor cells can be used in drug-response evaluation, for example on page 546.<br><br>• The Hoffman article, for example of pages 551-552, describes methods for whole-body imaging or tumor growth by delivering transduced cells containing a fluorophore such as GFP to an animal and observing the presence, absence, or intensity of fluorescence by whole-body external imaging.<br><br>• The image entitled "GFP Labeled Colon Tumor" shows whole-body fluorescent imaging of mice having tumors containing GFP. See Figure 1. |

| | | |
|---|---|---|
| comparing the progression of metastasis in said treated subject with the progression of metastasis in said control subject wherein the control subject and treated subject are intact;<br>whereby a diminution of the progression of metastasis in said treated subject as compared to said control subject identifies the protocol or drug as effective in inhibiting metastasis. | | |

### *4. Independent Claim 1 of the '384 Patent*

Since this Court has ruled that the limitation "administering said protocol or drug to a mammalian subject" is missing from AntiCancer's PICs against Carestream in regards to Claim 1 of the '384 patent, that same limitation must be found missing from AntiCancer's PICs against CRI. *See* Table 3 below (limitation highlighted in green). Moreover, AntiCancer's PICs against CRI are missing the limitations in Claim 1 of the '384 patent of, *inter alia*, (1) "a control subject, … which contains a similar tumor that expresses green fluorescent protein"; and (2) "wherein said subject has been modified to contain said tumor that expresses GFP by surgical orthotopic implantation of said tumor". *See* Table 3 below (limitations highlighted in yellow). Similarly to Claim 1 of the '038 patent, AntiCancer's claim chart regarding Claim 1 of the '384 patent is also missing the limitations concerning two separate mice (the "treated subject" and the "control subject"), where the two mice are "nude or SCID" mice or mice "syngeneic" to said tumor; and the step of comparing the metastases in the control and treated mice (these limitations have not been highlighted in Table 3).

///

///

///

///

///

///

///

///

**Table 3: Claim 1 of the '384 Patent**

| **Claim 1 of the '384 patent** | **AntiCancer's PICs against Carestream** (**Ex. 3**, p. A-7) (ruled to be missing "administering said protocol or drug to a mammalian subject" in Order [D.E. 115], p. 8) | **AntiCancer's PICs against CRI** (**Ex. 1B**, p. 5) (missing the same limitation; also missing other limitations) |
|---|---|---|
| **1.** A method to evaluate a candidate protocol or drug for the inhibition of metastasis of a primary tumor which method comprises:<br>administering said protocol or drug to a mammalian subject which contains a primary tumor that stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor metastasizes and<br>monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence at various locations in the treated subject by fluorescent optical tumor imaging in the intact subject;<br>wherein said subject has been modified to contain said tumor that expresses GFP by surgical orthotopic implantation of said tumor wherein said subject is a nude or SCID mouse or a mouse which is syngeneic to said tumor;<br>monitoring the progression of metastasis in a control subject by fluorescent optical tumor imaging in the intact control subject, which contains a similar tumor that expresses green fluorescent protein;<br>wherein said control subject has been modified to contain said tumor that expresses GFP by surgical orthotopic implantation of said tumor wherein said control subject is a nude or SCID mouse or a mouse which is syngeneic to said tumor; and<br>comparing the progression of metastasis in said treated subject with the progression of metastasis in said control subject;<br>whereby a diminution of the progression of metastasis in said treated subject as compared to said control subject identifies the protocol or drug as effective in inhibiting metastasis. | In the document entitled "Kodak Image Station Multimodal Imaging System, Application Gallery" under the heading "In Vivo Green Fluorescent Imaging" the first picture is entitled "EGFP Tumors in vivo."<br><br>• This picture shows what appears to be a comparison of two intact mice which contain tumors that stably express EGFP. The picture also shows the spread of the EGFP tumor – metastasis – through both mice and their progression being monitored by observation of the presence, absence, or intensity of the fluorescence at various locations in the intact mice by fluorescence imaging;<br><br>• The picture shows the mice were modified to contain the tumor cells that express EGFP by surgical orthotopic – normal or usual position – implantation of the tumor cells in the subjects which appear to be nude or SCID mice that are syngenic –compatible for the transplant– to the tumor;<br><br>• The picture shows there are two intact mice that contain tumors expressing EGFP that are being monitored and compared for the progression of metastasis by way of fluorescence imaging. | • The Hoffman article describes that imaging metastases in mice by use of GFP expressing tumor cells can be used in drug-response evaluation, for example on page 546.<br><br>• The Hoffman article, for example of pages 551-552, describes methods for whole-body imaging or tumor growth by delivering transduced cells containing a fluorophore such as GFP to an animal and observing the presence, absence, or intensity of fluorescence by whole-body external imaging.<br><br>• The image entitled "GFP Labeled Colon Tumor" shows whole-body fluorescent imaging of mice having tumors containing GFP. See Figure 1. |

