James C. Pistorino (SBN 226496)
John F. Lynch (admitted *pro hac vice*)
Adam K. Whiting, Ph.D. (SBN 230083)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303
Telephone:  (650) 798-3500
Facsimile:   (650) 798-3600
E-Mail:  PistorinoJ@howrey.com
E-Mail:  LynchJ@howrey.com
E-Mail:  WhitingA@howrey.com

Attorneys for Defendant and Counterclaimant
MERCK & CO., INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation, | Case No. 3:07-CV-00097-JLS-RBB |
| Plaintiff, | |
| vs. | **DEFENDANT MERCK & CO., INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES** |
| CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation; MERCK & CO., INC., a New Jersey corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH INC., a Delaware corporation; and DOES 17-50, | |
| Defendants. | Hearing Date:         September 18, 2008<br>Time:                     1:30 p.m.<br>Courtroom:           6, 3rd Floor<br>Judge:         Honorable Janis L. Sammartino |
| AND RELATED COUNTERCLAIMS. | |

**HOWREY LLP**

1

## TABLE OF CONTENTS

2

Page

3    I.     BACKGROUND ...................................................................................................... 1

4          A.     Legal Standards .............................................................................. 1

5          B.     AntiCancer's December 2005 Depositions Of Merck Personnel ................... 3

6          C.     AntiCancer's Prior Claim Construction Positions .............................. 4

7          D.     AntiCancer's Failure To Come Forward With Information About The Accused Devices/Methods ........................................................................ 5

8

II.     DISCUSSION ......................................................................................................... 6

9

10          A.     Mr. Lawton's Failure To Construe The Claims Or Apply Its *Xenogen* Claim Construction Positions ................................................................. 7

11          B.     Mr. Lawton's Failure To Conduct A Reasonable Inquiry To Determine That The Allegations Were Well Grounded In Fact ........................................ 8

12

13             1.     There Is No Evidence Of A Pre-Suit Infringement Analysis .............................. 8

14             2.     There Is No Evidence From Which An Objectively Reasonable Attorney Could Have Concluded That Each Claim Limitation Reads On Any Merck Associated Device/Activity ........................................ 9

15

16                  a.     No Actual Evidence Of The Claims Of The '523 And The '968 Patents .................................................................... 9

17                  b.     No Actual Evidence Of The Claims Of The '384 And '038 ................. 11

18                  c.     No Actual Evidence Of The Claims Of The '159 .................................. 11

19    III.     CONCLUSION ..................................................................................................... 12

20

21

22

23

24

25

26

27

28

**HOWREY LLP**

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES     -i-
Case No. 3:07-CV-00097-JLS-RBB

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Page(s)**</u>

3

<u>**CASES**</u>

4

*Antonious v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002) ....................................................................2, 9, 11

5

*In re Keegan Management Co. Securities Litigation*,

6

    78 F.3d 431 (9th Cir. 1996) ..................................................................................2

7

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ........................................................................1, 2, 8

8

*S. Bravo Systems, Inc. v. Containment Technology Corp.*,

9

    96 F.3d 1372 (Fed. Cir. 1996) ..............................................................................2

10

*Superior Fireplace Co. v. Majestic Products Co.*,
    270 F.3d 1358 (Fed. Cir. 2001) ............................................................................9

11

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,

12

    208 F.3d 981 (Fed. Cir. 2000) ........................................................................1, 2, 8

13

<u>**RULES**</u>

14

Federal Rule of Civil Procedure 11 .....................................................................passim

15

Federal Rule of Civil Procedure 11(b)(3)...................................................................1

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOWREY LLP**

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN                    -ii-
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB

1    Defendant and Counterclaimant Merck & Co., Inc. ("Merck") hereby files this memorandum of

2    points and authorities in support of its motion seeking its reasonable attorneys' fees incurred in

3    resisting Plaintiff AntiCancer, Inc.'s ("AntiCancer") claims of willful infringement of five United

4    States patents because AntiCancer's attorneys, the Lawton Law Firm, did not comply with their

5    obligations to conduct a reasonable pre-suit inquiry.  Pursuant to Rule 11 of the Federal Rules of Civil

6    Procedure ("Rule 11"), before filing suit, AntiCancer's counsel had a duty to both construe the asserted

7    claims of each of the patents-in-suit and to compare those claims, on an element-by-element basis, to

8    the accused devices or methods to determine that the allegations of infringement by Merck were well

9    grounded in fact.  There has never been any evidence that Merck infringed the patents-in-suit and, had

10   AntiCancer's counsel complied with their pre-suit investigation duties, the attorneys' fees incurred by

11   Merck in resisting AntiCancer's baseless claims could have been avoided.  Having chosen to file this

12   suit without any evidence of infringement and in violation of its duty to avoid wasting the Court's and

13   defendants' resources with baseless litigation, AntiCancer's counsel should be held responsible for that

14   choice.

