# EXHIBIT E

ROBERT HOFFMAN, Ph.D.     December 5, 2007

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

```
ANTICANCER, INC., a            )
California corporation,,       )
                               )
            Plaintiff,         )
                               )
     vs.                       ) No. 3:07-CV-00097-JLS-RBB
                               )
CAMBRIDGE RESEARCH &           )
INSTRUMENTATION, INC., a       )
Delaware corporation; MERCK &  )
CO., INC., a New Jersey        )
corporation; NOVARTIS          )
INSTITUTES FOR BIOMEDICAL      )
RESEARCH, INC., a Delaware     )
corporation; and DOES 17-50,   )
                               )
            Defendants.        )
- - - - - - - - - - - - - - - -)
AND RELATED CROSS-ACTION.      )
_____)
```

30(b)6 DEPOSITION OF

Robert Hoffman, Ph.D.
Volume I, Pages 1 to 194

TAKEN ON: Wednesday, December 5, 2007

TAKEN AT: 101 West Broadway
          Suite 900
          San Diego, California

REPORTED BY:  MARGARET A. SMITH, RPR, CRR
              CSR No. 9733

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.      December 5, 2007

1      APPEARANCES:

2      FOR PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.:
              LAWTON LAW FIRM
3             550 West C Street
              Suite 1400
4             San Diego, California  92101
              (619) 595-1370
5                 BY:  DAN LAWTON

6

       FOR DEFENDANT MERCK & CO, INC.:
7             HOWREY LLP
              1950 University Avenue
8             4th Floor
              East Palo Alto, California  94303
9             (650) 798-3580
                  BY:  JAMES C. PISTORINO
10

11     FOR DEFENDANT MERCK & CO., INC.:
              HOWREY LLP
12            1950 University Avenue
              4th Floor
13            East Palo Alto, California  94303
              (650) 798-3524
14                BY:  ADAM K. WHITING, PH.D.

15

       FOR DEFENDANT CARESTREAM HEALTH, INC.:
16            SCHIFF HARDIN, LLP
              One Market, Spear Street Tower
17            Thirty-Second Floor
              San Francisco, California  94105
18            (415) 901-8700
                  BY:  W. PAUL SCHUCK
19

20     FOR DEFENDANT NOVARTIS INSTITUTES FOR BIOMEDICAL
       RESEARCH, INC.:
21            DUANE MORRIS
              101 West Broadway
22            Suite 900
              San Diego, California  92101-8285
23            (619) 744-2285
                  BY:  COURTNEY L. BUNT
24

