UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTICANCER, INC., | ) | Case no. 07CV0097-JLS(RBB) |
| | ) | |
| Plaintiff, | ) | San Diego, California |
| | ) | |
| vs. | ) | Monday, |
| | ) | July 21, 2008 |
| CAMBRIDGE RESEARCH &, | ) | 10:00 a.m. |
| INSTRUMENTATION, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| ______________________________ | ) | |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff Anticancer, Inc.: | DANIEL A. LAWTON, ESQ.<br>Lawton Law Firm<br>402 West Broadway, Suite 1860<br>San Diego, California 92101<br>(619) 595-1370 |
| For the Defendant Cambridge Research & Instrumentation: | TEODOR J. HOLMBERG, ESQ.<br>Cohen, Pontani, Lieberman & Pavane<br>551 Fifth Avenue, Suite 1210<br>New York, New York 10176<br>(212) 687-2770 |
| | ALLISON GODDARD, ESQ.<br>Jaczko Goddard, LLP<br>4401 Eastgate Mall<br>San Diego, California 92121<br>(858) 550-6150 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Transcript Ordered By: ALLISON GODDARD, ESQ.

Transcriber: Sherri Lattuca
Echo Reporting, Inc.
6336 Greenwich Drive, Suite B
San Diego, California 92122
(858) 453-7590

SAN DIEGO, CALIFORNIA MONDAY, JULY 21, 2008 10:00 A.M.

--oOo--

(Call to order of the Court.)

THE CLERK: Calling case number 07CV97-JLS, Anticancer versus Cambridge Research and Instrumentation. Today's calendar is set for a hearing on Defendant Cambridge Research and Instrumentation's motion for a protective order staying discovery regarding infringement and quashing improper discovery.

THE COURT: May I have appearances, please?

MR. LAWTON: Thank you, your Honor, good morning. Dan Lawton, appearing on behalf of the Plaintiff and counter Defendant, Anticancer, Inc.

THE COURT: Good morning.

MR. LAWTON: Morning.

MR. HOLMBERG: Good morning, your Honor. Ted Holmberg, appearing on behalf of Defendant and counter Claimant, Cambridge Research and Instrumentation, otherwise known as CRI. And I have local counsel here as well, Allison Goddard.

MS. GODDARD: Good morning, your Honor.

THE COURT: Good morning. Counsel, as you know from our prior hearings, my practice is to give a tentative ruling and then let you address it if you care to. This morning, however, I'm going to start off with questions as

opposed to a tentative. And that is, I did, even before it was personally delivered, look at the docket this morning to see that the Defendant has filed its motion for summary judgment on the patents -- let's see -- 38, 159 and 384.

So, Mr. Holmberg, from your perspective, if all of your motions were granted by Judge Sammartino, what would remain of the case?

MR. HOLMBERG: Nothing. Right now we have, I believe it's four different summary judgment motions pending. But if all of them were granted, there would be nothing remaining.

THE COURT: Mr. Lawton?

MR. LAWTON: I would agree with that as to CRI, your Honor.

THE COURT: But not as to other Defendants.

MR. LAWTON: Correct, your Honor.

THE COURT: All right. With that then, I'll go into my tentative ruling. This involves a motion for a protective order staying discovery that was filed by the Defendant CRI. The Plaintiff has filed an opposition to the motion and a motion to compel production of documents and request for an award of sanctions. The Defendant CRI filed a reply and exhibits and the Plaintiff has filed a sur-reply.

The Plaintiff in this case is the owner of five

patents, the 523 patent issued in 2001, the 38 patent issued in 2004, the 968 patent issued in 2001, 384 patent issued in 2001, and the 159 patent issued in 2003.

The patents cover a method of studying tumor growth by marking tumors with a visible protein known as “green fluorescent protein, GFP”, and taking images of fluorescent tumors.

Besides the action pending before this Court, Anticancer filed a separate lawsuit on June 1, 2007, titled, “Anticancer versus Care Stream Health”, case number 07CV1004, which is assigned to Judge Sammartino, as is this one. In the Care Stream action, Anticancer alleged that Care Stream infringed the same five patents at issue here, and one additional patent not present in this case.

In this matter, the Plaintiff served its preliminary infringement contentions on October 17, 2007. Because the contentions did not contain allegations of infringement against Defendants Merck and NIBR, those Defendants filed motions for summary judgment of non-infringement and Judge Sammartino granted both motions on May 14, 2008.

Care Stream also filed a motion for summary judgment for non-infringement, alleging that Anticancer’s preliminary infringement contentions as to Care Stream were deficient because they did not allege infringement of some

of the specific claim limitations.

