James C. Pistorino (SBN 226496)
John F. Lynch (admitted *pro hac vice*)
Adam K. Whiting, Ph.D. (SBN 230083)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
Telephone: (650) 798-3500
Facsimile: (650) 798-3600
E-Mail: PistorinoJ@howrey.com
E-Mail: LynchJ@howrey.com
E-Mail: WhitingA@howrey.com

Attorneys for Defendant and Counterclaimant
MERCK & CO., INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>        Plaintiff,<br><br>        vs.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation; MERCK & CO., INC., a New Jersey corporation; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH INC., a Delaware corporation; and DOES 17-50,<br><br>        Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:07-CV-00097-JLS-RBB<br><br>**DEFENDANT MERCK & CO., INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES**<br><br>Hearing Date: December 18, 2008<br>Time: 10:30 a.m.<br>Courtroom: 6, 3rd Floor<br>Judge: Honorable Janis L. Sammartino |

# **TABLE OF CONTENTS**

**Page**

I. DISCUSSION .......................................................................................................................... 1

    A. Mr. Lawton's Failure To Offer Evidence Of A Non-Frivolous, Pre-Suit Claim Construction .................................................................................................................. 2

    B. Mr. Lawton's Failure To Conduct A Reasonable Inquiry To Determine That The Allegations Were Well Ground In Fact ................................................................. 3

        1. The Failure To Offer Evidence Of A Pre-Suit Infringement Analysis ............. 3

        2. Merck's Non-Public Research And Mr. Lawton's Rule 11 Duties ................. 4

        3. No Evidence From Which An Objectively Reasonable Attorney Could Have Concluded That Each Claim Limitation Reads On Any Merck Associated Device/Activity ............................................................................. 6

            a. No Actual Evidence Of The Claims Of The '523 Patent ........................ 6

            b. No Actual Evidence Of The Claims Of The '968 Patent ........................ 7

            c. No Actual Evidence Of The Claims Of The '384 Patent ........................ 8

            d. No Actual Evidence Of The Claims Of The '038 Patent ........................ 8

            e. No Actual Evidence Of The Claims Of The '159 Patent ........................ 8

    C. Mr. Lawton's Arguments Lack Merit/Are Improper ..................................................... 9

        1. Merck Complied With Service Requirements Of Fed. R. Civ. P. 11(c)(2) ................................................................................................................. 9

        2. The Lack Of A Pre-Suit Investigation ............................................................. 10

        3. Mr. Lawton's Comments Regarding Merck's Settlement Proposals ............. 10

II. CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Antonious v. Spalding & Evenflo Companies*,
  275 F.3d 1066 (Fed. Cir. 2002) ................................................................................. 1, 4, 5, 7

*Diego, Inc. v. Audible, Inc.*,
  505 F.3d 1362 (Fed. Cir. 2007) ............................................................................................ 1

*Grant v. Pfizer Inc.*,
  683 F. Supp. 41 (S.D.N.Y. 1988) ........................................................................................ 5

*In re Keegan Management Co. Securities Litigation*,
  78 F.3d 431 (9th Cir. 1996) ................................................................................................. 1

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997) ..................................................................................... 1, 4, 6

*Lebovitz v. Miller*,
  856 F.2d 902 (7th Cir. 1988) ............................................................................................... 5

*S. Bravo Systems, Inc. v. Containment Technologies Corp.*,
  96 F.3d 1372 (Fed. Cir. 1996) ............................................................................................. 1

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1991) (en banc) ............................................................................ 5

*Truesdell v. Southern California Permanente Medical Group*,
  293 F.3d 1146 (9th Cir. 2002) ............................................................................................. 9

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,
  208 F.3d 981 (Fed. Cir. 2000) ......................................................................................... 3, 5

**RULES**

Civil Local Rule 7.1(f)(1) ........................................................................................................... 9

Federal Rule of Civil Procedure 11 ................................................................................... passim

Federal Rule of Civil Procedure 11(b) ....................................................................................... 9

Federal Rule of Civil Procedure 11(b)(3) .................................................................................. 4

