1  Richard A. Clegg (SBN 211213)
   SELTZER CAPLAN MCMAHON VITEK
2  750 B Street, 2100 Symphony Towers
   San Diego, California 92101-8177
3  Ph: 619-685-3003
   Fax: 619-702-6845
4
   Attorneys for Plaintiff and Counterdefendant AntiCancer, Inc.
5
   Dan Lawton (SBN 127342)
6  LAWTON LAW FIRM
   Emerald Plaza
7  402 W. Broadway, Suite 1860
   San Diego, California 92101
8  Ph: 619-595-1370
   Fax: 619-595-1520
9
   Attorneys for Plaintiff and Counterdefendant AntiCancer, Inc.
10

11

12              UNITED STATES DISTRICT COURT

13        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

| 15 | ANTICANCER, INC., a California corporation, | ) ) | Case No. 07-CV-00097-JLS (RBB) |
|---|---|---|---|

15  ANTICANCER, INC., a California        )   Case No. 07-CV-00097-JLS (RBB)
    corporation,                          )
16                                        )   PLAINTIFF AND
              Plaintiff,                  )   COUNTERDEFENDANT
17                                        )   ANTICANCER, INC.'S
         v.                               )   MEMORANDUM OF POINTS AND
18                                        )   AUTHORITIES IN OPPOSITION TO
    CAMBRIDGE RESEARCH &                  )   MOTION OF DEFENDANT AND
    INSTRUMENTATION, INC.; MERCK & CO., ) COUNTERCLAIMANT MERCK &
19  INC.,; NOVARTIS INSTITUTES FOR        )   CO., INC., FOR AN EXCEPTIONAL
    BIOMEDICAL RESEARCH, INC.,            )   CASE FINDING AND AWARD OF
20                                        )   ATTORNEYS' FEES UNDER 35
                                          )   U.S.C. § 285
21            Defendants.                 )
                                          )   Date:      December 18, 2008
22                                        )   Time:      10:00 a.m.
    AND RELATED COUNTERCLAIMS.            )   Place:     Courtroom Six
23                                        )   Judge:     Hon. Janis L. Sammartino

24

25

26

27

28

## TABLE OF CONTENTS

PAGE

I.    INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS AND PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    AntiCancer's Naming of Merck as Defendant and Identification of Merck's
            Infringements in its Pleadings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Reassignments of Case; Early Delays. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    26(f) Conference (September 6, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    ENE/CMC (September 27, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      E.    AntiCancer's Document Productions in Compliance with CMO and Patent
            Local Rule 3.1 (October-December 2007) . . . . . . . . . . . . . . . . . . . . . . . . 4

      F.    AntiCancer's Compliance with Case Management Order and Patent Local
            Rules and Attempted Amendment of Its PICs (October-November 2007) . . . . 5

      G.    AntiCancer's Dropping of Contentions Related to '523 and '968 Patents in
            its Proposed Amended Disclosures (Served November 13, 2007);  Lack of
            Prejudice to Merck as a Result. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      H.    30(b)(6) Deposition of AntiCancer (December 5, 2007). . . . . . . . . . . . . . . 6

      I.    Merck's Resistance to All Discovery in this Case . . . . . . . . . . . . . . . . . . . 6

      J.    Merck's Use of Rule 11 Motion as Means to Extort a Perpetual Royalty-Free
            License to AntiCancer's Entire Patent Portfolio (April 2008).  . . . . . . . . . . . 7

      K.    AntiCancer's Opposition to Merck's Summary Judgment Motion (filed in
            April 2008); Court's Ruling (May 14, 2008). . . . . . . . . . . . . . . . . . . . . . . 8

      L.    Merck's Renewed Demand for AntiCancer's Entire Patent Portfolio under Pain
            of Threatened Motions (July-August 2008) . . . . . . . . . . . . . . . . . . . . . . . . 8

      M.    This Motion;  Merck's New Assertion of AC-Caliper Settlement Agreement as
            Bar to Merck's Liability for IVIS-Based Infringements (August 2008) . . . . . . 9

      N.    AntiCancer's Failed Attempt to Heal Toxic Relationship between Counsel  . . 9

III.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    Threshold Procedural Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Exceptional Case Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Merck is Not the Prevailing Party Because it Lacks a Judgment on the Merits
            or Having Any *Res Judicata* Effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      D.    This Case Is Not Exceptional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1    1.    AntiCancer reasonably assessed infringements in this process patent case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          a.    Product vs. process;  why it matters. . . . . . . . . . . . . . . . . . . . . 13

          b.    '523 and '968 patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          c.    '384, '038, and '159 patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          d.    Reliance on Merck poster (Ex. 25), to which Merck failed to object. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          e.    AntiCancer's reliance on evidence in opposition to Merck's summary judgment motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     2.    This case neither was nor is frivolous; Merck's summary judgment rested entirely on procedural (not merits) grounds. . . . . . . . . . . . . . . . 16

     3.    AntiCancer's prosecution of the case against Merck did not cause the action to be more protracted than it should have been. . . . . . . . . . . . 19

     4.    AntiCancer and Lawton committed no "litigation misconduct" or "unprofessional behavior." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          a.    30(b)(6) deposition of AntiCancer concerning pre-suit investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          b.    No prejudice or misrepresentation concerning withdrawn claims of infringement of '523 and '968 patents. . . . . . . . . . . . . . . . . . 22

          c.    Propriety of reliance on Bednar, Defeo-Jones, and Gibson transcripts (and Merck's failure to object thereto on basis of "protective order [sic]" until now). . . . . . . . . . . . . . . . . . . . . . . 23

     5.    No violation of Rule 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

TABLE OF AUTHORITIES

2

PAGE

<u>FEDERAL CASES</u>

3

4   *02 Micro International Limited v. Monolithic Power Systems, Inc.*
    467 F. 3d 1355, 1363 (Fed. Cir 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

5
    *Airtex Corp. v. Shelley Radiant Ceiling Co.*
6   536 F.2d 145, 154-155 (7th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

7   *American Video Graphics, L.P. v. Electronic Arts, Inc.*
    359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

8
    *Amsted Indus., Inc. v. Buckeye Steel Casings Co.*
9   23 F. 3d 374, 376 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10  *Automated Bus. Cos., Inc. v. NEC Am., Inc.*
    202 F. 3d 1353, 1354 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
11
    *Bio-Technology General Corp. v. Genentech, Inc.*
12  80 F.3d 1553, 1560-1561 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

13  *Brooktree Corp. v. Advanced Micro Devices, Inc.*
    977 F.2d 1555, 1582 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14
    *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*
15  532 U.S. 598, 603, 149 L.Ed.2d 855, 121 S.Ct. 1835 (2001) . . . . . . . . . . . . . . . . . . . . . . 10

16  *Central Delta Water Agency v. United States*
    306 F.3d 938, 952 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
17
    *Dome Patent L.P. v. Permeable Technologies, Inc.*
18  1999 U.S. Dist. LEXIS 16157 (W.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19  *Forest Labs., Inc. v. Abbott Labs.*
    339 F. 3d 1324, 1329 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
20
    *Highway Equipment Co., Inc. v. FECO, Ltd.*
21  469 F. 3d 1027, 1033 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22  *Hydranautics v. Filmtec Corp.*
    204 F. 3d 880, 887-888 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
23
    *Inland Steel Co. v. LTV Steel Co.*
24  364 F. 3d 1318, 1320-1321 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25  *Joy Technologies, Inc. v. Flakt, Inc.*
    6 F.3d 770, 775 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
26
    *Machinery Corp. of America v. Gullfiber AB*
27  774 F. 2d 467, 473 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*
76 F. 3d 1178, 1183 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Marion Merrell Dow Inc. v. American Cyanamid Co.*
36 U.S.P.Q.2d (BNA) 1036, 1041 (D.N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.*
2004 U.S. Dist. LEXIS 29354 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Merck & Co., Inc., v. Mylan Pharmaceuticals, Inc.*
79 F.Supp.2d 552 (E.D. Penn. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18, 25

*Monster Cable Products, Inc. v. The Quest Group*
2005 U.S. Dist. LEXIS 23466, *17 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nesscap Co., Ltd., v. Maxwell Technologies, Inc.*
2007 U.S. Dist. LEXIS 89450 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Network Caching Technology, LLC v. Novell, Inc.*
2003 U.S. Dist. LEXIS 9881 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 23

