1  James C. Pistorino (SBN 226496)
   John F. Lynch (admitted *pro hac vice*)
2  Adam K. Whiting, Ph.D. (SBN 230083)
   HOWREY LLP
3  1950 University Avenue, 4th Floor
   East Palo Alto, CA  94303
4  Telephone:  (650) 798-3500
   Facsimile:   (650) 798-3600
5  E-Mail:  PistorinoJ@howrey.com
   E-Mail:  LynchJ@howrey.com
6  E-Mail:  WhitingA@howrey.com

7  Attorneys for Defendant and Counterclaimant
   MERCK & CO., INC.

8

9              UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11

12  ANTICANCER, INC., a California corporation,     )  Case No. 3:07-CV-00097-JLS-RBB
                                                    )
13                     Plaintiff,                   )
                                                    )
14         vs.                                      )  **MERCK & CO., INC.'S REPLY IN
                                                    )  SUPPORT OF EXCEPTIONAL CASE
15  CAMBRIDGE RESEARCH &                            )  FINDING AND AWARD OF ATTORNEY'S
    INSTRUMENTATION, INC., a Delaware               )  FEES**
16  corporation; MERCK & CO., INC., a New Jersey    )
    corporation; NOVARTIS INSTITUTES FOR            )
17  BIOMEDICAL RESEARCH INC., a Delaware            )  Hearing Date:        December 18, 2008
    corporation; and DOES 17-50,                    )  Time:                10:30 a.m.
18                                                  )  Courtroom:           6, 3rd Floor
                       Defendants.                  )  Judge:      Honorable Janis L. Sammartino
19  ————————————————————————                        )
                                                    )
20  AND RELATED COUNTERCLAIMS.                      )
                                                    )
21  ————————————————————————                        )

22

23

24

25

26

27

28

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

# TABLE OF CONTENTS

**Page**

I.    DISCUSSION ................................................................................................................. 1

    A.    Merck Was The Prevailing Party .................................................................. 2

    B.    This Case Was Exceptional ............................................................................ 2

        1.    AntiCancer was manifestly unreasonable in assessing
            infringement ......................................................................................... 2

            a.    The '523, '968, '384, '038, and '159 Patents ........................ 3

            b.    Improper Reliance on September 2005 Poster ........................ 4

            c.    Improper Theories/"Evidence" of Infringement Not
               Disclosed in PICs ................................................................... 5

        2.    This Suit Was Frivolous/AntiCancer Knew or Should Have
            Known That The Suit Was Baseless ................................................... 5

        3.    AntiCancer Caused The Action To Be More Protracted
            Than It Should Have Been .................................................................. 6

        4.    AntiCancer Engaged In Litigation Misconduct And
            Unprofessional Behavior .................................................................... 6

            a.    AntiCancer's Counsel Obstructed Merck's
               Discovery Of The Lack of a Pre-Suit Investigation ............... 6

            b.    AntiCancer's Improper Reliance On Depositions
               From The State Court Case ..................................................... 7

    C.    AntiCancer's Arguments Lack Merit ............................................................ 7

        1.    AntiCancer's Background Material ..................................................... 7

        2.    AntiCancer's Arguments .................................................................... 9

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

-i-

1

## TABLE OF AUTHORITIES

2

Page(s)

3

## CASES

4

*Airtex Corp. v. Shelley Radiant Ceiling Co.*,
    536 F.2d 145 (7th Cir. 1976) ...................................................................................2

5

*Buckhamon Bd. & Care Home, Inc. v. West Va. Dep't Health & Human
    Resources*,
    532 U.S. 598, 604-06 (2001) .................................................................................2

6

7

*F & G Research, Inc. v. Google Inc.*,
    2007 WL 2774031 (S.D. FL.) ...............................................................................5

8

9

*Inland Steel Co. v. LTV Steel Co.*,
    364 F.3d 1318 (Fed. Cir. 2004) .............................................................................2

10

*Judin v. U.S.*,
    110 F.3d 780 (Fed. Cir. 1997) .............................................................................1, 9

