# EXHIBIT O

```
 1   Dan Lawton (State Bar No. 127342)
     Joseph C. Kracht (State Bar No. 228507)
 2   Matt Valenti (State Bar No. 253978)
     LAWTON LAW FIRM
 3   550 West C Street, Suite 1400
     San Diego, CA 92101
 4   (619) 595-1370
     (619) 595-1520 (Telefacsimile Number)
 5   dlawton@lawtonlaw.com (electronic mail)

 6   Attorneys for Plaintiff AntiCancer, Inc.
```

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>  Plaintiff,<br><br>v.<br><br>TECO DIAGNOSTICS, a California corporation; KC CHEN, a natural person; TONG CHIAH, a natural person; JIAN YANG VAECHES, a natural person; and DOES 1-30,<br><br>  Defendants. | Case No. 07-CV-2294-L (BLM)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ANTICANCER, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PATENT INFRINGEMENT BY DEFENDANT TECO DIAGNOSTICS<br><br>Date:  July 21, 2008<br>Time:  10:30 a.m.<br>Place: Courtroom 14<br>Judge: Hon. M. James Lorenz |

Case No. 07CV2294L(BLM)

## TABLE OF CONTENTS

    **PAGE**

I. INTRODUCTION AND SUMMARY OF ARGUMENT. .................... 1

II. FACTS AND PROCEEDINGS. ........................................ 1

    A. AntiCancer and Its Pertinent Patents. ........................ 1

    B. Teco; The 2006 Negotiations. ............................... 2

    C. Teco's Announcement of November 9, 2006. .................. 3

    D. Proceedings. ............................................. 4

III. ARGUMENT. ................................................... 5

    A. Standard. ............................................... 5

    B. Teco Has Admitted Patent Infringement By Admitting All Material Allegations in Paragraph 16 of the Second Amended Complaint. Thus AntiCancer is Entitled to Partial Summary Judgment of Infringement as a Matter of Law. ............................................. 5

        1. Law. ............................................. 5

        2. Discussion. ....................................... 6

    C. Independent of Teco's Admissions of Infringement the Facts Proven in the Hoffman Declaration and Accompanying Exhibits Establish Teco's Liability for Patent Infringement as a Matter of Law. ........................ 7

        1. Issue. ............................................ 7

        2. Discussion. ....................................... 7

IV. CONCLUSION .................................................. 9

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Amhil Enterprises, Ltd. v. Wawa, Inc.*
81 F.3d 1554, 1557-1558 (Fed. Cir. 1996 ............................... 5

*Bio-Technology General Corp. v. Genentech, Inc.*
80 F.3d 1553, 1560-1561 (Fed. Cir. 1996) ............................. 8

*Bank of America, N.A. v. Farley*
2001 U.S. Dist. LEXIS 21676, **8, 15, 16 (S.D.N.Y. 2002) ............ 6

*Bellefonte RE Insurance Co. v. The Argonaute Insurance Co.*
757 F.2d 523, 528 (2d Cir. 1985) ..................................... 6

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) ............. 5

*EM Bagels, Ltd. v. Bagel Emporium of Armonk, Inc.*
86 F. Supp. 2d 348, 351 (S.D.N.Y. 2000) ............................. 7

*Harris Corp. v. McBride and Associates, Inc.*
2002 U.S. Dist. LEXIS 13342, **8, 9 (W.D.N.Y. 2002) ................. 6

*International Glass Co. v. United States*
408 F.2d 395, 400 (Ct. Cl.1969) .................................. 5, 7

*Joy Technologies, Inc. v. Flakt, Inc.*
6 F.3d 770, 775 (Fed. Cir. 1993) .................................... 7

*Marion Merrell Dow Inc. v. American Cyanamid Co.*
36 U.S.P.Q.2d (BNA) 1036, 1041 (D.N.J. 1994) ........................ 8

*Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*
763 F.Supp. 28, 32-33 (S.D.N.Y. 1991) ............................... 6

*Murrey v. United States*
73 F.3d 1448, 1455 (7th Cir. 1996) .................................. 6

*Neal v. Honeywell, Inc.*
1996 U.S. Dist. LEXIS 15954, *2 (N.D. Ill. 1996) .................... 6

