# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC.,<br><br>                    Plaintiff,<br><br>  vs.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.; MERCK & CO., INC.; and NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH, INC.,<br><br>                    Defendants. | **CASE NO. 07CV97 JLS (RBB)**<br><br>**ORDER (1) GRANTING CRI'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 384, 038, AND 159 PATENTS, (2) DENYING MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE 038 AND 159 PATENTS, (3) DENYING MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE 384 PATENT, and (4) DENYING EX PARTE APPLICATION FOR PERMISSION TO FILE SUPPLEMENTAL AUTHORITY**<br><br>(Doc. Nos. 134, 137, 139, & 202) |

Defendant Cambridge Research & Instrumentation, Inc. ("CRI") brings three motions for summary judgment, all presently before the Court. These motions seek summary judgment on the following issues:

—CRI's non-infringement of United States Patent Nos. 6,251,384 ("384 patent"), 6,649,159 ("159 patent"), and 6,759,038 ("038 patent") (Doc. No. 139), all owned by plaintiff Anticancer, Inc.;

—Invalidity of the 384 patent (Doc. No. 137); and

1 —Invalidity of the 038 patent[1] (Doc. No. 134).

2 For the reasons stated below, the Court grants summary judgment on the issue of non-infringement and denies summary judgment on the issue of invalidity. The denial is without prejudice, and CRI may continue to pursue its invalidity claims as to all three patents according to the guidelines set forth herein.[2]

## BACKGROUND

**A.     Facts**

In the present action, Anticancer alleged infringement of the three patents cited supra. Anticancer has settled its claims for CRI's alleged infringement of Patent Nos. 6,232,523 ("523 patent") and 6,235,968 ("968 patent"). All of these patents pertain to "methods which allow researchers to track the growth of tumor cells in living lab animals through the use of fluorescent proteins, including green fluorescent protein ('GFP')." (Hoffman Decla. IOT Non-Infringement ¶ 2.) The operative complaint in this action alleges infringement by, "inter alia, CRI's Maestro In Vivo Imaging System (a fully-integrated system allowing researchers to use real time imaging technology, including plaintiff's patented technology, to monitor and record cellular and genetic activity within laboratory animals)." (Second Amended Complaint ("SAC"), e.g., ¶ 13.)

The other defendants named in the operative complaint were Merck & Co., Inc. ("Merck") and Novartis Institutes for Biomedical Research, Inc. ("NIBRI"). By Order dated May 14, 2008, Merck and NIBRI obtained summary judgment of non-infringement on all patents in issue because Anticancer's preliminary infringement contentions (PICs) did not make allegations concerning Merck or NIBRI. Subsequently, Anticancer and NIBRI reached a mutual dismissal with prejudice of all claims and counterclaims. In a concurrent Order, filed under seal, the Court is dismissing Merck's invalidity counterclaims without prejudice and denying Merck's request for Rule 11

---

[1] CRI originally included the 159 patent in this invalidity motion, but withdrew the 159 patent in its reply brief because of, inter alia, alleged shifts in Anticancer's claim construction positions. (Doc. No. 167, at 2.) CRI asks the Court to deny summary judgment on the invalidity of the 159 patent without prejudice and to set a claim construction briefing schedule.

[2] CRI has offered various evidentiary objections to declarations and exhibits that Anticancer submitted in opposition to the present motions. In deciding these motions, the Court has only considered admissible evidence.

sanctions and an exceptional case finding.

For a time, this action was partially consolidated (for claim construction purposes) with Anticancer, Inc. v. Carestream Health, Inc. (See Case No. 07cv1004 JLS (AJB).) Prior to claim construction, Carestream obtained partial summary judgment of non-infringement on claims where Anticancer's PICs omitted specific claim limitations. (Doc. No. 49 in 07cv1004, at 8-9.) Carestream did not obtain summary judgment on those claims where Anticancer filed adequately specific PICs and created a triable question of fact via proof of indirect infringement, including a Carestream brochure with contact information and pictures of infringement by third parties, and Carestream user manuals. (Id. at 9-10.) Anticancer and Carestream Health subsequently stipulated to the dismissal of all claims and counterclaims with prejudice. (Doc. No. 57 in 07cv1004.)