### C. AntiCancer's Claim Chart is Missing Claim Limitations From Independent Claims 4 and 5 in the '384 Patent, and Independent Claims 5 and 9 in the '038 Patent

#### *1. This Court's Denial of Carestream's Motion In Regards To These Claims*

This Court denied Carestream's motion for summary judgment of non-infringement based on AntiCancer's PICs in regards to independent Claims 4 and 5 of the '384 patent and independent Claims 5 and 9 of the '038 patent as follows:

> On the remaining independent claims (<u>i.e</u>., claims 4-5 of the 384 patent, and claims 5 and 9 of the 038 patent) and associated dependent claims (<u>i.e</u>., claims 6-7 and 11 of the 038 patent), the Court denies summary judgment. In its briefing and at oral argument, Carestream argued that Anticancer's PICs are globally deficient because they do not allege that Carestream performed the acts of infringement. (<u>See</u> Carestream Memo. ISO Motion, at, <u>e.g</u>., 15:7-13.) However, that argument cannot prevail on summary judgment because of Anticancer's allegations and proof of Carestream's indirect infringement. Carestream concedes that Anticancer bases the PICs on an image that appears in a Kodak brochure. (<u>Id.</u> at 8:23-24, & Schuck Decla. ISO Motion, Exhibit A, at A-27.) Admittedly, that image is "courtesy of" people whom Carestream does not employ, but that fact does not preclude Anticancer from prevailing on its claims of indirect infringement. To establish liability for indirect infringement, the patentee must show (1) direct infringement and (2) knowing inducement of infringement by one with specific, affirmative intent to cause direct infringement. 35 U.S.C. § 271(b) (2007); <u>Symantec Corp. v. Computer Assocs. Int'l, Inc</u>., — F.3d —, 2008 WL 1012443, at *8 (Fed. Cir. Apr. 11, 2008). Where a third party allegedly committed the direct infringement, Anticancer's PICs did not have to allege that Carestream committed the allegedly infringing acts because the second element of the indirect infringement test contemplates "intent to encourage <u>another's</u> infringement." <u>Minn. Mining & Mfg. Co. v. Chemque, Inc</u>., 303 F.3d 1294, 1305 (Fed. Cir. 2002) (emphasis added).
>
> The specific issues are whether Anticancer has created triable disputes of fact as to (1) a third party's direct infringement and (2) Carestream's intent to cause that direct infringement. To simplify the analysis, the Court addresses the second issue first. In order to show the necessary intent, Anticancer must present "evidence of [Carestream's] culpable conduct, directed to encouraging another's infringement[.]" <u>DSU Med. Corp. v. JMS Co., Ltd</u>., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). The Court finds sufficient evidence, viewed in the light most favorable to non-movant Anticancer, of Carestream's intent in [AntiCancer's] production of a brochure with photographs depicting others' infringing activity, when the same brochure page includes telephone numbers and an Internet address where the reader can go "for additional information." (Schuck Decla. ISO Motion, Exhibit A, at A-27.) …

> As for whether Anticancer has created a triable dispute as to a third party's direct infringement …
>
> … , the Court finds that Anticancer's charts provide adequate allegations showing "where each element of each asserted claim is found within each Accused Instrumentality," [in regards to independent Claims 4 and 5 of the '384 patent, and independent Claims 5 and 9 of the '038 patent].