15   **I.      BACKGROUND**

16          **A.      Legal Standards**

17          An attorney's signature on a pleading certifies that to the best of the attorney's knowledge,

18   information and belief, formed after a reasonable inquiry, it is well grounded in fact.  *See* FED. R. CIV.

19   P. 11(b)(3); *Judin v. United States*, 110 F.3d 780, 783-84 (Fed. Cir. 1997).  In patent cases, a

20   "reasonable inquiry" includes the duty to conduct a reasonable pre-suit investigation that includes:

21   (1) construing the claims; and (2) comparing the construed claims to the accused devices/methods to

22   determine that there is a reasonable basis for asserting that they are present.  *Id.* at 784.  In *View*

23   *Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000), the Federal

24   Circuit noted:

25          … Rule 11, we think, must be interpreted to require [those contemplating an
             infringement action] to, at a bare, minimum, apply the claims of each and every patent
26          that is being brought into the lawsuit to an accused device and conclude that there is a
             reasonable basis for a finding of infringement of at least one claim of each patent so
27          asserted.  The presence of an infringement analysis plays a key role in determining the
             reasonableness of the pre-filing inquiry made in a patent infringement case under Rule
28          11.

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN          -1-
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB

1

\* \* \*

2   A patent suit can be an expensive proposition.  Defending against baseless claims of
    infringement subjects the alleged infringer to undue costs-precisely the scenario Rule 11
3   contemplates.  Performing a pre-filing assessment of the basis of each infringement
    claim is, therefore, extremely important.  In bringing a claim of infringement, the patent
4   holder, if challenged must be prepared to demonstrate to both the court and the alleged
    infringer exactly why it believed before filing the claims that it had a reasonable chance
5   of proving infringement.  Failure to do so should ordinarily result in the district court
    expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a
6   sound excuse or considerable mitigating circumstances.

7   *Id.* at 986.  While an attorney may consult with his client, Rule 11 requires the attorney to perform an

8   independent claim analysis.  *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir.

9   2002).  Likewise, an attorney may not rely solely on his client's lay opinion of infringement and must

10  make a reasonable effort to determine whether the accused device satisfies each of the claim

11  limitations.  *Id.* at 1075; *see also S. Bravo Sys., Inc. v. Containment Tech. Corp.*, 96 F.3d 1372, 1375

12  (Fed. Cir. 1996) ("If the district court finds that Bravo's attorneys conducted no investigation of the

13  factual and legal merits of Bravo's claims other than to rely on [the inventor's] lay opinion that [the

14  defendant] was infringing the 024 patent, it would be difficult to avoid the conclusion that sanctions

15  are appropriate.").

16      The Federal Circuit applies the law of the regional circuit when evaluating the application of

17  Rule 11.  *Antonious*, 275 F.3d at 1072.  In the Ninth Circuit, an attorney's prefiling actions and

18  compliance with Rule 11 are evaluated using a standard of objective reasonableness.  *See In re Keegan*

19  *Mgmt. Co. Securities Litigation*, 78 F.3d 431, 434 (9th Cir. 1996); *Antonius*, 275 F.3d at 1072 ("… an

20  attorney violates Rule 11(b)(3) when an objectively reasonable attorney would not believe, based on

21  some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on

22  the accused device either literally or under the doctrine of equivalents.").

23      Merck notes that Rule 11 is not about "after-the-fact investigation" or post-filing "colorable

24  arguments" of infringement.  Instead, Rule 11 focuses on the pre-suit period and assuring that costs are

25  not imposed on defendants absent a basis, well grounded in fact, for bringing the suit.  *Judin*, 110 F.3d

26  at 784-85.  In addition, attorneys' fees are properly awarded if even a single invalid legal or factual

27  theory is asserted, even if other asserted theories are valid.  *Antonious*, 275 F.3d at 1075.