25

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.      December 5, 2007

Page 3

```
 1        APPEARANCES (CONTINUED)

 2   THE VIDEOGRAPHER:
              MERRILL LEGAL SOLUTIONS
 3            550 West C Street
              Suite 1440
 4            San Diego, California  92101
              (619) 544-8344
 5            BY:  TED BENDRICK, VIDEO SPECIALIST

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 38

| | | |
|---|---|---|
| 09:56:39 | 1 | improper objection. |
| 09:56:40 | 2 | MR. PISTORINO:  Your follow-on instructions to |
| 09:56:41 | 3 | him.  Again, it's improper.  I'll ask you again to stop |
| 09:56:45 | 4 | doing that. |
| 09:56:46 | 5 | BY MR. PISTORINO: |
| 09:56:46 | 6 | Q    So I'll ask again -- I'll turn and try to |
| 09:56:49 | 7 | address your question, Dr. Hoffman. |
| 09:56:53 | 8 | Prior to February of 2007 when AntiCancer |
| 09:56:55 | 9 | accused Merck of infringing the '523 patent, had |
| 09:56:59 | 10 | AntiCancer conducted analysis as to the meaning of each |
| 09:57:06 | 11 | of the terms in the claims of the '523 patent? |
| 09:57:11 | 12 | MR. LAWTON:  Do you understand the question? |
| 09:57:13 | 13 | THE WITNESS:  Yes. |
| 09:57:13 | 14 | MR. LAWTON:  You may answer. |
| 09:57:15 | 15 | THE WITNESS:  Yes.  We had -- |
| 09:57:16 | 16 | BY MR. PISTORINO: |
| 09:57:16 | 17 | Q    Okay. |
| 09:57:17 | 18 | A    We had a Markman hearing in our case against |
| 09:57:19 | 19 | Xenogen, and the terms in the claims were defined. |
| 09:57:27 | 20 | Q    Okay.  So the -- so when you say, "the terms of |
| 09:57:30 | 21 | the claims were defined," is that the meaning -- from |
| 09:57:33 | 22 | the Markman hearing, is that the meaning of the terms |
| 09:57:36 | 23 | that AntiCancer applied when it accused Merck of |
| 09:57:38 | 24 | infringing the '523 patent? |
| 09:57:41 | 25 | MR. LAWTON:  The question calls for a legal |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.      December 5, 2007

Page 42

| | | |
|---|---|---|
| 13:27:12 | 1 | used a vector that would be equivalent to pED-mtx. |
| 13:27:16 | 2 | Q    Do you know any vector they were using that was |
| 13:27:19 | 3 | derived from pED-mtx? |
| 13:27:21 | 4 | A    I don't know if it was derived from that, but, |
| 13:27:24 | 5 | as I say, it had to be equivalent because of the results |
| 13:27:27 | 6 | that they reported in their deposition. |
| 13:27:29 | 7 | Q    Okay.  Let me ask, did you know -- did you know |
| 13:27:31 | 8 | the name of the vector you say that Merck was using |
| 13:27:34 | 9 | prior to February 2007? |
| 13:27:35 | 10 | MR. LAWTON:  Cumulative. |
| 13:27:36 | 11 | But you may answer again. |
| 13:27:37 | 12 | THE WITNESS:  Yes.  I gave you that answer, and |
| 13:27:39 | 13 | I don't know that -- |
| 13:27:45 | 14 | MR. PISTORINO:  Okay. |
| 13:27:46 | 15 | THE WITNESS:  -- the name. |
| 13:27:47 | 16 | BY MR. PISTORINO: |
| 13:27:47 | 17 | Q    Okay.  Your -- did you know whether or not -- |
| 13:27:51 | 18 | did you know whether any vector Merck was using was |
| 13:27:55 | 19 | derived from pED-mtx? |
| 13:27:58 | 20 | A    I answered that. |
| 13:27:59 | 21 | MR. LAWTON:  Cumulative. |
| 13:28:00 | 22 | You may answer again. |
| 13:28:01 | 23 | THE WITNESS:  Okay.  I don't know if it was |
| 13:28:02 | 24 | derived or not, but it must have been equivalent because |
| 13:28:06 | 25 | of the end result. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 45

| | | |
|---|---|---|
| 13:31:09 | 1 | A    Mm-hmm. |
| 13:31:10 | 2 | Q    Prior to February 2007, what information did |
| 13:31:12 | 3 | you have regarding what you say was the stable -- a |
| 13:31:17 | 4 | vector that resulted in stable transformation of a cell |
| 13:31:21 | 5 | line? |
| 13:31:21 | 6 | A    I -- I answered that already, and that the fact |
| 13:31:25 | 7 | that the cells could be transplanted to mice and |
| 13:31:28 | 8 | continue to brightly express GFP means it had to be |
| 13:31:33 | 9 | stable. |
| 13:31:33 | 10 | Q    Okay.  Okay.  Other than the Bednar and |
| 13:31:36 | 11 | DeFeo-Jones depositions where you say some information |
| 13:31:40 | 12 | is contained, was there any other information that you |
| 13:31:42 | 13 | had regarding the vector you say was used to transform a |
| 13:31:46 | 14 | cell line used by Merck? |
| 13:31:57 | 15 | A    Not -- the information I have is between -- is |
| 13:32:03 | 16 | contained in the two depositions. |
| 13:32:06 | 17 | Q    Okay.  Did AntiCancer make any effort to try to |
| 13:32:10 | 18 | determine what vector Merck was using? |
| 13:32:18 | 19 | A    No. |
| 13:32:19 | 20 | Q    Okay.  AntiCancer didn't write to Merck before |
| 13:32:22 | 21 | February 2007 and say what vector are you using? |
| 13:32:26 | 22 | A    AntiCancer had extensive, extensive |
| 13:32:29 | 23 | conversations with Merck through Ray Gibson about |
| 13:32:35 | 24 | licensing AntiCancer's technology, which was initiated |
| 13:32:40 | 25 | by Dr. Gibson.  It was my impression from those |

Merrill Legal Solutions
(800) 869-9132

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 46

| | | |
|---|---|---|
| 13:32:46 | 1 | discussions with Dr. Gibson, which I believe occurred at |
| 13:32:49 | 2 | the end of 2003, that Merck was in -- that Merck was in |
| 13:33:00 | 3 | possession of cell lines that brightly express GFP and |
| 13:33:09 | 4 | could be implanted in vivo. |
| 13:33:12 | 5 | Dr. Gibson told me that DeFeo-Jones was just so |
| 13:33:16 | 6 | anxious to start in vivo work with the GFP cell lines |
| 13:33:21 | 7 | that she has.  So one can conclude from that, that these |
| 13:33:26 | 8 | lines were stably transfected.  Otherwise, they would |
| 13:33:29 | 9 | have no possibility to use in vivo.  They would lose |
| 13:33:33 | 10 | their expression very rapidly. |
| 13:33:35 | 11 | Q    And my question was just whether or not |
| 13:33:37 | 12 | AntiCancer ever inquired of Merck as to which vector, if |
| 13:33:40 | 13 | any, it was using to transform its cell lines prior to |
| 13:33:43 | 14 | February 2007. |
| 13:33:48 | 15 | A    No inquiry was made. |
| 13:33:49 | 16 | Q    Okay. |
| 13:33:50 | 17 | A    Because it was assumed from the information |
| 13:33:51 | 18 | that we had obtained thus far, which I've outlined to |
| 13:33:55 | 19 | you, that such a vector must have been used. |
| 13:33:58 | 20 | Q    Okay.  Is it possible that Merck used the pLIEN |
| 13:34:01 | 21 | vector? |
| 13:34:02 | 22 | MR. LAWTON:  Cumulative and calls for |
| 13:34:04 | 23 | speculation. |