Judge Sammartino granted summary judgment relating to claim one of the 38 patent and 384 patents and all associated dependent claims. The District Court also granted Care Stream's motion for summary judgment with respect to the 159, 523, 831 and 968 patents.

In light of Judge Sammartino's rulings, she vacated the schedule for claim construction briefing and Markman hearing in these two cases and a new schedule has not yet been set.

Since the District Court's ruling, three additional summary judgment motions have been filed by Defendant CRI -- or four, actually. First, a motion for summary judgment of non-infringement of the 523 and 968 patents, based on the deficiencies in the preliminary infringement contentions.

Next, a motion for summary judgment of invalidity for the 38 and 159 patents. Then a motion for summary judgment of invalidity on the 384 patent. Those motions are set to be heard by Judge Sammartino on August 21, 2008.

This Saturday, the 19th, CRI filed yet another motion for summary judgment on the 384, 38 and 159 patents, also set for hearing on August 21.

On June 19, Anticancer and CRI filed a joint motion to vacate this Court's case management order and to

stay the case management order requirements regarding notification of discovery disputes. The Plaintiffs and Defendant sought to vacate all remaining dates in the order, including deadlines for completing discovery, designating experts, and asked that they be re-set after the District Court set a new claim construction schedule. The Court granted the motion.

The discovery dispute currently pending relates to a deposition notice for a 30(b)(6) deposition which was served on April 9 and accompanied by five document production requests. The Defendant objected to each of the requests for production on the basis that they were overbroad, unduly burdensome and oppressive, and did not describe with reasonable particularity the items to be produced or inspected.

The Court was advised of the pending discovery dispute between the parties and held a discovery conference on June 3. At that time the Court indicated that Defendant should have filed a motion for protective order rather than simply refusing to produce discovery. The motion pending before the Court was subsequently filed.

In addition, the hearing today relates to another set of discovery requests served on the Defendant on May 20 which was the first set of requests for production of documents.

Addressing the motion for protective order and stay of discovery first; the Defendant CRI is requesting that the Court stay all discovery relating to patent infringement until after Judge Sammartino issues a ruling on, at that time, three pending and one proposed summary judgment motion, as of this date, four pending summary judgment motions.

> "In deciding whether a stay of discovery is appropriate, the Court has broad discretion."

That proposition is stated in Orchid Biosciences, Inc. vs. St. Louis University, 198 FRD, 670 at 672, out of the Southern District of California, decided in 2001.

> "Stays are generally disfavored by the courts because they may interfere with judicial efficiency and result in unnecessary litigation later in the case."

This was stated by the Fifth Circuit in the Landry vs. Airline Pilot's Association, 901 F 2nd, 404 at 436. Again, that's a Fifth Circuit Case decided in 1990.

In Quest Communications vs. Herakles, H-E-R-A-K-L-E-S, 2007, U.S. District Lexus, 57-757, at asterisks four and five, out of the Eastern District of California, on August 8 of 2007, the Court wrote, quote,

"Motions to stay discovery may be granted upon a showing of good cause by the moving party or where, quote, 'justice requires to protect a party or person from annoyance, embarrassment, oppression or undue expense', end quote."

And in that case, the Quest court was quoting from Rule 26(c)(4).

In this district, Judge Brewster, in GTE Wireless vs. Qualcomm, 194 FRD 284 at 289, cited in 2000, wrote, quote,

"In determining whether any of these factors apply, the Court should inevitably balance the harm of staying discovery with the benefit of allowing discovery to continue."

Here, to decide whether stay is appropriate, the Court will examine two items. First, whether there is one or more pending motions that are potentially dispositive of the entire case or at least dispositive on the issue for which discovery is sought. And the answer to that question is yes. There are four pending summary judgment motions that are, as a whole, are dispositive of this case, as to this Defendant.

The next consideration is whether the pending dispositive motion can be decided without additional discovery. If the answer to this question is well, is in the affirmative, a protective order may issue. This test was set forth in Pacific Lumber Company vs. National Union Fire Insurance, 220 FRD 349 at pages 351 through 52, out of the Northern District of California, decided in 2003.

The crux of this dispute will relate to whether the pending summary judgment motions are likely to be decided in the Defendant's answer -- in the Defendant's favor. In the related Care Stream case Judge Sammartino granted the Defendant's motion for summary judgment and addressed in part whether additional discovery or additional facts could be determinative. She stated in part, quote,

"Anticancer's infringement allegations fail to make out a prima facie case of patent infringement because Anticancer omitted certain parties and/or specific claim limitations. Additional elements will not cure these allegations which are legally insufficient regardless of the amount of evidence that Anticancer might be able to muster in support of them. The Defendant's pending summary judgment motions, like Care Stream's

motion, rests on the deficiencies in Plaintiff's preliminary infringement contentions. The Plaintiff, however, claims that, quote, 'Documents, facts and witnesses proving the Defendant's infringement will disable CRI from proving the absence of a genuine issue of material fact on an infringement.'"