Federal Rule of Civil Procedure 11(c)(2) .................................................................................. 9

On a Rule 11 motion such as the present one, the non-movant bears the burden of proof to show that it made a reasonable pre-suit investigation. AntiCancer and Mr. Lawton failed to meet their burden and failed/chose not to come forward with either a pre-suit claim construction that Mr. Lawton conducted/adopted or any evidence that Mr. Lawton compared any such claim construction to some actual evidence. By Mr. Lawton's own admission, rather than actual evidence (of which Mr. Lawton admits there were "gaps"), Mr. Lawton signed the pleading accusing Merck of willful infringement based on "deduction" and "inference" in the hope that "discovery would confirm [his] beliefs as to what Merck was doing." (Opp. at 7.) Such an approach is barred by Rule 11 as interpreted by the Federal Circuit and the Ninth Circuit. More than a year of litigation has resulted from Mr. Lawton's failure to comply with his duty to conduct a reasonable pre-suit investigation and Mr. Lawton should be held responsible for his choices. The purpose of Rule 11 is to deter baseless filings and granting Merck's motion will help deter Mr. Lawton (and others) from bringing such suits in the future.[1] Merck's motion should be granted.

## I. DISCUSSION

When faced with a Rule 11 motion such as the present one, the non-movant bears the burden of proof to show that it made a reasonable pre-suit investigation. *See Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007). In a patent case, a reasonable pre-suit investigation requires: (1) construing the claims of the asserted patents; and (2) comparing the asserted and construed claims to actual evidence of the accused devices/methods. *See Judin v. United States*, 110 F.3d 780, 783-84 (Fed. Cir. 1997); *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996); *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). Mr. Lawton's opposition failed on both counts.

---

[1] That AntiCancer's Complaint against Merck was baseless was decided by this Court when the Court granted Merck's motion for summary judgment of non-infringement on May 14, 2008 (*see* Dkt. #115). Accordingly, the only issue that remains to be decided is whether AntiCancer's pre-suit investigation, if any, was reasonable. *See In re Keegan Mgmt. Co. Securities Litigation*, 78 F.3d 431, 434-35 (9th Cir. 1996). That Mr. Lawton might file another suit in violation of his pre-suit investigation duties is a very real possibility. In the event that the Court is inclined to consider information offered in breach of the agreed confidentiality of settlement discussions, then Merck directs the Court to its contemporaneously filed motion on this issue.

### A. Mr. Lawton's Failure To Offer Evidence Of A Non-Frivolous, Pre-Suit Claim Construction

Mr. Lawton could have complied with his duty to construe the claims pre-suit by either adopting the claim construction offered in the *Xenogen* case or by performing an independent, non-frivolous claim construction. However, Mr. Lawton's opposition fails to offer any evidence that, before accusing Merck of infringing, he did either. For this reason alone, Merck's motion may be granted.

As noted in Merck's moving papers, in the *Xenogen* case, AntiCancer proposed claim constructions for the patents-in-suit.[2] However, AntiCancer and Mr. Lawton have failed and refused to indicate whether those claim construction positions were applied in a pre-suit investigation related to Merck, if any. Moreover, it is clear that Mr. Lawton and AntiCancer did not apply the *Xenogen* claim constructions in this case. (*See* Mot. at 7-8.) AntiCancer's opposition continues this pattern and fails to offer evidence that Mr. Lawton adopted the *Xenogen* claim constructions. Indeed, the opposition is silent as to any claim construction actually used by Mr. Lawton. In an apparent effort to be even more vague, if possible, Mr. Lawton characterizes the *Xenogen* claim constructions as "proposed long before this case was filed, and long before the parties had the benefit of a three-day *Markman* hearing before Judge Brewster, which refined the parties' understanding of various claim terms." (Opp. at 14.) At bottom, though a claim construction was proposed by AntiCancer in the *Xenogen* case, AntiCancer and Mr. Lawton have failed and refused to offer any evidence that they actually used that claim construction in this case.