*Olsson v. United States*
25 F.Supp. 495, 498 (Ct. C. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rocket Jewelry Box, Inc. v. Quality International Packaging, Inc.*
403 F. Supp. 2d 288, 291 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Semtek International Inc. v. Lockheed Martin Corp.*
531 U.S. 497, 502, 149 L.Ed.2d 32, 121 S.Ct. 1021 (2001) . . . . . . . . . . . . . . . . . . . 11, 12-13

*Stutz Motor Car of America, Inc. v. Reebok International, Ltd.*
909 F. Supp. 1353 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


<u>STATUTES</u>

Title 35 U.S.C. section 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

<u>FEDERAL RULES</u>

Federal Rule of Civil Procedure 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13, 14, 20, 25

Federal Rule of Civil Procedure 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Civil Procedure 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 21, 22

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16


<u>PATENT LOCAL RULES</u>

Patent Local Rule 3.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1  OTHER AUTHORITIES

2  10 J. Moore et al., Moore's Federal Practice § 54.171[3][c][iv] (Supp. 2008) . . . . . . . . 12, 13

3  J. Lewis & A. Cody, "Unscrambling the Egg: Pre-Suit Infringement Investigations of Process
   and Method Patents," 84 J. Pat & Trademark Off. Soc'y 5 (Jan. 2002) at p. 1.  . . . . . . . . . 14

4
   Black's Law Dictionary (West Group 7th ed. 1999).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5
   7 D. Chisum, Chisum on Patents, § 20.02[4][c][ii] at p. 20-474 & n. 399 (Matthew Bender
6  2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

Merck[1] seeks over $825,000.00 in attorneys' fees against AntiCancer[2] under the exceptional case statute, section 285.[3]  Merck's motion is devoid of merit.

Merck's motion fails the threshold procedural requirement for an exceptional case finding: a judgment on the merits.  Merck has no judgment on the merits, and will not have one (even after its 54(b) motion is granted).  On this basis alone, the Court should deny Merck's motion.

Even if Merck had a judgment on the merits, the case is not exceptional within the meaning of section 285.  There is no proof of wrongful intent; willful, wanton, or reckless misconduct; or "utter lack of all care" (clear and convincing proof of which is required for an exceptional case finding) before the Court.  AntiCancer had (and still has) sound basis for its infringement claims against Merck.  At all times AntiCancer has litigated in good faith.

The internal contradiction of Merck's motion makes it self-defeating.  Merck complains on the one hand that AntiCancer lacked evidence to support its infringement contentions.  On the other hand, Merck complains that AntiCancer committed "litigation misconduct" by trying to present that very evidence (e.g., Ex. 25) in opposition to Merck's summary judgment motion.  Both things cannot be true.  In fact neither is true.

Merck rightly notes that AntiCancer's PICs[4] served October 17, 2007, omitted data about Merck – a lawyer's mistake on which Merck seized in seeking summary judgment. The lawyer (Lawton)[5] duly tried to cure his mistake under the Patent Local Rules.  He failed. Neither that failure nor the mistake preceding it prejudiced Merck – as the Magistrate Judge has found (as to the mistake) already.  *See* D.E. 92 at pp. 15-16, 18.  Nor did the episode

---

[1]  Defendant and counterclaimant Merck & Co., Inc.

[2]  Plaintiff and counterdefendant AntiCancer, Inc.

[3]   All citations to code sections are to Title 35 of the U.S. Code, except as noted otherwise.

[4]  **P**reliminary **i**nfringement **c**ontentions.

[5]  Dan Lawton of Lawton Law Firm.

1   make the case exceptional.  In a similar case previously relied on by Merck (*02 Micro*

2   *International Limited v. Monolithic Power Systems, Inc.)*, the court rejected the same

3   exceptional case argument Merck makes here in a case involving defective PICs and an

4   ensuing summary judgment.  This Court should do the same.

5         Merck's motion recites a litany of grievances: that AntiCancer's use of deposition

6   testimony of certain Merck witnesses (Bednar, Defeo-Jones, and Gibson) violated a

7   "protective order [sic]" in another case; that AntiCancer withheld proof of its infringement

8   contentions from Merck; that AntiCancer failed to produce documents in compliance with

9   the CMO[6] and Patent Local Rules;  and that AntiCancer's counsel (Lawton) obstructed

10  Merck's taking of a 30(b)(6) deposition.  Each is provably false.  Boiled down, Merck's

11  litany amounts to no more than the frustration Merck feels at having to defend itself in this

12  case without AntiCancer just surrendering after the Court refused it leave to amend its PICs.

13  This frustration, however sincere, falls short of the rigorous standard the Courts have set for

14  an exceptional case finding.  That standard depends on an "**unambiguous showing of**

15  **extraordinary misconduct**."  *See Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145,

16  154-155 (7th Cir. 1976) (affirming denial of extraordinary case finding) (emphasis added). No

17  such showing exists here.

18        An exceptional case finding here would require the Court to make the sort of findings

19  made only after a trial or summary judgment on the merits.  On this record, that is

20  impossible.  Merck's motion should be denied.

21  II.    FACTS AND PROCEEDINGS.

22        Merck argues AntiCancer protracted this case unduly and withheld evidence from

23  Merck.  This is wrong.  The true facts and procedural history of the case appear below.

24        A.    AntiCancer's Naming of Merck as Defendant and Identification of Merck's
               Infringements in its Pleadings.

25        AntiCancer identified Merck as a Doe defendant in the original complaint filed in

26  January 2007.  The original complaint identified the infringing device by name (defendant

27

28  _____

         [6] The Court's case management order filed October 3, 2007 (D.E. 49).

1   CRI's[7] Maestro *in vivo* imaging system), and the activity which infringed (use of Maestro to

2   do *in vivo* imaging of tumor cells in laboratory animals via AntiCancer's patented methods).

3   D.E. 1 at 3:14-20, 4:16-27, 5:18-24, 6:20-26, 7:22-28.

4          AntiCancer formally added Merck as a defendant named in the caption of a first

5   amended complaint filed in February 2007.  The first amended complaint accused Merck

6   specifically of using the Maestro equipment to do *in vivo* imaging of tumor cells in live

7   laboratory animals via AntiCancer's patented methods.  D.E. 3 at 5:23-28, 6:1-2, 6:7-8, 6:24-

8   28, 7:1-8, 7:24-28, 8:1-8, 8:24-28, 9:1-8, 9:21-28, 10:1-8.

9          AntiCancer superseded this pleading with a second amended complaint ("2AC"),

10  whose filing Merck did not oppose.  The Court ordered the 2AC deemed filed in June 2007.

11  Among other things, the 2AC reduced the number of named defendants to CRI, NIBRI,[8] and

12  Merck.  *Id*., ¶¶ 18-19.

13         B.      Reassignments of Case; Early Delays.

14         The case had early delays.  None was attributable to AntiCancer.  The Court

15  transferred the case from Judge Brewster to Judge Jones in February 2007.  Merck wanted

16  more time to respond.  On AntiCancer's stipulation, the parties jointly moved the Court to

17  allow Merck more time to respond to the first amended complaint (in May 2007).  Merck did

18  not move to dismiss.  It answered (in June 2007).  In the meantime, NIBRI, too, had sought

19  more time to respond from AntiCancer (and got it), in late May 2007.  Later NIBRI asked the

20  Court to continue the ENE.  The Court did so, continuing the ENE until August 2007.

21         In August 2007, the Court again reassigned the case (this time to Judge Hayes).  The

22  same day, all parties moved jointly to postpone the ENE until September (granted).  NIBRI

23  moved to dismiss for lack of jurisdiction (it lost).  The parties filed their first discovery plan

24  in September 2007 (D.E. 45).  The Court finally transferred the case to Judge Sammartino on

25  September 27, 2007 (D.E. 47).

26

27         [7] Cambridge Research & Instrumentation, Inc.

28         [8] Novartis Institutes for BioMedical Research, Inc., with whom AntiCancer has recently
    made a confidential settlement on terms including mutual dismissals with prejudice.

C.     26(f) Conference (September 6, 2007).

The parties held a 26(f) conference on September 6, 2007.  During it, Lawton told Mr. Pistorino that Merck's (now-admitted) use of the Maestro equipment was infringement. AntiCancer's ensuing proposed amended PICs (which further detailed AntiCancer's infringement contentions against Merck), served in November 2007, made clear the "activities [that] were accused of infringement[.]"  *See* Lawton dec., ¶¶ 20, 23.