11

12

*Lucent Tech., Inc. v. Gateway, Inc.*,
    2008 U.S. Dist. LEXIS 37345 (S.D. Cal. April 30, 2008) ....................................6

13

*Nikko Materials USA, Inc. v. R.E. Service Co.*,
    2006 WL 118438 (N.D. Cal. 2006) ......................................................................6

14

15

*O2 Micro Int'l Inc. v. Monolithic Power Systems, Inc.*,
    399 F.Supp.2d 1064 (N.D. Cal. 2005)...................................................................9

16

*O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) .............................................................................9

17

18

*Phonometrics Inc. v. Choice Hotels Int'l Inc.*,
    186 F.Supp.2d 1231 (S.D. Fl. 2002)...................................................................5, 6

19

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    559 F.Supp.2d 947 (W.D. Wisc. 2008) ................................................................6

20

21

*Under Sea Indus., Inc. v. Dacor Corp.*,
    833 F.2d 1551 (Fed. Cir. 1987) ............................................................................3

22

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981, 986 (Fed. Cir. 2000) ......................................................................9

23

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
    231 F.3d 1339 (Fed. Cir. 2000) ............................................................................9

24

25

26

27

28

**HOWREY LLP**

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

-ii-

1    Merck's motion should be granted in its entirety.  Long after AntiCancer's allegations were

2    shown to be baseless, AntiCancer vexatiously pursued this action and continues to assert that it has

3    "proof" that Merck infringes.  Rather than refuting Merck's motion, AntiCancer's Opposition actually

4    supplies further bases for such a finding.[1]  Among these is AntiCancer's claim that Rule 56 "obliged"

5    AntiCancer to ignore this Court's order and resist Merck's motion for summary judgment with

6    inadmissible "evidence."  Opp. at 16.

7        Though AntiCancer admits "gaps" in the alleged "evidence" and has never come forward with

8    anything comparing the actual claims to "evidence", AntiCancer continues to unreasonably assess

9    infringement and accuse Merck of infringing.  AntiCancer's argument that "process claims" have a

10   lower infringement assessment requirement is not now, and has never been, the law.  See *Judin v. U.S.*,

11   110 F.3d 780 (Fed. Cir. 1997).  Absent an order by this Court, AntiCancer will continue to accuse

12   parties of infringing patents without construing the claims, conducting a reasonable pre-suit

13   investigation, or having evidence of all the elements on any claim.[2]

14       Rather than acknowledging and taking responsibility for its misconduct, AntiCancer defends

15   such tactics as leaving depositions while questions are pending and instructing witnesses not to answer

16   on grounds other than privilege.  Absent an order by this Court, that behavior (as well as the other

17   misconduct) can be expected to be repeated in the future.

18       This is an "exceptional case" that Merck and its counsel should not have had to endure and

19   Merck should be awarded its attorney's fees.

20   **I.    DISCUSSION**

21   _____

22   [1]  Even the filing of this motion occasioned vexatious conduct by AntiCancer.  Merck's motion cites to
     portions of the AntiCancer/Xenogen Settlement Agreement which AntiCancer deemed confidential.

23   Simultaneously, AntiCancer informed Merck that it would not oppose Merck's motion for leave to file
     AntiCancer's own document under seal.  Accordingly, Merck was forced to burden the Court by filing

24   an opposed motion for leave to file AntiCancer's own document under seal.  See Dkt. # 157.  Having
     forced Merck and the Court to jump through these hoops, AntiCancer filed a notice of non-Opposition

25   four days later.  See Dkt. # 161.

26   [2]  In this vein, Merck notes that AntiCancer has threatened another suit against Merck asserting three of
     the same patents against the same activity that was accused in this case.  See Declaration of James

27   Pistorino in Support of Merck's Reply in Support of Exceptional Case Finding and Award of
     Attorney's Fees at Exhibit ("Ex.") N.  Again, such an assertion would be manifestly unreasonable and

28   in violation of Mr. Lawton's duties.