*Olsson v. United States*
25 F.Supp. 495, 498 (Ct. Cl. 1938) .................................. 8

*PPX Enterprises, Inc. v. The Audiofidelity, Inc.*
746 F.2d 120, 123 (2d Cir. 1984) .................................... 6

*Trustees of Columbia University v. Roche Diagnostics GmbH*
272 F.Supp. 2d 90, 109 (D. Mass 2002) ............................... 7

*United Chromium, Inc. v. General Motors Corp.*
11 F.Supp. 694, 704 (D. Conn. 1935) .................................................. 7

*Western World Insurance Co. v. Stack Oil, Inc.*
922 F.2d 118, 121-122 (2d Cir. 1990) .................................................. 5

RULES

Federal Rule of Civil Procedure Rule 56 .................................................. 5

STATUTES

35 U.S.C. § 154(a)(1) .................................................. 8

35 U.S.C. § 271(a) .................................................. 8

I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

Twin bases support AntiCancer[1]'s entitlement to partial summary judgment of patent infringement against defendant Teco Diagnostics.

First, Teco has admitted infringement (in its answer to AntiCancer's second amended complaint). In its answer Teco says it "admits the allegations" of AntiCancer's paragraph 16 in its second amended complaint (with one trifling exception not pertinent here). AntiCancer's paragraph 16 says Teco publicly admitted having developed a homocysteine assay kit utilizing **"the same process patented by AntiCancer"** (emphasis added). Teco's admission this is true admits Teco's patent infringement. It ends the issue of liability for patent infringement in this case in AntiCancer's favor.

Second, the facts proven on this motion establish patent infringement. Teco's own website and marketing materials prove Teco's offering for sale the same homocysteine assay kit (and methods for using it) claimed by AntiCancer's patents. This is an independent basis for granting this motion.

For these reasons AntiCancer is entitled to partial summary judgment of patent infringement against Teco on its first, second, third, fourth and fifth claims for relief (for patent infringement).

II.  FACTS AND PROCEEDINGS.

The facts and procedural events summarized below are not disputed (except where otherwise noted).

A.   AntiCancer and Its Pertinent Patents.

AntiCancer is a locally-headquartered company whose stock is privately held. Among AntiCancer's technologies is a proprietary, patented automatic enzymatic homocysteine assay. A/C Diagnostics, LLC, a fully-owned subsidiary of AntiCancer, markets the homocysteine assay and a kit for using it (referred to as the "HA Kit").[2] The HA

---

[1] Plaintiff AntiCancer, Inc.

[2] AntiCancer owns the patents covering the HA Kit. A/C Diagnostics, LLC ("A/C Diagnostics"), a fully-owned subsidiary of AntiCancer, markets the kit.

Case No. 07CV2294L(BLM)

Kit uses a genetically engineered homocysteine enzyme and a simple, accurate, and fully-automatic diagnostic reader for measuring homocysteine levels in blood plasma and serum.[3] The FDA has granted AntiCancer clearance to market its HA Kit. See Hoffman dec., ¶ 1.

AntiCancer's patents claim the kit and a method for using it (to measure homocysteine in blood and serum). These are the '191, '467, '102, '446, and '762 patents.[4] See Exs. B, C, D, E, F; Hoffman dec., ¶ 3.

Defendants have never duly disputed the validity of these patents in this case or otherwise.[5]

B.  Teco; The 2006 Negotiations.

Teco is a company headquartered in Anaheim, California, whose stock is privately held. It manufactures a range of medical diagnostic products which it sells both domestically and internationally.

In August 2006, Teco's product manager, Tong Chiah, contacted AntiCancer and expressed interest in developing a business relationship whereby Teco would market and sell the Homocysteine Assay kits in conjunction with an analyzer machine produced by Teco. At that time, the Homocysteine Assay kits were only used with two instruments – the Hitachi 912 and AntiCancer's own portable reader. AntiCancer expressed interest in working with Teco to extend the use of its assay kits to other machines, including the Beckman Synchron CX. See id. ¶ 4.