Anticancer served its PICs on October 17, 2007. Those PICs included allegations pertaining to CRI, but made no reference to Merck or NIBRI. (Holmberg Decla. ISO Non-Infringement, Exhibits 1A & 1B.) With respect to the remaining patents-in-suit, the PICs state two bases for CRI's alleged infringement of Anticancer's patents. First, Anticancer's president, Dr. Robert M. Hoffman, published an article in the September 2002 issue of The Lancet, a scientific journal, entitled "Green Fluorescent Protein Imaging of Tumor Growth, Metastasis, and Angiogenesis in Mouse Models." (Holmberg Decla. ISO Non-Infringement, Exhibit 1C; Hoffman Decla. IOT Non-Infringement ¶ 10.) CRI cited this article in one footnote of its article, "Distinguished Photons: The Maestro in-vivo Fluorescence Imaging System," reprinted in the 2007 BioTechniques Protocol Guide. (Holmberg Decla. ISO Non-Infringement ¶ 2 & Exhibit 1D, at 3.) Second, CRI posted two photographs on its website, captioned "GFP-Labeled Colon Tumor" and "GFP-Labeled Mouse Pancreatic islets". (Id., Exhibit 1B, at 2, 14.)

On January 31, 2008, Magistrate Judge Ruben B. Brooks denied Anticancer's motion for leave to amend its PICs. (Doc. No. 88.) During the oral argument on this motion, Magistrate Judge Brooks stated:

> Priority dates for the 384 and 038 patents were the application dates of January 7, 1999 and May 29, 2001. When the proposed amended contentions were submitted to these Defendants three to four weeks later, the priority dates for the 384 and 038 patents were stated to be March 27, 1998.

(Doc. No. 92, at 20:5-10.)  Elsewhere, Magistrate Judge Brooks described the "essential changes" of the requested amendment to include "a change of priority dates." (Id. at 32:16-19.)  In denying leave to amend, Judge Brooks held that plaintiff's counsel had failed to present "good cause" to allow the amendment.  (See id. at 20:13-15.)  On April 14, 2008, this Court denied Anticancer's motion to certify Magistrate Judge Brooks's decision for interlocutory appeal to the Federal Circuit and overruled Anticancer's objection in the alternative to Magistrate Judge Brooks's ruling.  (Doc. No. 106.)

**B.     Procedure**

CRI moved for summary judgment on invalidity of the 038 and 159 patents on June 30, 2008  (Doc. No. 134); summary judgment on invalidity of the 384 patent on July 13, 2008 (Doc. No. 137); and summary judgment of non-infringement on July 19, 2008 (Doc. No. 139). Anticancer filed its oppositions on August 21, 2008.  (Doc. Nos. 154-56.)  CRI filed reply briefs on the issues of invalidity and non-infringement on September 4, 2008.  (Doc. Nos. 166-67.) CRI's reply brief on invalidity dropped its motion to invalidate the 159 patent.  (Doc. No. 167, at 2.)

Prior to oral argument, Anticancer filed a notice of supplemental authority on November 3, 2008.  (Doc. No. 197.)  The Court held oral argument on CRI's motions on November 13, 2008, and then took the matters under submission.  On November 25, 2008, CRI filed an ex parte motion for permission to file supplemental authority.  (Doc. No. 202.)

**LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  To determine the existence of a genuine question of material fact, the Court views the evidence and resolves doubt in favor of the non-moving party.  Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001) (citing Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307 (Fed. Cir. 1998)).

In the context of patent litigation, "[i]nfringement is assessed by comparing the accused device to the claims; the accused device infringes if it incorporates every limitation, either literally

or under the doctrine of equivalents.  If, however, even one claim limitation is missing or not met, there is no literal infringement." MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1352 (Fed. Cir. 2005) (internal quotations and citations omitted); accord Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1565 (Fed. Cir. 1997).