Order [D.E. 115], p. 9, line 13 - p. 12, line 15

By contrast with AntiCancer's PICs against Carestream, which cites Carestream's brochure and a photograph therefrom, AntiCancer's PICs against CRI primarily cite ***AntiCancer's own Hoffman article***. Although a photograph from CRI's website (the "GFP Labeled Colon Tumor" image) is also cited for some of the independent claims, the citation does not correspond, or "map onto", the actual language of the claim—*i.e.*, to the extent AntiCancer "specifically identifies" anything corresponding to the language of its claims, AntiCancer identifies AntiCancer's own Hoffman article, not the CRI photograph.[7]

Following this Court's analysis concerning AntiCancer's PICs against Carestream (quoted above): there can be no "triable disputes of fact as to (1) a third party's direct infringement"—because AntiCancer's PICs against CRI in regards to Claims 4 and 5 of the '384 patent and independent Claims 5 and 9 of the '038 patent, which primarily cites AntiCancer's own Hoffman article, have shown, at most, ***AntiCancer's own direct infringement***, not a third party's. Nor can there be any triable disputes of fact concerning "(2) [CRI's] intent to cause that direct infringement" because it would be ridiculous to assert that ***CRI encouraged AntiCancer to infringe its own patent***. Moreover, the manner in which AntiCancer connects the Hoffman article with CRI cannot support a *prima facie* allegation of inducement—*viz.,* no reasonable person could find the fact that the

[7] In fact, this image is mislabeled: there are no GFP-labeled tumors in the photograph. As CRI informed AntiCancer in November of 2007, and as expressly stated in the image's inset legend, the photograph only shows fluorescent dyes, and no GFP-labeled tumors. This error was corrected last year, promptly after being discovered. *See* CRI's Nov. 30, 2007 letter, attached as **Exhibit 2E** hereto ("An error in CRI's website was brought to CRI's attention by AntiCancer's contentions: although the label *inside* image MSI 05 was correct (*see*, *e.g.*, Prelim. Infr. Conts., Fig. 1, inset on the left hand, "Unmixed Maestro images of Fluoroscein (Blue), Cy 3.5 (Green), … "), the label *outside* the image, "GFP-labeled Colon Tumor", was incorrect. The MSI 05 image's outset label has been corrected and now matches the inset label (*i.e.*, "Maestro™ separation of fluoroscein, Cy 3.5, TRITC, and food autofluorescence."). Even under AntiCancer's broadest interpretation of its claims, this photograph does not show an allegedly infringing use, because only fluorescent dyes are being used (the photograph shows no tumor cells genetically engineered to express fluorescent protein).

Hoffman article is cited in a footnote to a sentence on the third page of a CRI article supports an allegation that CRI had a "specific, affirmative intent to cause direct infringement", particularly when the footnoted sentence in the CRI article—"fluorophores can be generated in transgenic animals or transfected and implanted cells"—is a broad and vague description covering many methods and usages known in the admitted prior art.[8]

Lastly, and once again in contrast to AntiCancer's PICs against Carestream, there are a multitude of missing claim limitations in AntiCancer's claim chart against CRI—*i.e.*, even though AntiCancer cites its own Hoffman article, AntiCancer still does not match each specific claim limitation to material in AntiCancer's own Hoffman article. *See* below.

### ***2. Independent Claim 4 of the '384 Patent***

Unlike Claim 4 of the '384 patent in the claim chart in AntiCancer's PICs against Carestream, which cites Carestream's own brochure photograph, the allegations concerning Claim 4 in the claim chart in AntiCancer's PICs against CRI do not cite ***any CRI materials at all***—only AntiCancer's own Hoffman article. *See* Table 4 below. There are also missing limitations; however, the lack of citation to any CRI activity means summary judgment of non-infringement must be granted as a matter of law.