28

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB                    -2-

1        **B.      AntiCancer's December 2005 Depositions Of Merck Personnel**

2        In August 2001, AntiCancer (through its counsel, Mr. Dan Lawton) filed a suit in California

3   State Court against several parties (including a Novartis entity and Xenogen Corp.) alleging, *inter alia*,

4   trade libel and defamation.  That suit was styled *AntiCancer, Inc. v. Novartis Institute for BioMedical*

5   *Research, et al.*, Civil Action No. GIC 772297.  At issue in that case was a scientific debate as to

6   which of various optical reporters (*e.g.*, green fluorescent protein (GFP), DsRed, or luciferase)[1] were

7   superior in certain scientific applications (*e.g.*, imaging tumors in mice).  AntiCancer is a proponent of

8   using GFP in such applications and its patent portfolio largely relates to the use of GFP in narrow

9   ways.  Xenogen and others favor other optical reporters (*e.g.*, DsRed or luciferase) as being superior to

10  GFP in these applications.  During the course of that case, Merck's activities became of interest

11  because, in 2005, Merck scientists prepared and presented a poster comparing GFP, DsRed, and

12  luciferase in certain applications.  That poster was presented at the Small Models Imaging conference

13  in Cologne, Germany in September 2005 and demonstrated that DsRed and luciferase were superior to

14  GFP in imaging tumors in whole mice.

15       In December 2005, Xenogen and AntiCancer deposed the relevant Merck scientists (Drs.

16  Bohumil Bednar and Raymond Gibson and Ms. Debbie Defeo-Jones) about their work preparing the

17  poster and their conclusions.  The poster did not include sufficient details to allow comparison to the

18  claims of the AntiCancer patents-in-suit and none of the Merck deponents were questioned about the

19  AntiCancer patents-in-suit.[2]

20       AntiCancer's claims against Novartis were dismissed as a result of an anti-SLAPP motion and

21  Novartis was awarded its attorneys' fees of $180,000.00 incurred in preparing the motion.  (*See*

22

23

24       [1]    Green fluorescent protein (GFP) is a protein found in jellyfish (*Aequorea victoria*) that glows
         green when exposed to certain wavelengths of light.  DsRed is a different protein found in corals that
25       glows red when exposed to certain wavelengths of light.  Luciferase is a protein found in fireflies that
         causes them to glow at night.  Luciferase glows as a result of a chemical reaction.  AntiCancer did not
26       invent or discover any of these optical reporters or their use in tumor cells or whole mice.

27       [2]    For example, the poster did not indicate which promoters or vectors were used, if any, in order
         to get cells to express GFP, DsRed, or luciferase.  Likewise, the poster did not indicate how the tumors
28       came to be in the mice (*e.g.*, by surgical orthotopic implantation, tail vein injection of cells, etc.).

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN                        -3-
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB

1  Declaration of James C. Pistorino In Support of Merck & Co., Inc.'s Motion for Attorneys' Fees

2  ("Pistorino Decl.") Ex. A.)

3        **C.  AntiCancer's Prior Claim Construction Positions**

4        On March 7, 2005, AntiCancer filed suit in this Court against Xenogen Corporation and others

5  in a case styled *AntiCancer, Inc. v. Xenogen Corp., et al.*, Case No. 3:05-cv-00448-JLS-AJB.  That

6  case included assertions of infringement of the same patents that are at issue in this case.[3]  During the

7  course of that case, proper constructions of some of the terms of the asserted claims were agreed.[4]

8  AntiCancer was represented in that case by the Lawton Law Firm and the agreed constructions were

9  submitted to the Court in a paper bearing Mr. Lawton's signature.  (*See* Pistorino Decl. Ex. B.)  A few

10  relevant terms are listed below:

| CLAIM ELEMENT | ANTICANCER'S AGREED PROPER CONSTRUCTION |
|---|---|
| '523 patent, Claim 1 – "wherein said vector is derived from pED-mtx" | "In addition to the above requirements, the expression vector of claim 1 must have originated from the pED-mtx vector described in Kaufman, R.J., et al., Nucleic Acid Res (1991) 19:4485-4490." |
| '159, Claim 1 – "promoter" | "A promoter is a specific sequence of DNA that controls the production of a protein from its corresponding gene.  In claim 1, the promoter must be one that is associated with the endogenous gene, and not an artificially employed promoter." |

18        The support AntiCancer cited for the agreed construction of "promoter" in the '159 claims

19  included the Notice of Allowability (*see* Pistorino Decl. Ex. C at 2 "[A prior art reference] teaches a

20  CMV[5] promoter is not a promoter of an endogenous gene.") as well as AntiCancer's own statements

21  made during prosecution.  (*See* Pistorino Decl. Ex. D at 5 ("This clarifying amendment makes clear

22  that the promoter included in the expression system is that associated with a gene that is endogenous to

23  the animal rather than an artificially employed promoter such as a viral promoter.").)