| 13:34:06 | 24 | THE WITNESS:  It's possible that they used the |
| 13:34:08 | 25 | pLIEN vector.  It can't be ruled out, because a pLIEN |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 49

| | | |
|---|---|---|
| 13:38:18 | 1 | find out the vector that was used.  Is that right? |
| 13:38:21 | 2 | A    We didn't make a direct contact in what the |
| 13:38:24 | 3 | vector was. |
| 13:38:25 | 4 | Q    Okay. |
| 13:38:25 | 5 | A    And the reason for that is we understood its |
| 13:38:28 | 6 | behavior. |
| 13:38:28 | 7 | Q    Okay.  Okay.  Did AntiCancer prepare any charts |
| 13:38:33 | 8 | comparing Merck's alleged activities to Claim 1 of the |
| 13:38:36 | 9 | '523 patent? |
| 13:38:38 | 10 | MR. LAWTON:  I'm going to object on the grounds |
| 13:38:40 | 11 | of attorney-client work product and instruct you not to |
| 13:38:43 | 12 | answer. |
| 13:38:43 | 13 | BY MR. PISTORINO: |
| 13:38:45 | 14 | Q    Okay.  Did you ever see any charts comparing |
| 13:38:48 | 15 | Merck's activities to Claim 1 of the '523 patent -- |
| 13:38:53 | 16 | MR. LAWTON:  Same -- |
| 13:38:53 | 17 | BY MR. PISTORINO: |
| 13:38:54 | 18 | Q    -- prior to February 2007? |
| 13:38:57 | 19 | MR. LAWTON:  Same objection; same instruction. |
| 13:39:02 | 20 | BY MR. PISTORINO: |
| 13:39:20 | 21 | Q    Did you -- did AntiCancer conduct any analysis |
| 13:39:23 | 22 | as to whether or not the pED-mtx limitation of Claim 1 |
| 13:39:29 | 23 | was entitled to equivalence? |
| 13:39:33 | 24 | MR. LAWTON:  All right.  Objection.  Calls for |
| 13:39:34 | 25 | a legal conclusion. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 57

| | | |
|---|---|---|
| 13:48:09 | 1 | terms to compare them to Merck's alleged activities, if |
| 13:48:11 | 2 | any. |
| 13:48:13 | 3 | A     From a scientific point of view, as I've |
| 13:48:15 | 4 | repeatedly answered, the fact that Merck could get cell |
| 13:48:21 | 5 | lines, in this case, cancer cell lines stably and highly |
| 13:48:26 | 6 | expressing GFP indicated, from a scientific point of |
| 13:48:33 | 7 | view, from a scientific basis, the vector must have been |
| 13:48:36 | 8 | equivalent. |
| 13:48:37 | 9 | Q     Okay.  Did AntiCancer use the meaning, for |
| 13:48:39 | 10 | example, of the phrase "derive from pED-mtx" to be a |
| 13:48:43 | 11 | vector originated from the pED-mtx vector described in |
| 13:48:49 | 12 | the Kaufman 1991 article? |
| 13:48:55 | 13 | A     I didn't write the claim.  I'm not a patent |
| 13:48:59 | 14 | attorney.  I cannot -- |
| 13:49:00 | 15 | MR. LAWTON:  This sounds like claim |
| 13:49:01 | 16 | construction.  It seems beyond the scope of the |
| 13:49:05 | 17 | deposition. |
| 13:49:06 | 18 | You may continue to answer.  I interrupted you. |
| 13:49:12 | 19 | THE WITNESS:  I don't know.  I think this -- to |
| 13:49:14 | 20 | me, this is something the patent attorney who wrote the |
| 13:49:21 | 21 | claim needs to answer. |
| | 22 | BY MR. PISTORINO: |
| 13:49:23 | 23 | Q     Can you tell me the meaning that AntiCancer |
| 13:49:25 | 24 | used to compare -- in fact, can you tell me the meaning |
| 13:49:30 | 25 | that AntiCancer used for the phrase "a vector derived |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 58

| | | |
|---|---|---|
| 13:49:34 | 1 | from pED-mtx" to compare it to Merck's alleged |
| 13:49:36 | 2 | activities, if any, prior to February 2007? |
| 13:49:41 | 3 | A    As I've answered again and again, Merck |
| 13:49:48 | 4 | described cancer cell lines which brightly and stably |
| 13:49:53 | 5 | expressed GFP.  In order for that to occur, it must have |
| 13:50:02 | 6 | been on a vector that had the basic properties of |
| 13:50:07 | 7 | pED-mtx. |
| 13:50:07 | 8 | Q    Okay.  And I heard you say that.  And what I'm |
| 13:50:10 | 9 | focused on is just the meaning of the phrase "a vector |
| 13:50:14 | 10 | derived from pED-mtx."  And I want to find out, if you |
| 13:50:19 | 11 | can tell me, what means did AntiCancer use for that |
| 13:50:23 | 12 | phrase to compare it to Merck's allegations? |
| 13:50:27 | 13 | MR. LAWTON:  Do you understand the question? |
| 13:50:29 | 14 | THE WITNESS:  I do.  I do.  I understand the |
| 13:50:31 | 15 | question. |
| 13:50:31 | 16 | MR. LAWTON:  Okay. |
| 13:50:31 | 17 | THE WITNESS:  I hope you do, and I'll take you |
| 13:50:33 | 18 | at your word. |
| 13:50:35 | 19 | MR. LAWTON:  It sounds like he wants to know |
| 13:50:37 | 20 | what those words meant to you. |
| 13:50:42 | 21 | THE WITNESS:  First of all, I didn't write the |
| 13:50:43 | 22 | claim.  Second, I'm not a patent attorney.  I'm a |
| 13:50:47 | 23 | scientist.  What I, as a scientist, not as a patent |
| 13:50:54 | 24 | attorney, not as somebody who studied patent law, as a |
| 13:50:59 | 25 | scientist, I interpret that as meaning equivalent |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 59

| | | |
|---|---|---|
| 13:51:02 | 1 | vectors. |
| 13:51:02 | 2 | BY MR. PISTORINO: |
| 13:51:03 | 3 | Q    Okay.  If I understand you correctly, then, you |
| 13:51:05 | 4 | did not apply the meaning originating from the pED-mtx |
| 13:51:08 | 5 | vector described in the -- in the Kaufman 1991 article. |
| 13:51:13 | 6 | Is that right? |
| 13:51:14 | 7 | MR. LAWTON:  It's argumentative.  And I think |
| 13:51:16 | 8 | the document from which counsel is reading ought to be |
| 13:51:19 | 9 | put in front of the witness. |
| 13:51:21 | 10 | MR. PISTORINO:  Again -- again, that's clearly |
| 13:51:23 | 11 | beyond the court's instruction. |
| 13:51:25 | 12 | BY MR. PISTORINO: |
| 13:51:26 | 13 | Q    Can you answer my question, Dr. Hoffman? |
| 13:51:29 | 14 | MR. LAWTON:  It's not beyond the court's |
| 13:51:30 | 15 | instruction, and I don't think the court's instruction |
| 13:51:35 | 16 | was for you to interrupt objections when they were being |
| 13:51:36 | 17 | made. |
| 13:51:38 | 18 | You may answer if you feel able.  If you don't |
| 13:51:41 | 19 | feel able, then you should state that. |
| 13:51:43 | 20 | THE WITNESS:  The pED-mtx vector was described |
| 13:51:46 | 21 | in the Kaufman paper. |
| 13:51:52 | 22 | To my understanding as a scientist, the |
| 13:51:59 | 23 | statement that "vectors derive from pED-mtx" could be |
| 13:52:06 | 24 | equivalent vectors.  It could mean other things that I |
| 13:52:14 | 25 | just don't know.  That's it.  Best answer I can give |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.   December 5, 2007

Page 60

| 13:52:19 | 1 | you. |
| 13:52:19 | 2 | BY MR. PISTORINO: |
| 13:52:20 | 3 | Q    Okay.  And I just want to try to find out the |