In effect, this argument has already been rejected by Judge Sammartino. It appears to this Court that CRI's pending summary judgment motions can be resolved without further discovery relating to infringement.

After finding the threshold questions have been met, the Court, quote,

"Should take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted",

end quote. That's from the GTE Wireless case, 192 FRD at 286.

The GTE court went on to state that the moving party has a burden of establishing, quote, "a clear possibility", end quote, of success on the motion. CRI's summary judgment motion asserts that Plaintiff's preliminary

infringement contentions omitted some of the claim limitations of the patents in suit, and accordingly, Anticancer has failed to allege a prima facie case of patent infringement.

CRI argues that for claim one of the 159 patent, the contentions do not include the limitation of, quote,

> "A method to monitor the ability of a promoter to promote expression",

end quote. For the 384 patent, CRI asserts that the contentions fail to allege the limitation, quote,

> "Administering a protocol or drug to a mammalian subject",

end quote, of independent claim one. The limitation, quote,

> "Wherein said subject has been modified to contain said tumor, that expresses GFP by surgical orthotopic implantation",

end quote, from independent claim four, and a limitation of, quote,

> "A primary tumor which is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retro viral vector to said subject in the vicinity of said tumor",

end quote, from claim five.

For the 38 patent, CRI asserts that the limitation in claim one is of control -- I'm sorry, that the limitation in claim one of control is missing, as are the limitations of a method to monitor metastasis and a, quote,

"Subject which is a genetically immuno-compromised mouse, rat or rabbit",

end quote, from claim five, and a limitation of, quote,

"A primary tumor which is endogenous to said mammalian subject and expresses said GFP as a result of locally administering a retro viral vector to said subject in the vicinity of said tumor",

which is from claim nine.

When she partially granted Care Stream's motion for summary judgment on non-infringement, Judge Sammartino found that the Plaintiff's infringement contentions were deficient as to Care Stream because they did not allege the following limitations. Quote,

"A method to monitor the ability of a promoter to promote expression",

end quote, from claim -- that was from claim one of the 159 patent, and next a, quote,

"A control which contains a similar

tumor that expresses green fluorescent
protein",

end quote, which is from claim one of the 38 patent. And next, or C, quote,

"Administering said protocol or drug to
a mammalian subject",

end quote, from claim one of the 384 patent.

In support of its argument for a stay, CRI points to the similarities between the Plaintiff's infringement contentions against Care Stream and its contentions against CRI for the 159 patent.

It is difficult for this Court to predict how Judge Sammartino will rule on the motions pending in this case. But to be entitled to a stay of discovery, the Defendant need only show that it is clearly possible that it will succeed in obtaining summary judgment of non-infringement. It need not show that it is guaranteed victory.

In the GTE Wireless case, Judge Brewster suggested that clear possibility might be something less than a 50 per cent chance of succeeding. In the opinion of this Court, CRI has made such a showing. Still, the Court must balance the harm caused by a discovery stay if one were imposed. The Defendant argues that no prejudice will occur if discovery relating to infringement is stayed because the

case management schedule previously in place has been vacated at the joint request of the parties. The Defendant also points out that in the interim, the parties are free to engage in discovery relating to issues aside from infringement, including invalidity, damages and other issues.

In light of all these considerations, the Court feels that a stay of discovery relating to infringement will not prejudice the case and there is a clear possibility that CRI will succeed on its summary judgment motion and the request for discovery should be granted -- discovery stay should be granted.

Next, turning to the Plaintiff's motion to compel specific discovery, the Defendant CRI has objected to discovery requests served by the Plaintiff, Anticancer, asserting that many of the requests, as drafted, are overly broad and unduly burdensome. The Plaintiff moves to compel responses to each of the discovery requests.

And starting with the discovery relating to the Rule 30(b)(6) deposition, there are three document requests that were included in the Rule 30(b)(6) notice. The Defendant asserts that the requests are vague, overbroad and unduly burdensome.

First, CRI moves to quash document request number two which reads, quote,

"All documents concerning GFP and/or any fluorescing protein of any kind."

The Defendant argued that there are no meaningful limits to this request and suggested an alternative limited in time and scope. The Plaintiff has not responded to CRI's proposed modification of the request.

Nevertheless, the request as drafted is overbroad and compliance with it would be unduly burdensome. So the tentative ruling is to grant the objection and quash the request for documents specified in request number two.

Next, CRI is seeking to quash document request number five which states,

"All documents concerning the deposition topics identified in Exhibit A of this deposition notice."