Likewise, the opposition includes no evidence that Mr. Lawton performed an independent, non-frivolous claim construction. No pre-suit claim charts or memoranda detailing such a construction were provided and no details of such a construction (*e.g.*, the actual constructions, when they were done, who did them, etc.) are provided by Mr. Lawton. Indeed, the opposition and Mr. Lawton's declaration are silent except to include the bare assertion that Mr. Lawton was aware of the duty to

---

[2] Judge Brewster found that those claim construction positions were the "work product principally of [Ms. Murashige] working under [the Lawton Law Firm's] directions." (*Xenogen* Dkt. #131 at 9 (¶ 22).)

construe the claims and that he "complied with those duties." (Lawton Decl. at ¶ 10.) Such conclusory statements lacking any details are not cognizable as evidence sufficient to carry Mr. Lawton's burden.

Before accusing Merck of willfully infringing five United States patents, Mr. Lawton had a duty to construe the terms of claims. Mr. Lawton has not offered any evidence to sustain his burden of showing that he complied with his duty and Merck's motion may be granted on this ground alone.

### B. Mr. Lawton's Failure To Conduct A Reasonable Inquiry To Determine That The Allegations Were Well Ground In Fact

In attempting to resist Merck's motion, Mr. Lawton bore the burden of proving that he compared the construed claims to actual evidence. As noted above, there is no evidence that Mr. Lawton adopted or performed a pre-suit claim construction. Likewise, the opposition fails to identify actual evidence uncovered during a pre-filing investigation that would allow an objectively reasonable attorney to conclude that every limitation of a single claim of each of the patents-in-suit was present when compared to a non-existent claim construction. Accordingly, Merck's motion may be granted on this ground as well.

#### 1. The Failure To Offer Evidence Of A Pre-Suit Infringement Analysis

As noted in Merck's moving papers, the presence of an infringement analysis plays a key role in determining the reasonableness of the pre-filing inquiry. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Mr. Lawton has failed to offer any evidence that he performed a pre-suit infringement analysis. The only thing even vaguely approximating an infringement analysis offered by Mr. Lawton is AntiCancer's proposed "amended" infringement contentions that were apparently drafted sometime in November 2007. As an initial matter, of course, that document was not prepared prior to the filing of this suit (in February 2007), and AntiCancer and Mr. Lawton have repeatedly represented to the Court that the document could not be prepared until sometime in November 2007 due to the need to consult with Dr. Hoffman and his absence from September through October. (*See* Dkt. #79 at 3:8-17; 4:2-6 ("… Dr. Hoffman has detailed knowledge about Merck's infringements. Not all of this data was known to our team in the first two weeks of October 2007 (while Dr. Hoffman was absent and unable to collaborate with us on the contentions).").)

Stated alternatively, Mr. Lawton failed to offer evidence that he prepared that document prior to February 2007 when he named Merck as a defendant in this case. Thus, even if the document contained "colorable arguments" of infringement (which it does not), it would be insufficient to carry Mr. Lawton's burden because it is from the post-filing period as opposed to the pre-suit period with which this motion is concerned. *See Judin*, 110 F.3d at 784-85. Further, of course, the document does not contain any claim constructions, does not attempt to match the information listed with the claim elements on an element-by-element basis (and correspondence is not immediately apparent), and does not even mention the '523 and '968 patents. (Lawton Decl. Ex. 7.) Accordingly, there is no evidence of a pre-suit infringement analysis.

### 2. Merck's Non-Public Research And Mr. Lawton's Rule 11 Duties

While the lack of actual pre-suit evidence for each of the patents-in-suit is addressed in detail below, as a general matter, Mr. Lawton concedes that he did not have actual evidence of each of the limitations of any claim before accusing Merck of infringing. Instead, Mr. Lawton asserts that he made "certain deductions" and "inferences" (Opp. at 6) because Merck's internal research activities were not public.[3] After signing the Complaint accusing Merck of infringing based on his "deductions" and "inferences" (rather than actual evidence), Mr. Lawton states that he "fully expected discovery would confirm his beliefs as to what Merck was doing." (*Id.* at 7.) As described by Mr. Lawton himself, there can be no doubt that he violated Rule 11.

Pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, when an attorney cannot certify that the factual allegations of a complaint have evidentiary support, he must specifically identify those that will likely have evidentiary support after a reasonable opportunity for further investigation. *See Antonious*, 275 F.3d at 1074 (noting applicability of Rule 11(b)(3) to allegations of patent infringement). In this case, the Complaint signed by Mr. Lawton failed to specifically identify

---

[3] *See*, *e.g.*, Opp. at 6, 7 ("… there were some gaps in the direct evidence because some of the details of Merck's activities were not public and were under Merck's exclusive and secret control"), 10 ("… much of the concrete evidence necessary to establish infringement was solely in Merck's exclusive possession and under Merck's exclusive control."), 11, 14 (".. at least some of the evidence needed to state a *prima facie* case of patent infringement for some of the AntiCancer patents was under Merck's exclusive control."), 15, 17, 18, and 20.

any of the factual allegations of infringement as needing discovery. Instead, by signing the Complaint, Mr. Lawton certified that the factual allegations of infringement (Dkt. #3 at ¶¶ 30, 39, 48, 57, and 66) had evidentiary support, though he now concedes that was not the case. Thus, by Mr. Lawton's own admission, he violated the Rule.[4]

Moreover, even where the evidence necessary to establish infringement is non-public, the patentee still has a duty to conduct a reasonable pre-suit investigation by pursuing informal and formal routes of discovery. Indeed, the facts of this case are very similar to those of *View Eng'g*, where the patentee argued that the evidence necessary to determine infringement was in the possession of the alleged infringer. *View Eng'g*, 208 F.3d at 985-86. In affirming the award of fees, the Court noted that the patentee failed to take available discovery before baselessly asserting six of eight patents. Likewise, in the present case, AntiCancer and Mr. Lawton did not take available discovery before baselessly asserting five patents. The original Complaint in this case filed on January 12, 2007 named only CRI as a defendant but included allegations of infringement by Merck. (*See* Dkt. #1 at ¶¶ 14, 23, 32, 41, and 50.) Also pending in January 2007 was AntiCancer's suit against Xenogen asserting the same patents asserted in this case and wherein AntiCancer asserted indirect infringement by Xenogen through others (such as Merck). (*See Xenogen* Dkt. #158 at ¶¶ 29, 38, 47, 56, and 65.) Thus, before signing the First Amended Complaint naming Merck, AntiCancer and Mr. Lawton could have served discovery on Merck out of either suit to obtain actual evidence of alleged infringement. Like the patentee in *View Eng'g*, AntiCancer's failure to take this step while asserting infringement without actual evidence was unreasonable.

As noted above, Mr. Lawton states that he signed the Complaint accusing Merck of infringing

---

[4] Mr. Lawton cites to *Grant v. Pfizer Inc.*, 683 F. Supp. 41 (S.D.N.Y. 1988); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1991) (en banc); and *Lebovitz v. Miller*, 856 F.2d 902 (7th Cir. 1988) for the proposition that, if the relevant facts are in control of the opposing party, more leeway should be given for allegations that "may not be well-grounded." (Opp. at 10.) Those cases and that proposition are inapposite for two reasons. First, *Grant*, *Townsend*, and *Lebovitz* were decided *prior* to the substantive amendments to Rule 11 that were made in 1993 and relate to standards under the superseded statute. After 1993, an attorney who signs a pleading must specifically identify factual allegations that lack evidentiary support and Mr. Lawton did not do so. Second, neither *Grant*, *Townsend*, nor *Lebovitz* are patent cases. The Federal Circuit has held that, in patent cases, a reasonable pre-suit inquiry includes the duty to construe the claims and compare them to actual evidence, which again, Mr. Lawton did not do. *See Antonious*, 275 F.3d at 1075.

1  based on the "expectation that discovery would confirm his beliefs." (Opp. at 7.)  Even if Mr. Lawton

2  had actually conducted such discovery (which he did not), it would not cure Mr. Lawton's violation of

3  the Rule "[b]ecause Rule 11 is not about after-the-fact-investigation[.]" *Judin*, 110 F.3d at 785.