D.     ENE/CMC (September 27, 2007).

On September 26, 2007, the parties' representatives and counsel attended an ENE. Merck's and Mr. Pistorino's behavior at the ENE seemed perfunctory.  Mr. Pistorino had no interaction with Lawton (either directly or through the Magistrate Judge) at the ENE at all. Mr. Pistorino and Merck made no response to AntiCancer's settlement proposal.  It seemed Merck and its counsel attended the ENE only because ordered to – not out of any genuine interest in talking about the case.  *Id*., ¶ 23.

E.     AntiCancer's Document Productions in Compliance with CMO and Patent Local Rule 3.1 (October-December 2007).

In its CMO filed October 4, 2007 (D.E. 49), the Court obliged all parties to use "best efforts to obtain" documents to be produced "to make a timely disclosure if the documents identified [in the order] are not in the possession, custody and/or control of that party."  D.E. 49 at p. 4:18-21.

AntiCancer did this.  The documents the CMO described were not in the possession, custody or control of Lawton or AntiCancer.  A third party had them.  During October 2007 and afterward, AntiCancer and Lawton used best efforts to get these documents (including marketing materials, conception and reduction to practice documents, and file histories) promptly from that third party so AntiCancer could produce them timely to Merck and the other defendants.  Lawton got the documents and produced them, taking care to note in a cover letter sent to Pistorino that AntiCancer was retrieving documents from a third party (Ex. 3) and that AntiCancer wished a protective order previously circulated to be finalized before producing certain materials (Merck's Ex. H).  The productions AntiCancer made of

1  these documents occurred via overnight delivery on November 1 (Ex. 4, 5), November 3 (Ex.

2  6), November 5 (Ex. 7), November 8 (Ex. 8), November 16 (Ex. 9), and December 10 (Ex.

3  10).

4      Merck's motion neglects to mention these document productions.

5      AntiCancer complied with the CMO.  *See* Lawton dec., ¶¶ 23-25.

6      F.    AntiCancer's Compliance with Case Management Order and Patent Local
            Rules and Attempted Amendment of Its PICs (October-November 2007).

7

8      Previously the Court has received a detailed report from Lawton on the service of

9  defective PICs on Merck on October 17.   Lawton admitted his fault, corrected the defects,

10  and served proposed amended PICs on Merck (which laid out, in detail, the exact allegations

11  of infringement against Merck and proof of them) in the second week of November 2007.

12  P.L.R. 3.7 allowed this amendment with leave of Court.  *See* D.E. 65-2, 75-2, 79.  The

13  Magistrate Judge denied leave, despite finding no prejudice to Merck resulted from the

14  mistake.  *See* D.E. 92 at pp. 15-16, 18.  The Magistrate Judge's order made no substantive

15  ruling on the merits or about admissibility of evidence later.

16      Merck has, at all times, ignored AntiCancer's proposed amended PICs;  never

17  addressed the merits of them;  and never submitted any proof which would controvert them.

18  This is despite having had months of time in which to do so.  Lawton dec., ¶ 23.

19      As for Lawton's mistake which led to the need for the amendments in the first place:

20  Lawton has always told the Court that he alone is to blame for it (as laid out in his

21  previously-filed declarations on the topic, D.E. 65-2, 75-2, and 79).  There was never any

22  intent to "vexatious[ly] shuffl[e] . . . positions" or take a "deliberate strategic course" aimed

23  at putting any defendant at a disadvantage.  Lawton's mistake was an honest one unwittingly

24  committed.  That does not make it any less embarrassing to describe in detail.  But the idea

25  that it was intentional or "exceptional" is wrong.  *Id*., ¶ 24.

26

27

28

G.    AntiCancer's Dropping of Contentions Related to '523 and '968 Patents in its Proposed Amended Disclosures (Served November 13, 2007);  Lack of Prejudice to Merck as a Result.

For reasons unrelated to the merits (and consistent with its position in the AC-Xenogen patent action), AntiCancer dropped contentions of Merck's infringements of the '523 and '968 patents (in its amended PICs).  Lawton dec., ¶ 26.  Because Merck had already moved for summary judgment on all patent claims based on defective PICs, the dropping of the claims created no prejudice to Merck.  *Id*.  This is explained further below at p. 23.

H.    30(b)(6) Deposition of AntiCancer (December 5, 2007).

Merck took the 30(b)(6) deposition of AntiCancer on December 5, 2007.  The events of this remarkable deposition are discussed below at pp. 21-23.  At the deposition, AntiCancer's 30(b)(6) representative (Dr. Robert M. Hoffman) answered every question asked of him which did not call for privileged information.  The exceptions were two questions which he had been asked and answered repeatedly.  Mr. Pistorino was rude and condescending throughout the deposition, at one point laughing at Dr. Hoffman's testimony.  Mr. Pistorino's laughter prompted an objection from Dr. Hoffman himself, who replied that his testimony was not a joke.  *See* Lawton dec., ¶¶ 28-33.

I.    Merck's Resistance to All Discovery in this Case.

AntiCancer noticed discovery of Merck in order to get detailed data that would conclusively prove AntiCancer's infringement allegations.  Some of this information was (and still is) under the sole and exclusive control of Merck.  AntiCancer noticed the depositions of Merck (pursuant to Rule 30(b)(6)) and Drs. Bednar and Defeo-Jones on January 2 of this year, coupling the notices with demands for documents.  *See* Ex. 12.  Merck served objections, refusing to produce either deponents or documents.  *See* Ex. 13.  Had Merck not resisted all discovery, AntiCancer would have asked the deponents about Merck's ownership and use of Maestro imaging systems, research using GFP, use of xenograft and orthotopic mouse models in cancer research, and use of AntiCancer's patented methods.  Merck stonewalled the discovery, thus barring from the record any evidence pertinent to these topics.  Lawton dec., ¶¶ 34-35.

J.    Merck's Use of Rule 11 Motion as Means to Extort a Perpetual Royalty-Free License to AntiCancer's Entire Patent Portfolio (April 2008).

Based solely on AntiCancer's defective PICs served in October 2007, Merck moved for summary judgment.  The Court set the hearing on the motion for May 8.

In the meantime, on April 17, Merck proposed a "settlement."  By the "settlement," AntiCancer would surrender to Merck a free, perpetual, fully paid-up license to all of AntiCancer's patents – not just those involving imaging, but also those having nothing to do with imaging.  In return, Merck would forego motions for over $600,000.00 in attorneys' fees[9] (to be awarded against Lawton personally) and to invalidate AntiCancer's patents.  *See* Ex. 14; Lawton dec., ¶ 37.

AntiCancer did not view this as a good faith settlement proposal.  Instead AntiCancer saw it as a coercive demand for the surrender of AntiCancer's entire library of patents under the duress of threatened severe personal financial harm to Lawton.  AntiCancer also viewed it as an attempt to create a conflict of interest between its attorney (Lawton) and AntiCancer via deliberate creation of a dilemma in which Lawton would have to choose between risking severe personal financial harm to himself (in the form of a threatened $600,000.00-plus judgment) and severe financial harm to AntiCancer (in the form of essentially giving away all its technology to Merck for nothing).  These were purposes AntiCancer viewed as wrong, not least because the Advisory Committee Notes to Rule 11 expressly condemns them.[10] Merck's goal and tactics were very clear.  Lawton dec., ¶ 37.

AntiCancer rejected Merck's "settlement" demand.  (Later the Court rejected Merck's strenuous attempt to purge from the record the evidence of the exchange.  D.E. 191.)

AntiCancer also refused to withdraw its allegations of Merck's infringements.  This was because (1) the allegations were true, and (2) Merck never provided AntiCancer (or the

---

[9]  This sum has since swollen to over $825,000.00 (at last count).

[10]  *See* Advisory Committee Note to 1993 amendments to Fed. R. Civ. Proc. 11 (Thomson West 2008) at p. 91 ("[n]or should Rule 11 motions be prepared to . . . **exact an unjust settlement [or] to create a conflict of interest between attorney and client**").  (Emphasis added.)

Case No. 07-CV-00097-JLS (RBB)

1   Court) with any evidence to the contrary, despite being duly asked for it in AntiCancer's

2   stymied discovery.  Lawton dec., ¶ 38.