**A.    Merck Was The Prevailing Party**

AntiCancer's effort to cite to non-patent or pre-Federal Circuit district or Circuit cases concerning "prevailing party" status is misguided.  In patent cases, "prevailing party" status is guided by the precedent of the Federal Circuit and Supreme Court only.  See *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) ("However, we have made clear that we apply our own law to define the meaning of prevailing party in the context of patent litigation." (internal citations and quotations omitted)).  Thus, AntiCancer's citation to *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145 (7th Cir. 1976), e.g., is inapposite.  Opp. at 2, 12.  In the patent context, the Federal Circuit is guided by the Supreme Court's decision in *Buckhamon Bd. & Care Home, Inc. v. West Va. Dep't Health & Human Resources*, 532 U.S. 598, 604-06 (2001).  *See Inland*, 364 F.3d at 1320 (a judicially sanctioned material change in the legal relationship between the parties).

AntiCancer's prevailing party defense is founded on the premise that the Court's summary judgment decision was "not on the merits" because the Court refused to consider "evidence" AntiCancer submitted in support of theories not disclosed in AntiCancer's Infringement Contentions. (Opp. at 12).  The Court's decision was a judgment on the merits.  The Court's decision was that there were none to AntiCancer's claims because there was no evidence to sustain AntiCancer's burden of proving infringement and the "evidence" AntiCancer sought to submit was barred because of AntiCancer's failure to serve Infringement Contentions related to Merck.  As noted in Merck's opening papers, Merck is the prevailing party because AntiCancer has obtained absolutely no relief whatsoever on its claims of infringement and/or because Merck has obtained some relief on its declaratory judgment counter-claims of non-infringement.

**B.  This Case Was Exceptional**

**1.    AntiCancer was manifestly unreasonable in assessing infringement**

AntiCancer's Opposition states: "As ever, Merck refuses to provide the Court with any proof that it does not infringe."  Opp. at 16.[3]  That statement epitomizes AntiCancer's manifestly

---

[3]  See also Lawton Decl. at ¶¶ 35 ("If Merck was not using the claimed inventions of the patents-in-suit, it had every opportunity to provide us with information to establish what it was doing …"); 36 ("… in a case in which Merck infringed and has never proved or tried to prove that it did not infringe.").

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

-2-

1   unreasonable approach to infringement assessment.  As the patentee, AntiCancer always bears the

2   burden of proving infringement by a preponderance of the evidence and there is no burden to disprove

3   infringement.  *See, e.g., Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987)

4   ("The burden always is on the patentee to show infringement.").  AntiCancer's failure to compare

5   construed claims to any evidence associated with Merck that meets all the limitations of any claim

6   while asserting infringement by Merck is unreasonable.[4]

7               **a.    The '523, '968, '384, '038, and '159 Patents**

8               As in other papers, AntiCancer's Opposition fails to identify any claim constructions used for

9   any of the patents.  Without claim construction, of course, any assessment concluding infringement is

10  manifestly unreasonable.  With respect to the '523, '384, '038 and '159 patents specifically,

11  AntiCancer makes no effort to refute the showing of Merck's moving papers.  For example,

12  AntiCancer makes no effort to claim that it knew the vectors, if any, used by Merck (and whether they

13  were the pED-mtx vector required by the claims of the '523 patent) or provides any rationale for

14  conducting an analysis under the doctrine of equivalents.  As set forth in Merck's moving papers,

15  AntiCancer was manifestly unreasonable in assessing infringement when it accused Merck of

16  infringing lacking basic information required for an infringement analysis.