Teco proposed an agreement which called for AntiCancer to sell two

---

[3] Homocysteine, an amino acid, plays a critical role in heart disease and stroke, and may be more important to monitor than cholesterol levels for preventing heart disease. Excess tHCY is a major risk factor for heart attacks. It is also a risk factor for diabetes, neurodegenerative diseases, birth defects, and other serious health problems.

[4] United States patent numbers 5,998,191, 6,066,467, 6,140,102, 6,448,446, and 6,468,762.

[5] Defendants tried to file a motion for leave to amend an answer which asserted the supposed invalidity of these patents, but the Court rejected it (on April 18) and ordered it stricken. Since then defendants have not tried to re-file it.

The proposed amendment would **not** have affected the basis for this motion. This is because it leaves the admission of paragraph 16 intact, and adds only affirmative defenses not at issue on this motion.

1  hundred and fifty Homocysteine Assay kits to Teco per month, for a term of one year, at
2  $1.10 per test (with 100 tests per kit). Teco proposed that the agreement cover a territory of
3  25 states. *See id.* ¶ 5.
4      AntiCancer rejected this initial proposal, informing Teco that it could only promise 50
5  Homocysteine Assay kits a month, and insisting that the territory be limited to California.
6  Teco accommodated these changes. As the negotiations continued, Tong Chiah requested
7  that AntiCancer ship two kits to Teco, so that the kits could be tested on Teco's Beckman
8  Synchron CX machine. Before shipping these kits, AntiCancer insisted that Teco sign a
9  confidential non-disclosure agreement, which Teco did. *See* Ex. A.
10     On October 18, 2006, AntiCancer shipped Teco one Homocysteine Assay kit, one
11 AntiCancer portable reader, and detailed calibration instructions. Hoffman dec., ¶ 7.
12     Negotiations between the parties eventually broke down. In the end the parties never
13 reached a licensing agreement. AntiCancer did not give Teco permission to market its HA
14 kits. *Id.*, ¶ 8.
15     C.    <u>Teco's Announcement of November 9, 2006.</u>
16     Nonetheless, on November 9, 2006, Teco publicly announced that it had developed a
17 homocysteine assay kit which utilizes a genetically-engineered enzyme, the same process
18 patented by AntiCancer. Ex. G. Teco marketing materials for this product included a two-
19 sided brochure. Exs. H, I. On one side the brochure had a picture showing 11 bottles labeled
20 "A/C Enzymatic HCY Assay" – the very same A/C Diagnostics bottles which AntiCancer
21 had provided to Teco in October 2006. On the other side, the brochure outlined the steps of
22 the procedure for using the HA kit, specifications, and pictures of the reagents of the kit and
23 reader being used. *See id.*
24     The instructions and specifications (together with the photograph) included all of the
25 reagents, enzymes, buffers, controls and calibrators necessary to carry out claims 1-3, 6 and 7
26 of AntiCancer's '191 patent, 1-19 of its '467 patent, 1-22 of its '102 patent, and 1-14 of the
27 '762 patent. *See* Hoffman dec., ¶¶ 10, 12.
28

D. <u>Proceedings</u>.

AntiCancer filed this action on December 13, 2007. Its extant pleading is the second amended complaint (filed on January 25, 2008).

In paragraph 16 of the second amended complaint, AntiCancer alleged the following:

> Negotiations between the parties eventually broke down, and no licensing agreement was signed, nor did AntiCancer give Teco permission to market its Homocysteine Assay kits. **Nevertheless, on November 9, 2006, Teco publicly announced that it had developed a Homocysteine Assay kit which utilizes a genetically-engineered enzyme, the same process patented by AntiCancer.** Teco marketing materials for this product included pictures showing eleven bottles labeled "A/C Enzymatic HCY Assay" – the very same A/C Diagnostics bottles which were provided by AntiCancer to Teco in the Homosysteine Assay kit.

*See* second amended complaint at p. 5:3-9 (emphasis added).

Defendants answered on February 4, 2008. In their answer, defendants made these admissions:

> Defendants deny each and every allegation of the [2AC] **except paragraphs 5, 6, 7, 8, 12, 13, 14, 15, and 16.**

*See* Answer at p. 25-27 (emphasis added).