Courts can resolve the invalidity question on summary judgment. See Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc., — F.3d —, 2009 WL 291184, at *8 (Fed. Cir. Feb. 9, 2009).  A patent may not be obtained where "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]" 35 U.S.C. § 102(b).  However, "[a]n application for patent for an invention disclosed . . . in an application previously filed in the United States . . . which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application[.]" Id. § 120.  In other words, a patent may claim priority to the filing date of an earlier application if the contents of the earlier application provide an adequate written description of the invention and enable the practice of the invention. Chiron Corp. v. Genentech, Inc., 363 F.3d 1247, 1253 (Fed. Cir. 2004); Reiffin v. Microsoft Corp., 214 F.3d 1342, 1345-46 (Fed. Cir. 2000).  Later-filed patent applications include "continuation-in-part" applications, which "partly continue[] subject matter disclosed in a prior application, but [also add] new subject matter not disclosed in the prior application." Pfizer, Inc. v. Teva Pharms. USA, Inc., 518 F.3d 1353, 1359 (Fed. Cir. 2008) (quoting Univ. of W. Va., Bd. of Trs. v. VanVoorhies, 278 F.3d 1288, 1297 (Fed. Cir. 2002)).  "An applicant is entitled to claim the benefit of the filing date of the parent application for continuation . . . only to the extent that the parent application discloses the subject matter claimed in the subsequent application." Kothmann Enters., Inc. v. Trinity Indus., Inc., 455 F. Supp. 2d 608, 638 (S.D. Tex. 2006) (citing Chiron Corp., 363 F.3d at 1253).  Given the presumption of a patent's validity, the moving party must establish invalidity by clear and convincing evidence to obtain summary judgment. 35 U.S.C. § 282; Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1375 (Fed. Cir. 1986).  A patent's priority date is "purely a question of law." Broad. Innovation, L.L.C. v. Charter Commc'ns., Inc., 420 F.3d 1364,

1366 (Fed. Cir. 2005); In re Daniels, 144 F.3d 1452, 1455 (Fed. Cir. 1998).

## DISCUSSION

**A.      Non-Infringement**

CRI's motion essentially piggybacks the Court's Order partially granting summary judgment to Carestream Health, in the sense that "AntiCancer's PICs against CRI [are] missing the exact same limitation[s] as w[ere] found missing from AntiCancer's PICs against Carestream." (Doc. No. 139, at 10.) CRI also seeks summary judgment as to those claims on which Carestream Health did not prevail, arguing that Anticancer's PICs against CRI lack certain claim limitations and that Anticancer relies primarily on evidence that does not pertain to CRI.

The Court considers dispositive the argument concerning Anticancer's misplaced reliance on evidence that does not pertain to CRI. The bulk of Anticancer PICs against CRI discuss the contents of an article written by Dr. Hoffman, who is Anticancer's president and has no affiliation with CRI. Anticancer connects Dr. Hoffman's article with CRI's alleged infringement because CRI footnoted Dr. Hoffman's article in one of its own publications. The Court finds that no reasonable jury would conclude that CRI infringed Anticancer's patents, based on CRI's citation to Dr. Hoffman's article. The citation appears in the context of a single paragraph, discussing the utility of CRI's Maestro for in vivo fluorescence imaging. (See Holmberg Decla. ISO Non-Infringement, Exhibit 1D, at 3.) This paragraph does not provide the necessary level of detail to create a triable question of fact as to whether the Maestro "incorporates every limitation" of any claim of Anticancer's patents. If Anticancer's theory of infringement were viable, the Court would expect CRI to be defending against intellectual property lawsuits by any and all patentees whose research is cited in CRI's publication.