///

///

---

[8] AntiCancer makes this tenuous connection on page 1 of its claim chart, in regards to Claim 1 of the '159 patent. *See* AntiCancer's PICs/Clm. Chrt. (**Ex. 1B**), also reproduced in Table 1 above. The "CRI article" is "Distinguished Photons: The Maestro™ *in-vivo* Fluorescence Imaging System", BioTechniques Protocol Guide 2007, written by J. Mansfield and R. Levenson, and attached as **Exhibit 1D** hereto. The footnoted sentence referred to by AntiCancer on page 3 and the footnote reference to the Hoffman article on page 9 are highlighted in yellow in **Ex. 1D**.

AntiCancer has never attempted to correct or embellish this lack of connection between AntiCancer's Hoffman article and any CRI activity, even though this lack of connection was pointed out to AntiCancer in November of last year. *See* CRI's Nov. 1, 2007 Letter (**Ex. 2A**), p. 4:

> The only alleged action by CRI [that AntiCancer uses to support an allegation of CRI's inducement in regards to the Hoffman article] was having the sentence "fluorophores can be generated in transgenic animals or transfected and implanted cells" in a multi-page article downloadable from [CRI's] website ["the CRI article"], where the sentence cites two articles, one of which is the Hoffmann article. But the broad usage described in the sentence, fluorophores generated in transgenic animals or transfected and implanted cells, covers a universe of uses and methods not covered by AntiCancer's asserted method claims. Moreover, the broad usage described was well-known before the effective filing dates of AntiCancer's asserted claims—*i.e.*, the described usage is prior art to AntiCancer's asserted claims.

**Table 4: Claim 4 of the '384 Patent**

| **Claim 4 of the '384 patent** | **AntiCancer's PICs against Carestream** (**Ex. 3**, p. A-8) | **AntiCancer's PICs against CRI** (**Ex. 1B**, p. 7) (cites only AntiCancer's own Hoffman article) |
|---|---|---|
| **4.** A method to monitor metastasis of a primary tumor in a mammalian subject which contains said primary tumor, and wherein said tumor stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor stably metastasizes, wherein said subject contains said tumor that expresses GFP and wherein said subject has been modified to contain said tumor that expresses GFP by surgical orthotopic implantation of said tumor and wherein said subject is a nude or SCID mouse or is a mouse which is syngeneic to said tumor; which method comprises monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence as a function of time at various locations in said subject by fluorescent optical tumor imaging in the intact subject. | • The picture entitled "EGFP Tumors in vivo" shows the spread of a tumor – metastasis – in two mice which contain tumors that stably express EGFP when the tumor metastasizes.<br><br>• The picture shows that the mice were modified to contain the tumor cells that express EGFP by surgical orthotopic – normal or usual position – implantation of the tumor cells in the subjects which appear to be nude or SCID mice that are syngenic – compatible for transplant- to the tumor.<br><br>• The picture shows the monitoring of the progression of metastasis by observation of the presence, absence, or intensity of the fluorescence at various locations in the intact mice by fluorescence imaging in the intact mice. | • The Hoffman article describes that imaging metastases in mice by use of GFP expressing tumor cells can be used in drug-response evaluation, for example on page 546.<br><br>• The Hoffman article, for example of pages 551-552, describes methods for whole body imaging or tumor growth by delivering transduced cells containing a fluorophore such as GFP to an animal and observing the presence, absence, or intensity of fluorescence by whole-body external imaging. |