---

25      3  The five patents at issue are U.S. Patent Nos. 6,232,523; 6,235,968; 6,251,384; 6,759,038; and

26  6,649,159; referred to hereafter as the "'523," "'968," "'384," "'038," and "'159" patents, respectively.

    4  Ultimately, Judge Brewster did not issue a claim construction order in that case because the

27  Lawton Law Firm was disqualified as a result of a conflict identified during the *Markman* hearing.

    5  "CMV" refers to the cytomegalovirus.

28

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB       -4-

1    These claim construction positions are relevant to the issue before the Court because it appears

2    that AntiCancer disregarded these claim constructions when accusing Merck of infringing the patents-

3    in-suit.  For example, during a Rule 30(b)(6) deposition directed to AntiCancer's pre-suit investigation,

4    AntiCancer stated that it intended to include the CMV promoter within any meaning of "promoter"

5    when it accused Merck of infringing (though AntiCancer simultaneously refused to disclose what

6    claim construction, if any, it used).  (*See* Pistorino Decl. Ex. E at 154:2-155:19.)

7    In addition, AntiCancer has refused/failed to indicate that it actually used the Xenogen claim

8    construction of "pED-mtx" in its pre-suit investigation.  (*See* Pistorino Decl. Ex. E at 57:9-61:14

9    ("First of all, I didn't write the claim.  Second, I'm not a patent attorney.  I'm a scientist.  What I, as a

10   scientist, not as a patent attorney, not as somebody who studied patent law, as a scientist, I interpret

11   that as meaning equivalent vectors.").)

12   ### D.   AntiCancer's Failure To Come Forward With Information About The Accused Devices/Methods

13

14   On February 12, 2007, AntiCancer filed its First Amended Complaint naming Merck, a

15   Novartis entity, and 14 other new parties as defendants.  The First Amended Complaint accused Merck

16   of willfully infringing five United States patents (the '523, '968, '384, '038, and '159 patents).

17   However, the First Amended Complaint did not contain any information about the accused

18   devices/methods other than vague references that they somehow relate to an analytical device called

19   the Maestro machine manufactured by defendant Cambridge Research Instrumentation, Inc. (CRI).

20   (*See* Dkt. Entry No. 3.)  AntiCancer did not serve the 14 new parties and subsequently filed a Second

21   Amended Complaint dropping the 14 unserved parties.  The Second Amended Complaint bears the

22   signature of AntiCancer's counsel, Mr. Lawton of the Lawton Law Firm.  (*See* Dkt. Entry No. 25-1.)

23   During the Rule 26(f) conference, Merck attempted to determine which, if any, of its activities were

24   accused of infringement and Merck later sought this same information by letter.  (*See* Pistorino Decl.

25   Ex. F.)  AntiCancer failed and refused to respond.

26   Pursuant to the Court's Case Management Order, AntiCancer was required to serve

27   Infringement Contentions identifying on a claim-by-claim, element-by-element basis each Accused

28   Instrumentality for each defendant by October 15, 2007.  AntiCancer did not serve Infringement

1  Contentions on October 15, 2007.  Instead, on October 17, 2007, by regular mail, AntiCancer sent

2  Infringement Contentions that only identified articles and images appearing on co-defendant CRI's

3  website as the Accused Instrumentalities.  No separate chart was provided for Merck, Merck's name

4  did not appear in the contentions, and the articles and images had nothing to do with Merck.  (*See*

5  Pistorino Decl. Ex. G.)

6         On November 12, 2007, Merck moved for summary judgment of non-infringement.  (*See* Dkt.

7  Entry No. 62.)

8         On November 20, 2007, AntiCancer sought leave to substitute new Infringement Contentions

9  that contained allegations of infringement by Merck.  (*See* Dkt. Entry No. 65.)  The proposed

10  Infringement Contentions did not contain any allegations with respect to the '523 and '968 patents.

11  With respect to the '384, '038, and '159 patents, the proposed Infringement Contentions cited to the

12  Bednar and Defeo-Jones depositions but did not contain an element-by-element analysis showing

13  where each element of the claims was allegedly met by some accused activity.  For example, all the

14  claims of the '159 patent require both "promoters" and "endogenous genes" and none are identified in

15  AntiCancer's proposed Infringement Contentions.  Indeed, though AntiCancer accused Merck of

16  infringing Claim 9 of the '159 patent, even the proposed Infringement Contentions contain no

17  allegations with respect to that claim.  (*See* Dkt. Entry No. 65-2 at Ex. C.)