| 13:52:23 | 4 | meaning that you used prior to February 2007 in your |
| 13:52:26 | 5 | comparison to Merck's alleged activities. |
| 13:52:30 | 6 | If I understand you correctly, the meaning that |
| 13:52:31 | 7 | you used was anything that you felt was equivalent to |
| 13:52:35 | 8 | pED-mtx.  Is that correct? |
| 13:52:37 | 9 | A    Not felt.  By my analysis. |
| 13:52:43 | 10 | Q    Okay.  You did not describe -- then again, you |
| 13:52:46 | 11 | did not use the meaning of a phrase "a vector derived |
| 13:52:52 | 12 | from a pED-mtx" -- you did not use -- sorry.  Let me |
| 13:52:55 | 13 | start all over again. |
| 13:52:56 | 14 | When looking at the claim element, "a vector |
| 13:52:58 | 15 | derived from pED-mtx," you did not use the meaning "a |
| 13:53:01 | 16 | vector that originated from the pED-mtx vector."  Is |
| 13:53:04 | 17 | that right? |
| 13:53:05 | 18 | MR. LAWTON:  It's argumentative, and it's claim |
| 13:53:08 | 19 | construction discovery now, which is really beyond the |
| 13:53:12 | 20 | scope of this deposition. |
| 13:53:13 | 21 | If you have anything to add to your previous |
| 13:53:16 | 22 | answer and/or if you fell able to answer the question, |
| 13:53:18 | 23 | you may do so. |
| 13:53:20 | 24 | THE WITNESS:  I think I'd like to repeat again |
| 13:53:23 | 25 | what I've said.  And that is from my analysis, Merck |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 61

| | | |
|---|---|---|
| 13:53:28 | 1 | used a vector in which a GFP could be inserted and in |
| 13:53:35 | 2 | which the vector contained a so-called selectable |
| 13:53:42 | 3 | measure in which you could add a chemical to the cells |
| 13:53:48 | 4 | to increase the activity of its -- of GFP or increase |
| 13:53:54 | 5 | its expression.  That's what pED-mtx can do.  It |
| 13:53:59 | 6 | resulted in a bright and stable cell line expressing |
| 13:54:03 | 7 | GFP.  This is exactly what Bednar and DeFeo-Jones |
| 13:54:11 | 8 | described in their depositions.  So I concluded they |
| 13:54:14 | 9 | used such a vector in which GFP could be inserted and |
| 13:54:18 | 10 | which had another gene or marker in which -- for which a |
| 13:54:23 | 11 | selective agent or poison could be added to the cells |
| 13:54:26 | 12 | such that resistant cells would express GFP brightly and |
| 13:54:34 | 13 | stably.  This is the -- how pED-mtx functions, and this |
| 13:54:38 | 14 | is how the Merck vector functions. |
| 13:54:40 | 15 | BY MR. PISTORINO: |
| 13:54:41 | 16 | Q     Okay.  And I've -- I hear you say that, and |
| 13:54:45 | 17 | maybe my question is unclear.  I'll try again.  I'm |
| 13:54:49 | 18 | trying to find the meaning that you used for this |
| 13:54:51 | 19 | phrase, sir. |
| 13:54:53 | 20 | A     Which phrase? |
| 13:54:53 | 21 | Q     "A vector derived from pED-mtx."  What meaning |
| 13:54:55 | 22 | you used for that phrase. |
| 13:54:57 | 23 | MR. LAWTON:  Cumulative. |
| 13:54:58 | 24 | You may answer again. |
| | 25 | |

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 65

| | | |
|---|---|---|
| 13:59:57 | 1 | voluntarily so we don't have people trying to solve it |
| 14:00:00 | 2 | involuntarily. |
| 14:00:02 | 3 | Should we? |
| 14:00:05 | 4 | MR. PISTORINO:  Sure.  I'll take a break. |
| 14:00:06 | 5 | MR. LAWTON:  All right.  Let's go off the |
| 14:00:07 | 6 | record. |
| 14:00:08 | 7 | VIDEOGRAPHER:  Going off the record.  The time |
| 14:00:09 | 8 | is 2:00 p.m. |
| 14:00:27 | 9 | (Discussion off the record.) |
| 14:06:56 | 10 | VIDEOGRAPHER:  Back on the record.  The time is |
| 14:06:58 | 11 | 2:07 p.m. |
| 14:07:00 | 12 | MR. PISTORINO:  I'm going to go ahead and place |
| 14:07:02 | 13 | in front of you what we've marked as Exhibit 7.  This is |
| 14:07:04 | 14 | a copy of the '968 patent. |
| 14:07:08 | 15 | (Exhibit 7 was marked for |
| 14:07:09 | 16 | identification.) |
| 14:07:09 | 17 | BY MR. PISTORINO: |
| 14:07:14 | 18 | Q    You've seen this one before.  Isn't that right, |
| 14:07:16 | 19 | sir? |
| 14:07:17 | 20 | A    Yes. |
| 14:07:17 | 21 | Q    Okay.  If you -- prior to February 2007, did |
| 14:07:28 | 22 | AntiCancer have any information that Merck was using a |
| 14:07:31 | 23 | vector derived from pLIEN? |
| 14:07:36 | 24 | MR. LAWTON:  All right.  Cumulative. |
| 14:07:37 | 25 | You may answer. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 66

| | | |
|---|---|---|
| 14:07:40 | 1 | THE WITNESS:  I already answered that, and I |
| 14:07:44 | 2 | don't have that information. |
| 14:07:45 | 3 | BY MR. PISTORINO: |
| 14:07:46 | 4 | Q    Okay.  Did AntiCancer make any effort to |
| 14:07:49 | 5 | determine whether or not Merck was using a vector |
| 14:07:51 | 6 | derived from pLIEN? |
| 14:07:54 | 7 | A    As I've testified already, I analyzed |
| 14:07:59 | 8 | Dr. Bednar's testimony.  I analyzed Ms. DeFeo-Jones' |
| 14:08:06 | 9 | testimony about their work with cells that highly |
| 14:08:12 | 10 | express and stably express GFP, and I came to the |
| 14:08:18 | 11 | conclusion that these vectors would be equivalent to |
| 14:08:21 | 12 | pED-mtx.  They would be equivalent to pLIEN. |
| 14:08:25 | 13 | Q    Was there someplace -- you said you analyzed |
| 14:08:29 | 14 | Dr. Bednar's deposition.  Is that correct? |
| 14:08:33 | 15 | A    I believe I said that many times. |
| 14:08:35 | 16 | Q    Okay.  Was there someplace in Dr. Bednar's |
| 14:08:39 | 17 | deposition that you found where he told you what vector |
| 14:08:43 | 18 | Merck was using? |
| 14:08:48 | 19 | A    I've already answered that.  A lot of times -- |
| 14:08:54 | 20 | MR. LAWTON:  You may answer again. |
| 14:08:55 | 21 | THE WITNESS:  -- they didn't -- they didn't |
| 14:08:57 | 22 | state the vector. |
| 14:09:01 | 23 | BY MR. PISTORINO: |
| 14:09:01 | 24 | Q    Was there any place in Ms. DeFeo-Jones' |
| 14:09:04 | 25 | deposition where she identified the vector that Merck |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 73

| | | |
|---|---|---|
| 14:21:28 | 1 | or not Merck implanted a tumor into the mouse? |
| 14:21:32 | 2 | A     They certainly injected cells into the tail |
| 14:21:37 | 3 | vein.  That's clear in the depositions.  That's one kind |
| 14:21:39 | 4 | of model, one mouse, or whatever numbers of mice they |
| 14:21:43 | 5 | implanted that way.  And they -- how the cells got into |
| 14:22:02 | 6 | the mammary fat pad, my conjecture is that they first |
| 14:22:10 | 7 | made a subcutaneous tumor and used tissue fragments and |
| 14:22:14 | 8 | put them surgically into the mammary fat pad.  That's my |