Specifically, CRI is addressing two deposition topics. Topic seven relates to your answer and counterclaims to Plaintiff's second amended complaint. Topic eight relates to the initial disclosures and documents described which would include electronic and paper records. And both topics would seek testimony related to all facts, circumstances and documents related to them.

CRI asserts that both of these requests are vague and overbroad. The Defendant is correct in objecting to these requests on those grounds. First, the requests are so

broad that they encompass many different categories of documents. They do not state with reasonable particularity what documents are sought. Accordingly, the request covered by topics seven and eight as part of document request number five should be quashed.

The next item is the Plaintiff's first request for production of documents. The Defendant is moving to quash all 14 requests included in Plaintiff's first set of document requests.

With the exception of three and six, all other document requests appear to be overbroad and unduly burdensome and lacking in specificity. All the document requests relating to affirmative defenses fail to provide the Court or the responding party with sufficient guidance to produce documents.

As far as items three and six, these documents would necessarily be limited in time by the dates of the patent in issue. Since we have patents issuing in 2001, the scope of the document requests appear to be somewhat limited in time and the category is more descriptive than others. So the tentative ruling is to grant the Plaintiff's motion to compel the documents for numbers three and six only.

Next is a request for inspection of the Maestro (phonetic) machine. Frankly, the Court was not provided much argument on this request. There was an objection to it

and a request -- and a response that the machine should be produced. Neither side has sufficiently addressed whether this request should be produced and since it's the Plaintiff's burden to compel production, the tentative is to deny production of the Maestro machine.

So those are my tentative thoughts. Whoever would like to address them, may.

MR. HOLMBERG: Thank you, your Honor.

MR. LAWTON: Well, your Honor, could I go first? I believe it's our motion.

MR. HOLMBERG: I believe I should go first.

THE COURT: Each side is a moving party on different items, so Mr. Holmberg, if you'd like to start with what you're addressing, that's fine.

MR. HOLMBERG: First thing I wanted to do was -- thank you, your Honor. Good morning.

THE COURT: Morning.

MR. HOLMBERG: First thing I wanted to do was to clarify, because the two different motions kind of affect each other. Since we do have the motion to stay discovery on infringement, that means that even the three and six in the document requests, those are only related to infringement, and thus the first part of the ruling would mean it would --

THE COURT: See, I don't know that.

MR. HOLMBERG: I believe we actually have that in the motion and also I believe in the motion --

THE COURT: No, no, you're not following me. I don't know that the documents covered by three and six would only relate to infringement. Conceivably they could relate to invalidity as well. Depends on what the documents are.

MR. HOLMBERG: Well, I believe we argued that they were only related to infringement and I don't think that was opposed.

THE COURT: We'll see.

MR. HOLMBERG: Can I ask your Honor's permission to brief that particular issue, non-infringement?

THE COURT: We've had enough briefing on this, and discovery conferences, on this item. Let me give you a little guidance. If the documents are only related to infringement and I continue with my tentative, then you're correct, they need not be responded to. If documents relate to both infringement and invalidity or something else, then they should be produced. If there's any question about whether they relate to both, I err on the side of production.

MR. HOLMBERG: Okay. But the only other thing I wanted to approach today was the different characterizations of how this came about. CRI has been characterized as stonewalling, just simply trying to deny discovery. I'm

just hoping that the filings have made it clear that what happened was based on the Court's May 14th ruling. It became clear that the evidence of infringement could not be used by Anticancer to oppose our summary judgment motions. Therefore, it seemed basically a waste to go forward with discovery. And that was the basis behind that. Not a desire to stonewall and not a last-minute attempt to stop discovery.

For now, I think those are the only two issues I wanted to state.

THE COURT: Okay. Mr. Lawton?

MR. LAWTON: Thank you, your Honor. Judge Sammartino denied summary judgment to Care Stream on multiple claims of the 038 and the 384 patents. The fallacy or the false premise that underlies the CRI motion for a protective order is that Judge Sammartino just granted all of those previous defense motions for summary judgment. She didn't. She granted two of them in their entirety, NIBR and Merck, based on defects in preliminary infringement contentions that are not before the Court and that having nothing to do with CRI. And nothing in common with the infringement contentions as to CRI, which were served independently and which have no relationship to those other charts.

The Court focuses on the Care Stream charts. The

Court, I think, overlooks that Judge Sammartino looked beyond the charts as to multiple claims of the 038 and the 384 patents.

Claims five through 11 of the 038 patent, Judge Sammartino denied summary judgment to Care Stream. Claims four and five of the 384 patent, Judge Sammartino denied summary judgment to Care Stream. And in doing that, Judge Sammartino made explicit reference to not only allegations of Anticancer, but proof on the motion.