4         **3.**    **No Evidence From Which An Objectively Reasonable Attorney Could Have Concluded That Each Claim Limitation Reads On Any Merck Associated Device/Activity**

5

6        As noted in Merck's moving papers, there has never been any actual evidence of any Merck

7  associated device/activity from which an objectively reasonable attorney could have concluded that all

8  of the limitations of any claim of any of the patents-in-suit were present.  Importantly, in order to resist

9  Merck's motion, Mr. Lawton bore the burden of proving that he had such evidence before he filed suit.

10  For all the asserted patents, Mr. Lawton did not meet his burden because the opposition fails to

11  compare any single claim of any of the asserted patents, on an element-by-element basis, to some

12  actual pre-suit evidence from which an objectively reasonable attorney could have concluded that all

13  the limitations were present.

14         **a.**    **No Actual Evidence Of The Claims Of The '523 Patent**

15        As an example, in its moving papers, Merck noted that the all the claims of the '523 patent

16  require a "vector derived from pED-mtx," and that there was no pre-suit actual evidence from which an

17  objectively reasonable attorney could have concluded this limitation was present.[5]  Mr. Lawton

18  concedes that this is a limitation of all the claims of the '523 patent but fails to identify any actual pre-

19  suit evidence of its existence.  Conceding the lack of actual evidence, Mr. Lawton states that he did not

20  have "unequivocal information about the specific vector(s) that Merck was using" but then simply

21  assumed infringement. (Opp. at 20 ("… whatever name Merck used to identify the vector … was

22  likely equivalent to the pED-mtx vector.").)

23        In a confused passage, Mr. Lawton raises the specter of "equivalence." (Opp. at 20.)  To the

24  extent that Mr. Lawton intended to indicate that he conducted an analysis to determine whether the

25  limitation "a vector derived from pED-mtx" was entitled to equivalence, Mr. Lawton's claim should be

26

27

28      [5]  Mr. Lawton's assertion that AntiCancer provided Merck with "information regarding the pED-mtx vector" (Opp. at 20) is unsupported and the citations provided simply do not support that claim.

**HOWREY LLP**

MERCK'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES
Case No. 3:07-CV-00097-JLS-RBB
    -6-

barred because AntiCancer asserted privilege to preclude Merck from inquiring as to that matter. (*See* Lawton Decl. Ex. 8 at 50:5-51:24.) Moreover, as is more fully set forth in Merck's co-pending motion for attorneys' fees under 35 U.S.C. § 285 (Dkt. #163), to the extent that Mr. Lawton intended to indicate he utilized a claim construction that included infringement under the doctrine of equivalents for this claim element, such a construction would be objectively frivolous because the claims of the '523 patent were amended to include the "vector derived from pED-mtx" in response to a patentability rejection. (*See id.* at 13.)

As noted in Merck's moving papers, attorneys' fees are properly awarded if a single invalid legal or factual theory is asserted, even if other asserted theories are valid. *Antonious*, 275 F.3d at 1075. In light of the improper assertion of infringement of the '523 patent, the Court need look no further to properly award Merck its attorneys' fees.

### b. No Actual Evidence Of The Claims Of The '968 Patent

Mr. Lawton made no showing or argument with respect to Claims 1-6 and 8 of the '968 patent generally or with respect to the "retroviral vector derived from pLEIN" limitation specifically. Instead, Mr. Lawton only refers to Claim 7.[6] However, Mr. Lawton failed to compare Claim 7, on an element-by-element basis, to some actual pre-suit evidence and none was provided in any event.[7] Again, Mr. Lawton resorts to the claim that the evidence was in Merck's exclusive control. (Opp. at 18.) As noted above, such a claim does not excuse Mr. Lawton from complying with his pre-suit investigation duties and, once again, Mr. Lawton failed to carry his burden.

---

[6] Merck agrees that Claim 7 does not include the "retroviral vector derived from pLEIN" limitation that is a limitation of Claims 1-6 and 8.