3        K.   AntiCancer's Opposition to Merck's Summary Judgment Motion (filed in April
             2008); Court's Ruling (May 14, 2008).

4   AntiCancer filed evidence in opposition to Merck's summary judgment motion on

5   April 25.  D.E. 108.[11]

6        The Court heard argument on May 8.  In an order filed May 14, it granted summary

7   judgment, based solely on AntiCancer's defective PICs served the preceding October.  In so

8   doing, the Court reasoned:  "The Court bases its grant of summary judgment on what is

9   alleged (or, more specifically, what is <u>not</u> alleged) in the PICs.  The Court neither attempts to

10  construe the language of the allegedly infringing claims **nor analyzes the evidence** that

11  AntiCancer submitted in opposition to this motion." D.E. 115, pp.7-8, emphasis added.

12       L.   Merck's Renewed Demand for AntiCancer's Entire Patent Portfolio under Pain
             of Threatened Motions (July-August 2008).

13

14       Afterward, Merck again threatened attorneys' fees and other onerous motions.  Mr.

15  Pistorino renewed Merck's demand for a free license to AntiCancer's entire patent library in

16  exchange for a dropping these motions which, if successful, would be ruinous to

17  AntiCancer.  See Ex. 18, 19.  AntiCancer replied it could not "license all its patents to

18  another company for free." Ex. 20.  Pistorino insisted, however, Merck would not settle the

19  case without the sweeping license.  Lawton dec., ¶ 48.

20       Merck left no doubt about its view of the "leverage" it had, i.e., motions whose real-

21  world consequences would be devastating:

22          I would think that AntiCancer would want to get rid of Merck as
            Merck is in the strongest position of all the defendants to get the
23          fees . . . **that could leave AntiCancer facing $1.4M in a few
            months.  All of this is not even considering the damage that
24          will surely be done to AntiCancer's patents if this case
            continues . . . . AntiCancer needs to . . . be realistic about the
25          situation** . . ."

26  Ex. 21 (emphasis added).

27  _____

28      [11] AntiCancer requests judicial notice of this material, which is part of the Court's file.
    Judicial notice is properly taken.  Fed. R. Evid. 201.

1   Again, AntiCancer could not accede to what it viewed as extortion – and said so.

2   Lawton dec., ¶ 48.

3       M.      This Motion;  Merck's New Assertion of AC-Caliper Settlement Agreement as
                Bar to Merck's Liability for IVIS-Based Infringements (August 2008).

4   Merck filed this motion on August 22, 20008.

5   On that date and for the first time ever in this case, Merck invoked a release contained

6   in the AntiCancer-Caliper settlement agreement, which supposedly releases "Merck from all

7   claims related to the Xenogen/Caliper device."  Merck Mem. at p. 8:11-12.

8   Merck failed to invoke the release (signed in February 2008) on its summary judgment

9   motion (not heard until three months later).  Nor did Merck amend its answer to invoke the

10   release as an affirmative defense.  This was despite section 3.4 of the settlement agreement,

11   which allows a person who believes it to bar litigation to plead it as a "full and complete

12   defense to . . . any action, suit or proceeding . . ."  *See* Ex. B to Pistorino dec. at p. 3, sec. 3.4;

13   Lawton dec., ¶¶ 44-46.

14   Merck also conceals from the Court certain key language not shown in the excerpt

15   Merck provides.  This language appears in a license agreement appended to the settlement

16   agreement.  AntiCancer will file it under seal as Ex. 16.  It is narrowly tailored, and (by its

17   express terms) does **not** bar liability for infringements Merck committed with CRI's Maestro

18   equipment. Lawton dec., ¶ 46.

19       N.      AntiCancer's Failed Attempt to Heal Toxic Relationship between Counsel.

20   In October, Merck sought strenuously to strike from the Court's file its attempts to

21   wrest a free license from AntiCancer (and AntiCancer's use of the word "extortion").  The

22   Court denied Merck's request in an order (D.E. 191) in which the Court noted dismay

23   concerning the toxic relationship between attorneys Lawton and Pistorino.

24   Lawton contacted Pistorino, saying Lawton shared the Court's dismay and wanted to

25   make things right.  Lawton offered to meet with Pistorino in person to try to solve the

26   problem.  Lawton dec., ¶ 74; Ex. 26.  The only conditions were that the meeting be off the

27

28

1   record and not in a law office.  *See id*.  There were no other conditions (such as withdrawal

2   of pending motions).

3       Pistorino refused the meeting.  Lawton dec., ¶ 75.

4   III.    ARGUMENT.

5       A.    <u>Threshold Procedural Requirements</u>.

6       Under the Patent Act, a court "in exceptional cases may award reasonable attorney

7   fees to the prevailing party."  35 U.S.C. § 285. The burden placed on the party seeking

8   attorneys fees is "heavy."  *Monster Cable Products, Inc. v. The Quest Group*, 2005 U.S. Dist.

9   LEXIS 23466, *17 (N.D. Cal. 2005). The party seeking attorney fees must prove the case is

10  exceptional by clear and convincing evidence.  *Id*., at * 8.

11      In the context of fee awards sought by an alleged infringer, section 285 is "limited to

12  circumstances in which it is necessary to prevent a gross injustice to the alleged infringer."

13  *Forest Labs., Inc. v. Abbott Labs.*, 339 F. 3d 1324, 1329 (Fed. Cir. 2003).  The moving

14  party's burden is to prove by clear and convincing evidence that the suit is frivolous.  *See*

15  *Monster Cable Products, supra*.

16      A party is considered the "prevailing party" under section 285 only in one of four

17  situations: (1) when it gets a judgment on the merits or (2) enters a settlement enforced

18  through a consent decree (*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health*

19  *and Human Res.*, 532 U.S. 598, 603, 149 L.Ed.2d 855, 121 S.Ct. 1835 (2001); *Highway*

20  *Equipment Co., Inc. v. FECO, Ltd.*, 469 F. 3d 1027, 1033 (Fed. Cir. 2006);  (3) when it

21  invalidates its adversary's patents (*Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F. 3d

22  1178, 1183 (Fed. Cir. 1996)); or (4) when the Court dismisses its adversary's claims with

23  prejudice (*Inland Steel Co. v. LTV Steel Co.*, 364 F. 3d 1318, 1320-1321 (Fed. Cir. 2004)).

24      Merck has not received a dismissal with prejudice.  There has there been no

25  settlement.[12]  Merck has not invalidated any of AntiCancer's patents.  Thus Merck can only

26  be the prevailing party "if the case is litigated to judgment on the merits in favor of the

27  _____

28      [12]  AntiCancer has settled with Merck's co-defendants Carestream Health, Inc., and NIBRI.

1    defendant."  10 J. Moore et al., Moore's Federal Practice § 54.171[3][c][iv] (Supp. 2008).  A

2    judgment on the merits "**is a judgment based on the evidence rather than on technical or**

3    **procedural grounds**."  *Semtek International Inc., v. Lockheed Martin Corp.*, 531 U.S. 497,

4    501, 149 L.Ed.2d 32, 121 S.Ct. 1021 (2001) ("The prototypical judgment on the merits is one

5    in which the merits of a party's claim are in fact adjudicated for or against the party after trial

6    on the substantive issues") (emphasis added).  *See generally* Black's Law Dictionary (West

7    Group 8th ed. 2004) p. 860.  The judgment obtained by the prevailing party must have *res*

8    *judicata* effect.  *Inland Steel Co., supra*, at 1320-1321.  Determining which party prevailed

9    "requires the Court to look at the substance of the litigation to determine whether an

10    applicant has substantially prevailed in its position, and not merely the technical disposition

11    of the case or motion.  In effect, **substance should prevail over form**."  *Rocket Jewelry Box,*

12    *Inc. v. Quality International Packaging, Inc.*, 403 F. Supp. 2d 288, 291 (S.D.N.Y. 2005)

13    (emphasis added).

14       B.     <u>Exceptional Case Standard</u>.

15        Exceptional cases are "usually those of willful or deliberate infringement or

16    bad faith continuation of litigation."  7 D. Chisum, *Chisum on Patents*, § 20.02[4][c][ii] at p.