17              With respect to the '968 patent, AntiCancer attempts to point to Claim 7 but, again, AntiCancer

18  is manifestly unreasonable in assessing infringement.  AntiCancer never offers any claim construction

19  for the numerous limitations of that claim or any infringement analysis.  Among the many limitations

20  are a "solid tumor expressing GFP" in a subject with a "contrast dye" "administered intravenously"

21  "contained in [the subjects] blood vessels."  In the pre-filing period, AntiCancer has offered no

22  evidence that it considered ProSense a "contrast dye."  In the post-filing period, AntiCancer now

23  claims that ProSense is a "contrast dye."  However, AntiCancer never had any evidence that Merck

24

25  _____

26  [4]  Opp. at 7 ("… the allegations were true …"); 15 ("… showing its use of AntiCancer's patented
    methods …"); 16 ("… Merck **does** infringe." (emphasis in original)); Id. ("This evidence proves

27  Merck infringed AntiCancer's patents."). 17 ("… corroborates Merck's awareness of its
    infringements."); Id. ("… enabling Merck (in its mind) to ignore the proof of its infringements.");

28  Lawton Decl. at ¶ 47 ("… a copy of this poster (which proved infringement by Merck) …").

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS                -3-
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

1   was using ProSense (or a "contrast dye") in a subject with all of the other limitations.  Even if

2   AntiCancer had actually conducted an infringement assessment, a conclusion of infringement without

3   claim construction or evidence of numerous claim elements is manifestly unreasonable.

4   **b.   Improper Reliance on September 2005 Poster**

5   Despite the release executed by AntiCancer concerning activities with Xenogen devices,

6   AntiCancer unreasonably attempted to resist Merck's motion for summary judgment by pointing to

7   those activities.  AntiCancer's defense of this conduct is founded on the claim that Merck did not raise

8   the matter or object (on that grounds) when AntiCancer did so.  Opp. at 15.  Merck's motion for

9   summary judgment was filed in November 2007 and did not address the *Xenogen* release because that

10  document was not executed until late February 2008 and Merck did not receive a copy until March

11  2008.  Because it was not included in Merck's opening papers, raising that matter for the first time in

12  Merck's reply in May 2008 would have been improper.  In addition, in light of the multiple grounds

13  for granting Merck's motion already set forth, raising the matter by re-filing Merck's motion or

14  seeking leave to amend Merck's Answer after the deadline for amending (February 25, 2008) would

15  have been wasteful, unnecessarily driven up the costs, and caused further delay.[5]  Nevertheless,

16  AntiCancer certainly knew the terms of a document executed by its President, Dr. Hoffman.  Further,

17  AntiCancer's counsel, Mr. Lawton, admits that he saw the document on April 8, 2008.  Lawton Decl.

18  at ¶ 44.  That was more than two weeks before AntiCancer attempted to resist Merck's motion for

19  summary judgment by pointing to the released Xenogen activities and 30 days before Mr. Lawton

20  appeared at the hearing on Merck's motion for summary judgment and did the same (when Dr.

21  Hoffman was also in attendance).  Trying to resist a motion for summary judgment with inadmissible

22  "evidence" related to released claims was manifestly unreasonable.[6]

23

24

25  [5] Had the Court denied Merck's motion for summary judgment, Merck would have taken these steps.

26  [6] In addition, Merck notes the shifting nature of AntiCancer's allegations.  AntiCancer alleges that the
    Complaint contained details about alleged infringement by referring, generally, to the CRI Maestro

27  machine.  (Opp. at 3).  The Complaint does not mention the Xenogen device.  However, AntiCancer
    sought to resist Merck's motion for summary judgment by pointing to alleged activities with the

28  Xenogen device, including AntiCancer's efforts at the hearing on Merck's motion.

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS                    -4-
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

c.   **Improper Theories/"Evidence" of Infringement Not Disclosed in PICs**

At least twice, this Court issued orders barring AntiCancer from amending its PICs to offer infringement contentions against Merck.  Nevertheless, AntiCancer attempted to resist Merck's motion for summary judgment by relying on theories and "evidence" barred by the Court.  AntiCancer's current claim is that Rule 56 made "mandatory" AntiCancer's disregard of the Court's orders or Rule 56 "obligated" AntiCancer to do so.  Opp. at 16.  In and of themselves, these arguments are frivolous.  Indeed, rather than "mandatory" or "obliged", continuing to proceed in such circumstances has been deemed vexatious conduct justifying an "exceptional case" finding.  *See, e.g., Phonometrics Inc. v. Choice Hotels Int'l Inc.*, 186 F.Supp.2d 1231, 1234 (S.D. Fl. 2002).