Elsewhere:

> For paragraph 16, Defendants deny the allegations to the extent that it implies that negotiations broke down before Teco Diagnostics made the public announcement. <u>**Defendants otherwise admit the allegations in this paragraph**</u>.

*Id.* at p. 2:1-3 (emphasis added).

AntiCancer duly served preliminary infringement contentions. *See* Ex. K. These contentions asserted both literal infringement of the '191, '467, '102, '446, and '762 patents and infringement of those patents per the doctrine of equivalents. *See id.*; Hoffman dec., ¶¶ 9-12.

This motion followed.

III.   ARGUMENT.

    A.   <u>Standard</u>.

    A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, **and admissions on file**, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) (emphasis added)[6]; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). When it comes to plaintiffs' motions for partial summary judgment of patent infringement, "summary judgment may . . . be properly decided as a matter of law when no genuine issue of material fact exists and no expert testimony is required to explain the nature of the patented invention or the accused product or to assist in their comparison." *Amhil Enterprises, Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557-1558 (Fed. Cir. 1996).

    AntiCancer's patents claim methods for detecting homocysteine using an enzymatic homocysteine assay. Thus the merits issue presented here is whether Teco practiced substantially the same process, in substantially the same way, to accomplish substantially the same result as AntiCancer's patented process. *See International Glass Co. v. United States*, 408 F.2d 395, 400 (Ct. Cl. 1969).

    As described below, Teco effectively has admitted practicing AntiCancer's methods claimed in the '191, '467, '102, '446, and '762 patents. AntiCancer also proves that Teco has done so (through Teco's own public pronouncements). On either or both of these bases, partial summary judgment is warranted.

    B.   <u>Teco Has Admitted Patent Infringement By Admitting All Material Allegations in Paragraph 16 of the Second Amended Complaint. Thus AntiCancer is Entitled to Partial Summary Judgment of Infringement as a Matter of Law.</u>

        1.   <u>Law</u>.

    Judicial admissions in an answer are proper bases for summary judgment. *See Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121-122 (2d

---

[6] All statutory references are to the Federal Rules of Civil Procedure, unless otherwise specified.

Case No. 07CV2294L(BLM)

5

Cir. 1990) (affirming grant of summary judgment in favor of plaintiff; defendant's amended answer conceded insurance policy included dissolution exclusion; "[t]his formal judicial admission is inclusive against [defendant] in this action"); *Bank of America, N.A. v. Farley*, 2001 U.S. Dist. LEXIS 21676, **8, 15, 16 (S.D.N.Y. 2002) (granting summary judgment for plaintiff; defendant's answer admitted his signature on credit agreement; "judicial admission is conclusive, unless the court allows it to be withdrawn"); *Harris Corp. v. McBride and Associates, Inc.*, 2002 U.S. Dist. LEXIS 13342, **8, 9 (W.D.N.Y. 2002) granting plaintiff's motion for summary judgment; defendant's admission of breach of contracts in answer was formal judicial admission conclusive on summary judgment motion; *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 763 F.Supp. 28, 32-33 (S.D.N.Y. 1991) (granting counterclaimants' motion to dismiss counterclaims; counterdefendant's admission in answer to belief that there would be cost overrun "single dispositive issue" amounting to judicial admission); *Neal v. Honeywell, Inc.*, 1996 U.S. Dist. LEXIS 15954, *2 (N.D. Ill. 1996) (denying defendants' motion to reconsider order granting summary judgment; paragraph 7 of defendants' second amended answer judicial admission which was binding).

"A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte RE Insurance Co. v. The Argonaute Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985). Under federal law, admissions in pleadings are binding on the parties. "Having agreed on a set of facts, the parties in court must be bound by them; we are not free to pick and choose at will." *PPX Enterprises, Inc. v. The Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984). A judicial admission "**trumps evidence**." This is the basis of the principle that a party can plead itself out of court. *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) (emphasis added). "People usually don't make damaging admissions unless they are true." *Id.*

2.  Discussion.

The issue is whether Teco has admitted infringing AntiCancer's patents. Infringement of a process patent occurs when the defendant practices substantially the same

method(s), in substantially the same way, to accomplish the same result as the patentee's claimed method(s). *International Glass, supra,* 408 F.2d at 400.