Furthermore, even if CRI's citation to Dr. Hoffman's article somehow made the contents of that article relevant, Dr. Hoffman concedes that his article "review[ed] other published articles . . . on the topic of using GFP to image tumor growth, metastasis, and angiogeenesis [sic] in mouse models. . . . In the article, [he] describe[d] numerous published scientific studies (75 articles) performed using this method, and related studies." (Hoffman Decla. IOT Non-Infringement ¶ 10.) In other words, by Dr. Hoffman's own admission, his article does not describe Anticancer's own

research using its own patented techniques, but instead summarizes the research of others in the same general field. If Dr. Hoffman's article describes the kind of research that infringes Anticancer's patents, then Anticancer should instigate litigation against any individual, institution, or corporation whose studies are discussed in Dr. Hoffman's article. To summarize, Dr. Hoffman's article discusses the research findings of third parties and simply has no bearing on the question of Anticancer's practice of its own patents or CRI's alleged infringement of those patents.

The PICs are likewise deficient in explaining how the photographs from CRI's website establish infringement. Anticancer's cursory, single-sentence allegations based on those photographs do not establish "where each element of each asserted claim is found within each Accused Instrumentality," as Patent Local Rule 3.1(c) requires. With such thin allegations of infringement, Anticancer has failed to create a triable question of fact that the Maestro contains all the limitations of all the claims at issue. To the extent that Anticancer's opposition seeks to introduce new theories of infringement based on evidence which Anticancer did not disclose in its PICs, the Court again invokes the principle on which Merck and NIBRI obtained a finding of non-infringement. Summary judgment is appropriate against a party who bases its opposition on theories omitted from its infringement contentions. See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1368 (Fed. Cir. 2006) (entering summary judgment for defendant premised on affirmance of district court's denial of leave to amend contentions to add new theory of infringement); Lucent Techs., Inc. v. Gateway, Inc., 2007 WL 1877982, at *4 (S.D. Cal. June 27, 2007) (Brewster, J.) (granting summary judgment because plaintiff could not succeed on infringement theory that the plaintiff did not set forth in its infringement contentions); Berger v. Rossignol Ski Co., Inc., 2006 WL 1095914, at *6 (N.D. Cal. Apr. 25, 2006) (where plaintiffs conceded at oral argument that they had offered an "absurd" original infringement contention and court denied leave to amend, defendant's motion for summary judgment of non-infringement was granted). Here, CRI is entitled to summary judgment of non-infringement as to the 159, 038, and

1  384 patents.[3]

## B. Invalidity

Although the Court now has the discretion to dismiss the invalidity counterclaims without prejudice, the Court may also retain jurisdiction over those claims. See Nystrom v. TREX Co., Inc., 339 F.3d 1347, 1350-51 (Fed. Cir. 2003). In light of Anticancer's intention to file another patent infringement lawsuit against CRI (as Anticancer's counsel confirmed at oral argument), the Court finds that adjudication of CRI's invalidity counterclaims will serve the interests of judicial economy by removing invalidity issues from any future lawsuit or by precluding such a lawsuit altogether.

The Court must deny CRI's motions for summary judgment of invalidity for the 038 and 384 patents because a genuine dispute of material fact remains as to the priority date of each patent. CRI wrongly concludes that Magistrate Judge Brooks previously determined the priority dates for these patents when he heard Anticancer's motion for leave to amend the PICs. At oral argument before this Court, CRI conceded that its invalidity motions were based "entirely" on Magistrate Judge Brooks's statements in the transcript from the prior hearing. However, Magistrate Judge Brooks did not decide the question of the priority dates of the patents-in-suit. Instead, he adjudicated the issue of whether Anticancer would have leave to amend its PICs. This Court subsequently sustained that denial of leave to amend.