### *3. Independent Claim 5 of the '384 Patent*

By contrast to Claim 5 in the claim chart in AntiCancer's PICs against Carestream, which cites Carestream's own brochure photograph, the allegations concerning Claim 5 in the claim chart in AntiCancer's PICs against CRI primarily cites, once again, AntiCancer's own "Hoffman article", whose only connection with CRI is a footnote to a sentence on page 3 of a CRI article, where the footnoted sentence ("fluorophores can be generated in transgenic animals or transfected and implanted cells") refers to a broad universe of uses and methods. Although AntiCancer's claim chart also cites a photograph from CRI's website, all of the key limitations in Claim 5 are cited (to the

extent that they are cited at all) as being shown in AntiCancer's "Hoffman article". Moreover, to the extent AntiCancer cites something matching Claim 5's key limitation of "said primary tumor is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor", the citation is incorrect: AntiCancer's claim chart cites a non-existent page, "page 534", in AntiCancer's "Hoffman article", which ranges from page 546 to page 556, for showing "cells to be transfected - administered by a viral vector – with the GFP gene". Thus, AntiCancer has actually cited nothing for this key provision.

Once again following this Court's analysis concerning AntiCancer's PICs against Carestream: there can be no "triable disputes of fact as to (1) a third party's direct infringement"—because AntiCancer has shown, at most, its own direct infringement, not a third party's; nor any triable disputes of fact concerning "(2) [CRI's] intent to cause that direct infringement" because it would be ridiculous to assert either that CRI encouraged AntiCancer to infringe its own patent or that the tenuous connection between CRI and AntiCancer's own Hoffman article supports any allegation that CRI had "specific, affirmative intent to cause direct infringement" of Claim 5 of the '384 patent. Moreover, AntiCancer's PICs against CRI are missing the limitation—*i.e.*, AntiCancer has not alleged any direct infringement—in Claim 5 of the '384 patent of "wherein said primary tumor is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor, said retroviral vector containing an expression system for said GFP".

///

///

///

///

///

///

///

///

///

**<u>Table 5: Claim 5 of the '384 Patent</u>**

| **<u>Claim 5 of the '384 patent</u>** | **<u>AntiCancer's PICs against Carestream</u>** (**Ex. 3**, p. A-9) | **<u>AntiCancer's PICs against CRI</u>** (**Ex. 1B**, p. 8) (primarily cites AntiCancer's own Hoffman article; also missing claim limitations) |
|---|---|---|
| **5.** A method to monitor metastasis of a primary tumor in a mammalian subject which contains said primary tumor, and<br>wherein said tumor stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor metastasizes,<br>wherein said primary tumor is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor, said retroviral vector containing an expression system for said GFP;<br>which method comprises monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence as a function of time at various locations in said subject by fluorescent optical tumor imaging in the intact subject. | • The picture entitled "EGFP Tumors in vivo" shows the spread of a tumor – metastasis – in two mice which contain tumors that stably express EGFP when the tumor metastasizes.<br><br>• The picture shows that there are two intact mice that contain tumors expressing EGFP, and it is well known that administering a retroviral vector containing an expression system for GFP is a method of choice for delivering GFP to endogenous tumors.<br><br>• The picture shows the monitoring of the progression of metastasis by observation of the presence, absence, or intensity of the fluorescence at various locations in the intact mice by fluorescence imaging in the intact mice. | • The Hoffman article describes that imaging metastases in mice by use of GFP expressing tumor cells can be used in drug-response evaluation, for example on page 546.<br><br>• The Hoffman article, for example on pages 551-552, describes methods for whole-body imaging or tumor growth by delivering transduced cells containing a fluorophore such as GFP to an animal and observing the presence, absence, or intensity of fluorescence by whole-body external imaging.<br><br>• The Hoffman article, for example on page 534, describes cells to be transfected – administered by a viral vector – with the GFP gene.<br><br>• The image entitled "GFP-Labeled Colon Tumor" shows whole-body fluorescent imaging of mice having tumors containing GFP. See Figure 1. |

### 4. *Independent Claim 5 of the '038 Patent*

By contrast to Claim 5 of the '038 patent in AntiCancer's claim chart in its PICs against Carestream, which cites Carestream's own brochure photograph, the allegations concerning Claim 5 in the claim chart in AntiCancer's PICs against CRI primarily cites, once again, AntiCancer's own "Hoffman article", whose only connection with CRI is a footnote to a sentence on page 3 of an article available on CRI's website, where the footnoted sentence ("fluorophores can be generated in

transgenic animals or transfected and implanted cells") broadly describes a broad range of usages and methods involving fluorophores, most of which are in the admitted prior art.

This time, however, AntiCancer does not even bother with the appearance of meeting the CMC Order [D.E. 49], ¶2(c),'s requirement that the "chart identify[] specifically where each element of each asserted claim is found in each Accused Instrumentality". Instead, AntiCancer completely ignores the various claim limitations in Claim 5 of the '038 patent, and merely states that "[t]he Hoffman article describes the subject as mice" and "[t]he image entitled "GFP-Labeled Colon Tumor" shows the subjects to be mice". In the face of this disregard of the CMC Order [D.E. 49], it is unnecessary to follow this Court's analysis of "triable disputes of fact" concerning AntiCancer's PICs against Carestream because ***almost all*** of Claim 5's limitations are missing from AntiCancer's claim chart, including, but not limited to: (1) "wherein said tumor stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor metastasizes"; (2) "wherein said subject contains said tumor that expresses GFP and wherein said subject is a genetically immunocompromised mouse, rat or rabbit, or a mouse, rat or rabbit which is syngeneic to said tumor"; and (3) "monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence as a function of time at various locations in said subject wherein the subject is intact". *See* Table 6 below (missing limitations highlighted in yellow)

///

///

///

///

///

///

///

///

///

///

///

**Table 6: Claim 5 of the '038 Patent**

| **Claim 5 of the '038 patent** | **AntiCancer's PICs against Carestream** (**Ex. 3**, p. A-11) | **AntiCancer's PICs against CRI** (**Ex. 1B**, p. 11) (missing almost all limitations) |
|---|---|---|
| **5.** A method to monitor metastasis of a primary tumor in a subject which is a mouse, rat or rabbit which contains said primary tumor, and<br>wherein said tumor stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor metastasizes,<br>wherein said subject contains said tumor that expresses GFP and wherein said subject is a genetically immuno-compromised mouse, rat or rabbit, or a mouse, rat or rabbit which is syngeneic to said tumor;<br>which method comprises<br>monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence as a function of time at various locations in said subject wherein the subject is intact. | • The picture entitled "EGFP Tumors in vivo" shows two intact mice which contain tumors that stably express EGFP and the mice appear to be immunocompromised mice that are syngenic –compatible for transplant- to the tumor.<br><br>• The picture shows the spread of a tumor – metastasis – through both mice and their progression being monitored by observation of the presence, absence, or intensity of the fluorescence at various locations in the intact mice by fluorescence imaging. | • The Hoffman article describes the subject as mice.<br><br>• The image entitled "GFP-Labeled Colon Tumor" shows the subjects to be mice. See Figure 1. |

### 5. *Independent Claim 9 of the '038 Patent*

Once again, and in contrast to AntiCancer's PICs against Carestream, the claim chart for Claim 9 of the '038 patent in AntiCancer's PICs against CRI (1) cites AntiCancer's own "Hoffman article" for all of the key limitations—to the extent they are specifically cited at all; (2) cites a non-existent page, "page 534", in AntiCancer's "Hoffman article" for showing "cells to be transfected – administered by a viral vector – with the GFP gene"; and (3) cites, as an afterthought, with no clear correspondence to the actual language of Claim 9, CRI's mislabeled photograph (which does not actually show any infringing use, even under AntiCancer's broadest interpretation of its claims).[9]

Following this Court's earlier analysis concerning AntiCancer's PICs against Carestream: there can be no "triable disputes of fact as to (1) a third party's direct infringement"—because AntiCancer has shown, at most, its own direct infringement, not a third party's; nor any triable

---

[9] *See* Footnote 7.

disputes of fact concerning "(2) [CRI's] intent to cause that direct infringement" because it would be ridiculous to assert either that CRI encouraged AntiCancer to infringe its own patent or that the tenuous connection between CRI and AntiCancer's own Hoffman article supports any allegation that CRI had "specific, affirmative intent to cause direct infringement" of Claim 9 of the '038 patent. Moreover, AntiCancer's claim chart is missing the limitation—*i.e.*, AntiCancer has not alleged any direct infringement—in Claim 9 of the '038 patent of "wherein said primary tumor is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor, said retroviral vector containing an expression system for said GFP".

**Table 7: Claim 9 of the '038 Patent**

| **Claim 9 of the '038 patent** | **AntiCancer's PICs against Carestream** (**Ex. 3**, p. A-12) | **AntiCancer's PICs against CRI** (**Ex. 1B**, p. 13) (primarily cites AntiCancer's own Hoffman article; missing limitations) |
|---|---|---|
| **9.** A method to monitor metastasis of a primary tumor in a mammalian subject which contains said primary tumor, and wherein said tumor stably expresses green fluorescent protein (GFP) in cells of said tumor when said tumor metastasizes,<br>wherein said primary tumor is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retroviral vector to said subject in the vicinity of said tumor, said retroviral vector containing an expression system for said GFP;<br>which method comprises monitoring the progression of metastasis by observing the presence, absence or intensity of the fluorescence as a function of time at various locations in said subject. | • The picture entitled "EGFP Tumors in vivo" shows the spread of a tumor – metastasis – in two mice which contain tumors that stably express EGFP when the tumor metastasizes.<br>• The picture shows the mice contain tumors expressing EGFP, and it is well known that administering a retroviral vector containing an expression system for GFP is a method of choice for delivering GFP to endogenous tumors.<br>• The picture shows the spread of a tumor – metastasis – through both mice and their progression being monitored by observation of the presence, absence, or intensity of the fluorescence at various locations in the intact mice by fluorescence imaging. | • The Hoffman article, for example on pages 551-552, describes methods for whole-body imaging or tumor growth by delivering transduced cells containing a fluorophore such as GFP to an animal and observing the presence, absence, or intensity of fluorescence by whole-body external imaging.<br>• The Hoffman article, for example on page 534, describes cells to be transfected – administered by a viral vector – with the GFP gene.<br>• The image entitled "GFP-Labeled Colon Tumor" shows whole-body fluorescent imaging of mice having tumors containing GFP. See Figure 1. |

### D. The Dependent Claims Fall With The Independent Claims

All claims depending from an independent claim which is non-infringing are necessarily non-infringing as well. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007); *see also*, *e.g.*, Order [D.E. 115], p. 9, lines 7-10 ("… in the 159 patent, all the other claims allegedly infringed … are dependent on claim 1; therefore, the entry of summary judgment as to claim 1 effectively means that the 159 patent drops out of the case"). Therefore, since all of the independent claims in the '384, '038, and '159 patents are not infringed (*i.e.*, Claims 1, 4, and 5 of the '384 patent; Claims 1, 5, and 9 of the '038 patent; and Claim 1 of the '159 patent), all of the remaining claims depending therefrom which AntiCancer contended were being infringed by CRI are also not infringed (*i.e.*, Claims 2, 3, 6, 7, and 11 of the '038 patent; and Claims 2, 3, 5, and 7-9 of the '159 patent).

## III. CONCLUSION

For the foregoing reasons, CRI's motion for summary judgment of non-infringement of the '384, '038, and '159 patents should be granted.

COHEN PONTANI LIEBERMAN & PAVANE LLP

Dated: July 19, 2008 By: /s Teodor J. Holmberg

Martin B. Pavane
Teodor J. Holmberg
Attorneys for Defendant and Counterclaimant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Dated: July 19, 2008 By: /s Teodor J. Holmberg

Teodor J. Holmberg
Attorney for Defendant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.
e-mail: tidge@cplplaw.com