18         On January 31, 2008, Magistrate Brooks denied AntiCancer's motion for leave to substitute

19  new Infringement Contentions with respect to Merck.  (*See* Dkt. Entry No. 88.)

20         On February 6, 2008, AntiCancer moved the Court to certify for interlocutory appeal the

21  Magistrate's decision denying AntiCancer's motion for leave to amend AntiCancer's Infringement

22  Contentions.  (*See* Dkt. Entry No. 90.)  On April 14, 2008, the Court denied AntiCancer's request to

23  certify the Magistrate's decision for interlocutory appeal.  (*See* Dkt. Entry No. 106.)

24  **II.    DISCUSSION**

25         AntiCancer's allegations against Merck were baseless from the start and the attorneys' fees

26  incurred by Merck were the result of AntiCancer's counsel's failure to comply with its Rule 11

27  obligations.  As an initial matter, while AntiCancer did agree to a claim construction in the *Xenogen*

28  case, it does not appear that Mr. Lawton used that claim construction as part of his pre-suit

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB                                          -6-

1   investigation, if any, before accusing Merck of infringing.  Further, there is no evidence that Mr.

2   Lawton performed an independent claim analysis that arrived at a different claim construction prior to

3   signing the pleading accusing Merck of willful infringement.  In addition, no evidence was uncovered

4   during the prefiling investigation, if any, that would have allowed an objectively reasonable attorney to

5   conclude that each claim limitation reads on any accused device/method either literally or under the

6   doctrine of equivalents.  Accordingly, Mr. Lawton violated Rule 11 by not conducting a reasonable

7   pre-suit investigation and Merck should be awarded its attorneys' fees incurred in resisting

8   AntiCancer's allegations.

9&10   **A.    Mr. Lawton's Failure To Construe The Claims Or Apply Its *Xenogen* Claim Construction Positions**

11   As detailed above, in the *Xenogen* case, AntiCancer and Mr. Lawton agreed to proper

12   constructions of the "vector derived from pED-MTX" (as used in the claims of the '523 patent) and

13   "promoter" (as used in the claims of the '159 patent) and proposed those constructions to the Court.  In

14   the present case, during the Rule 30(b)(6) deposition AntiCancer's representative pointed to the

15   *Xenogen* agreed claim constructions as evidence that the claims were construed prior to accusing

16   Merck of infringement.  (*See* Pistorino Decl. Ex. E at 38:8-19.)  Nevertheless, AntiCancer and Mr.

17   Lawton did not actually apply the *Xenogen* claim construction positions prior to accusing Merck of

18   infringing the patents-in-suit.

19   For example, though AntiCancer and Mr. Lawton agreed that the proper construction of "vector

20   derived from pED-mtx" was that the vector "must have originated from the pED-mtx vector described

21   in Kaufman, R.J., et al., *Nucleic Acid Res* (1991) 19:4485-4490," AntiCancer refused/failed to indicate

22   that that claim construction was actually used in a pre-suit investigation, if any.  (*See* Pistorino Decl.

23   Ex. E at 154:2-155:19.)

24   Likewise, in the *Xenogen* case, AntiCancer and Mr. Lawton agreed that the proper construction

25   of "promoter" as used in the claims of the '159 patent excluded "artificially employed promoters,"

26   such as the CMV promoter.  (*See* Pistorino Decl. Ex. B.)  Again, AntiCancer refused/failed to indicate

27   that that claim construction was actually used as part of a pre-suit investigation.  (*See* Pistorino Decl.

28   Ex. E at 154:2-155:19.)  Indeed, it is clear is that AntiCancer and Mr. Lawton did not apply the

1    *Xenogen* construction of this term and that AntiCancer and Mr. Lawton intended to include the CMV

2    promoter within any meaning of the "promoter."

3         During prosecution of what became the '159 patent, AntiCancer repeatedly argued that the

4    cytomegalovirus (CMV) promoter was not a "promoter" within the meaning of the claims.  (*See*

5    Pistorino Decl. Ex. D at 5.)  In response to rejections by the Examiner, AntiCancer amended the claims

6    to include the limitation "promoter … of an endogenous gene" in order to make clear that CMV was

7    not within the scope of the claims.  Indeed, the Notice of Allowability notes that the CMV promoter is

8    not a promoter of an endogenous gene.  (*See* Pistorino Decl. Ex. C at 2 ("[A prior art reference] teaches

9    a CMV promoter which is not a promoter of an endogenous gene.").)  To the extent that Mr. Lawton

10   filed suit based on a claim construction of "promoter" that includes the CMV promoter, that

11   construction is not objectively reasonable and does not constitute compliance with AntiCancer's duty

12   to conduct a reasonable pre-suit investigation, including construing the claims.  *Judin*, 110 F.3d at 784.

13        Claim constructions that are not actually used and/or are not objectively reasonable are

14   tantamount to no claim construction at all, and Mr. Lawton did not comply with his duty to construe

15   the claims, prior to filing suit against Merck.

16        **B.    Mr. Lawton's Failure To Conduct A Reasonable Inquiry To Determine That The
               Allegations Were Well Grounded In Fact**

17

18        Mr. Lawton simply never had any evidence that Merck infringed the claims of the asserted

19   patents and did not comply with his duty to assure that the allegation of willful infringement by Merck

20   was well grounded in fact.

21             **1.    There Is No Evidence Of A Pre-Suit Infringement Analysis**

22        The presence of an infringement analysis plays a key role in determining the reasonableness of

23   the pre-filing inquiry made in a patent infringement case.  *View Eng'g*, 208 F.3d at 986.

24        Typically, a pre-suit investigation and infringement analysis includes the preparation of a claim

25   analysis that addresses the claim constructions used as well as the factual allegations in support of

26   them.  In this case, there is no evidence that AntiCancer or Mr. Lawton undertook such an analysis

27   and AntiCancer has refused to disclose whether the nature of his inquiry on the basis of attorney-

28   client/work-product privileges.  (*See* Pistorino Decl. Ex. E at 49:7-19.)  The existence of such an

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB                                    -8-

1  analysis is one of the factors typically examined in when considering requests for attorneys' fees for

2  improper pre-suit investigations in patent cases.  *See*, *e.g.*, *Superior Fireplace Co. v. Majestic Prods.*

3  *Co.*, 270 F.3d 1358, 1379 (Fed. Cir. 2001) ("From the record on appeal, it is unclear if

4  Superior … prepared claim charts …") (remanding case for findings on pre-suit investigation).

5  In light of AntiCancer's refusal to disclose its activities, there is no evidence that a pre-suit

6  infringement analysis was conducted by AntiCancer or Mr. Lawton.

7  **2.   There Is No Evidence From Which An Objectively Reasonable Attorney**
   **Could Have Concluded That Each Claim Limitation Reads On Any Merck**
8  **Associated Device/Activity**

9  As noted above, Rule 11 requires *actual evidence*, from the pre-suit investigation, from which

10  an objectively reasonable attorney could conclude that *each claim limitation* reads on the accused

11  device/method.  *Antonious*, 275 F.3d at 1075.  Neither Mr. Lawton nor AntiCancer ever had such

12  information and no such evidence exists.

13  **a.   No Actual Evidence Of The Claims Of The '523 And The '968**
   **Patents**
14

15  There was no pre-suit actual evidence of any Merck associated device/method from which an

16  objectively reasonable attorney could have concluded that all of the limitations of any claim of the

17  '523 and '968 patents were present, and Mr. Lawton and AntiCancer could not have compared this

18  non-existent evidence to the claim limitations.  Two examples suffice to show Mr. Lawton's non-

19  compliance with Rule 11.

20  All the claims of the '523 patent require a "vector derived from pED-mtx."  There was no pre-

21  suit actual evidence of what vector, if any, Merck used in any relevant cell line or experiment.  No

22  poster, document, or deposition testimony ever identified such a vector and neither Mr. Lawton nor

23  AntiCancer has identified one.  During the Rule 30(b)(6) deposition of AntiCancer, AntiCancer

24  admitted that:

25  (1)   it could not name a vector Merck had used, if any.

26  Q.  Okay.  Let me ask, did you know -- did you know the name of the vector you say
   that Merck was using prior to February 2007?

27  THE WITNESS:  Yes.  I gave you that answer, and I don't know that --
28

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB                    -9-

1    MR. PISTORINO:  Okay.

2    THE WITNESS:  -- the name.  (*See* Pistorino Decl. Ex. E at 42:7-9, 42:12-15.)

3    (2)    it made no effort to determine which vector, if any, Merck was using.

4    Q.  Okay.  Did AntiCancer make any effort to try to determine what vector Merck was
     using?

5

6    A.  No.  (*See id.* at 45:17-19.)

7    (3)    it did not know whether any vector Merck was using was derived from pED-mtx.

8    WITNESS:  Okay.  I don't know if it was derived or not, but it must have been
     equivalent because of the end result.  (*See id.* at 42:17-25.)

9    (4)    it did not even ask Merck which vectors, if any, Merck was using.

10   Q.  And my question was just whether or not AntiCancer ever inquired of Merck as to
     which vector, if any, it was using to transform its cell lines prior to February 2007.

11

12   A.  No inquiry was made.  (*See id.* at 46:11-15.)

13   As noted above, in the *Xenogen* case, Mr. Lawton and AntiCancer agreed that the proper

14   construction of this claim element was that the vector "must have originated from the pED-mtx vector

15   described in Kaufman, R.J., et al., *Nucleic Acid Res* (1991) 19:4485-4490."  However, AntiCancer did

16   not apply this meaning and, at best, at appears that AntiCancer operated using Dr. Hoffman's lay

17   scientific – "not legal" – meaning of claim terms.  (*See* Pistorino Decl. Ex. E at 57:9-61:14 ("First of

18   all, I didn't write the claim.  Second, I'm not a patent attorney.  I'm a scientist.  What I, as a scientist,

19   not as a patent attorney, not as somebody who studied patent law, as a scientist, I interpret that as

20   meaning equivalent vectors.").)

21   Likewise with respect to the '968 patent, all the claims require "a retroviral vector derived from

22   pLEIN."  Again, AntiCancer did not know the name of the vectors used, if any, in any alleged

23   infringing activity, did not make any effort to inquire as to what they were, and did not have any

24   information that Merck was using a vector derived from pLEIN.

25   Q.  Okay.  If you -- prior to February 2007, did AntiCancer have any information that
     Merck was using a vector derived from pLIEN?

26

27   THE WITNESS:  I already answered that, and I don't have that information.  (*See*
     Pistorino Decl. Ex. E at 65:21-66:2.)

28

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB                                        -10-

1    Clearly, neither Mr. Lawton nor AntiCancer made reasonable efforts to gather actual evidence

2    to compare to the limitations of the claims.  There simply was never any actual evidence from which

3    an objectively reasonable attorney could have concluded, pre-suit, that all of the limitations of any of

4    the claims of the '523 or '968 patents were present and Mr. Lawton violated Rule 11 when he signed

5    the Complaint accusing Merck of willfully infringing the '523 and '968 patents, lacking any evidence

6    to support the allegations.  Further, to the extent that AntiCancer relied upon lay claim interpretations

7    by Dr. Hoffman, that also violated Rule 11 as Mr. Lawton was required to conduct an independent

8    claim analysis.

9                    **b.       No Actual Evidence Of The Claims Of The '384 And '038**

10   As with the '523 and '968 patents, there was no pre-suit actual evidence of any Merck

11   associated device/method from which an objectively reasonable attorney could have concluded that all

12   of the limitations of any claim of the '384 and '038 patents were present.

13   For example, several of the claims of the '384 and '038 patent require "surgical orthotopic

14   implantation" of tumors.  (*See*, *e.g.*, Dkt. Entry No. 1-1 ['384 Claims 1-4 and '038 Claims 3-7].)

15   However, on questioning by Merck, AntiCancer admitted that its allegations in this regard were based

16   on "conjecture."  (*See* Pistorino Decl. Ex. E at 73:5-9 ("And they – how the cells got into the

17   mammary fat pad, my conjecture is that they first made a subcutaneous tumor and used tissue

18   fragments and put them surgically into the mammary fat pad.  That's my conjecture.").)  Obviously,

19   mere "conjecture" by lay persons is not "actual evidence" of infringement and is not sufficient to

20   comply with Rule 11.  *Antonious*, 275 F.3d at 1072.  There simply was never any actual evidence from

21   which an objectively reasonable attorney could have concluded, pre-suit, that all of the limitations of

22   any of the claims of the '384 or '038 patents were present and Mr. Lawton violated Rule 11.

23                   **c.       No Actual Evidence Of The Claims Of The '159**

24   There was no pre-suit actual evidence of any Merck associated device/method from which an

25   objectively reasonable attorney could have concluded that all of the limitations of any claim of the

26   '159 patent were present and Mr. Lawton and AntiCancer could not have compared this non-existent

27   evidence to the claim limitations.  All of the claims of the '159 patent require the use of a "promoter."

28

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB                                        -11-

1   There was no pre-suit actual evidence of what promoter, if any, Merck used in any relevant cell

2   line or experiment.  No poster, document, or deposition testimony ever identified such a promoter and

3   AntiCancer has not identified one.  As noted above, during prosecution of the '159 patent, AntiCancer

4   argued that the CMV promoter was not a "promoter" within the meaning of the claims.  Indeed, the

5   Examiner indicated that the '159 patent was only allowed to issue based on this understanding.  (*See*

6   Pistorino Decl. Ex. C at 2 ("[A prior art reference] teaches a CMV promoter which is not a promoter of

7   an endogenous gene.").)

8   However, during the Rule 30(b)(6) deposition of AntiCancer, AntiCancer admitted that it did

9   not even know what promoter Merck used and did not know whether it was the CMV promoter.  (*See*

10  Pistorino Decl. Ex. E at 152:4-155:19.)  AntiCancer even asserted attorney-client privilege to avoid

11  disclosing who made the decision to accuse Merck of infringing the '159 patent without knowing

12  which promoter, if any, Merck used.  (*See id.* at 163:17-173:4.)

13  Once, again, there was simply no actual evidence from which an objectively reasonable

14  attorney could have concluded that the allegation of willful infringement of the '159 patent by Merck

15  was well grounded in fact and Mr. Lawton violated Rule 11 when he signed the Complaint lacking

16  such evidence.

17  **III.   CONCLUSION**

18  This case represents precisely the situation in which attorneys' fees should be awarded.

19  Despite lacking any evidence that Merck ever infringed any of the asserted patents, Mr. Lawton signed

20  the Complaint accusing Merck of willfully infringing five United States patents.  As noted by the

21  Federal Circuit in *View Eng'g*, a patent suit is an expensive proposition and this one was no exception.

22  As a result of Mr. Lawton's failure to comply with his duties under Rule 11, Merck was forced to hire

23  attorneys, respond to Mr. Lawton's baseless allegations, conduct a validity analysis and prior art

24  research on five patents, participate in the claim construction process, and motion practice.  All of this

25  expense could have been avoided had Mr. Lawton complied with his obligations.

26  There is no evidence that Mr. Lawton complied with his pre-suit investigation duties.  Indeed,

27  the evidence is that Mr. Lawton did not and Merck should be awarded its reasonable attorneys' fees

28  incurred in resisting the baseless allegations.  Having chosen to file this suit lacking basic information

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB          -12-

1   (*e.g.*, the names of the vectors or promoters allegedly used by Merck), Mr. Lawton should be held

2   responsible for the unnecessary expenses that were the result of his failure to comply with his Rule 11

3   obligations.

4

5   Dated:  August 1, 2008                                 Respectfully submitted,

6                                                          HOWREY LLP

7

8                                              By:   /s/ James C. Pistorino
                                                     James C. Pistorino
9                                                    John F. Lynch (admitted *pro hac vice*)
                                                     Adam K. Whiting, Ph.D.
10
                                                     Attorneys for Defendant and Counterclaimant
11                                                   MERCK & CO., INC.

12

13

14

15

16                            **CERTIFICATE OF CONFERENCE**

17         I hereby certify that counsel for Merck met and conferred with counsel for AntiCancer on July

18   24, 2008 in an attempt to resolve this matter without Court intervention.  Counsel for AntiCancer

19   informed counsel for Merck that it does oppose this motion.

20

21                                             By:   /s/ James C. Pistorino
                                                     James C. Pistorino
22

23

24

25

26

27

28   21377028

HOWREY LLP

MERCK'S MEMORANDUM OF POINTS & AUTHORITIES IN        -13-
SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB

1  | ***AntiCancer, Inc. v. Cambridge Research & Instrumentation, Inc., et al.***
2  | **U.S.D.C. – S. D. Cal. Case No. 3:07-CV-00097-JLS-RBB**

3  | **<u>CERTIFICATE OF SERVICE</u>**

4  |     The undersigned hereby certifies that all counsel of record who are deemed to have consented
5  | to electronic service are being served this 1st day of August, 2008 with a copy of this document via the
6  | Court's CM/ECF system.  I certify that all parties in this case that have made an appearance to date are
7  | represented by counsel who are CM/ECF participants.

8  |

9  | By:   <u>/s/ James C. Pistorino</u>
10 | James C. Pistorino