| 14:22:17 | 9 | conjecture. |
| 14:22:18 | 10 | Q     Okay. |
| 14:22:20 | 11 | A     Excuse me.  While I'm speaking here, I would |
| 14:22:22 | 12 | just like to add one thing to my previous testimony.  Is |
| 14:22:26 | 13 | that there is another evidence of infringement that I |
| 14:22:33 | 14 | noted was that in the 2006 international -- at SMI -- |
| 14:22:47 | 15 | I'm sorry.  Not 2006.  2005.  In the 2005 Society of |
| 14:22:56 | 16 | Molecular Imaging meeting in Cologne, Germany, Bednar |
| 14:23:05 | 17 | presented a poster.  I -- I attended that meeting.  I |
| 14:23:09 | 18 | saw that poster, showing GFP imaging, noninvasive GFP |
| 14:23:16 | 19 | imaging with the animals that he's describing in his |
| 14:23:20 | 20 | deposition. |
| 14:23:21 | 21 | Q     Okay.  And I just make sure -- |
| 14:23:23 | 22 | MR. LAWTON:  Were you -- were you through |
| 14:23:24 | 23 | speaking, or were you interrupted just then? |
| 14:23:28 | 24 | THE WITNESS:  I -- I -- I think I finished. |
| 14:23:30 | 25 | MR. LAWTON:  Okay. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 152

| | | |
|---|---|---|
| 17:10:54 | 1 | evasive, but my answer has to be, because it's the |
| 17:11:04 | 2 | truth, they were based, in part, on these experiments. |
| 17:11:09 | 3 | BY MR. PISTORINO: |
| 17:11:09 | 4 | Q    Okay.  Do you know -- at the time that |
| 17:11:11 | 5 | AntiCancer accused Merck of infringing the '159 patent, |
| 17:11:15 | 6 | with respect to the GFP experiment shown in |
| 17:11:18 | 7 | Exhibit No. 8, did AntiCancer know whether or not the |
| 17:11:23 | 8 | vector Merck used had the CMV promoter? |
| 17:11:30 | 9 | MR. LAWTON:  It's cumulative. |
| 17:11:31 | 10 | But you may answer. |
| 17:11:38 | 11 | THE WITNESS:  The CMV promoter. |
| 17:11:42 | 12 | MR. PISTORINO:  That's correct. |
| 17:11:43 | 13 | THE WITNESS:  Yes.  Please.  It -- I wasn't -- |
| 17:11:46 | 14 | I didn't mean that as a question.  I meant it as kind of |
| 17:11:48 | 15 | an emphasis with a pause. |
| 17:11:53 | 16 | MR. PISTORINO:  Okay. |
| 17:11:54 | 17 | THE WITNESS:  Remember, I'm a professor. |
| 17:11:56 | 18 | MR. PISTORINO:  Okay. |
| 17:12:01 | 19 | THE WITNESS:  The CMV promoter is widely used. |
| 17:12:04 | 20 | It's a strong and good promoter.  It's a ubiquitous |
| 17:12:07 | 21 | promoter.  It's a viral promoter.  The CMV, the |
| 17:12:09 | 22 | cytomegalovirus, or cytomegala.  I don't know how they |
| 17:12:13 | 23 | say it. |
| 17:12:16 | 24 | So this is a promoter that's widely used and |
| 17:12:19 | 25 | could very well have been in the Merck vectors or vector |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 153

| | | |
|---|---|---|
| 17:12:28 | 1 | used to make these highly expressing GFP cells and |
| 17:12:35 | 2 | stably expressing GFP cells.  Could have been, could |
| 17:12:38 | 3 | very well have been. |
| 17:12:39 | 4 | BY MR. PISTORINO: |
| 17:12:39 | 5 | Q    Okay.  And knowing that Merck may have been |
| 17:12:46 | 6 | using a promoter that had the CMV vector in it -- I'm |
| 17:12:51 | 7 | sorry. |
| 17:12:52 | 8 | Knowing that Merck may have been using a |
| 17:12:54 | 9 | promoter that had CMV in it, AntiCancer accused Merck of |
| 17:12:58 | 10 | infringing the '159 patent based on the experiments with |
| 17:13:02 | 11 | GFP shown in Exhibit 8.  Correct? |
| 17:13:05 | 12 | MR. LAWTON:  Cumulative. |
| 17:13:06 | 13 | You may answer if you have anything to add to |
| 17:13:09 | 14 | your previous testimony. |
| 17:13:14 | 15 | THE WITNESS:  Well, let me try to clarify.  We |
| 17:13:16 | 16 | knew Merck was using a promoter to drive GFP, just as we |
| 17:13:23 | 17 | know the sun comes up in the morning.  This is a |
| 17:13:25 | 18 | scientific given.  Were they using CMV?  We didn't know. |
| 17:13:33 | 19 | We didn't know.  It could have been.  But the |
| 17:13:36 | 20 | allegations were not based on -- the infringement of the |
| 17:13:42 | 21 | '159 patent were not based on whether CMV was used or |
| 17:13:46 | 22 | not.  The '159 patent doesn't identify any promoter.  A |
| 17:13:51 | 23 | promoter. |
| | 24 | BY MR. PISTORINO: |
| 17:13:52 | 25 | Q    At the -- before -- |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 154

| | | |
|---|---|---|
| 17:13:53 | 1 | A    It's -- it's what's said in the '159 patent. |
| 17:13:57 | 2 | Q    Okay.  Before AntiCancer accused Merck of |
| 17:13:59 | 3 | infringing the '159 patent, did AntiCancer make any |
| 17:14:02 | 4 | effort to determine whether or not the promoter that |
| 17:14:05 | 5 | Merck was using was the CMV promoter? |
| 17:14:10 | 6 | MR. LAWTON:  It's cumulative. |
| 17:14:11 | 7 | You may answer again. |
| 17:14:13 | 8 | THE WITNESS:  I -- I -- I really think I've |
| 17:14:17 | 9 | given this answer just really clearly.  But I'll give it |
| 17:14:22 | 10 | again.  We didn't -- the CMV is a widely used promoter. |
| 17:14:28 | 11 | We did not know if that was in Merck's vector or not. |
| 17:14:33 | 12 | It didn't matter.  The claim of the '159 patent is a |
| 17:14:40 | 13 | promoter. |
| 17:14:41 | 14 | BY MR. PISTORINO: |
| 17:14:44 | 15 | Q    Okay.  And when AntiCancer -- or when |
| 17:14:49 | 16 | AntiCancer accused Merck of infringing the '159 patent, |
| 17:14:52 | 17 | the meaning of the word "promoter" included within it -- |
| 17:14:57 | 18 | I'm sorry. |
| 17:14:58 | 19 | The meaning of the word "promoter" that |
| 17:15:00 | 20 | AntiCancer used when it accused Merck of infringing the |
| 17:15:03 | 21 | '159 patent included the CMV promoter.  Correct? |
| 17:15:10 | 22 | A    The '159 patent in the claim says a promoter. |
| 17:15:18 | 23 | CMV promoter is a promoter.  So it's in this collection |
| 17:15:25 | 24 | of promoters.  CMV promoter is a promoter. |
| 17:15:34 | 25 | Q    Okay.  So just to make sure I understand. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 155

| | | |
|---|---|---|
| 17:15:37 | 1 | So when AntiCancer accused Merck of infringing |
| 17:15:40 | 2 | the '159 patent, AntiCancer intended to include CMV |
| 17:15:45 | 3 | promoters as promoters that would infringe Claim 1. |
| 17:15:49 | 4 | Correct? |
| 17:15:58 | 5 | A     AntiCancer would -- AntiCancer asserted the |
| 17:16:05 | 6 | '159 patent.  It asserted it as written.  It says |
| 17:16:13 | 7 | promoter.  It's a general term.  It -- the CMV promoter |
| 17:16:25 | 8 | is in this wide world of promoters.  It's a promoter. |
| 17:16:31 | 9 | It's a good promoter.  It's a widely used promoter, but |
| 17:16:35 | 10 | there's nothing particular about it that would not place |
| 17:16:39 | 11 | it right in the middle of this patent. |
| 17:16:44 | 12 | Q     Okay.  Okay. |
| 17:16:45 | 13 | A     So it -- we didn't think about which particular |
| 17:16:51 | 14 | promoter.  We didn't have access to this information, |
| 17:16:55 | 15 | but we knew from Clontech, CMV, whatever, there's |
| 17:17:01 | 16 | vectors that have -- they all have good promoters, and |
| 17:17:07 | 17 | some of them have more than one promoter.  And this |
| 17:17:15 | 18 | is -- this is not the point of -- which promoter is not |
| 17:17:19 | 19 | the point of the '159 patent. |
| 17:17:22 | 20 | Q     Okay.  And, believe me, I really don't want to |
| 17:17:25 | 21 | belabor this point, but you mentioned during the course |
| 17:17:28 | 22 | of your answer there that AntiCancer didn't have access |
| 17:17:30 | 23 | to the information of the promoters that Merck was |
| 17:17:32 | 24 | using. |
| 17:17:33 | 25 | But it's true, isn't it, AntiCancer just didn't |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.      December 5, 2007

Page 163

| 17:29:30 | 1 | Q    -- the '159 patent, it didn't matter.  Is that |
| 17:29:32 | 2 | right? |
| 17:29:34 | 3 | A    The '159 patent states "promoter."  If you go |
| 17:29:42 | 4 | to CGFP, the fluorophore, you're going to see its |
| 17:29:51 | 5 | fluorescence.  It's linked to a promoter. |
| 17:29:53 | 6 | Q    Let me just ask -- |
| 17:29:54 | 7 |      MR. LAWTON:  Were you through answering, or |
| 17:29:56 | 8 | were you in the midst? |
| 17:29:58 | 9 |      THE WITNESS:  Yeah, I think I'm through.  It's |
| 17:30:00 | 10 | okay. |
| 17:30:00 | 11 | BY MR. PISTORINO: |
| 17:30:00 | 12 | Q    Okay.  Who -- let me ask this:  Who decided at |
| 17:30:04 | 13 | AntiCancer to accuse Merck of infringing the '159 patent |
| 17:30:09 | 14 | without knowing whether or not the promoter that Merck |
| 17:30:12 | 15 | was using was the CMV promoter or not? |
| 17:30:20 | 16 |      MR. LAWTON:  I encourage you -- |
| 17:30:21 | 17 |      THE WITNESS:  Do I have to answer that? |
| 17:30:23 | 18 |      MR. LAWTON:  Not if it would require you to |
| 17:30:26 | 19 | disclose attorney-client communications.  If you can |
| 17:30:28 | 20 | answer from some basis independent of attorney-client |
| 17:30:31 | 21 | communications, you may.  Otherwise, you will not. |
| 17:30:35 | 22 |      THE WITNESS:  I -- I cannot answer that |
| 17:30:37 | 23 | independent of attorney-client -- |
| 17:30:40 | 24 |      MR. LAWTON:  Then you are -- |
| 17:30:41 | 25 |      THE WITNESS:  -- interaction. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 164

| | | |
|---|---|---|
| 17:30:42 | 1 | MR. LAWTON:  Then you are instructed not to |
| 17:30:43 | 2 | answer. |
| 17:30:43 | 3 | BY MR. PISTORINO: |
| 17:30:44 | 4 | Q    And I'm trying to be clear.  I certainly -- |
| 17:30:45 | 5 | well, actually, I'll just try to be very clear with the |
| 17:30:48 | 6 | question.  We'll try that. |
| 17:30:50 | 7 | Who decided -- who was the person that decided |
| 17:30:53 | 8 | to accuse Merck of infringing the '159 patent in |
| 17:30:58 | 9 | February of 2007 without knowing whether or not Merck |
| 17:31:03 | 10 | was using the CMV promoter? |
| 17:31:10 | 11 | A    I -- I can't answer that independent of |
| 17:31:13 | 12 | attorney-client privilege. |
| 17:31:15 | 13 | Q    Okay.  Whatever your attorney told you or |
| 17:31:18 | 14 | didn't tell you, I don't care.  I mean, either you |
| 17:31:21 | 15 | decided to accuse Merck of infringing, or you didn't. |
| 17:31:24 | 16 | Was it you?  Were you the person that made that |
| 17:31:27 | 17 | decision? |
| 17:31:28 | 18 | A    You're asking me something that occurred within |
| 17:31:33 | 19 | a conversation with a lawyer. |
| 17:31:38 | 20 | MR. LAWTON:  Therefore, you shall not answer. |
| 17:31:41 | 21 | THE WITNESS:  Yeah. |
| 17:31:41 | 22 | BY MR. PISTORINO: |
| 17:31:41 | 23 | Q    And I'm not interested in what your lawyer told |
| 17:31:43 | 24 | you or you told your lawyer.  I want to know who decided |
| 17:31:46 | 25 | to accuse Merck of infringing.  Was it you? |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 165

| 17:31:49 | 1 | MR. LAWTON:  Same objection; same instruction. |
| 17:31:54 | 2 | You shall not answer.  You don't need to say |
| 17:31:59 | 3 | anything. |
| 17:31:59 | 4 | BY MR. PISTORINO: |
| 17:32:00 | 5 | Q     Before accusing Merck of -- actually, does |
| 17:32:03 | 6 | AntiCancer have a board of directors? |
| 17:32:10 | 7 | A     Yes. |
| 17:32:12 | 8 | Q     Okay.  Was -- did the board of directors decide |
| 17:32:15 | 9 | to accuse Merck of infringing the '159 patent in |
| 17:32:19 | 10 | February of 2007 without knowing whether or not Merck |
| 17:32:22 | 11 | used the CMV promoter? |
| 17:32:27 | 12 | MR. LAWTON:  This question also seeks to elicit |
| 17:32:30 | 13 | information that I believe is protected by the |
| 17:32:37 | 14 | attorney-client privilege.  It's not, on its face -- |
| 17:32:39 | 15 | it's not, on its face, explicitly calling for that |
| 17:32:43 | 16 | information, but I believe that it would require the |
| 17:32:45 | 17 | witness to call upon communications between AntiCancer's |
| 17:32:51 | 18 | board and counsel to answer it. |
| 17:32:56 | 19 | So there may be an attorney-client objection, |
| 17:33:00 | 20 | and it if it would call on you to divulge |
| 17:33:05 | 21 | attorney-client communications, then you shall not |
| 17:33:07 | 22 | answer. |
| 17:33:09 | 23 | It also exceeds the scope of the deposition, as |
| 17:33:11 | 24 | noticed by Merck. |
| 17:33:17 | 25 | THE WITNESS:  This is an attorney-client |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT  HOFFMAN,  Ph.D.     December  5,  2007

Page 166

| | | |
|---|---|---|
| 17:33:19 | 1 | matter. |
| 23:59:57 | 2 | BY MR. PISTORINO: |
| 17:33:20 | 3 | Q    Okay.  And I'm -- and I'm -- and I'm trying to |
| 17:33:22 | 4 | be very clear.  The decision, not who else talked about |
| 17:33:26 | 5 | it, what somebody else said.  Who mentally made that |
| 17:33:31 | 6 | decision?  Was that you, sir? |
| 17:33:34 | 7 | MR. LAWTON:  Same instruction. |
| 17:33:36 | 8 | MR. PISTORINO:  And -- and just so I'll know, |
| 17:33:37 | 9 | the basis of the instruction for him not to tell me who |
| 17:33:40 | 10 | made the decision -- whether or not he was the one who |
| 17:33:42 | 11 | made the decision is what? |
| 17:33:44 | 12 | MR. LAWTON:  The attorney-client privilege. |
| 17:33:45 | 13 | BY MR. PISTORINO: |
| 17:33:45 | 14 | Q    Okay.  Well, sir, in your mind, when you made |
| 17:33:48 | 15 | the decision -- I don't want to know whether or not you |
| 17:33:50 | 16 | told anybody or anybody else told you anything. |
| 17:33:53 | 17 | MR. LAWTON:  Assumes facts not in evidence. |
| 17:33:53 | 18 | BY MR. PISTORINO: |
| 17:33:53 | 19 | Q    Just -- just in your mind, did you make the |
| 17:33:57 | 20 | decision to accuse Merck of infringing the '159 patent |
| 17:34:02 | 21 | in February 2007 without knowing whether or not Merck |
| 17:34:06 | 22 | was using the CMV promoter? |
| 17:34:12 | 23 | A    Okay.  The first part of your question said I |
| 17:34:16 | 24 | made that decision. |
| 17:34:17 | 25 | MR. LAWTON:  So it does assumes facts not in |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 167

| 17:34:18 | 1 | evidence. |
| 17:34:25 | 2 | THE WITNESS:  I cannot discuss this matter |
| 17:34:28 | 3 | independent of attorney-client interaction. |
| 17:34:37 | 4 | MR. PISTORINO:  Okay. |
| 17:34:37 | 5 | MR. LAWTON:  Then you should not answer it. |
| 17:34:40 | 6 | Thirty minutes ago, counsel said he had less |
| 17:34:42 | 7 | than five minutes.  So I'd like some sort of good faith |
| 17:34:47 | 8 | estimate about -- |
| 17:34:49 | 9 | MR. PISTORINO:  And, believe me, I'm trying to |
| 17:34:50 | 10 | finish this line, and I'll believe we'll be done. |
| 17:34:54 | 11 | MR. LAWTON:  Well, I'm sorry.  I'm afraid |
| 17:34:55 | 12 | that's not satisfactory to me.  It's after 5:30 p.m.  We |
| 17:35:01 | 13 | were told 30 minutes ago that there was less than five |
| 17:35:04 | 14 | minutes remaining.  So I'd like some sort of good faith |
| 17:35:07 | 15 | estimate in terms of minutes. |
| 17:35:11 | 16 | MR. PISTORINO:  I believe your representation |
| 17:35:12 | 17 | is incorrect.  I believe I told you 30 minutes ago it |
| 17:35:15 | 18 | would depend on the witness's answers and whether or not |
| 17:35:19 | 19 | they were long.  And I believe we're sticking on this |
| 17:35:22 | 20 | one point here, which I'm trying to finish this line of |
| 17:35:24 | 21 | questioning.  And I believe it will be over.  So I have |
| 17:35:27 | 22 | no intention of keeping anybody here unduly. |
| 17:35:32 | 23 | MR. LAWTON:  What is your estimate of minutes? |
| 17:35:34 | 24 | MR. PISTORINO:  I can't give an estimate of |
| 17:35:36 | 25 | minutes right now because I don't know what the |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

| | | |
|---|---|---|
| 17:35:38 | 1 | witness's answers will be.  If the witness is capable of |
| 17:35:41 | 2 | answering the factual question I'm asking here, we may |
| 17:35:44 | 3 | be done in a matter of a few minutes.  But if the |
| 17:35:47 | 4 | witness is not able to answer that, the factual question |
| 17:35:50 | 5 | that I'm trying to answer, that I'm trying to rephrase |
| 17:35:53 | 6 | several times, it may take longer.  I can't say. |
| 17:35:57 | 7 | MR. LAWTON:  All right.  If you -- |
| 17:35:58 | 8 | MR. PISTORINO:  Why don't I try again on the |
| 17:36:00 | 9 | factual question. |
| 17:36:01 | 10 | MR. LAWTON:  If you don't have an estimate of |
| 17:36:02 | 11 | minutes, then we're going to leave in five minutes |
| 17:36:04 | 12 | whether you think you're done or not.  If you do have an |
| 17:36:06 | 13 | estimate of minutes, which I would appreciate, then we |
| 17:36:09 | 14 | may be persuaded to stay longer.  It is after 5:30 p.m. |
| 17:36:14 | 15 | The witness came here this morning, cleared his day to |
| 17:36:19 | 16 | do this.  Most of the morning was wasted by yourself. |
| 17:36:25 | 17 | It's now after 5:30 p.m. |
| 17:36:26 | 18 | MR. PISTORINO:  I'll tell you what.  I'll try |
| 17:36:27 | 19 | to deal with it this way.  I've tried to deal with you |
| 17:36:31 | 20 | at a certain level here.  I'll just go back and ask the |
| 17:36:33 | 21 | question.  We'll see what we have.  We have the order |
| 17:36:35 | 22 | from the court today. |
| 17:36:36 | 23 | BY MR. PISTORINO: |
| 17:36:36 | 24 | Q     Let me try again, sir.  And I just want to try |
| 17:36:39 | 25 | to be very clear on -- and maybe we won't be able to get |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 169

| 17:36:42 | 1 | an answer.  Your attorney will instruct you not to |
| 17:36:45 | 2 | answer.  We'll try. |
| 17:36:46 | 3 | I'm not asking for what your lawyer told you. |
| 17:36:48 | 4 | I'm not asking for what you told your lawyer.  All |
| 17:36:50 | 5 | right.  Just the fact. |
| 17:36:53 | 6 | Were you the person that, in your mind, decided |
| 17:37:00 | 7 | to accuse Merck of infringing the '159 patent in |
| 17:37:05 | 8 | February 2007, without knowing whether Merck was using |
| 17:37:08 | 9 | the CMV promoter or not? |
| 17:37:16 | 10 | MR. LAWTON:  If you can answer without |
| 17:37:20 | 11 | reference to attorney-client communications, you should |
| 17:37:22 | 12 | do so. |
| 17:37:29 | 13 | THE WITNESS:  All decisions in this case were |
| 17:37:34 | 14 | made in the presence of attorneys. |
| 17:37:38 | 15 | BY MR. PISTORINO: |
| 17:37:42 | 16 | Q   Which -- and I understand you're telling me |
| 17:37:44 | 17 | that.  And -- and -- |
| 17:37:46 | 18 | A   That's because it's the truth. |
| 17:37:47 | 19 | Q   And it very well may be.  And I'm trying to -- |
| 17:37:51 | 20 | MR. LAWTON:  Did you say "it very well may be"? |
| 17:37:53 | 21 | He said it's the truth. |
| 17:37:54 | 22 | MR. PISTORINO:  Okay. |
| 17:37:54 | 23 | MR. LAWTON:  Your statement "it very well may |
| 17:37:56 | 24 | be" is sort of a lawyerly way of saying, well, I don't |
| 17:38:00 | 25 | believe you or people tell me things all the time that |

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 170

| | | |
|---|---|---|
| 17:38:02 | 1 | they say are the truth.  Please don't -- |
| 17:38:05 | 2 | MR. PISTORINO:  Doctor -- |
| 17:38:06 | 3 | MR. LAWTON:  Please -- sir.  Don't disrespect |
| 17:38:09 | 4 | the witness.  Okay.  Thank you. |
| 17:38:11 | 5 | BY MR. PISTORINO: |
| 17:38:11 | 6 | Q    Dr. Hoffman, let me just try again.  Okay. |
| 17:38:14 | 7 | And -- and I understand it is very common that decisions |
| 17:38:19 | 8 | are made in the presence of attorneys.  That's true. |
| 17:38:21 | 9 | And decisions are very frequently made after consulting |
| 17:38:25 | 10 | with attorneys.  That's true.  Okay. |
| 17:38:27 | 11 | However, the fact of a decision, whether or not |
| 17:38:29 | 12 | you made it, is not subject to privilege.  And so that's |
| 17:38:34 | 13 | why -- that's why I'm just trying to focus on that one |
| 17:38:36 | 14 | fact.  I don't care who contributed to it or not. |
| 17:38:39 | 15 | MR. LAWTON:  Is there a question, or is this a |
| 17:38:41 | 16 | soliloquy? |
| 17:38:41 | 17 | BY MR. PISTORINO: |
| 17:38:43 | 18 | Q    I don't care who contributed to it or who you |
| 17:38:46 | 19 | communicated it to or didn't communicate it to. |
| 17:38:49 | 20 | Did you -- in your mind, were you the one that |
| 17:38:52 | 21 | decided to accuse Merck of infringing the '159 patent in |
| 17:38:57 | 22 | February 2007, without knowing whether or not Merck was |
| 17:39:00 | 23 | using the CMV promoter? |
| 17:39:03 | 24 | MR. LAWTON:  You should answer only if you can |
| 17:39:07 | 25 | from a source of information outside attorney-client |

Merrill Legal Solutions
(800) 869-9132

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

| | | |
|---|---|---|
| 17:39:12 | 1 | communications. |
| 17:39:18 | 2 | THE WITNESS:  I -- I don't know how to answer |
| 17:39:20 | 3 | it in any other way.  The decision was made in the |
| 17:39:27 | 4 | presence of attorneys.  If I tell you how that decision |
| 17:39:32 | 5 | was made, then I'm -- I'm, whatever you're calling it, |
| 17:39:37 | 6 | breaching the attorney, waiving, I don't know what the |
| 17:39:41 | 7 | legal term is, the attorney-client privilege.  This is |
| 17:39:45 | 8 | the God's truth. |
| 17:39:47 | 9 | BY MR. PISTORINO: |
| 17:39:48 | 10 | Q     And, again, that's why I'm trying to -- trying |
| 17:39:50 | 11 | to be very clear, and it sounds again to me like you |
| 17:39:52 | 12 | might be misunderstanding my question. |
| 17:39:54 | 13 | A     No.  I understand your question very clearly. |
| 17:39:56 | 14 | You're -- I believe you want to say, in your mind, I |
| 17:40:01 | 15 | made this decision.  That's what you -- I mean, you even |
| 17:40:06 | 16 | made a slip of the tongue and said "when you made the |
| 17:40:08 | 17 | decision."  That, I think, is what's in your mind.  The |
| 17:40:11 | 18 | truth of the matter is, the decision was made in the |
| 17:40:14 | 19 | presence of attorneys.  If I told you how that decision |
| 17:40:17 | 20 | was made at that time, I would be divulging information |
| 17:40:23 | 21 | that has attorney-client privilege.  I can't tell you |
| 17:40:26 | 22 | that information, and I've -- and I've been told if you |
| 17:40:29 | 23 | waive the attorney-client privilege, you're gone.  And |
| 17:40:32 | 24 | I'm not going to do it.  I'm not trying to be evasive |
| 17:40:36 | 25 | here.  I'm not trying to hide anything.  I'm trying to |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

Page 172

| | | |
|---|---|---|
| 17:40:38 | 1 | just not waive, not breach -- I don't know what the |
| 17:40:45 | 2 | other legal terms are -- the attorney-client privilege. |
| 17:40:49 | 3 | Q     Okay. |
| 17:40:50 | 4 | A     So I can't divulge this.  I can't answer your |
| 17:40:53 | 5 | question.  Not that I want to hide it. |
| 17:40:58 | 6 | Q     You've mentioned several times -- |
| 17:40:59 | 7 | MR. LAWTON:  It's now -- |
| 17:41:00 | 8 | MR. PISTORINO:  Excuse me just for a moment. |
| 17:41:02 | 9 | MR. LAWTON:  There's no "excuse me just for one |
| 17:41:04 | 10 | moment."  It's now after 5:40 p.m.  We are leaving at |
| 17:41:07 | 11 | 5:45 p.m. |
| 17:41:08 | 12 | MR. PISTORINO:  Okay. |
| 17:41:09 | 13 | MR. LAWTON:  You can use the remaining time the |
| 17:41:11 | 14 | way that you like. |
| 17:41:12 | 15 | MR. PISTORINO:  Okay. |
| 17:41:12 | 16 | BY MR. PISTORINO: |
| 17:41:14 | 17 | Q     Dr. Hoffman, during your statement there -- and |
| 17:41:17 | 18 | this, again, I think is just the point of clarity here. |
| 17:41:20 | 19 | You repeatedly said I'm asking you how the decision was |
| 17:41:23 | 20 | made. |
| 17:41:23 | 21 | A     Mm-hmm. |
| 17:41:24 | 22 | Q     And I'm not asking you that.  I'm just asking |
| 17:41:26 | 23 | who made the decision and -- and whether or not that |
| 17:41:29 | 24 | person was you. |
| 17:41:30 | 25 | A     Okay.  Who made that decision is part of how. |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.    December 5, 2007

Page 173

| | | |
|---|---|---|
| 17:41:37 | 1 | Imagine more than one person making this decision. |
| 17:41:41 | 2 | Imagine another making this decision.  Who gives you how |
| 17:41:46 | 3 | or at least part of how? |
| 17:41:48 | 4 | Q    Okay. |
| 17:41:50 | 5 | A    And so it gives you at least part of how.  This |
| 17:41:55 | 6 | decision was made in the context of attorney-client |
| 17:41:59 | 7 | privilege.  I can't tell you the answer to this. |
| 17:42:03 | 8 | Q    Okay.  Your title at AntiCancer, you're the -- |
| 17:42:06 | 9 | what is your title at AntiCancer, sir? |
| 17:42:09 | 10 | A    I don't know.  President.  CEO. |
| 17:42:12 | 11 | Q    You were president and CEO of AntiCancer in |
| 17:42:15 | 12 | February of 2007.  Correct? |
| 17:42:16 | 13 | A    Correct. |
| 17:42:35 | 14 | MR. PISTORINO:  Okay.  Let's stop. |
| 17:42:38 | 15 | THE REPORTER:  Off the record, then? |
| 17:42:40 | 16 | MR. LAWTON:  Does Mr. Schuck have questions? |
| 17:42:50 | 17 | MR. SCHUCK:  No, I don't. |
| 17:42:51 | 18 | MR. LAWTON:  Does Ms. Bunt have questions? |
| 17:42:53 | 19 | MS. BUNT:  No, I don't. |
| 17:42:55 | 20 | MR. LAWTON:  Well, I have a couple of |
| 17:42:56 | 21 | questions. |
| 17:42:57 | 22 | MR. PISTORINO:  Okay. |
| 17:42:58 | 23 | |
| 17:42:58 | 24 | EXAMINATION |
| | 25 | |

02301679-e841-49eb-8536-fe8b79d45682

ROBERT HOFFMAN, Ph.D.     December 5, 2007

```
 1    STATE OF CALIFORNIA )

 2                        : SS.

 3    COUNTY OF SAN DIEGO )

 4

 5        I, Margaret A. Smith, CSR No. 9733, RPR, CRR, in

 6    and for the State of California, do hereby certify:

 7        that prior to being examined, the witness named in

 8    the foregoing deposition was by me duly sworn to testify

 9    the truth, the whole truth, and nothing but the truth;

10        that said deposition was taken down by me in

11    shorthand at the time and place therein named, and

12    thereafter reduced to typewriting under my direction,

13    and the same is a true, correct, and complete transcript

14    of said proceedings.

15        I further certify that I am not interested in the

16    event of the action.

17        Witness my hand this _____day of _____2007.

18

19

20

21                            _____

22                            MARGARET A. SMITH, RPR, CRR
                               CSR NO. 9733
23

24

25
```

02301679-e841-49eb-8536-fe8b79d45682