Bear with me, please, your Honor, for a moment. Judge Sammartino's order, and I'm quoting from it at page nine, lines 17 through 19, alluded to,

> "Anticancer's allegations and proof of Care Stream's infringement."

Judge Sammartino went on, on page 12, at lines 13 and 14, to say that,

> "Anticancer's charts provided adequate allegations showing where each element of each asserted claim is found within each accused instrumentality."

They ignore that as though Care Stream had gotten summary judgment in toto, which it didn't.

So how can the Court, taking a preliminary peek at a motion which is claimed to be a cookie cutter of the Care Stream motion, say that it's clearly possible that Judge

Sammartino will go beyond what she did on May 14th and grant in its entirety a motion for summary judgment that is a cookie cutter of motion for summary judgment that was denied in part? I don't think this Court can do that. There's no precedent in this court or in this circuit for the order that the Court is tentatively making.

THE COURT: Well, if Judge Sammartino even grants summary judgment in part, a stay would reduce the issues being litigated, would result in less expense, would streamline the litigation. That by itself would be sufficient for a discovery stay.

MR. LAWTON: Well, if the goal of this exercise is to reduce expense for the defense and to streamline the litigation --

THE COURT: And the Plaintiff.

MR. LAWTON: Are the only values that we are after the streamlining litigation and reducing expense?

THE COURT: And judicial efficiency.

MR. LAWTON: I could -- I'm sorry?

THE COURT: And judicial efficiency. There are multiple values at issue here.

MR. LAWTON: Well, one of the values that is also at issue for me is presenting the merits of this case to the Court, which is --

THE COURT: This doesn't preclude you from doing

it. It just changes the timetable.

MR. LAWTON: The Court is setting up a self-fulfilling prophecy. Here's the self-fulfilling prophecy. It's going to give them an out, give them a pass on discovery that would help me fairly oppose their summary judgment motions. They won't have to produce anything except for some ancillary material that will not go to those motions. And August 21 will roll around; in the meantime, they will have filed a reply paper saying, "Oh, Anticancer, by the way, hasn't provided any facts sufficient to create a triable issue and that warrants summary judgment." And if I haven't provided any facts to Judge Sammartino, then Judge Sammartino will agree; summary judgment and end of story. And we've streamlined --

THE COURT: But isn't that the argument you made to her last time?

MR. LAWTON: I'm sorry?

THE COURT: Isn't that the argument you made to her last time and she did not accept it?

MR. LAWTON: In a different setting, in a very different setting. The discovery requests that we propounded here were propounded before summary judgment motion was filed by these -- by this particular Defendant.

And a 56(f) motion is not a motion for a protective order. There's a different burden, there's

different rules. The Court is setting up a self-fulfilling prophecy in which I will be denied of the opportunity to present facts to the Court on August 21 and in the papers I file before then, which they will then use as justification for the summary judgment which will -- which Judge Sammartino, if she is not given any facts, will want to grant, and rightly so. And in doing that, Judge Sammartino will refer back to the ruling that we're talking about here this morning and say well, it's too bad, but the Court has already denied discovery and that wasn't, you know, her doing, that was your Honor's doing, but -- you know, it isn't fair to me, it isn't fair to my client to do that. There's no --

THE COURT: Then your option is to make a Rule 56(f) request.

MR. LAWTON: That is a different burden and there are different rules and Judge Sammartino has already denied that in another setting. And I don't see how Judge Sammartino is going to, on a human level, be persuaded to grant a 56(f) motion when she's already seen that there's a motion denying a protective order, or granting a protective order rather, and denying my motion to compel.

THE COURT: Well, you've already --

MR. LAWTON: How am I going to persuade her to grant a 56(f) motion when another judicial officer, in

looking at the same discovery, has said no?

THE COURT: You've already told me that this case is different than the Care Stream case, so a Rule 56(f) motion made here would be different than a Rule 56(f) motion made there.

MR. LAWTON: It is no consolation to my client that there's a possibility in the future that another judicial officer may -- may give me some discovery that your Honor is refusing. That is of no consolation. How can that be of any consolation? There's no precedent for this in this court or in this circuit. They've looked hard to find any court that's ever granted a protective order in a similar situation. They haven't found it.

The Court made reference to the Quest case and its ruling. They made reference to it in their motion. When you read the Quest case, what you see is that the Court in that case denied the motion for protective order and said, "You've got to provide the discovery even though there's a dispositive motion pending. Provide the discovery." That was the result, that was the holding of the Quest case.

GTE Wireless is the only case they've got in which in these circumstances, or something remotely similar, a protective order was granted. But in that case, Judge Brewster relied expressly on the fact -- on the harm created by proprietary and confidential information being turned

over in litigation, and he said that would harm Qualcomm and, "I'm not going to put Qualcomm in that situation by forcing the disgorgement of this type of information." That tipped the balance of the harm, so that's -- that was the basis for his decision.

There's no such issue in this situation. They belatedly tried to raise it. They filed a reply paper that said, "Oh, and by the way, we would have to turn over confidential and proprietary information. We didn't put that in our objections that we served back when, but never mind. We didn't put that in our motion for protective order, in our moving papers, but never mind. There's a stipulated protective order in place in this case that would protect the confidentiality of that information, but never mind."

They can't analogize their situation to the situation of Qualcomm in the GTE Wireless case. They can't do it. And they can't analogize their situation to Merck and NIBR on summary judgment. And they can't guarantee or ever say that it's clearly possible -- if anything's clearly possible on summary judgment on August 21, it's that Judge Sammartino is going to deny the motion as to multiple claims of the 038 and the 384 patents.

And let's say that she does that. That's what's clearly possible if we're going to look to her May 14th

order and just say it's a portent of everything that's going to happen in the future on their motions. And then, what position will my client be in?

THE COURT: Then we reopen discovery and you go forward.

MR. LAWTON: Space, I can recover. Time? Never. I've lost five months. I haven't had a deponent, I haven't had documents. The Court knows what can happen to documents in litigation with the passage of time. I'm that much further behind. It's not fair to me. They should produce the documents. They should produce a Maestro machine. The Court says -- the Court says that it hasn't had enough briefing on that. I'm sorry. I don't see what more I could tell the Court that would help to illuminate the issue. This is the infringing --

THE COURT: Well, let me -- let me give you --

MR. LAWTON: -- this is the infringing device.

THE COURT: Let me help you. One, can you buy a machine? Why does it need to be produced to you?

MR. LAWTON: Because the Rules of Federal Procedure entitle me to demand its production. There's a rule that says I can demand it. The rule doesn't say, "If you can go out and buy it in the market, a request for the discovery can be excused, or compliance with it can be excused."

THE COURT: You can go to the Defendant's office, you can inspect it there. Why does it need to be produced to your office?

MR. LAWTON: It can be produced at a mutually agreeable time and place, but they are not even willing to go that far. They say, "We shouldn't have to produce it at all." This is the infringing device. Is it a remarkable proposition that the accused device in a patent infringement case ought to be made available for inspection by the Defendant?

THE COURT: Of course not, if someone would give me some background information. For example, one, it's not readily available in the marketplace, so I can't buy one. Or, it costs $10 million so it would be, you know, impractical to purchase one. Or any other number of facts that I can't, you know, fathom.

MR. LAWTON: The rules don't require me to show the Court that I can't go out and buy it on the open market. The rules allow us to demand that the Defendant produce the device and --

THE COURT: Or make it available for inspection.

MR. LAWTON: And that's exactly what we asked for.

THE COURT: And you can inspect it at their offices.

MR. LAWTON: They haven't told me that. In fact,

they've told me the opposite. They've told me I can't.

THE COURT: Well, these are items that neither side has addressed, which was my problem with the motion. Can you tell me now much one of these costs? I mean, can you buy one?

MR. LAWTON: I'm sure Mr. Holmberg could tell us the most recent data on that.

MR. HOLMBERG: If I could confer for just one second -- it's around $100,000.

MR. LAWTON: There are companies that have $100,000 laying around --

MR. HOLMBERG: But I thought the point here was also --

THE COURT: And would it be sufficient from your perspective, Mr. Lawton, to go to the Defendant's offices and inspect the machine there, or have your expert go there?

MR. LAWTON: Yes, it would.

THE COURT: Okay.

MR. LAWTON: We addressed this point on page 11 of our brief that was filed on June 30 at lines five through ten. And, you know, I strive for brevity, I don't always achieve that, but that is where we addressed the point.

THE COURT: I know, but nothing was said about going to the Defendant's offices or "we can't purchase one because it's exorbitantly expensive." I'm forced to guess.

But now I know your response to those questions.

MR. LAWTON: The essence of this motion, of both of these motions, is resistance to discovery by a Defendant that until Saturday night didn't have on file with this Court a dispositive motion pending that dealt with the items that we've asked for in discovery. And that is not what the rules contemplate.

And CRI is being rewarded by the Court for resisting discovery and if its plan unfolds the way it wants on August 21, it will be rewarded again because it will have prevented the Plaintiff from obtaining facts that it could use in opposing a summary judgment motion.

The goal of the defense in discovery, and this is true of the other Defendant as well, Merck, which also resisted discovery, is to see to it that the merits of this case are never heard in this court.

None of these Defendants has ever denied, on any motion that it has filed, infringement. I haven't read the motion that came in on Saturday night yet. I'm sure I will yet today. But it's remarkable that in this litigation none of these Defendants so far have in any of their motions said, "We don't infringe." They've relied on procedural arguments. They've resisted discovery in the meantime and the Court's ruling today is in aid of that. And if these Defendant's have their way, the merits of this case will

never be heard by any judge or jury, and I don't think that's right and I ask the Court to revisit its tentative ruling.

It isn't right, but in this court when Anticancer runs afoul of a rule, a procedural rule, there is a severe penalty for that. And when one of these Defendants runs afoul of a rule, such as the rule that one should file a motion for protective order before resisting discovery rather than after, there's no penalty for it. There's a reward for it. And the result of that is that the merits of this case will not be heard.

The burden of the discovery that is requested here is light. Several of these requests have been narrowed by agreement and that is set forth in our papers as well. If they're right about their summary judgment motions, they'll get summary judgment on August 21. And what will have been the harm in the meantime of having had to produce a deponent and produce some documents showing whether they have been monitoring tumor cells in live animals, tumor cells that express GFP, using an infringing machine? Some expense, I guess. All right. Well, discovery is expensive sometimes. It's expensive for us, too. But it's not nearly as expensive as not having the merits of our case heard in this court and not having the harm that these Defendants have done to us by their infringements remedied in this court.

Remedies that will be impossible unless a fair hearing is allowed. And the Court's ruling this morning is not going to enable that to happen. Thank you.

THE COURT: Mr. Holmberg?

MR. HOLMBERG: Thank you, your Honor. The Court's ruling this morning is correct. To some extent there is a self-fulfilling prophecy here and that self-fulfilling prophecy is indeed the preliminary infringement contentions that were served by Anticancer. That's what these summary judgment motions are about. Mr. Lawton wants to keep turning it to be about infringement, but the reality is that summary judgment motions are about defects in the preliminary infringement contentions. The claim limitations are not there and as Judge Sammartino made absolutely clear, there is no amount of evidence that can fix that error. There are no amount of machines that can be looked at, there are no amount of depositions that will fix that self-fulfilling prophecy.

Second, in regards to the machine; it is only related to infringement. There is no possible way that that could be related to invalidity, estoppel or any other issue except infringement. And we request, if there is going to be further briefing or in terms of what you heard from Mr. Lawton's argument, that that be considered in your final ruling, that that should fall under infringement as well, if

there's a stay on infringement.

Which is kind of the last issue. We're only talking a month. There is no schedule in place right now. There is no real harm that could possibly happen to Mr. Lawton. All we need is one month. The Court will then decide those summary judgment motions and, if they fail, we'll proceed with discovery.

Thank you, your Honor.

THE COURT: Mr. Lawton?

MR. LAWTON: We've heard it. They don't want to produce the machine under any circumstances.

THE COURT: Tell me how the machine relates to something else at issue besides infringement.

MR. LAWTON: It only relates to infringement. But infringement is the key liability issue. And Judge Sammartino said there was evidence of infringement by Care Stream in denying their motion for summary judgment on multiple claims of two patents.

Now, the essence of the fallacy that the Court is asked to go along with this morning is that Judge Sammartino will grant CRI's motion in its entirety despite having denied Care Stream's motion on those multiple claims. "We'll just win everything." And chart defects that Judge Sammartino found not to exist vis-a-vis Care Stream will be found to exist in a completely different chart as to CRI and

she'll just grant the motion. And all this discovery will have been unnecessary. "And never mind any infringement that we did with the Maestro." That's a fallacy. They don't want to talk about those parts of Judge Sammartino's ruling that I read from pages nine and 12, because those are parts of Judge Sammartino's ruling that denied Care Stream's summary judgment motion, and they would prefer to ignore that because it doesn't suit them.

What suits them is not producing one piece of paper, not producing one deponent, not producing one Maestro machine, so that they can get to the day where they get to say, "These charts are so bad, the case has to be dismissed", an argument that Judge Sammartino has rejected in the Care Stream case. "But never mind that, because she'll agree with us, even though she disagreed with Care Stream."

How does that logic work? I don't know and they haven't explained it.

THE COURT: But as I listen to you, it sounds like you're admitting that we're talking about infringement contentions as opposed to facts underlying infringement, and if that's the case, what's the harm in waiting other than delay of a couple months?

MR. LAWTON: It's more than a couple of months. I was supposed to have a deponent on May 9th -- I was supposed

to have documents on May 9th and a deponent on May 15th, and a machine on May 9th. So we're not talking about a couple of months. We're talking about from May 9th to sometime after August 21. She probably won't rule right on August 21, she'll probably rule a couple days later just like she did in the month of May, and then the dust will settle and then I'll be told, "Well, in 30 days you can have documents", and now we're into September. And how much time have I lost then? Four months, five months.

And as your Honor has observed, this case is aging. We're into the second year of the case. And I'm being told that, "You shouldn't have any discovery yet. You should wait." It's not what the federal rules contemplate. I'm a romantic. I think that the rules oblige just and speediness -- or, justice and speediness in the doing of discovery in the resolution of civil cases. But this is the opposite of that. Every argument in favor of delay is accepted. Every argument in favor of Defendants complying with discovery obligations is rejected.

THE COURT: But actually, you've joined in the request for delay because there was a joint motion --

MR. LAWTON: Of case management dates.

THE COURT: And deadlines.

MR. LAWTON: But not discovery. Not discovery that was extant at the time that we agreed to that. I

didn't agree to suspend all discovery. And if they had asked me to agree to it, I would have said no. I've got to discover my case, your Honor. They don't want that because they don't like what the discovery would show.

THE COURT: We're talking about when, if you're correct.

MR. LAWTON: When is awfully important because if there are facts that would defeat their summary judgment motion -- and there were facts on the Care Stream motion that we marshaled and put before Judge Sammartino. We weren't just talking about charts on May 8th when it came to Care Stream. We had evidence, we had taken a deposition of the Care Stream 30(b)(6) representative. We had documents. We had photographs that they had taken internally that showed that they were infringing. And Judge Sammartino looked at that, because we asked her to, and she used it to deny their summary judgment motion.

Well, Care Stream honored what it was supposed to do. So we didn't need a motion to compel because they gave us a deponent and they gave us records and we were able to use that. And that's the way it ought to work. Not these people.

I was in a position on May 8th, with Care Stream, that I'm not going to be in on August 21, if CRI has its way. That position was being able to present to the Court

deposition transcript excerpts and documents that I had gotten in discovery from a defendant that showed triable issues of fact.

The Court is disabling me from being in that same position on August 21 as I was in on May 8th by rewarding resistance to discovery. I'm sorry, I -- I don't think it's right.

THE COURT: All right. I'm going to take a brief recess and then I'll retake the bench.

(Proceedings recessed briefly.)

THE COURT: I looked at the copy of Judge Sammartino's order filed May 14, 2008, granting summary judgment, to look at her discussion. And I also looked at the summary judgment motion filed on July 19 by the Defendant.

Looking at Judge Sammartino's ruling first, it appears that one of the problems that Care Stream had was that it was making a conclusory argument that Judge Sammartino found insufficient, which was enough to warrant denying summary judgment in its entirety on behalf of Care Stream.

The motion filed on July 19 is addressed to the preliminary infringement contentions. Looking at the arguments being made, on page eight the Defendant's argument begins with a section entitled,

"Summary judgment should be granted because Anticancer's PICs, preliminary infringement contentions, failed to allege infringement by CRI of every claim limitation in the 384, 38 and 159 patents."

On page nine, the sub argument is,

"Anticancer's claim chart is missing claim limitations from independent claim one in each of the 384, 38 and 159 patents."

On page 15, another argument is entitled,

"Anticancer's claim chart is missing claim limitations from independent claims four and five of the 384 patent, and independent claims five and nine of the 38 patent."

Then finally on page 24, the Defendant argues,

"The dependent claims fall with the independent claims."

After looking at Judge Sammartino's ruling and the arguments being asserted by CRI, it does not appear that additional facts that might be produced in discovery are essential to -- are essential or even needed to oppose the summary judgment motions filed by CRI.

So, the tentative ruling of the Court to grant a stay of discovery will be the ruling on the motion. In terms of motion to compel, the Court's tentative on the document requests one through 14 will be the ruling; that is, document requests three and six shall be responded to, the Maestro machine shall be available for inspection at the Defendant's place of business. If those items of discovery relate only to infringement, they would be subject to the Court's stay. And the motion to quash document number -- document requests number two and five, served with the Rule 30(b)(6) deposition notice, will be granted. Request for sanctions will be denied.

I think that deals with all the issues raised in the pending motions. Are there any that I've overlooked? Mr. Lawton?

MR. LAWTON: No, your Honor.

THE COURT: Mr. Holmberg?

MR. HOLMBERG: No, your Honor.

THE COURT: All right. With that, thank you. I guess I will see you at 1:30.

MR. HOLMBERG: Thank you, your Honor.

MS. GODDARD: Thank you, your Honor.

(Proceedings concluded.)

I certify that the foregoing is a correct transcript to the best of my ability from the electronic sound recording of the proceedings in the above-entitled matter.

s/Sherri Lattuca 9/2/08
Transcriber Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.