[7] Because Mr. Lawton did not comply with his pre-suit claim construction duties, Mr. Lawton does not identify any construction for the terms "solid tumor," "contained in its blood vessels," or "fluorescent *contrast* dye" as they appear in Claim 7 of the '968 patent. Thus, there is nothing to compare to any actual evidence. While Dr. Bednar did testify that Merck used ProSense in certain instances (as shown in the poster), Dr. Bednar never identified ProSense as a "contrast dye" or that it was "contained" in the blood vessels of either a mouse or a tumor ("solid" or otherwise). Mr. Lawton has identified no actual pre-suit evidence from which an objectively reasonable attorney could have concluded that these limitations were present. In December 2007 (*i.e.*, well after Mr. Lawton signed the Complaint against Merck), Dr. Hoffman opined that ProSense was a "contrast dye" but did not testify that he informed Mr. Lawton of his opinion prior to February 2007 and Mr. Lawton offers no declaration that Dr. Hoffman did so or other pre-suit evidence on which Mr. Lawton so relied.

### c.     No Actual Evidence Of The Claims Of The '384 Patent

In the opposition, Mr. Lawton only addressed Claims 4 and 5 of the '384 patent. These claims contain numerous limitations and no comparison of all the elements of Claims 4 or 5 to actual pre-suit evidence was provided and none is immediately apparent. For example, Claim 4 refers to "surgical orthotopic implantation of said tumor " while Claim 5 refers to "locally administering a retroviral vector to said subject in the vicinity of said tumor." Mr. Lawton failed to identify any pre-suit actual evidence that corresponds to these claim elements. Lacking actual evidence, Mr. Lawton describes these as "the two predominant methods for introducing GFP expressing cells into a subject animal" in support of his deduction/inference that "it was likely that Merck infringed at least one or the other of the two claims." (Opp. at 16.) Merck notes that Mr. Lawton offered no evidence that he is/was qualified to opine as to what the "predominant" methods for introducing GFP expressing cells are/were, and Mr. Lawton offered no evidence that a pre-suit investigation included consulting with experts or other resources who so advised him. Moreover, "predominant" or not, there are other methods of introducing GFP expressing cells[8] and, again, there is no actual pre-suit evidence that Merck used either of the two methods in any instance where all the other limitations were/are present.

### d.     No Actual Evidence Of The Claims Of The '038 Patent

While mentioning Claim 5, Mr. Lawton provides no specific comparison of any actual pre-suit evidence to the many limitations of Claim 5. Indeed, lacking actual evidence, Mr. Lawton merely concludes that "Merck had likely used the claimed method[.]" (Opp. at 17.)

### e.     No Actual Evidence Of The Claims Of The '159 Patent

Again, while mentioning Claim 1, Mr. Lawton failed to identify actual pre-suit evidence corresponding to the numerous limitations of Claim 1. As noted in Merck's moving papers, all the claims of the '159 patent require a "promoter … of an endogenous gene" which cannot be the CMV vector. Mr. Lawton failed to identify any actual pre-suit evidence of such a promoter or that any promoter used was not the CMV vector. (Opp. at 17-18.) Mr. Lawton failed to meet his burden of

---

[8] For example, one alternative method is referred to as "tail vein injection" and is repeatedly referred to in the 2005 Merck poster.

showing compliance with his pre-suit investigation duties.

### C.     Mr. Lawton's Arguments Lack Merit/Are Improper

Space limitations prevent Merck from responding to all the factual allegations made at pages 3-5 of the opposition. As a general matter, those allegations are either irrelevant or incorrect. For example, Mr. Lawton's claim that "[e]arly in this case, AntiCancer attempted to take discovery from Merck" which Merck "strenuously" resisted is not correct. (Opp. at 20 and 7).

#### 1.     Merck Complied With Service Requirements Of FED. R. CIV. P. 11(c)(2)

In compliance with Rule 11(c)(2) of the Federal Rules of Civil Procedure, on April 17, 2008, Merck wrote Mr. Lawton informing him, in part, "… Merck has prepared a Rule 11 motion seeking its attorney's fees *and a copy is attached*" (emphasis added); "… Merck expects to be awarded … this amount if forced to file *the attached motion*" (emphasis added); and "… Merck will be forced to file its Rule 11 motion …" (*See* Pistorino Reply Decl. Ex. H.) The document attached to the letter included the memorandum of points and authorities, a declaration, and exhibits and certainly was not an "informal warning."[9] This document was served more than 21 days before the Court ruled on Merck's motion for summary judgment (on May 14, 2008) and before Merck actually filed the referenced motion (on August 1, 2008). Further, the document is "separate from any other motion" and "describe[s] the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2).

Pursuant to CivLR 7.1(f)(1), Merck styled the document describing "the specific conduct" that violated Rule 11(b) as a "memorandum of points and authorities in support" of Merck's motion. In accordance with CivLR 7.1(f)(1), when filed, Merck included a separate document containing the notice of the motion setting forth the date and time of the hearing provided by the Clerk. Thus, Merck fully complied with both Rule 11(c)(2) and the Local Rules, and Mr. Lawton was on notice of the consequences of the failure to withdraw the baseless Complaint.

---

[9] Contrary to Mr. Lawton's claims, *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1151 (9th Cir. 2002) did not create a standard for Rule 11 motions higher than that expressed in the Rule itself. Thus, there is no "ready to file" standard for Rule 11 motions; there is only the standard set forth in the Rule.

### 2. The Lack Of A Pre-Suit Investigation

While the opposition makes much of Mr. Lawton's involvement in the prior litigations involving Xenogen (Opp. at 3-5), none of that is connected to the claims made by AntiCancer against Merck in this case. That Mr. Lawton may have participated in claim construction proceedings in that case does not constitute a pre-suit investigation in this case when Mr. Lawton did not adopt that claim construction or perform an independent claim construction. Likewise, that Merck personnel were deposed in that case does not constitute a pre-suit investigation in this case when the Merck personnel were not questioned regarding the relevant claim elements. That the Merck personnel were not questioned regarding the claims of the asserted patents is evident by AntiCancer's and Mr. Lawton's continued inability to point to actual pre-suit evidence in support of each of the claim elements of any claim of any of the asserted patents. Where there is no pre-suit claim construction, no actual pre-suit evidence in support of all the elements of any claim, and no pre-suit infringement analysis, there is no pre-suit investigation.

### 3. Mr. Lawton's Comments Regarding Merck's Settlement Proposals

Mr. Lawton's allegation of "extortion" and improper public filing of settlement discussions labeled "confidential" by both Merck and AntiCancer are addressed in Merck's motion to strike related to the opposition. Mr. Lawton's comments are improper and should be stricken but are consistent of his practice of disregarding confidentiality agreements that bear his signature. With regard to the scope of Merck's proposals, such agreements are not unprecedented. (*See* Confidential Pistorino Reply Decl. Ex. I.)

## II. CONCLUSION

Mr. Lawton violated Rule 11 when he signed the Complaint accusing Merck of willfully infringing five United States patents without conducting claim construction, having actual evidence of all the limitations of any of the claims of any of the patents asserted, and without conducting an infringement analysis. Mr. Lawton has not carried his burden to show that he conducted a reasonable pre-suit investigation. Accordingly, Merck's motion should be granted.

| | | |
|---|---|---|
| 1 | Dated: October 16, 2008 | Respectfully submitted, |
| 2 | | HOWREY LLP |
| 4 | | By:  /s/ James C. Pistorino |
| 5 | | James C. Pistorino<br>John F. Lynch (admitted *pro hac vice*)<br>Adam K. Whiting, Ph.D. |
| 7 | | Attorneys for Defendant and Counterclaimant<br>MERCK & CO., INC. |

***AntiCancer, Inc. v. Cambridge Research & Instrumentation, Inc., et al.***
**U.S.D.C. – S. D. Cal. Case No. 3:07-CV-00097-JLS-RBB**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of October, 2008 with a copy of this document via the Court's CM/ECF system. I certify that all parties in this case that have made an appearance to date are represented by counsel who are CM/ECF participants.

By: /s/ James C. Pistorino
James C. Pistorino

21537434

**HOWREY LLP**

CERTIFICATE OF SERVICE
Case No. 3:07-CV-00097-JLS-RBB                         -1-