17    20-474 & n. 399 (Matthew Bender 2007) (collecting cases).  Misconduct during litigation,

18    vexatious or unjustified litigation, and frivolous suits are among the circumstances which

19    may make a case "exceptional" under § 285.  *See Amsted Indus., Inc. v. Buckeye Steel*

20    *Casings Co.*, 23 F. 3d 374, 376 (Fed. Cir. 1994).  A frivolous suit for infringement is one in

21    which the patentee knew or should have known that the suit was baseless.  *Automated Bus.*

22    *Cos., Inc. v. NEC Am., Inc.*, 202 F. 3d 1353, 1354 (Fed. Cir. 2000).  The moving party must

23    present proof of wrongful intent;  willful, wanton, or reckless misconduct;  or "utter lack of

24    all care."  *See Machinery Corp. of America v. Gullfiber AB*, 774 F. 2d 467, 473 (Fed. Cir.

25    1985).

26       The standard the courts have set for an exceptional case is very high.  For example,

27    the Federal Circuit has affirmed a district court's denial of exceptional case finding and

28    attorneys' fees even in the wake of a jury's finding of willful infringement.  *Brooktree Corp.*

1   *v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992).  Section 285 requires

2   an "unambiguous showing of extraordinary misconduct."  *Airtex Corp. v. Shelley Radiant*

3   *Ceiling Co.*, *supra*, 536 F.2d at 154-155.  Even weak arguments – so long as "colorable" –

4   cannot justify an exceptional case finding.  *Merck & Co., Inc., v. Mylan Pharmaceuticals,*

5   *Inc.*, 79 F.Supp.2d 552, 556 (E.D. Penn. 2000) (denying exceptional case finding and

6   attorneys' fees after Merck lost case on summary judgment motion).

7         C.   <u>Merck is Not the Prevailing Party Because it Lacks a Judgment on the Merits</u>
<u>or Having Any *Res Judicata* Effect.</u>

8

9         Merck devotes but one  paragraph to this critical threshold issue, saying:  "Clearly,

    Merck was the prevailing party."  Merck Memo. p. 10.  Merck cites no case for this
10
    proposition, choosing instead to selectively – and deceptively – cite the Moore's treatise on
11
    federal practice.  Merck writes, "A defendant is the prevailing party if the plaintiff obtains no
12
    relief whatsoever from the litigation.  *See* 10 Moore's Federal Practice §
13
    54.171[3][c][iv](Supp. 2008)."  This is a nearly verbatim quote from Moore's.  Merck leaves
14
    out the very next sentence:  "**If the case is litigated to judgment on the merits in favor of**
15
    **the defendant**, the defendant is the prevailing party."  10 J. Moore et al., Moore's Federal
16
    Practice § 54.171[3][c][iv] (emphasis added).
17
          Merck bases its motion on having won summary judgment.  Merck overlooks that the
18
    summary judgment was not on the merits.  The Court itself noted this in its order:  "The
19
    Court bases its grant of summary judgment on what is alleged (or, more specifically, what is
20
    <u>not</u> alleged) in the PICs.  The Court neither attempts to construe the language of the allegedly
21
    infringing claims **nor analyzes the evidence** that AntiCancer submitted in opposition to this
22
    motion." DE 115, pp.7-8, emphasis added.  For there to be judgment on the merits, however,
23
    the merits of a party's claim must be "in fact adjudicated [for or against] the [party] after trial
24
    of the substantive issues."  Only this adjudication can trigger *res judicata* effect.  *See Semtek*
25
    *International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502, 149 L.Ed.2d 32, 121 S.Ct.
26
    1021 (2001).  *See also Central Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th
27
    Cir. 2002);  *Hydranautics v. Filmtec Corp.*, 204 F.3d 880, 887-888 (9th Cir. 2000).
28

1    Without a judgment on the merits, Merck cannot be the prevailing party. *See ibid*. On

2    this basis alone, the Court should deny its motion.

3        D.    This Case Is Not Exceptional.

4        Merck recites a litany of grievances supposedly making this case exceptional. Merck

5    is wrong, as explained below. For easier reference, AntiCancer addresses Merck's litany in

6    the same order Merck uses in its brief.

7            1.    AntiCancer reasonably assessed infringements in this process patent
              case.

8
9        Merck argues AntiCancer lacked evidence to support its "baseless" and

10   "frivolous" claims. Merck's 285 motion thus resembles its Rule 11 motion, the main

     difference being that here Merck seeks its attorneys' fees from AntiCancer (not Lawton).

11
12       AntiCancer laid out the details of its pre-filing evidentiary basis for its claims against

13   Merck in its opposition to Merck's Rule 11 motion. D.E. 178. Except as summarized below,

     AntiCancer does not repeat those details here and relies on the Lawton declaration filed in

14
     opposition to that motion. *See* D.E. 178, Attachment no. 1.

15
            a.    Product vs. process; why it matters.

16
17       In the process patent context, plaintiffs "are typically unable to give highly

     specified infringement contentions" without discovery. *American Video Graphics, L.P. v.*

18
     *Electronic Arts, Inc.*, 359 F. Supp.2d 558, 560 (E.D. Tex. 2005). So it has been in this case.

19
20       In contrast, in product patent cases, "plaintiffs are usually able to purchase defendants'

     products and ascertain the mechanics of how those products infringe before bringing suit[.]"

21
22   Here, however, plaintiffs protecting process patents are left to "divine" whether infringement

     has taken place from the defendant's allegedly infringing behavior:

23
24           A product, for instance, can be touched and examined, but the
             process by which it is made is often done *sub rosa* – no one
             outside of the potential infringer knows how the product was
25           made. The patentee's efforts to determine the manufacturing
             process from an inspection of the final product have thus been
26           likened to trying to "unscramble an egg."

27

28

Case No. 07-CV-00097-JLS (RBB)

1    J. Lewis & A. Cody, "Unscrambling the Egg: Pre-Suit Infringement Investigations of Process

2    and Method Patents," 84 J. Pat. & Trademark Off. Soc'y 5 (Jan. 2002) at 1.

3           In scrutinizing plaintiffs' compliance with their duties to disclose infringement

4    contentions in the Rule 11 context, courts have noted the differences between process and

5    product patents.  In *Dome Patent L.P. v. Permeable Technologies, Inc.*, 1999 U.S. Dist.

6    LEXIS 16157 (W.D.N.Y. 1999) the patentee plaintiff's patents were related to chemical

7    processes used to manufacture contact lenses, not a finished product.  The defendant moved

8    to dismiss pursuant to Rule 11.  *Id.*, at **5.  The court denied the motion, reasoning:

9                  Although Dome may not know precisely how Polymer produces
               its contact lense material at each stage of the process, such
10              information is obviously within the exclusive knowledge and
               control of Polymer at this stage.  This is not like cases involving
11              mechanical or electrical objects that can be taken apart and
               "reverse engineered" to deduce the method of their manufacture.

12   *Id.* at **12.

13          The court went on to observe that plaintiff's lack of precise knowledge of all the

14   relevant facts was "attributable to the difficulty, if not impossibility, of Dome obtaining that

15   information without discovery."  *Id.* at **14.

16          *Dome Patent* is instructive here.  Merck has resisted discovery in this process patent

17   case.  It and it alone knows where its "smoking guns" are hidden for now.  Under the

18   circumstances, it was reasonable for AntiCancer to provide what facts it did have – in the

19   form of its proposed amended PICs – and then rely on discovery to obtain more facts.  *See*

20   *American Video Graphics*, *supra*.  Merck's stonewalling of this discovery, *see ante* at pp. 6-

21   7, of course, made this impossible.

22                 b.      '523 and '968 patents.

23                 The details of AntiCancer's analysis of Merck's infringements of the

24   '523 and '968 appear in the Lawton declaration at ¶¶ 67-71 (at pp. 29-31).

25                 c.      '384, '038, and '159 patents.

26                 The details of AntiCancer's analysis of Merck's infringements of the

27   '384, '038, and '159 patents appear in the Lawton declaration at ¶¶ 59-66 (at pp. 25-29).

28

14

d.   <u>AntiCancer's reliance on Merck poster (Ex. 25), to which Merck failed to object</u>.

Merck protests Lawton's display on an easel of Merck's September 2005 poster-presentation showing its use of AntiCancer's patented methods (Ex. 25) in open court on May 8.  Merck Mem. at p. 8:13-22.  Merck reasons the AC-Caliper settlement agreement somehow barred its use as evidence of Merck's infringements.

This argument lacks merit.  Its tardiness also suggests a lack of conviction.

Previously AntiCancer had filed a copy of this poster (which proved infringement by Merck) as an exhibit in opposition to Merck's summary judgment motion on April 25. Merck filed objections, but based them only on lack of authenticity and hearsay (not a release or settlement agreement).  *See* D.E. 112, pp. 8-9.  The Court never ruled on the objections, nor did Merck force the issue at the hearing.

At the hearing, Lawton showed the poster to attorney Pistorino before displaying it in open court.  Pistorino made no objection.

Afterward,  Pistorino addressed the Court.  His rebuttal argument spans four pages of transcript of the hearing.  D.E. 113 at pp. 23-26.  He never protested display of the poster, argued that a "release" barred it, or even acknowledged it.  *See id*; Lawton dec., ¶ 47.

e.   <u>AntiCancer's reliance on evidence in opposition to Merck's summary judgment motion</u>.

Merck complains that AntiCancer made arguments in opposition to its summary judgment motion.  AntiCancer's arguments were valid.  *Nesscap Co., Ltd., v. Maxwell Technologies, Inc.,* 2007 U.S. Dist. LEXIS 89450 (S.D. Cal. 2007), is a decision of this Court.  It holds that summary judgment ought not precede *Markman*.  No court has ever withdrawn, reversed, or overruled *Nesscap*.  It was and is good authority.

AntiCancer's 56(f) argument, too, was based on authority (the text of Rule 56(f), and the 9th Circuit cases AntiCancer cited construing it) and on Merck's refusal to produce any deponents for discovery.  Saying that AntiCancer "failed to pursue" the depositions is not true.  AntiCancer duly noticed the depositions and demanded documents.  Merck objected; failed to move for a protective order; and refused to produce either witnesses or documents.

1   The Court did not agree with AntiCancer's 56(f) argument.  It did not follow from that that

2   AntiCancer's making it was vexatious, unjustified, in bad faith, or frivolous, however.

3   Lawton dec., ¶ 41.

4          Merck brands as "exceptional" AntiCancer's filing of evidence in opposition to

5   Merck's summary judgment motion.  AntiCancer's submission of evidence was not

6   "exceptional."  It was mandatory.  Rule 56 imposes an "**Obligation to Respond**" (emphasis

7   in original) on the party opposing summary judgment.  It says that party **"must** – by

8   affidavits or as otherwise provided in this rule – set out specific facts showing a genuine

9   issue for trial."  *See* Fed. R. Civ. Proc. 56(e)(2) (emphasis added).  This is what AntiCancer

10  did.  Lawton dec., ¶ 42;  D.E. 108, 111, 111-2.

11         2.   This case neither was nor is frivolous; Merck's summary judgment
                rested entirely on procedural (not merits) grounds.

12

13         Merck argues AntiCancer's case against Merck is frivolous.  As ever, Merck

14  refuses to address the evidence (submitted by AntiCancer, both in its amended PICs and on

15  summary judgment) that Merck **does** infringe.  As ever, Merck refuses to provide the Court

16  with any proof it does not infringe.  AntiCancer's evidence includes Merck's admitted

17  "operation of the CRI Maestro machine" and conducting of tests on it (admitted in Merck's

18  initial disclosures).  The very people Merck admits know about this are Merck personnel –

19  Bohumil Bednar, Ray Gibson, and Deborah DeFeo-Jones,[13] each of whom admitted Merck's

20  practice of GFP-based imaging of tumor cells in laboratory animals *in vivo*.  *See* Exs. 22-24.

21         This evidence proves Merck infringed AntiCancer's patents.  *See Joy Technologies,*

22  *Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993);  *Bio-Technology General Corp. v.*

23  *Genentech, Inc.*, 80 F.3d 1553, 1560-1561 (Fed. Cir. 1996) (affirming injunction barring

24  defendant's method of manufacturing hGH[14] by recombinant DNA techniques using plasmid

25  containing semi-synthetic gene claimed by process patent);  *Marion Merrell Dow Inc. v.*

26  *American Cyanamid Co.*, 36 U.S.P.Q.2d (BNA) 1036, 1041 (D.N.J. 1994) (denying

27

28         [13]  *See* D.E. 178, Ex. 11 to Attachment no. 1 (ordered sealed by the Court).
           [14]  Human growth hormone.

1  defendant's motion for summary judgment of non-infringement of process patent);  *Olsson v.*

2  *United States*, 25 F.Supp. 495, 498 (Ct. Cl. 1938) (storage of infringing products held "use"

3  of plaintiff's invention; awarding plaintiff judgment for infringement).  Merck's repeated,

4  strenuous seeking of a license to all of AntiCancer's technology corroborates Merck's

5  awareness of its infringements.  One who is not using or coveting a competitor's patented

6  methods hardly needs a license to use them.

7       Lawton's mistake in serving deficient PICs (omitting this proof) in October 2007 is

8  undeniably a part of the landscape of this case.  Yet Lawton corrected the mistake and served

9  amended versions detailing it.  The Court ultimately refused Lawton leave to do so, enabling

10 Merck (in its mind) to ignore the proof of its infringements.  Notably, Merck's own authority

11 from its summary judgment motion defeats its motion in this context.  On summary

12 judgment, Merck relied heavily on *02 Micro International Limited v. Monolithic Power*

13 *Systems, Inc.*, 467 F. 3d 1355, 1363 (Fed. Cir. 2006), in which the Federal Circuit upheld a

14 summary judgment granted in the wake of defective PICs which the district court refused the

15 plaintiff leave to amend.  In the same case, the district court refused to make an exceptional

16 case finding or award attorneys' fees to defendant.  This was despite the summary judgment

17 and plaintiff's intervening attempt to amend its infringement contentions long after the

18 exchange of preliminary infringement contentions, the *Markman* hearing, *Markman* rulings,

19 passage of the deadline for amending post-*Markman* infringement contentions without leave

20 of court, a deposition that had provided the factual basis for a new infringement theory, and

21 the defendant's filing of final invalidity contentions.  *O2 Micro International Limited v.*

22 *Monolithic Power Systems, Inc.*, 399 F.Supp.2d 1064, 1087 (N.D. Cal. 2005).  If the court in

23 *O2 Micro* viewed that case (which also involved defective PICs and summary judgment) as

24 not exceptional, there is no way this case can be viewed any differently.

25      Lawton is not the first lawyer to make a mistake in litigation.  Nor is Merck the first

26 party to try to capitalize on such a mistake with a section 285 motion.  This Court should not

27 be the first to grant a section 285 motion based upon such a mistake.  *See Stutz Motor Car of*

28 *America, Inc. v. Reebok International, Ltd.*, 909 F. Supp. 1353 (C.D. Cal. 1995)*, aff'd,* 1997

17

1  U.S. App. LEXIS 11877 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 863, 139 L.Ed.2d. 112, 118

2  S. Ct. 169 (1997).  There, the Court described numerous failings of plaintiff and plaintiff's

3  counsel, and granted defendant's summary judgment motion for non-infringement.  *Id*. at

4  1367.  One of the mistakes made by plaintiff's counsel was a late-submitted expert

5  declaration on the issue of infringement.  Defendant got a judgment and sought attorneys'

6  fees under section 285.

7       The court denied the motion.  In so doing it reasoned that plaintiff's counsel's mistake

8  did not an exceptional case make:

9           Although the Court is inclined to agree with Reebok that
             plaintiff's, and plaintiff's counsel's performance was less than
10          sterling here, the Court cannot take the further step and state that
             this suit was baseless to a clear and convincing standard.
11          Although it was disclosed late in the game, the Reagin
             declaration presented a good faith, albeit erroneous, theory of
12          infringement.  Further, the Court is not inclined to find a case
             exceptional based on the simple bumbling about of counsel;
13          although such behavior makes the case more difficult to all
             concerned, it does not indicate clearly and convincingly that the
14          action was wholly without merit.

15 *Id. at* 1368.

16      Just as plaintiff in *Stutz*, AntiCancer delivered a good theory of infringement, and

17 proof to back it up (albeit four weeks late).   Unlike in *Stutz*, though, no one has proven that

18 theory wrong or the proof insufficient.  Lawton's mistake (like plaintiff's counsel's in *Stutz*),

19 is not clear and convincing evidence that AntiCancer's case is baseless so as to warrant an

20 exceptional case finding.

21           3.   AntiCancer's prosecution of the case against Merck did not cause the
                   action to be more protracted than it should have been.

22      AntiCancer made motions and *ex parte* applications (during the period between

23 January and April 2008) challenging the Magistrate Judge's denial of leave to amend

24 AntiCancer's PICs and the briefing-and-hearing schedule on Merck's summary judgment

25 motion.  Merck found the delays frustrating and unreasonable.  This is no basis for an

26 exceptional case finding.  It is not the proper role of any lawyer to accede passively to the

27 desires and goals of his adversary in litigation; withhold meritorious motions which advance

28

18

1    his client's interests;  refrain from protecting his client in high-stakes litigation;  or be

2    indifferent to judicial economy (which was among the goals of all three motions and *ex parte*

3    applications of which Merck now complains).  *See* Lawton dec., ¶ 36.

4           Merck argues that "[m]uch of AntiCancer's prolonging acts have been to abrogate the

5    impact of its earlier negligence."  Merck Mem. P&A at p. 10.  The "negligence" Merck refers

6    to is Lawton's admitted failure to serve adequate PICs on October 17, 2007.  Merck's

7    argument concedes an important point: that AntiCancer and Lawton tried to remedy the

8    impact of those PICs.  AntiCancer and Lawton did what diligent people do after committing

9    an error – try to fix it.  They made their motions and *ex parte* applications with the good faith

10   purpose of doing just that.  AntiCancer continued to pursue the merits of its claims.  Lawton

11   continued to zealously represent his client.  He did not just give up and go away (neither did

12   his client).  Merck expresses disappointment at this, as though Merck's opponents should lie

13   down and quit after suffering a reversal.  This view of a lawyer's role in litigation ignores the

14   lawyer's duties to both client and Court.  *See* Lawton dec., ¶ 36.  Merck's disappointment at

15   AntiCancer's refusal to give up does not an exceptional case make.  Merck itself has

16   successfully resisted a § 285 motion (after losing summary judgment) by making the exact

17   same argument in defense of its own supposedly delaying behavior.  *See Merck*, *supra*, 79

18   F.Supp.2d at 555 (Merck's allegedly "needless, expensive discovery to keep the litigation

19   going" not basis for exceptional case finding).

20          *Network Caching Technology, LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881 (N.D.

21   Cal. 2003), is instructive as a guide to whether deficient PICs should trigger an attorneys'

22   fees award (albeit in the Rule 11 setting).  In that case, plaintiff served inadequate PICs, then

23   revised them (twice); the revised versions remained deficient.  Defendants sought Rule 11

24   sanctions.  The court denied them, reasoning that, "[w]hile NCT's responses may not have

25   been an exemplary model of disclosure, **Patent LR 3-1 does not require NTC to produce**

26   **evidence of infringement or to set forth ironclad and irrefutable claim constructions**."

27   *Id.* at *13 (emphasis added).  It added that "PICs are not meant to provide a forum for

28   litigation of the substantive issues; they are merely designed to streamline discovery." *Id*.

1    Here, as in *Network Caching Technology*, *supra*, deficient PICs do not trigger

2    sanctions.  Nor does AntiCancer's counsel's zeal in continuing to pursue the case against

3    Merck despite the Magistrate Judge's ruling.  In *MEMC Electronic Materials v. Mitsubishi*

4    *Materials Silicon Corp., et al.*, 2004 U.S. Dist. LEXIS 29354 (N.D. Cal. 2004), defendants

5    sought attorneys' fees under both section 285 and Rule 11 (as Merck does here).  Defendants

6    alleged that MEMC was guilty of vexatious tactics and unprofessional behavior.  The parties

7    quoted deposition transcripts, rehashed discovery disputes, and traded accusations.  *See id.* at

8    \*16.  The court refused to find the case exceptional.  In so doing, it reasoned:  "While

9    MEMC was clearly very active throughout this lawsuit, the record does not support a finding

10   that MEMC's conduct throughout the litigation was clearly and convincingly vexatious,

11   unjustified, or frivolous.  Counsel for both parties zealously represented their clients."  *Id.*

12       So it is here.  Lawton zealously represented AntiCancer in this case.  Vis-a-vis Merck,

13   his representation has (to this point) failed to prevent summary judgment.  Yet it does not

14   follow from this that the case is exceptional or that sanctions are warranted.

15           4.   AntiCancer and Lawton committed no "litigation misconduct" or
             "unprofessional behavior."
16
             Merck collects every act of AntiCancer and Lawton which displeased Merck
17
     and argues that, taken together, they render the case "exceptional."
18
         This is wrong, and Merck's characterization of the facts false and misleading (as
19
     explained further below).
20
             a.   30(b)(6) deposition of AntiCancer concerning pre-suit investigation.
21
         The deposition of AntiCancer's 30(b)(6) representative, Dr. Robert M.
22
     Hoffman), took place on December 5, 2007.  The deposition began at 9:16 a.m. and ended at
23
     6:17 p.m. on that day.  At it, attorney Pistorino asked 431 questions of Dr. Hoffman.  Dr.
24
     Hoffman answered all of these questions, except for (a) 14 questions which called for
25
     attorney-client privileged matter or attorney work product (which Lawton instructed Dr.
26
     Hoffman to not answer), and (b) 2 questions which Dr. Hoffman had answered multiple
27

28

1   times already (which Lawton told him to not answer because cumulative and harassing).[15]

2   Thus Dr. Hoffman answered 415 of the 431 questions posed by Pistorino.  Twice, attorney

3   Pistorino openly asked Dr. Hoffman to tell Pistorino the content of Dr. Hoffman's

4   conversations with Lawton – an overt attempt to breach the attorney-client privilege.  Ex. 11

5   at p. 28:17-19, 189:2-11.  Pistorino also laughed at Dr. Hoffman's testimony while on the

6   record.  Pistorino's laughing prompted Dr. Hoffman himself to tell Pistorino that Dr.

7   Hoffman's sworn testimony was not a joke. *Id*. at pp. 183:25, 184:1.  When Lawton objected

8   to Pistorino's laughing at Dr. Hoffman's testimony as disrespectful of his client, Pistorino

9   argued that Lawton's doing so was an improper "speaking objection." *Id*. at 183:9-22.

10   Throughout, attorney Pistorino insisted on repeating dozens of questions (answered

11   previously by Dr. Hoffman) over and over – a practice to which Lawton objected but

12   nevertheless allowed (except for the two instances described above). *See id*. at pp. 22:10,

13   42:10, 42:21, 46:22, 53:5, 53:14, 61:23, 62:23, 65:24, 67:9, 75:14, 80:21, 81:17, 82:20,

14   83:11, 85:3, 92:23, 93:14, 97:7, 98:5, 101:19, 102:19, 123:24, 105:3, 112:8, 119:5, 121:2,

15   123:5, 126:12, 126:23, 127:5, 128:8, 129:6, 131:7, 132:7, 136:1, 143:22, 147:14, 148:18,

16   150:23, 151:17, 152:9, 153:12, 154:6, 156:3, 156:21, 158:12, 159:10, 181:4, 185:2, 185:11.

17   Throughout the day, Mr. Pistorino's tone and demeanor were condescending and

18   disrespectful.  This increased as the day wore on.

19         The deposition ended at 6:17 p.m., over an hour after Pistorino first suggested

20   (falsely) he had "less than five minutes" of further questions (just before 5:00 p.m.), then

21   refused to give any estimate of how much longer his questioning would take, then persisted

---

23   [15] These questions were (1) whether AntiCancer tried to identify any particular promoter Merck was using before suing Merck for infringing the '159 patent, and (2) whether AntiCancer

24   based its decision to sue Merck for infringement on the Bednar deposition transcript solely.

25   Dr. Hoffman answered the "promoter question" four (4) times before Lawton instructed

26   him not to answer it the fifth time. *See* Ex. 11 at pp. 101:7-10, 101:15-16, 102:12-18, 103:6-9, 103:20-23.

27   Dr. Hoffman answered the "Bednar question" three (3) times before Lawton instructed

28   him not to answer it a fourth time. *Id*. at pp. 181:22-25, 182:1-2, 182:18-20, 184:22-25, 185:1, 185:8-10.

1    in his questioning until after 6:00 p.m. with no stopping time promised or in sight.  *See id*. at

2    pp. 146:11-13, 167:6-15, 168:10-22, 185:9-25, 168:1-22.  Lawton ended Pistorino's

3    questioning (which had become redundant and abusive).  Lawton then invited and allowed

4    other lawyers who had questions to take turns asking them.  At the end of the deposition

5    Lawton proposed a stipulation governing handling of the transcript.  Pistorino refused to

6    stipulate to anything.  *Id*. at pp. 191:22-25, 192:1-19.

7        During the morning, Mr. Pistorino interrupted the deposition at 9:59 a.m. so that he

8    could complain to the Magistrate Judge about what he viewed as speaking objections made

9    by Lawton (there had been six of these).  During a telephonic hearing lasting a few minutes,

10   the Magistrate Judge ruled that objections "shall be succinctly stated and no speaking

11   objections shall be made."  (D.E. 67.)  Lawton complied.  *See* Lawton dec., ¶ 31.

12       After the deposition ended, Merck did not move to compel any further answers to

13   further questions, demand another day, try to meet and confer concerning any problem it had

14   with Dr. Hoffman's answers, or (until now) complain to the Court of any violation of

15   Magistrate Judge Brooks' order.  *Id*.

16               b.    No prejudice or misrepresentation concerning withdrawn claims of
                        infringement of '523 and '968 patents.

17

18       AntiCancer's proposed amended contentions served on November 13, 2007

19   lacked contentions of infringements of the '523 and '968 patents.  This was the product of a

20   voluntary decision made by AntiCancer (with other counsel) in the AC-Xenogen patent

     case[16] to not assert those claims, not because of any lack of merit in the claims.  It was for
21
     other reasons having to do with simplifying AntiCancer's case for the Court and jury.
22
         Merck moved for (and got) summary judgment based on a lack of contentions as to
23
     those patents in the October 17 (defective) PICs.  Thus it could not have expended any effort
24
     on the '523 and '968 issues additional to that expended on the '384, '038, and '159 patents,
25
     because the sole basis for summary judgment as to all of them (defective PICs) was the same.
26

27   _____

         [16] *AntiCancer, Inc., v. Xenogen Corp., et al.*, Case No. 05-CV-0448.  The parties settled
28   this case earlier this year (*see ante* at pp. 10-11).

1   It follows Merck cannot possibly have incurred any additional attorneys' fees owing to the

2   dropping of those claims in the November 13 proposed amended versions.  *Id.*, ¶ 26.

3          AntiCancer's opposition to Merck's summary judgment motion incorrectly said there

4   was an agreement between the parties that AntiCancer was dropping its contentions as to the

5   '523 and '968 patents.  Lawton mistakenly thought there was such an agreement.  Lawton's

6   saying so was a mistake, not a deliberate misrepresentation to the Court.  The issue was

7   irrelevant in any event (because the Court granted summary judgment on the basis

8   AntiCancer lacked infringement contentions as to Merck across the board and as to all

9   patents, not just the '523 and '968 patents).  *Id.*, ¶ 27.  The courts do not consider

10  sanctionable the withdrawal of patent claims in revised PICs – nor should they.  *See, e.g.*,

11  *Network Caching Technology, LLC v. Novell, Inc.*, *supra*, 2003 U.S. Dist. LEXIS 9881, * 22

12  (court "reluctant to hold that withdrawal of claims or theories of infringement alone is

13  sufficient to conclude these claims were baseless. . . .imposing sanctions merely for

14  withdrawal would ultimately create perverse incentives for parties to extend the lifespan of

15  unsupportable claims and theories in order to avoid accusations of, and sanctions for,

16  purportedly baseless conduct").  Neither should this Court.

17              c.   <u>Propriety of AntiCancer's reliance on Bednar, Defeo-Jones, and Gibson</u>
                    <u>transcripts (and Merck's failure to object thereto on basis of "protective</u>
18                  <u>order" [sic] until now).</u>

19          Merck accuses AntiCancer of violating a "protective order" entered in the State

20  court action.[17]  There was no "protective order" in the State court action.   There was a

21  confidentiality stipulation (styled a "protective order," but never made an order) made

22  between AntiCancer and Xenogen Corp.  The State court never entered an order on the

23  stipulation, and no party ever asked it to.  In this case, the Magistrate Judge ruled on January

24  14 that "**a protective order was never entered in the State court action**," and "**it does not**

25  **appear that [NIBRI] this Defendant and [AntiCancer] the Plaintiff are parties to such**

26
_____

27        [17]  *AntiCancer, Inc., v. Novartis Institute for Biomedical Research, et al.*, Case No.
    GIC772297.

28

1  **an order.**"  D.E. 77 at p. 10:1-3 (emphasis added).  The Magistrate Judge was referring to

2  NIBRI (not Merck) when he said "this Defendant," but the same is true of Merck – it isn't a

3  party to the document.  Lawton dec., ¶ 7.

4       Neither Merck's counsel nor anyone else ever followed the means the stipulation

5  provided for making "CONFIDENTIAL" the transcripts of Merck witnesses Bednar, Defeo-

6  Jones, or Gibson.

7       Nearly three years later, AntiCancer filed excerpts of Bednar, Defeo-Jones, and

8  Gibson deposition transcripts as exhibits in opposition to Merck's summary judgment motion

9  (on April 25 of this year).  When AntiCancer did so, Merck never sought to designate the

10  transcripts of those depositions as confidential or have them sealed.[18]  Indeed, on May 2,

11  Merck filed nine pages of objections to the Bednar, Defeo-Jones, and Gibson deposition

12  transcript excerpts (among other exhibits).  D.E. 112.  Nowhere among those objections did

13  Merck invoke the "protective order" which supposedly barred use of those depositions in this

14  case.  *See id.*, ¶¶ 8, 9.

15  _____Previously (in July 2007), Lawton had warned attorney Pistorino in a telephone

16  conversation about the Bednar, Defeo-Jones, and Gibson transcripts, and that AntiCancer

17  intended to rely on them as proof of Merck's infringements in this case.  Pistorino asked

18  Lawton to email to Pistorino copies of the transcripts.  Lawton did so the same day.  *See* Ex.

19  2.  At no time during the attorneys' conversation on July 13 (or anytime after until the

20  "settlement discussions" prefacing this motion) did Pistorino tell Lawton that Pistorino

21  viewed AntiCancer's reliance on the Bednar, Defeo-Jones, and Gibson transcripts as

22  somehow violative of a "protective order" or stipulation.  *See id.*, ¶ 10.

23            5.    No violation of Rule 11.

24       Merck complains Lawton violated Rule 11, entitling Merck to over

25  $825,000.00 in attorneys' fees from Lawton personally.  Lawton did not violate Rule 11, as

26

27       [18]   Merck knows how to have things sealed when it wants.  It has tried (mostly
unsuccessfully) to have other materials sealed, e.g., multiple exhibits on its Rule 11 motion.  To

28  this day it has never sought to have the Bednar, Defeo-Jones, or Gibson transcripts sealed,
however.

1    argued in opposition to Merck's Rule 11 motion (set for hearing the same day as this

2    motion).  AntiCancer and Lawton do not rehash that opposition here.

3    IV.     CONCLUSION.

4        Enough is enough.

5        Merck itself knows (from its own experience as an unsuccessful plaintiff in a patent

6    infringement case) that losing a summary judgment motion and having its claims dismissed

7    because of an erroneous theory does not an exceptional case make. *See Merck*, *supra*, 79

8    F.Supp.2d at 558 (denying exceptional case finding and attorneys' fees to defendant who

9    defeated Merck on summary judgment motion;  Merck's "infringement claim, albeit

10   erroneous, was not baseless").  There is even less basis in this case than in *Merck*, *supra*, for

11   an exceptional case finding or award of attorneys' fees under section 285.  Merck's motion

12   should be denied.

13   Dated: December 4, 2008       LAWTON LAW FIRM

14

15

16                                By:      s/Dan Lawton

17                                      Attorneys for Plaintiff and Counterdefendant
                                     AntiCancer, Inc.

18

19   Dated: December 4, 2008       SELTZER CAPLAN MCMAHON VITEK

20

21

22                                By:      s/Richard A. Clegg

23                                      Attorneys for Plaintiff and Counterdefendant
                                     AntiCancer, Inc.

24

25

26

27

28