Frivolous as well was AntiCancer's argument that the Court was barred from considering summary judgment before *Markman*, despite the fact that AntiCancer had no evidence to resist Merck's motion.  Opp. at 15 (*citing Nesscap Co., Ltd. v. Maxwell Tech., Inc.*, 2007 U.S. Dist. LEXIS 89450 (S.D. Cal. 2007)).  Indeed, the same argument advanced by AntiCancer has been cited in support of finding of both a Rule 11 violation and "exceptional case" status by other courts.  For example, in *F & G Research, Inc. v. Google Inc.*, 2007 WL 2774031 (S.D. FL.), the court concluded that such an argument "was frivolous, raised in bad faith and warrants sanctions pursuant to Rule 11 and 35 U.S.C. § 285."  *Id.* at * 17.  In so finding, the Court noted that the same counsel had previously moved for summary judgment prior to claim construction in another case.  Likewise, in this case, AntiCancer's argument was frivolous and made in bad faith.  Like the sanctioned party in *F &G*, the frivolous nature of AntiCancer's argument is revealed by the fact that AntiCancer (represented by Mr. Lawton) has previously moved for summary judgment prior to claim construction in another case pending in this District.  *See* Ex. O.

2.   **This Suit Was Frivolous/AntiCancer Knew or Should Have Known That The Suit Was Baseless**

It is manifest that this suit was frivolous, etc.  One indication of this fact is the constantly shifting nature of AntiCancer's allegations and AntiCancer's contradictory statements about them.  For example, the Complaint refers generally to the CRI *Maestro* machine but AntiCancer sought to resist Merck's' motion for summary judgment by pointing to the Xenogen device.  Likewise, the Opposition asserts that the Bednar, Gibson and Defeo-Jones depositions, *inter alia*, "proves Merck infringed

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

-5-

1   AntiCancer's patents." Opp. at 16. However, at the hearing on Merck's motion for summary

2   judgment (in support of its FED.R.CIV.P. 56(f) argument), AntiCancer claimed: "… the focus of those

3   depositions was not on Merck and what it was necessarily doing to infringe …" Ex. P at 37:4-6.

4   Simply as an example of baselessness, during prosecution of the '523 patent, the claims were amended

5   to include the "pED-mtx" limitation. AntiCancer knew or should have known that this case was

6   baseless when it did not even know, e.g., which vector, if any, Merck was using.

### 3.   AntiCancer Caused The Action To Be More Protracted Than It Should Have Been

8           As noted in Merck's moving papers, putting aside the fundamentally baseless nature of this

9   case to start with, this case was essentially over when, (as a result of neglect), AntiCancer failed to

10  serve Infringement Contentions related to Merck in October 2007. As a result of various delaying

11  tactics and multiple motions by AntiCancer, this case continues to drag on more than a year later.

12          Mr. Lawton claims that his "duties to both client and Court" (Opp. at 19:14) required, e.g.,

13  AntiCancer to file motions arguing that "neglect" is "good cause", seeking the extraordinary relief of

14  interlocutory appeal, and persisting in allegations of infringement after the Court barred AntiCancer

15  from offering theories of infringement. Those arguments are frivolous. Indeed, AntiCancer's duty to

16  this Court and Merck was to not vexatiously and baselessly prolong this case either at the beginning or

17  when it was clear that it could not hope to prove infringement after it failed to serve Infringement

18  Contentions.[7]

### 4.   AntiCancer Engaged In Litigation Misconduct And Unprofessional Behavior

#### a.   AntiCancer's Counsel Obstructed Merck's Discovery Of The Lack of a Pre-Suit Investigation

22          It is manifest that Mr. Lawton engaged in litigation misconduct when he interrupted the

23  deposition in an effort to "interpret" Merck's questioning, left the room with the witness while the

24  question was pending, only to return minutes later and then instruct the witness not to answer whether

---

[7]   *See, e.g., Nikko Materials USA, Inc. v. R.E. Service Co.*, 2006 WL 118438 (N.D. Cal. 2006); *Lucent Tech., Inc. v. Gateway, Inc.*, 2008 U.S. Dist. LEXIS 37345 (S.D. Cal. April 30, 2008) (Brewster, J.); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F.Supp.2d 947, 968 (W.D. Wisc. 2008).

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB                    -6-

1  the witness and Mr. Lawton had had a discussion and whether they discussed the pending question.

2  This Court would never allow such conduct at trial and the claims of Mr. Lawton's declaration (Decl.

3  at ¶ 33) in this regard are incredible.  Pursuant to Fed.R.Civ.P. 30(c)(2), "A person may instruct a

4  deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by

5  the court, or to present a motion under Rule 30(d)(3)." (emphasis added).  AntiCancer concedes that

6  Mr. Lawton instructed Dr. Hoffman not to answer multiple questions on grounds other than privilege

7  or to enforce a limitation ordered by the Court (Opp. at 6, 20-22) and AntiCancer never sought relief

8  under Rule 30(d)(3) (or any other Rule).

9       The above is manifest litigation misconduct.  These were deliberate choices made by

10  AntiCancer's counsel who should be held responsible for them.

11                    **b.    AntiCancer's Improper Reliance On Depositions From The State
                             Court Case**

12       Merck does not point to the violation of the Stipulated Protective Order signed by Mr. Lawton

13  as an instance of contempt.  Rather, Merck points to it as an instance of unprofessional

14  behavior/vexatiousness.[8]  That AntiCancer attempted to rely on the Bednar, Defeo-Jones, and Gibson

15  depositions in violation of the agreement (signed by Mr. Lawton) in *AntiCancer I* is beyond dispute.

16  Instead, AntiCancer's simply states that Merck did not object.  Opp. at 23-24.  Merck's counsel in this

17  case (Mr. Pistorino) did not learn of the agreement until shortly before Merck filed its Opposition to

18  AntiCancer's motion for leave to amend its PICs, noted that fact therein, and began an investigation of

19  this matter.  See Dkt. # 72, n. 2.[9]

20                    **C.    AntiCancer's Arguments Lack Merit**

21                         **1.    AntiCancer's Background Material**

22  _____

23  [8]  By its very terms, the Stipulated Protective Order bars use of material from *AntiCancer I* in other
     suits regardless of whether or not the material is designated "confidential."

24  [9]  However, co-defendant NIBRI addressed the Stipulated Protective Order in its papers arguing that
     reliance on depositions from *AntiCancer I* was barred.  See Dkt. # 73 at 3-4.  The matter was addressed

25  during the January 14, 2008 hearing where Judge Brooks indicated that he would not prevent
     AntiCancer from relying on the depositions because, *inter alia*, the Stipulated Protective Order was not

26  entered as an order by the State Court.  See Ex. Q at 9:19-10:5.  The matter was again addressed during
     the January 31, hearing and Judge Brooks indicated that his opinion had not changed but that, in any

27  event, the remedy for violation would be to raise the matter with the State Court judge presiding over
     *AntiCancer I*.  See Ex. R at 17:25-18:15.

28

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

-7-

1    Though space limitations prevent discussion of all of them, AntiCancer's recitation of the

2    procedural history of this case (Opp. at 2-10) is erroneous in numerous respects.  Two examples will

3    suffice.  AntiCancer contends: "AntiCancer complied with the CMO" (Opp. at 5).  That is clearly

4    erroneous.  It is undisputed that AntiCancer did not serve any contentions on October 15, 2007, as

5    required by the CMO.  Likewise, the CMO required AntiCancer to provide alleged priority dates and it

6    is undisputed that AntiCancer did not provide them for the '038 and '384 patents.  Likewise, the CMO

7    required production of certain documents (e.g., the file histories) by October 15 and it is undisputed

8    that AntiCancer did not produce documents on October 15 (or 17).  Instead, on October 17, 2007,

9    AntiCancer informed the defendants of its *conditions* for complying with the CMO and wrote:

10   "Pending finalization of a stipulated protective order …, *we have withheld* certain materials that will

11   be covered by the protective order.  As soon as all have signed the stipulated protective order we will

12   produce those materials *(including file histories)*." (emphasis added).[10]  Clearly incorrect is

13   AntiCancer's newest claim that: "The documents the CMO described [including file histories] were

14   not in the possession, custody or control of Lawton or AntiCancer."  (Opp. at 4).  AntiCancer and Mr.

15   Lawton had possession, custody or control of at least the file histories because ***AntiCancer and Mr.***

16   ***Lawton*** filed them as exhibits in the *Xenogen* case more than a year before the CMO required

17   production to the defendants in this case.  *See* Ex. S.  As to the other documents (e.g., contracts

18   executed by AntiCancer), AntiCancer does not identify who allegedly had them and AntiCancer's

19   newest claim contradicts its earlier statement that AntiCancer was "withholding" documents.

20   AntiCancer's claim that: "Merck has, at all times, ignored AntiCancer's proposed amended

21   PICs; never addressed the merits of them" (Opp. at 5) is also incorrect.  Merck's motion for summary

22   judgment was filed before AntiCancer served proposed "amended" PICs and had the dual bases that:

23   1) there was no evidence of infringement; and 2) any evidence AntiCancer wanted to come forward

24

25

26   _____

27   [10]   As Merck noted in a letter sent on October 29, 2007, the Patent Local Rules include a default
     protective order and any delay in finalizing a tailored protective order was of AntiCancer's own
28   making.  *See* Ex. G to Pistorino Decl. ISO Merck's Motion for Attorneys Fees (Dkt. No. 142-10).

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS                    -8-
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

1   with was barred because there were no infringement contentions. Dkt. #62 at 7-9.[11]  After Merck

2   moved for summary judgment, AntiCancer served its proposed "amended" PICs.  Despite two rulings

3   by this Court barring it from doing so, AntiCancer thereafter attempted to resist Merck's motion for

4   summary judgment by relying on its proposed "amended" PICs.  See Dkt. #108 at 17-18 (Exhibit 30).

5   On the off-chance that the Court might be willing to consider AntiCancer's proposed "amended" PICs,

6   Merck's reply addressed the lack of evidence disclosed in AntiCancer's proposed (and rejected)

7   "amended" PICs.  See Dkt. #110 at 5-6 ("Even if the Court were willing to … consider everything

8   AntiCancer attempts to offer in its Opposition brief, summary judgment would still be appropriate[.]").

## 2.   AntiCancer's Arguments

10        Space limitations prevent Merck from responding to all of AntiCancer's allegations fully.

11  However, in brief:

12        1) There is no lower standard for either the pre-filing inquiry or for infringement assessments

13  for process claims, etc. (Opp. at 13-14).  The same standards of a reasonable pre-suit investigation

14  including claim construction and an infringement analysis (including actual evidence) always apply

15  regardless of whether critical information is in the sole possession of the alleged infringer.  *See View*

16  *Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000); *Judin v. U.S.*, 110 F.3d

17  780 (vacating and remanding for Rule 11 determination concerning process claim where patentee

18  argued it did not have access).

19        2) Whether a case is "exceptional" under § 285 is determined under the "totality of the

20  circumstances" and, therefore, a § 285 determination is based on the facts of each case.  *See*

21  *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000).  Thus,

22  AntiCancer's effort to point to the differing facts of other cases where "exceptional case" was not

23  found and argument that AntiCancer was no worse is both wrong and misguided. (Opp. at 2, 17-18).[12]

24

---

25  [11]  AntiCancer later contends: "Based solely on AntiCancer's defective PICs served in October 2007,
26  Merck moved for summary judgment." (Opp. at 7).  Again, that is incorrect.  See Dkt. #62 at 7-9.
    [12]  AntiCancer cites *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir.
27  2006) (concerning the "good cause" requirement for amending PICs) and *O2 Micro Int'l Inc. v.*
    *Monolithic Power Systems, Inc.*, 399 F.Supp.2d 1064 (N.D. Cal. 2005) for the proposition that
28  "defective" PICs cannot support an "exceptional case" finding.  Opp. at 2 and 17.  The *O2* cases
                                                                          (Continued...)

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS                    -9-
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

1    3) Unable to substantively defend Mr. Lawton's conduct at the deposition, AntiCancer resorts

2  to attacks on Merck's counsel.  Merck's counsel did not laugh at Dr. Hoffman (as the video/audio

3  clearly shows) and was not rude, disrespectful, condescending or harassing.[13]  Opp. at 6, 20-22.

4  Indeed, even if any of that were true, then AntiCancer's recourse would have been to seek relief under

5  Fed.R.Civ.P. 30(d)(3) (which AntiCancer did not do).  Instead, AntiCancer's counsel usurped the

6  Court's role in deciding which non-privileged questions would be answered and improperly

7  communicated with the witness while a question was pending.

8    4) Like its deposition conduct, AntiCancer is unable to substantively defend its conduct with

9  regard to the case more generally.  Instead, AntiCancer simply resorts to attacking Merck and its

10  counsel with arguments concerning Merck's co-pending Rule 11 motion and efforts to settle this case

11  without further burdening the Court.  Opp. at 7.

12    5) In Merck's view, AntiCancer's comments regarding the "toxic relationship" between

13  counsel are an ideal example of dealing with AntiCancer's counsel.[14]  Opp. at 9.  After this Court's

14  Order on October 23, 2008, Mr. Lawton sent two letters on the same day.  In the first, Mr. Lawton

15  suggested a meeting to discuss the relationship between counsel.  In the second (sent within four hours,

16  without intervening contact by Merck), Mr. Lawton threatened a Rule 11 motion on the grounds that

17  Merck's exceptional case motion was frivolous  Ex. T.  Merck's counsel responded with a single letter

18  refuting AntiCancer's Rule 11 allegation and declining a meeting as non-productive in light of Mr.

19  Lawton's continued behavior.  Ex. U.  In its Opposition, AntiCancer mentioned only its first letter

20  suggesting a meeting did not include either its second letter or Merck's response, and finishes with Mr.

21  Lawton's declaration stating: "I apologize to the Court for my inability to persuade [Mr. Pistorino.]".

22  Lawton Decl. at ¶ 75.

23  _____

24  (...Continued)

25  concern two different claims (one of infringement, the other of non-infringement) and say nothing about the relationship between Infringement Contentions and exceptional case status.

26  [13]  Merck notes that the Court need not rely on either Merck or AntiCancer's characterization of the

27  "tone" of the deposition.  The Hoffman deposition was video-taped and, should the Court desire, Merck will provide a copy of the DVD.

28  [14]  AntiCancer's counsel has had difficulty communicating with other counsel in this case.  *See* Ex. V.

HOWREY LLP

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB                                    -10-

1    Dated:  December 11, 2008                    Respectfully submitted,

2                                                 HOWREY LLP

3

4                                        By:    /s/ James C. Pistorino
                                                James C. Pistorino
5                                               John F. Lynch (admitted *pro hac vice*)
                                                Adam K. Whiting, Ph.D.
6
                                                Attorneys for Defendant
7                                               MERCK & CO., INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MERCK'S REPLY MEMORANDUM IN SUPPORT OF ITS          -11-
EXCEPTIONAL CASE FINDING AND AWARD OF ATTY FEES
Case No. 3:07-CV-00097-JLS-RBB

1  ***AntiCancer, Inc. v. Cambridge Research & Instrumentation, Inc., et al.***
   **U.S.D.C. – S. D. Cal. Case No. 3:07-CV-00097-JLS-RBB**

2

3  <u>**CERTIFICATE OF SERVICE**</u>

4          The undersigned hereby certifies that all counsel of record who are deemed to have consented

5  to electronic service are being served this 11th Day of December, 2008 with a copy of this document

6  via the Court's CM/ECF system.  I certify that all parties in this case that have made an appearance to

7  date are represented by counsel who are CM/ECF participants.

8

9                                                  By:   <u>/s/ James C. Pistorino</u>
                                                         James C. Pistorino

10

11  21675283

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28