Teco's admission of the truth of paragraph 16 eliminates from issue any question of Teco's patent infringement. Teco admits it uses **"the same process patented by AntiCancer"** for measuring homocysteine. This is patent infringement. Thus Teco's admission that it developed its own HA kit using "the **same** process patented by AntiCancer" is *prima facie* evidence of patent infringement. *See Trustees of Columbia University v. Roche Diagnostics GmbH,* 272 F.Supp. 2d 90, 109 (D. Mass 2002) (defendant's making of cells using process patented by plaintiff comprised infringement; awarding judgment in plaintiff's favor); *United Chromium, Inc. v. General Motors Corp.,* 11 F.Supp. 694, 704 (D. Conn. 1935) (defendants' process for chromium plating same as plaintiff's patented process; holding defendants liable for infringement).

    C.    <u>Independent of Teco's Admissions of Infringement the Facts Proven in the Hoffman Declaration and Accompanying Exhibits Establish Teco's Liability for Patent Infringement as a Matter of Law</u>.

        1.    <u>Issue</u>.

Process patents are directly infringed when the defendant practices all steps of the method claimed in the plaintiff's patent(s). *See Joy Technologies, Inc. v. Flakt, Inc.,* 6 F.3d 770, 775 (Fed. Cir. 1993); *EM Bagels, Ltd. v. Bagel Emporium of Armonk, Inc.* 86 F. Supp. 2d 348, 351 (S.D.N.Y. 2000).

As discussed below, Teco's public pronouncements prove its practice of all steps of AntiCancer's claimed methods in the '191, '467, '102, '446, and '762 patents.

        2.    <u>Discussion</u>.

Teco publicly passed off AntiCancer's patented process as its own. Teco detailed, step by step, AntiCancer's patented process for detecting homocysteine. Ex. H. Teco made no secret of what it was doing – going so far as to publish photographs in its advertising depicting Teco's kit and bottles **still bearing the "A/C" labels** (which AntiCancer had given Teco during negotiations over a possible licensing agreement). *See* Hoffman dec., ¶ 12; Exs. I, J. The reader depicted in Teco's flyer is also the same HyTek

205 reader which AntiCancer gave Teco during the parties' failed negotiations. *See* Hoffman dec., ¶ 12; Ex. I. Teco advertised, as its own, AntiCancer's technology to accomplish the same process protected by AntiCancer's patents: to detect levels of homocysteine using an enzymatic assay. Teco used the same process, in the same way, to accomplish the same result. This proves Teco's liability for infringement. *See ibid.*

Courts have repeatedly rejected defense arguments of non-infringement in such cases, both on summary judgment motions and in the context of preliminary injunctions. *See, e.g., Bio-Technology General Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1560-1561 (Fed. Cir. 1996) (affirming injunction barring defendant's method of manufacturing hGH[7] by recombinant DNA techniques using plasmid containing semi-synthetic gene claimed by process patent); *Marion Merrell Dow Inc. v. American Cyanamid Co.,* 36 U.S.P.Q.2d (BNA) 1036, 1041 (D.N.J. 1994) (denying defendant's motion for summary judgment of non-infringement of process patent). Where defendant uses plaintiff's invention (even by storing it in anticipation of using it in the future), there has been a "use" of the invention sufficient to prove infringement in violation of 35 U.S.C. §§ 154(a)(1) and 271(a). *Olsson v. United States*, 25 F.Supp. 495, 498 (Ct. Cl. 1938) (storage of infringing products held "use" of plaintiff's invention; awarding plaintiff judgment for infringement).

So it is here. Teco is an admitted infringer. No genuine issue of material fact attends this indisputable reality.

---

[7] Human growth hormone.

## IV. CONCLUSION

For the foregoing reasons, this motion should be granted. AntiCancer is entitled to partial summary judgment on its first, second, third, fourth and fifth claims for relief against Teco.

Dated: May 9, 2008               LAWTON LAW FIRM


                                 By:   s/Dan Lawton
                                       Dan Lawton
                                       Attorneys for Plaintiff AntiCancer, Inc.