With reference to the priority dates of the 038 and 384 patents, Magistrate Judge Brooks construed Anticancer's motion as seeking leave to change the relevant dates. As CRI concedes, however, Anticancer's PICs "did not identify a specific priority date for any of the asserted patent claims, but rather listed the filing dates for every application to which the '384 and '038 patents could possibly claim priority." (CRI Reply ISO Invalidity, at 3:8-10.) Therefore, Anticancer's motion seeking leave to amend the PICs could plausibly be construed as an attempt to specify the

---

[3] Anticancer argues that its PICs are necessarily general because the enforcement of process patents raises unique evidentiary issues. See Am. Video Graphics, L.P. v. Elec. Arts, Inc., 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) ("plaintiffs are typically unable to give highly specified infringement contentions" pertaining to manufacture of video games until plaintiff has access to source code). Such considerations do not influence the outcome here, however, when Anticancer devotes most of its PICs to an article which does not pertain to CRI and provides inadequate analysis of how the photographs from CRI's website establish infringement.

priority dates of these two patents. Given the actual language of the PICs, the Court finds this latter construction to be more persuasive.[4]

When Anticancer filed its PICs, it did not identify a priority date for the 038 and 384 patents. Anticancer's omissions plainly violated Patent Local Rule 3.1(e) (requiring that PICs contain, "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled"). Hypothetically speaking, if Anticancer's PICs had actually asserted the priority dates cited by Magistrate Judge Brooks, the Court would hold Anticancer to the asserted date(s). But, Anticancer ineptly failed to assert a specific date in its PICs, and instead cited a number of prior applications in an attempt to obtain the protections of 35 U.S.C. § 120. The Court is, therefore, precluded from granting CRI's motions for summary judgment of invalidity, as those motions assume conclusions about the priority dates of the patents-in-suit which the Court has not yet found. Because the priority date issue remains to be adjudicated, the Court will deny the summary judgment motions without considering the supplemental authority that CRI submitted ex parte following oral argument.[5]

The Court is receptive to comments from the parties about the next steps in this litigation. Having voluntarily withdrawn its motion with respect to the 159 patent, CRI has already expressed its desire to proceed to claim construction on that patent so CRI can continue pursuing its invalidity counterclaim. Anticancer has already claimed March 17, 2000 as the priority date for the 159 patent. (See Holmberg Decla. ISO Non-Infringement, Exhibit A, at 3.) Therefore, it may be appropriate for the Court first to determine the priority dates of the other patents-in-suit. And, once such priority dates are determined, CRI may wish to renew its motions for summary judgment as to those two patents before claim construction. Alternatively, the Court could, all at

---

[4] Although the Court construes Anticancer's motion differently, the substance of Magistrate Judge Brooks's ruling remains undisturbed: Anticancer did not establish good cause for amending its PICs. That holding is intact, regardless of whether Anticancer was seeking to specify the priority dates or change them.

[5] Responding to the Court's concerns about invalidating Anticancer's patents because of defects in PICs, CRI submitted Biogenex Laboratories, Inc. v. Ventana Medical Systems, 2005 U.S. Dist. LEXIS 45405 (N.D. Cal. Aug. 5, 2005). There, the district court "added the phrase 'for purposes of this lawsuit only' in response to [plaintiff's] concern that a bare ruling of invalidity could be asserted against [plaintiff] by the world." Id. at *9.

1  once, determine priority dates and construe claims.  If either party chooses to submit the
2  supplemental filings invited by the Court, those filings should address what procedure will best
3  serve the interests of judicial economy and/or bring about the most expeditious resolution of this
4  litigation.

**CONCLUSION**

Because the evidence and analysis in Anticancer's preliminary infringement contentions do not create a triable question of fact as to CRI's infringement, the Court **GRANTS** CRI's motion for summary judgment of non-infringement as to the 159, 038, and 384 patents.

Because a genuine dispute of material fact remains as to the priority dates of the 038 and 384 patents, and because CRI voluntarily withdrew its motion as to the 159 patent, the Court **DENIES WITHOUT PREJUDICE** CRI's motions for summary judgment of invalidity as to all patents-in-suit.  The Court likewise **DENIES** CRI's ex parte application to file supplemental authority.

Within ten (10) calendar days of the date this Order is docketed, each party **MAY FILE** a supplemental statement concerning the best procedure for going forward with the adjudication of CRI's invalidity counterclaims.

IT IS SO ORDERED.

DATED:  February 13, 2009

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge