1    Dan Lawton (State Bar No. 127342)
Joseph C. Kracht (State Bar No. 228507)
2    Matt Valenti (State Bar No. 253978)
LAWTON LAW FIRM
3    Emerald Plaza
402 West Broadway, Suite 1860
4    San Diego, CA  92101
(619) 595-1370 (Telephone)
5    (619) 595-1520 (Facsimile)
E-mail: dlawton@lawtonlaw.com
6

7    Attorneys for Plaintiff and Counterdefendant AntiCancer, Inc.

8                UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | ANTICANCER, INC., a California corporation, | ) ) | Case No. 07CV97 JLS (RBB) |
|---|---|---|---|
| 12 | | ) ) | PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, |
| 13 | Plaintiff, | ) ) | INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN **OPPOSITION** |
| 14 | v. | ) ) | TO MOTION OF DEFENDANT AND COUNTERCLAIMANT CAMBRIDGE |
| 15 | CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.; MERCK | ) ) | RESEARCH & INSTRUMENTATION, INC., FOR A PROTECTIVE ORDER |
| 16 | & CO., INC.; NOVARTIS INSTITUTES FOR BIOMEDICAL RESEARCH, INC., | ) ) | STRIKING RULE 30(B)(6) DEPOSITION NOTICE AND QUASHING "IMPROPER |
| 17 | Defendants. | ) ) | DISCOVERY" |
| 18 | _____ | ) ) | Date: November 16, 2009 |
| 19 | CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., | ) ) | Time: 10:00 a.m. Place: Courtroom B, First Floor |
| 20 | | ) | Judge: Hon. Ruben B. Brooks |
| 21 | Counterclaimant, | ) ) | |
| 22 | v. | ) ) | |
| 23 | ANTICANCER, INC., | ) ) | |
| 24 | Counterdefendant. | ) ) | |
| 25 | _____ | ) | |

26

27

28

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTS AND PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Background; CRI's Counterclaims of Invalidity . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  Parties' PICs (October and December 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.  Court's Denial of CRI's Motion for Summary Judgment of Invalidity . . . . . . . 4

    D.  CRI's Resistance to Discovery While Propounding and Insisting on its Own
        Discovery (2008-2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    E.  Court's Ruling on CRI's Prior Motion for Protective Order . . . . . . . . . . . . . . . 5

    F.  CRI's Promises to Produce a 30(b)6 Witness on Invalidity Issues (June 2008);
        CRI's Reneging on the Promises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    G.  AntiCancer's Giving of 30(b)(6) Discovery to CRI (August 2009) . . . . . . . . . 6

    H.  AntiCancer's Second Notice of CRI's Deposition (September 25, 2009) . . . . 7

    I.  "Meet and Confer [sic] Process." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    J.  This Motion; Procedural Posture of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.  CRI's Burden . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.  AntiCancer Does Not Seek Infringement-Related Discovery, or to Run Afoul
        of the Court's Prior Protective Order on AntiCancer's Prior Deposition Notice
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.  Why Invalidity Counterclaims Involve Facts Subject to Discovery . . . . . . . . 11

        1.  Prior art . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.  Facts associated with invalidating patents via anticipation . . . . . . . . 13

        3.  Obviousness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        4.  Non-enablement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        5.  Written Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        6.  Indefiniteness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.    AntiCancer Does Not Seek Deposition Testimony of Litigation Counsel or Not-Yet-Identified Experts; CRI's Argument to the Contrary Sets up a Straw Man. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E.    AntiCancer Does Not Seek Discovery of Facts Related to Infringement.  To the Degree Its Notice Is Interpreted as Doing So, the Court Can and Should Order a Deposition and Document Production Limited to Invalidity Issues . . . . . . . 18

F.    CRI Utterly Fails Its Burden of Proving Undue Burden and Expense.  Neither It nor Its Counsel Offers any Affidavit or Other Proof of Such . . . . . . . . . . . . 19

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

PAGE

<u>CASES</u>

*Airport Systems Int'l., Inc. v. Airsys ATM, Inc.*
2002 U.S. Dist. LEXIS 994, ** 25-26 (D. Kan. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Ajinomoto Co. v. ADM Co.*
228 F.3d 1338, 1345-46 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*AK Steel Corp. v. Sollac & Ugine*
344 F.3d 1234, 1238-39 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*
2009 U.S. App. LEXIS 20409, *78-*79 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blankenship v. Hearst Corp.*
519 F.2d 418, 429 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Capon v. Eshhar*
418 F.3d 1349, 1357 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Durel Corp. v. Osram Sylvania Inc.*
256 F.3d 1298, 1306 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*EEOC v. Kansas City Southern Railway*
2000 U.S. Dist. LEXIS 19952, * 4 (D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Envtl. Designs, Ltd. v. Union Oil Co.*
713 F.2d 693, 697 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Flanagan v. Allstate Ins. Co.*
2007 U.S. Dist. LEXIS 52860, * 13 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

*Foltz v. State Farm Mut. Auto. Ins. Co.*
331 F.3d 1122, 1130 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*
45 F.3d 1550, 1554 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Graham v. John Deere Co.*
383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hickman v. Taylor*, 329 U.S. 495, 500
67 S.Ct. 385, 91 L.Ed. 451 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*
66 F.3d 302 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
669 F.2d 620, 623 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Invitrogen Corp. v. President and Fellows of Harvard College*
2007 U.S. Dist. LEXIS 74282, * 9 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 20

*Jepson, Inc. v. Makita Elec. Works, Ltd.*
30 F.3d 854, 858 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Liebel-Flarsheim Co. v. Medrad, Inc.*
481 F.3d 1371, 1380 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Medtronic, Inc. v. Guidant Corp.*
2003 U.S. Dist. LEXIS 26039 (D. Minn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*
166 F.3d 1190, 1195-98 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 942 (Fed. Cir.)
*cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990) . . . . . . . . . . . . . . . . . . 16

*Pansy v. Borough of Stroudsburg*
23 F.3d 772, 787-791 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 15-17

*Perkin-Elmer Corp. v. Computervision Corp.*
732 F.2d 888, 894-95 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schering Corp. v. Geneva Pharmaceuticals, Inc.*
339 F.3d 1373, 1377 (Fed. Cir. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*SEC v. Jasper*
2009 U.S. Dist. LEXIS 46678 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*
1997 U.S. Dist. LEXIS 24130 (S.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Steadcast Ins. Co. v. Auto Marketing Network, Inc.*
1999 U.S. Dist. LEXIS 6897, * 5 (N.D. Ill. May 3, 1999) . . . . . . . . . . . . . . . . . . . 20, 21

*Stratoflex, Inc. v. Aeroquip Corp.*
713 F.2d 1530, 1538-39 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Superior Communications v. Earhugger, Inc.*
257 F.R.D. 215 (C.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*
492 F.3d 1350, 1358-1359 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13-14

*Union Pac. Resources Co. v. Chesapeake Energy Corp.*
236 F.3d 684, 690-92 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Velander v. Garner*
348 F.3d 1359, 1363 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Vulcan Engineering Co. v. Fata Aluminium, Inc.*
278 F.3d 1366, 1372 (Fed. Cir.), *cert. denied*, 537 U.S. 814, 123 S.Ct. 81, 154 L.Ed.2d 18
(2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wal-Mart Stores, Inc. v. Vidalakis*
2007 U.S. Dist. LEXIS 95696, * 13 (W.D. Ark. 2007) . . . . . . . . . . . . . . . . . . . . . . 11, 19, 21

*WL Gore & Assocs., Inc. v. Garlock, Inc.*
721 F.2d 1540, 1555-56 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RULES AND STATUTES

Patent Local Rule 3.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

35 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

35 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15-17

35 U.S.C. § 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

OTHER AUTHORITIES

Chisum on Patents, § 5.04 & n. 82 (Matthew Bender & Co. 2009) . . . . . . . . . . . . . . . . . . . 14

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.

In this action, CRI[1] seeks to invalidate three of AntiCancer's[2] most valuable patents: (a) the '384[3] and '038 patents[4], which claim methods for monitoring metastases of primary tumors (modified to express green fluorescent protein) in animals, and (b) the '159 patent [5], which relates to whole-body external optical imaging of gene expression using fluorescing proteins.  CRI's counterclaims of invalidity assert anticipation, obviousness, non-enablement, inadequate description, and indefiniteness.

Via a notice of 30(b)(6) deposition served seven weeks ago, AntiCancer sought discovery of the facts underlying these invalidity theories.  The defenses rest on factual issues.  The site of the deposition was near CRI's headquarters in Boston, MA.  Previously, CRI's counsel had promised in writing, three times, to deliver a 30(b)(6) representative, Theodore Les, for deposition on these (and other) topics.  CRI also told the Court last year that the parties were "free to engage in discovery relating to . . . invalidity[.]" *See* CRI Ex. 8 at 13:2-5.

CRI has reneged on these promises and forgotten this statement to the Court.  It never produced Mr. Les or any documents.  It now insists it will never do so.  The fallacy of its motion is that AntiCancer's discovery of invalidity should begin and end with the reams of prior art and charts CRI has had its lawyers amass and deliver to AntiCancer.  The law of invalidity exposes this fallacy.

CRI's defiance prompted this motion, which the Court suggested following CRI's failure to file one on its own or serve any formal objections.

In moving for relief, CRI does not suggest a tailoring of the discovery of which it

---

[1]  Defendant and counterclaimant Cambridge Research & Instrumentation, Inc.

[2]  Plaintiff and counterdefendant AntiCancer, Inc.

[3]  U.S. patent no. 6,251,384.

[4]  U.S. patent no. 6,759,038.

[5]  U.S. patent no. 6,649,159.

1   complains.  It wants the notice stricken "in its entirety under [Rule] 26(b)(2)[c]."  That Rule,

2   however, does not provide for striking a discovery request in its entirety.  It does provide the

3   Court the power to "limit the . . . extent of discovery otherwise allowed . . ."  At best, CRI is

4   entitled to an order limiting the deposition and document production to facts concerning its

5   invalidity theories – not an order barring all discovery whatsoever.  *See Invitrogen Corp. v.*

6   *President and Fellows of Harvard College*, 2007 U.S. Dist. LEXIS 74282, * 9 (S.D. Cal.

7   2007) (granting and denying in part defendant's motion to compel; limiting plaintiff's request

8   "to a specific time period relevant to the complaint"; ordering defendant to "respond to

9   limited discovery requests by Plaintiff").

10      CRI's motion insists the sole responsive data it could provide would be privileged or

11   expert witness opinion, and that there is "no one at CRI who has any non-privileged, non-

12   word product information" to offer.  CRI's motion omits any affidavit which says these

13   things, however.  CRI's assertions of "burden" and "expense" likewise lack any affidavit

14   which could prove them.  As a matter of law, this is a failure of CRI's burden – and warrants

15   denial of its motion.

16      CRI sets up a straw man by arguing what AntiCancer really seeks is a deposition of

17   CRI's litigation counsel.  *See* CRI Mem. at 10-11.  This is completely false.

18      CRI argues the Court's previous order granting a protective order last year (Doc. No.

19   140) disposes of this motion.  This is false.  The notice now extant did not exist last year.

20   The issues were different.

21      CRI insists its previously-served PICs[6] provide all the data AntiCancer could properly

22   want about its invalidity theories.  This is false.  CRI's PICs identify hundreds of pieces of

23   prior art.  This evidence pertains only to CRI's anticipation theory.  It has little or no

24   relevance to CRI's other invalidity theories – obviousness, non-enablement, lack of written

25   description, and indefiniteness.  CRI cannot rest on its PICs as the sum total of discovery the

26

27

28

---

[6] Preliminary invalidity contentions.

rules oblige it to provide any more than AntiCancer could rest on its own PICs[7] as the sum total of discovery the rules obliged it to provide.  Nothing in the Patent Local Rules or law justifies the obstruction of discovery CRI asks the Court to bless here.

AntiCancer narrowly tailored its notice of CRI's deposition to be limited to facts concerning CRI's counterclaims.  (CRI misrepresents this notice as "concerning CRI's invalidity contentions," words the notice does not contain.)[8]  AntiCancer seeks this narrowly-tailored discovery for a legitimate purpose.  CRI cannot carry its burden on this motion of proving otherwise, or of proving that violation of its privacy or embarrassment would result from compliance.

While CRI resists AntiCancer's discovery, it has continued to propound its own on AntiCancer (and AntiCancer has duly responded).  Discovery in this case has been a one-way street.  The Court should not allow this to continue.

The purpose of discovery rules is to enable parties to get the fullest possible knowledge of the issues and the facts before trial.  *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 91 L.Ed. 451 (1947).  CRI's obstructionism here runs directly afoul of that purpose.  AntiCancer cannot properly prepare for the next phase of this case without the 30(b)(6) deposition (and documents) it has duly asked for.

The "meet-and-confer [sic] process" preceding this motion was fruitless and empty.  It included CRI's counsel demand that AntiCancer give to CRI, in advance and in writing, the questions AntiCancer intended to ask at the deposition CRI had no intention of providing.  It consisted largely of CRI telling AntiCancer there would be neither deposition nor documents.

CRI's motion should be denied.

II.    FACTS AND PROCEEDINGS.

The facts and procedural events summarized below are undisputed.

---

[7]  Preliminary infringement contentions.

[8]  CRI Mem. at 3:8-9.

1    A.    Background; CRI's Counterclaims of Invalidity.

2    AntiCancer sued CRI in January 2007, alleging infringement of its '384, '038, and

3    '159 patents via CRI's making, using, and selling of its Maestro *In Vivo* Imaging Systems

4    ("Maestro").  Maestro is a fully-integrated system allowing researchers to use real-time

5    imaging technology – including AntiCancer's patented GFP-based methods – to monitor and

6    record cellular and genetic activity in laboratory animals.

7    CRI answered and counterclaimed.  It asserted invalidity of these patents in its first,

8    second, third, fourth, and fifth counterclaims.  CRI premised its invalidity theories on

9    anticipation, obviousness, non-enablement, lack of written description, and indefiniteness.

10   *See* CRI's Ex. 3.

11   B.    Parties' PICs (October and December 2007).

12   AntiCancer served its PICs  as to CRI on October 17, 2007.  Shortly afterward,

13   AntiCancer amended them and sought leave of Court to deem its PICs duly amended

14   pursuant to PLR 3.7.  Despite finding no prejudice resulted from the amendments, the Court

15   denied the motion in January 2008.  Later, based on this ruling (and not on the merits), the

16   Court granted CRI summary judgment of non-infringement (in February 2009).[9]

17   CRI served preliminary invalidity contentions on December 14, 2007.  These asserted

18   invalidity based on anticipation, obviousness, non-enablement, lack of written description,

19   and indefiniteness.  *See* CRI's Ex.3-7.

20   C.    Court's Denial of CRI's Motion for Summary Judgment of Invalidity.

21   CRI moved for summary judgment of invalidity.

22   The Court denied the motion in February 2009.  Doc. No. 214.  This cleared the way

23   for further proceedings on the supposed invalidity of the patents-in-suit.

24

25   [9] CRI falsely writes, "The Court granted CRI's motion for summary judgment **that it has not infringed those patents [D.E. 214] [sic]**."  CRI Mem. at 3:25-26.

26   This is not true.

27   The Court has never ruled that CRI "has not infringed those patents."  The Court's ruling
28   rested solely on deficiencies in AntiCancer's PICs – not the merits.  The Court hardly could have ruled on the merits of non-infringement.  This is because CRI (to this day) has never offered any actual proof of non-infringement.

D.    CRI's Resistance to Discovery While Propounding and Insisting on its Own Discovery (2008-2009).

In April and May 2008 AntiCancer served a notice of deposition of CRI and request for production of documents, respectively. AntiCancer accommodated CRI's ensuing requests for delay in scheduling the deposition and providing the documents, agreeing to more time. Lawton dec., ¶ 2. By these requests AntiCancer sought, *inter alia*, proof of infringement.

Afterward, CRI neither produced a deponent nor any but a smattering (6 pages) of documents. Instead CRI served **thirty-five (35) pages of objections**. *See* Doc. No. 135-3, Ex. 5. Before the Court ordered it to on May 30, 2008, CRI never moved for a protective order. Instead, it stood on its objections and produced nothing. The three (3) letters and eleven (11) emails sent by CRI's counsel to AntiCancer concerning the matter exceeded 92 pages. Lawton dec., ¶ 5. CRI's ensuing motion for a protective order (Doc. No. 130) exceeded 141 pages.

For its part, CRI has served 309 discrete discovery requests in this case. Lawton dec., ¶ 10.

CRI also insisted on a 30(b)(6) deposition of AntiCancer (which was scheduled to take place in San Diego in August 2009). In preparation for this deposition and at CRI's insistence, AntiCancer produced many pages of documents; cleared the schedule of its deponent, Robert M. Hoffman; and prepared for the deposition. At the last minute, CRI's counsel took the deposition off calendar. Lawton dec., ¶ 7.

E.    Court's Ruling on CRI's Prior Motion for Protective Order.

The Court granted CRI's motion for protective order in July 2008, ruling infringement-related discovery would be stayed ruling Judge Sammartino's ruling on CRI's summary judgment motion; ordering CRI to make a Maestro available for inspection; and ordering CRI to produce documents. CRI never made a Maestro available for inspection and produced nothing. The Court denied AntiCancer's motion to compel the remainder of the document requests. Doc. No. 140.

F.     CRI's Ensuing Promises to Produce a 30(b)6) Witness on Invalidity Issues
(July and August 2008); CRI's Reneging on the Promises.

On June 6, 2008, CRI promised to produce a 30(b)6) witness on invalidity issues:

> CRI is producing one or more 30(b)6) witnesses to be deposed as
> to any facts in CRI's Answer/Counterclaims (deposition topic #7)
> and CRI's Rule 26(a)(1) Initial Disclosures (deposition topic #8) .

Ex. 1 to Lawton dec.

CRI reiterated this promise on June 10, 2008:

> Regarding the 30(b)(6) deposition topics, CRI will be giving you
> dates of availability for witnesses designated on topics . . . 7, and
> 8.

Ex. 2 to Lawton dec.

CRI reiterated this promise and provided further detail on June 23, 2008, when Mr.
Holmberg wrote:

> CRI designates Theodore Les as its 30(b)(6) witness for topics 1,
> 2, 3, 7, and 8.  Mr. Les is available generally between July 6th and
> 31st.

(Ex. 3.)

CRI's opposition papers neglect to mention these promises.

CRI made these promises at the same time as its prior motion for protective order was
pending.  *See ibid*.  CRI did not make its promise of a 30(b)(6) deponent contingent on the
outcome of its prior motion.

CRI later reneged on the promises, producing neither a witness nor any documents.

G.     AntiCancer's Giving of 30(b)(6) Discovery to CRI (August 2009).

CRI demanded AntiCancer provide a 30(b)(6) witness on 127 topics and produce 45
categories of documents in advance.  *See* Ex. 4.  AntiCancer provided a date for the
deposition (in August 2009), arranged for its 30(b)(6) witness to be there, and prepared for
the deposition.  It and its counsel searched for the documents; assembled and copied them for
production; and produced them to CRI via FedEx delivery, all at significant investment of
time and expense.  Lawton dec., ¶ 7.

1    At nearly the last minute, CRI unilaterally scrubbed the deposition, taking it off

2  calendar, and provided no new date.  *Id.*

3    H.    AntiCancer's Second Notice of CRI's Deposition (September 25, 2009).

4    On September 25, AntiCancer served its second notice of CRI's deposition.  Doc. No.

5  259-3.  This notice called for CRI to produce a witness (or witnesses) under Rule 39(b)(6), to

6  testify concerning four deposition topics and two categories of documents.  The four topics

7  included:

8    •    facts and data concerning CRI's asserted counterclaims of invalidity, including

9        facts and data on which CRI intended to rely in support of them;

10    •    CRI's invalidity contentions (including facts and data relied on in drafting

11        them);

12    •    the supposed invalidity of the patents-in-suit; and

13    •    prior art produced by CRI insofar as it supposedly proved invalidity.

14  The two categories of documents were:

15    •    writings concerning the topics; and

16    •    writings not previously produced concerning the invalidity contentions.

17  *See* CRI's Ex. 1 (Doc. No. 259-3.)

18    AntiCancer's intent in serving this notice was discovering facts and data underlying

19  CRI's invalidity counterclaims.  Lawton dec., ¶¶ 4, 5.  AntiCancer wanted to get at the

20  factual issues underlying these counterclaims so as to prepare for trial and/or CRI's next

21  motion for summary judgment of invalidity (in the wake of CRI's previous, failed motion for

22  such a summary judgment).  *Id.*, ¶¶ 5, 11.  In serving the notice, AntiCancer was mindful of

23  CRI's counsel's previous promises to provide a 30(b)(6) representative on its counterclaims

24  dating back to June 2008.  *Id.*  In drafting the notice, AntiCancer did not seek to create a

25  "mirror image" of CRI's prior notice of AntiCancer's deposition (which identified 127 topics

26  and 45 categories of documents).  Instead it had in mind a much more narrowly-tailored

27  request, which would limit the deposition to the material pertinent to CRI's counterclaims

28  only.  *Id.*

1    CRI, which in the past has served voluminous objections to discovery requests

2    spanning many pages, served no objections to this notice.[10]

3        I.    "Meet and Confer [sic] Process."

4        The "meet-and-confer [sic] process" (here, a misnomer) began with CRI's letter of

5    October 6, 2009, objecting to everything, *see* CRI's Ex. 2.  CRI's letter suggested AntiCancer

6    provide (in writing, and in advance of the deposition) the actual questions AntiCancer

7    wanted to ask CRI at the deposition.  *See* CRI's Ex. 2; Lawton dec., ¶ 8.  CRI invoked the

8    attorney-client privilege and attorney work product doctrine (both then and on its motion).

9    Notwithstanding this, CRI has never produced a privilege log, nor even promised to deliver

10   one.  *See* Lawton dec., ¶ 10.[11]

11       A perfunctory "telephonic meet and confer" followed on October 7.  In it, CRI's

12   counsel essentially said their client would defy the 30(b)(6) notice.  Lawton dec., ¶ 8.  The

13   teleconference was not a true "meet-and-confer" at all.  Instead it was an announcement of

14   CRI's refusal to provide discovery, in a telephonic format involving listening and talking.

15   This format has by now become the norm for this case, in which there is never any

16   compromise on any issue by CRI – only a blanket refusal to give discovery.  For its part,

17   AntiCancer did not give the requested list of its questions to CRI before the teleconference.

18   This is because (a) AntiCancer's counsel does not think it helps his client's interest to

19   disclose in advance deposition questions he intends to ask adverse parties, and (b) it was

20   clear CRI had no genuine interest whatsoever in providing a deposition (thus that the time

21   and paper devoted to listing out the questions in advance would go to waste).  Lawton dec., ¶

22   9.

23       Nearly all of the discovery given in response to written requests in this case has been

24   given by AntiCancer, not CRI (whose document production amounts to six (6) pages after

25   over 2.5 years of litigation).  Lawton dec., ¶ 10.

26   _____

27       [10]  CRI writes that its October 6 letter "set out CRI's objections to the NOTICE."  CRI
     Mem. at 9:9.

28       [11]  In responding to CRI's discovery, AntiCancer produced its first privilege log in
     December 2008, and a supplemental log in September 2009.  Lawton dec., ¶ 10.

J.      This Motion; Procedural Posture of Case.

At the Court's suggestion, CRI filed this motion on October 19.  This motion and its attachments exceeded 320 pages.  The 320 pages lacked any declaration of any CRI officer or employee.  They did include a one-and-a-half-page declaration:  Mr. Holmberg's.  Doc. No. 259-2.  Attorney Holmberg's declaration attested only to the "meet-and-confer [sic] process" and to the "true and correct" copies accompanying the motion.

In its memorandum, CRI argued that:

- "No one at CRI has any knowledge of the facts underlying those counterclaims that is not derived from privileged communications with counsel or counsel's work product[,]" and there is "no one at CRI who is competent to testify on those invalidity contentions or the documents on which they were based or the disclosure of the limitations of AntiCancer's patent claims in each peace of prior art[,]" "CRI has no knowledge of the invalidity contentions independent of what it has been told by counsel[,]" and there "are only two possible sources for the information . . . CRI's experts or CRI's litigation counsel";

- "[A]ll of [the] information sought by topic 2, beyond what is already in the PIC's, is privileged and/or work product";

- "There are only two possible sources for the information . . .: CRI's experts or CRI's litigation counsel";

- various document requests "would require production of documents concerning litigation counsel's work product and their privileged communications with CRI";

- the supposed burdens on CRI arising from the document requests would "far outweigh any benefit to AntiCancer from this discovery[,]" would call for productions of privileged communications which "are voluminous," and would require CRI and its lawyers to "review and list all of communications [sic] with them since the complaint was filed, just so that they be listed on a log of privileged materials and work product" (CRI has never produced any such log, however); and

- CRI would have to produce "post-complaint documents spanning years and that contain privileged communications or disclose work product[,]" imposing an "enormous burden on CRI and counsel[.]"

Mr. Holmberg's declaration, however, did not offer any factual support for any of these statements (it silently omitted to address them).  *See* Doc. No. 259-2.  CRI's motion thus fails to append an affidavit of either attorney or client representative which would prove any of these things are actually true.

A *Markman* hearing is set for December 2.  The Court has yet to set a trial date or any

1    associated deadlines.  The case has been pending for nearly three years.

2    III.    ARGUMENT.

3        A.    CRI's Burden.

4            The burden on this motion rests with CRI.

5            To get a protective order, CRI must show "good cause" for its issuance.  FED. R. CIV.

6    P. 26(c)(1);  *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).  It

7    must show a *particular and specific need* for the order.  *Foltz v. State Farm Mot. Auto. Ins.*

8    *Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003);  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429

9    (9th Cir. 1975).

10           The following factors may be relevant in determining whether "good cause" for a

11   protective order exists:

12           ○    whether information being sought for a legitimate purpose;

13           ○    whether disclosing the information will violate a privacy interest;

14           ○    whether disclosing the information will cause embarrassment; or

15           ○    whether disclosing the information will promote fairness and efficiency

16                in the litigation.

17   *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-791 (3rd Cir. 1994).

18           Even if CRI meets its burden to show the existence of "good cause" for a protective

19   order, *the Court must still balance* the interests in allowing discovery against the alleged

20   burden to CRI.  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,

21   669 F.2d 620, 623 (10th Cir. 1982).

22       B.    AntiCancer Does Not Seek Infringement-Related Discovery, or to Run Afoul
             of the Court's Prior Protective Order on AntiCancer's Prior Deposition Notice.
23

24           By its notice, AntiCancer seeks no infringement-related discovery.  *See* Lawton dec.,

25   ¶¶ 4, 9.  It agrees the Court's summary judgment of non-infringement has removed

26   infringement issues from the case for the time being.  To the degree the notice is construed to

27   encompass infringement-related discovery, AntiCancer would not oppose issuance of a

28   protective order limiting the notice to invalidity topics only (as argued more in detail below).

1    CRI argues the Court's prior protective order (Doc. No.140) effectively precludes the

2    discovery AntiCancer now seeks.  *See* CRI Mem. at 8:1-11.  This is not true.  The prior order

3    addressed a deposition notice and document request which AntiCancer served close in time

4    to CRI's motion for summary judgment of non-infringement.  That prior discovery is not

5    now before the Court.  The prior document request sought 14 categories of documents, many

6    of them related to infringement, and documents about every one of CRI's affirmative

7    defenses.  The notice before the Court is more narrowly-tailored (only four topics and two

8    document categories) than the document requests before the Court in July 2008.

9         To the degree the Court thinks the notice extant still may be overly broad, the Court

10   can and should order it limited – not quash it outright, postponing even more indefinitely the

11   day when CRI at last provides its first document or witness in response to a written discovery

12   request in this case.  *See Invitrogen Corp. v. President and Fellows of Harvard College*, 2007

13   U.S. Dist. LEXIS * 9 (granting and denying in part defendant's motion to compel; limiting

14   plaintiff's request "to a specific time period relevant to the complaint"; ordering defendant to

15   "respond to limited discovery requests by Plaintiff");  *Wal-Mart Stores, Inc. v. Vidalakis*,

16   2007 U.S. Dist. LEXIS 95696, * 13 (W.D. Ark. 2007) (denying motion for protective order;

17   limiting "time period to be encompassed by the discovery" to three-year period);  *Flanagan*

18   *v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 52860, * 13 (N.D. Ill. 2007) (denying motion for

19   protective order, but limiting depositions in scope to issues surrounding certain documents).

20        In this context, CRI forgets its own prior advocacy, in which it urged that discovery of

21   invalidity issues was proper.  The Court itself took note of this in the very transcript which

22   CRI puts before the Court (while not acknowledging the pertinent excerpt):

23                    [CRI] also points out that in the interim, the parties are free to
                      engage in discovery relating to issues aside from infringement,
24                    including invalidity, damages and other issues.

25   CRI Ex. 8 at 13:3-6.

26        Juxtaposing CRI's advocacy then with its advocacy now shows CRI's advocacy as

27   situational.  In 2008, noticed discovery concerning CRI's invalidity theories was all right;

28   other discovery was not.  Now that AntiCancer has noticed discovery concerning CRI's

1    invalidity theories, it is no longer all right.  This situational advocacy does not aid the Court.

2    It does reveal much about how thoroughly CRI believes (and how quickly CRI forgets) its

3    own arguments.

4         C.    Why Invalidity Counterclaims Involve Facts Subject to Discovery.

5              CRI has sued to invalidate the AntiCancer patents on five separate and

6    independent bases.  These bases dictate the scope of permissible discovery:

>          Parties may obtain discovery regarding any nonprivileged matter
>          that is relevant to any party's claim or defense – including the
>          existence, description, nature, custody, condition, and location of
>          any documents or other tangible things and the identity and
>          location of persons who know of any discoverable matter.

10   FED. R. CIV. P. 26(b)(1).

11        Here, CRI seeks to invalidate the AntiCancer patents on the grounds of anticipation

12   (35 U.S.C. § 102), obviousness (35 U.S.C. § 103), non-enablement (35 U.S.C. § 112 ¶ 1),

13   lack of written description (35 U.S.C. § 112 ¶ 1), and indefiniteness (35 U.S.C. § 112 ¶ 2).

14   In turn, each of these separate grounds for invalidity have essential factual elements that

15   AntiCancer *must* defeat in order to protect validity.  Prior art pertains to two (but not all) of

16   these bases:  anticipation and obviousness.  AIPLA's Model Patent Jury Instructions[12] make

17   clear that such defenses involve factual issues appropriate for jury determination.  *See id*. at

18   21 (defining anticipation), 27 (defining obviousness), 28 (defining prior art for obviousness

19   purposes), 29 (defining level of ordinary skill in the art), 30-31 (defining factors indicating

20   nonobviousness), 31 (defining enablement), 32 (defining written description requirement).

21        The Federal Circuit has acknowledged 30(b)(6) discovery of facts pertinent to

22   invalidity theories.  *See Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d

23   1350, 1358-1359 (Fed. Cir. 2007).

24         1.    Prior art.

25              Broadly defined, prior art includes all patents, publications, and public

26   uses of the invention in existence before the patentee's date of invention or more than a year

27   before the patent application filing date.  35 U.S.C. § 102 (2009).  In this case, CRI has

28
     ─────────────────
          [12] (American Intellectual Property Law Assn. 2008).

1   identified and alleged some *336* separate pieces of prior art.  *See* Ex. 4 to Holmberg Decl.

2        CRI made this disclosure in its PICs:

3            Attached hereto as Exhibit A is a list of prior art that Defendants
             contend anticipates an asserted claim or renders an asserted claim
4            obvious.

5   Ex. 3 to Holmberg Decl. at 4:1-3.

6        CRI had nothing to do with developing this prior art.  *See* CRI Mem. at 9:25-10:15.

7   CRI claims only its litigation counsel assembled it.  *Id*.

8        If it is true that no employee of CRI knows anything about these 336 documents

9   generated by the company's lawyers, then let a CRI representative say so under oath.

10       2.    <u>Facts associated with invalidating patents via anticipation</u>.

11           CRI asserts that the AntiCancer patents were anticipated by prior art

12  under 35 U.S.C. § 102.  Ex. 3 to Holmberg Decl. (CRI's PICs).  Because the AntiCancer

13  patents are presumed to be valid (35 U.S.C. § 282), "the evidentiary burden *to show facts*

14  *supporting the conclusion of invalidity*," which rests with CRI, "is one of clear and

15  convincing evidence."  *Takeda*, 492 F.3d at 1355.  Via prior art, anticipation can occur

16           if a single prior art reference discloses each and every limitation
             of the claimed invention.  Moreover, a prior art reference may
17           anticipate without disclosing a feature of the claimed invention if
             that missing characteristic is necessarily present, or inherent, in
18           the single anticipating reference.

19  *Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).

20       "Anticipation is a question of fact."  *Glaverbel Societe Anonyme v. Northlake*

21  *Marketing & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995).  *See Hoover Group, Inc. v.*

22  *Custom Metalcraft, Inc.*, 66 F.3d 302 (Fed. Cir. 1995).  Yet CRI denies AntiCancer access to

23  such facts (assuming, *arguendo*, such facts exist).

24       The information being sought is for a legitimate purpose.  Its disclosure cannot

25  possibly violate CRI's privacy or cause embarrassment.  *See Pansy*, 23 F.3d at 787-791 (re

26  bases for protective order).  Indeed, permitting such discovery will promote fairness and

27  efficiency to the litigation.  *Id*.

28       Perhaps CRI's designated witness(es) will have no evidence to give on these matters.

1    Let them say so under oath.

2               3.    <u>Obviousness</u>.

3           CRI asserts that the AntiCancer patents were obvious under 35 U.S.C. §

4    103 at the time of invention.  Ex. 3 to Holmberg Decl. (CRI's PICs).  Because the

5    AntiCancer patents are presumed to be valid (35 U.S.C. § 282), "the evidentiary burden *to*

6    *show facts supporting the conclusion of invalidity*," which rests with CRI, "is one of clear

7    and convincing evidence."  *Takeda*, 492 F.3d at 1355.

8         The ultimate determination of obviousness under section 103(a) is a legal conclusion.

9    It must rest, however, on findings of fact, including: (1) the scope and content of the prior

10    art; (2) the level of ordinary skill in the prior art; and (3) the differences between the claimed

11    invention and the prior art, and (4) objective evidence of non-obviousness.  *Velander v.*

12    *Garner*, 348 F.3d 1359, 1363 (Fed. Cir. 2003); *Vulcan Engineering Co. v. Fata Aluminium,*

13    *Inc.*, 278 F.3d 1366, 1372 (Fed. Cir.), *cert. denied*, 537 U.S. 814, 123 S.Ct. 81, 154 L.Ed.2d

14    18 (2002);  *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894 (Fed. Cir.

15    1984).  Genuine material fact issues concerning obviousness will preclude summary

16    judgment on it.  Chisum on Patents, § 5.04 & n. 82 (Matthew Bender & Co. 2009).

17        These considerations have nothing to do with the claimed prior art.  The courts

18    consider them relevant areas of inquiry:

19               Indeed, evidence of secondary considerations may often be the
20               most probative and cogent evidence in the record.  It may often
               establish that an invention appearing to have been obvious in
21               light of the prior art was not.

22    *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

23        These considerations include commercial success of the invention, need for it in the

24    marketplace, unsuccessful attempts by others to solve the problem addressed by the

25    invention, copying of the invention, results of the invention, whether others in the field praise

26    the invention or express surprise, and whether others accept licenses for the invention.  *See*

27    *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966);  *Perkin-*

28    *Elmer Corp.*, 732 F.2d at 894-95;  *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697

1   (Fed. Cir. 1983);  *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed.

2   Cir. 1983);  *Stratoflex,* 713 F.2d at 1538-39.

3          Because facts pertinent to these issues will matter at trial and/or on summary

4   judgment, AntiCancer properly pursues them via a 30(b)(6) deposition.  The data sought is

5   for a legitimate purpose.  Disclosure of it cannot possibly violate CRI's privacy or cause

6   embarrassment.  *See Pansy*, 23 F.3d at 787-791 (re bases for protective order).  Indeed,

7   permitting such discovery will promote fairness and efficiency to the litigation.  *Id*.  Taken at

8   its unsworn word, CRI cannot now produce *any* evidence supporting *any* of these essential

9   factual elements of its case (let alone the clear and convincing evidence required).  If this is

10  the case, AntiCancer is entitled to have a CRI representative say it under oath.

11                4.        Non-enablement.

12                CRI asserts that the AntiCancer patents aren't enabled under 35 U.S.C. §

13  112 ¶ 1.  Ex. 3 to Holmberg Decl. (CRI's PICs).  Because the AntiCancer patents are

14  presumed to be valid (35 U.S.C. § 282), "the evidentiary burden *to show facts supporting a*

15  *conclusion of invalidity*," which rests with CRI, "is one of clear and convincing evidence."

16  *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003) (emphasis

17  added).

18         The relevant inquiry is whether a person skilled in the art, looking at the patent claims,

19  could use the claimed method without resorting to undue experimentation.  35 U.S.C. § 112 ¶

20  1.  The fact that *some* experimentation might be necessary *does not* mean that the patent is

21  invalid.  Instead, the courts weigh these factors:  (1) how much experimentation is needed,

22  (2) the amount of direction disclosed by the patent, (3) whether there are working examples

23  in the patent, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill

24  of those in the art, (7) the predictability of the art, and (8) the breadth of the claims.  *Liebel-*

25  *Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007);  *AK Steel Corp.*, 344

26  F.3d at 1238-39;  *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001);

27  *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir.

28  2001);  *Ajinomoto Co. v. ADM Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000);  *Nat'l*

1  *Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir.

2  1999).  These factors involve facts.  *See Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d

3  931, 942 (Fed. Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct 295, 112 L.Ed.2d 249 (1990).

4  These areas are proper for discovery.  Except for the fifth factor (state of the prior art),

5  none is disclosed in CRI's PICs.  The data sought is for a legitimate purpose.  Disclosure of it

6  cannot possibly violate CRI's privacy or cause embarrassment.  *See Pansy*, 23 F.3d at 787-

7  791 (re bases for protective order).  Permitting such discovery will promote fairness and

8  efficiency to the litigation.  *Id.*

9          5.    <u>Written Description</u>.

10  CRI asserts the AntiCancer patents lack adequate written description

11  under 35 U.S.C. § 112 ¶ 1.  Ex. 3 to Holmberg Decl. (CRI's PICs).  CRI's evidentiary burden

12  is to show facts supporting invalidity.  In this context,

13      The "written description" requirement implements the principle
   that a patent must describe the technology that is sought to be
14      patented; the requirement serves both to satisfy the inventor's
   obligation to disclose the technologic knowledge upon which the
15      patent is based, and to demonstrate that the patentee was in
   possession of the invention that is claimed.

16

17  *Capon v. Eshhar*, 418 F.3d 1349, 1357 (Fed. Cir. 2005).  *See also AK Steel Corp.,* 344 F.3d

18  at 1238-39.

19  Again, CRI's PICs disclose no facts pertinent to this theory, which requires no proof

20  of prior art.  This area is properly subject to discovery.  AntiCancer seeks the data for a

21  legitimate purpose.  Disclosure of it cannot possibly violate CRI's privacy or cause

22  embarrassment.  *See Pansy*, 23 F.3d at 787-791 (re bases for protective order).  Permitting

23  such discovery will promote fairness and efficiency to the litigation.  *Id.*

24  Perhaps CRI's designated witness(es) will have no evidence to give on these matters.

25  If so, AntiCancer is entitled to have them say so under oath.

26          6.    <u>Indefiniteness</u>.

27  CRI asserts that the AntiCancer patents are indefinite under 35 U.S.C. §

28  112 ¶ 2.  Indefiniteness is a question of law.  *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 2009

1   U.S. App. LEXIS 20409, **78, 79 (Fed. Cir. 2009).  "If a claim fails to reasonably apprise

2   [sic] one skilled in the art of the boundaries of the claim when read in light of the

3   specification, the claim is invalid under § 112 for indefiniteness."  *Amgen Inc.*, 2009 U.S.

4   App. LEXIS 20409 at *80-*81.

5        CRI's PICs offer no data pertinent to indefiniteness.  Prior art has nothing to do with

6   this theory.  Discovery of facts in this area is proper.  AntiCancer seeks that discovery for a

7   proper purpose: to help it prepare for trial and/or CRI's next summary judgment motion.

8   Disclosure of it cannot possibly violate CRI's privacy or cause embarrassment.  *Pansy*, 23

9   F.3d at 787-791 (re bases for protective order).  Permitting the discovery will promote

10  fairness and efficiency to the litigation.  *See id*.

11       Should CRI's witness(es) lack knowledge of data pertinent to this area, AntiCancer is

12  entitled to have them say so under oath.

13       D.   <u>AntiCancer Does Not Seek Deposition Testimony of Litigation Counsel or</u>
         <u>Not-Yet-Identified Experts; CRI's Argument to the Contrary Sets up a Straw</u>
14       <u>Man</u>.

15       CRI devotes the bulk of its argument (2.5 pages) to urging that AntiCancer improperly

16  seeks "depositions of opposing counsel . . . in its NOTICE."  CRI Mem. at 10:16-28, 11:1-

17  28, 12:1-7.  This is a straw man argument.  AntiCancer has never expressed or implied it

18  sought litigation counsel's deposition(s), and it does not seek such.  Lawton dec., ¶ 9.

19       CRI invokes *SEC v. Jasper*, 2009 U.S. Dist. LEXIS 46678 (N.D. Cal. 2009) for the

20  proposition that AntiCancer's notice "would effectively have required testimony from

21  opposing counsel[,]" despite not expressly seeking such testimony.  CRI Mem. at 11:19-28.

22  *Jasper* is inapposite.  In *Jasper*, Jasper (defendant) sought discovery from the plaintiff, the

23  SEC, of statements of witnesses Gifford and Byrd, whom the SEC had interviewed.

24  Significantly, Jasper did **not** seek any discovery directly from Gifford or  Byrd themselves

25  (except for an improper "cross-notice [sic] of Gifford's deposition, whose validity was not

26  before the court).  *See Jasper*, 2009 U.S. Dist. LEXIS 4667, * 2.  The SEC actually produced

27  documents which were responsive and not privileged, promised to keep looking for other

28  responsive documents and produce those if found, and delivered a log of responsive

1  documents which it had withheld based on privilege.  *Id.*, * 3.  The Court granted the SEC's

2  motion for protective order, emphasizing Jasper's failure to seek the discovery directly from

3  Gifford and Byrd themselves and his ability to get the information directly from Gifford's

4  counsel.  *Id.*, ** 5, 8.

5      This case is not *Jasper*.  CRI, and only CRI, knows what the facts of its invalidity

6  counterclaims are.  AntiCancer cannot discover these facts from alternate sources.  Nor has

7  CRI produced any documents concerning the matter (the SEC did in *Jasper*).  CRI has

8  delivered voluminous prior art and charts, but these go only to its anticipation defense, and

9  CRI produced them pursuant to Local Rule, not the 30(b)(6) notice.  *Jasper* is inapposite and

10  CRI's reliance on it misplaced.

11      CRI also argues the information AntiCancer seeks could come only from experts

12  which CRI has yet to retain.  CRI Mem. at 10:12-13.  This is not correct.  Experts cannot

13  testify to facts of which they lack personal knowledge.  AntiCancer seeks the facts

14  underlying CRI's invalidity counterclaims, not expert opinions.  To the degree CRI premises

15  its counterclaims on the opinions of experts it has not yet even retained, it has raised a

16  troubling question about its own good faith in asserting those counterclaims.  One does not

17  assert counterclaims in good faith based solely on the opinions of experts he has not yet

18  retained or spoken with.

19      Right now, CRI – and only CRI – knows the facts on which it premises its serious

20  counterclaims on the validity of AntiCancer's patents.  If CRI has no such facts, let it say so

21  under oath.  The possibility that it might say so is not reason to excuse it from saying so if

22  that is the truth.

23      E.    AntiCancer Does Not Seek Discovery of Facts Related to Infringement.  To the
             Degree Its Notice Is Interpreted as Doing So, the Court Can and Should Order
24           a Deposition and Document Production Limited to Invalidity Issues.

25      CRI argues the notice's demand for discovery concerning CRI's counterclaims is

26  impermissible because those counterclaims (which assert "non-

27  infringement/invalidity/unenforceability") include non-infringement, something the Court's

28  summary judgment has eliminated from the case.  CRI Mem. at 12:8-25.  As AntiCancer has

1   said made clear, it is not seeking discovery of infringement-related issues – only facts

2   pertinent to CRI's invalidity counterclaims.  *See* Lawton dec., ¶ 9.  This eliminates any doubt

3   created by CRI's conflation of multiple issues in single counterclaims ("non-

4   infringement/invalidity/unenforceability").  To the degree the Court construes the notice to

5   include infringement-related discovery, it can easily limit the allowable discovery (including

6   by time).  *See Wal-Mart Stores*, 2007 U.S. Dist. LEXIS 95696, * 13 (denying motion for

7   protective order; limiting "time period to be encompassed by the discovery" to three-year

8   period);  *Flanagan*, 2007 U.S. Dist. LEXIS 52860, * 13 (denying motion for protective order,

9   but limiting depositions in scope to issues surrounding certain documents).

10          F.      CRI Utterly Fails Its Burden of Proving Undue Burden and Expense.  Neither It
                    nor Its Counsel Offers any Affidavit or Other Proof of Such.

11

12          CRI invokes the burden supposedly associated with producing supposedly

13   "voluminous" records, having to sift through privileged documents and prepare a supposedly

14   "massive" privilege log," all to the result of consumption of an "excessive amount of time"

15   and "excessive expense."  CRI Mem. at 13-14.

16          Unfortunately, CRI appends no affidavit (either of its counsel or any corporate officer)

17   attesting to the truth of these assertions.  It would have been easy enough to submit such an

18   affidavit were these things true (or at least important enough to CRI to warrant the trouble of

19   putting in an affidavit attesting to them).

20          This is a failure of CRI's burden on this motion.  *See Wal-Mart Stores,* 2007 U.S.

21   Dist. LEXIS 95696, ** 7-8 (denying Wal-Mart's motion for protective order; Wal-Mart

22   asserted burden and expense, but "attache[d] no affidavit or computation that would assist

23   the court in determining that the process will be costly");  *EEOC v. Kansas City Southern*

24   *Railway*, 2000 U.S. Dist. LEXIS 19952, * 4 (D. Kan. 2000) (denying defendant's motion for

25   protective order requiring plaintiff's counsel not to depose witness; defendant asserted undue

26   annoyance, embarrassment, and oppression, but "no affidavit or other proof"; "mere assertion

27   that [witness] could experience annoyance, embarrassment or feel oppressed is insufficient to

28   establish good cause for entry of a protective order");  *Steadcast Ins. Co. v. Auto Marketing*

1  *Network, Inc.*, 1999 U.S. Dist. LEXIS 6897, * 5 (N.D. Ill. May 3, 1999) (denying protective

2  order; defendant "offered no affidavit from [corporate officer] attesting to . . . burden that

3  would be imposed by the deposition"). *See also Airport Systems Int'l., Inc. v. Airsys ATM,*

4  *Inc.*, 2002 U.S. Dist. LEXIS 994, ** 25-26 (D. Kan. 2002) (granting plaintiff's motion to

5  compel; defendant objected based on undue burden, but "submitted no affidavit or other

6  proof demonstrating that responding to the document requests at issue would impose an

7  undue burden").

8         Moreover, should CRI try belatedly to proffer such an affidavit on reply, AntiCancer

9  will have lost the opportunity to address it (because of CRI's failure to proffer it in its

10  moving papers).  The Court should disallow any tardy affidavit attesting to supposed burden

11  or expense which CRI may try to file on November 9.

12        None of CRI's authorities avail it here.  CRI relies on *Superior Communications v.*

13  *Earhugger, Inc.*, 257 F.R.D. 215 (C.D. Cal.) for the proposition courts have "granted

14  protective orders excusing the responding party from complying with" document requests

15  demanding production of "'ALL' documents relating to a broad topic[.]" CRI Mem. at 14:4-

16  7.  What CRI leaves out is the court in *Superior Communications* actually ruled as follows:

17  (1) none of defendant's objections to document requests seeking document requests relating

18  to defendant's pleadings "are well-taken since these requests seek only documents supporting

19  defendant's [pleading]"; (2) plaintiff had requested information about "all" of defendant's

20  products (not just "Accused Products").  257 F.R.D. at 220.  Here, as in *Superior*

21  *Communications*, the court ought to force defendant to produce the documents – if it has any

22  – which support its pleading (insofar as it alleges invalidity).  Here, unlike in *Superior*

23  *Communications*, plaintiff has not propounded a grossly broad request for data concerning all

24  of the defendant's products.  *Superior Communications* is of no avail to CRI.

25        *Invitrogen*, 2007 U.S. Dist. LEXIS 74282, is inapposite too.  In *Invitrogen*, the court

26  ruled in the context of a jurisdictional dispute that plaintiff's discovery requests were overly

27  burdensome insofar as they specified no particular time frame.  CRI omits to add that the

28  court also granted plaintiff's motion to compel discovery and granted the defense's protective

1   order motion only in part, obliging it to "respond to limited discovery requests by Plaintiff"

2   (including a deposition to be taken in Massachusetts).

3        Here, AntiCancer doesn't know what documents CRI has which pertain to its

4   invalidity theories; only CRI knows that.  The burden here is on CRI to prove an undue

5   burden, not on AntiCancer to disprove the burden based on facts it cannot know because of

6   CRI's obstructionism.  CRI has not carried that burden.  *See Wal-Mart Stores,* 2007 U.S.

7   Dist. LEXIS 95696, ** 7-8;  *EEOC v. Kansas City Southern Railway*, 2000 U.S. Dist. LEXIS

8   19952, * 4;  *Steadcast Ins. Co.*, 1999 U.S. Dist. LEXIS 6897, * 5;  *Airport Systems Int'l.,*

9   *Inc.*, 2002 U.S. Dist. LEXIS 994, ** 25-26 (D. Kan. 2002).

10       CRI also invokes *Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 1997

11  U.S. Dist. LEXIS 24130 (S.D. Cal. 1997), but the case is most notable as an example of what

12  CRI pointedly has left out of its motion: sworn testimony proving the burden it complains of.

13  *See Sibia Neurosciences*, * 24-26 (noting "evidence shows that [defendant] will suffer

14  serious and unnecessary hardship" if protective order left unmodified). Here CRI has

15  provided no evidence of any burden whatsoever.  It has failed that burden, unlike defendant

16  in *Sibia Neurosciences*.

17       The Court should reject complaint that providing discovery would involve attorney

18  work product (CRI Mem. at 8:1213:14-28).  AntiCancer seeks the "factual evidentiary bases"

19  for CRI's invalidity theories.  This Court rejects assertion of the work product doctrine in this

20  area.  "Surely [CRI] has the factual bases, circumstances, specific dates, and names of the

21  alleged prior-inventors to support its defense [citation omitted].  All [plaintiff] requests are

22  facts, not opinions or speculations."  *Medtronic, Inc. v. Guidant Corp.*, 2003 U.S. Dist.

23  LEXIS 26039 (D. Minn. 2003) (granting cross-complainant's motion to compel and denying

24  in part cross-defendant's motion for protective order).

25  IV.   CONCLUSION.

26       The past is prologue to this motion.  CRI's standard for discovery in this case is a

27  double one.  Only CRI is allowed to seek and get discovery; it is under no duty to give any.

28  Only AntiCancer is obliged to give discovery; it has no right to get any.  This cannot be fair

or right.  The policy behind the Federal Rules is just and speedy resolution of every action and proceeding.  Fed. R. Civ. P. 1.  CRI's motion patently violates this policy because it promotes injustice and delay rather than justice and speed.

CRI's motion should be denied and CRI ordered to comply with the notice within thirty (30) days, without any objections save those based on attorney-client privilege or attorney work product.  The Court should also order CRI to deliver a privilege log promptly so that any assertions of privilege can be understood and, if necessary, tested.  *See Superior Communications*, 257 F.R.D. at 220 (ordering defendant to deliver privilege log in wake of assertion of attorney-client privilege and work product doctrine).

Dated: November 2, 2009                LAWTON LAW FIRM


By:     s/Dan Lawton                                    
        Dan Lawton
        Attorneys for Plaintiff and Counterdefendant
        AntiCancer, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record in *AntiCancer, Inc. v. Cambridge Research Instrumentation, Inc.*, *et al.*, Case No. 07-CV-00097-JLS (RBB) who are deemed to have consented to electronic service, are being served this 2nd day of November, 2009, with a copy of these documents:

1.    PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN **OPPOSITION** TO MOTION OF DEFENDANT AND COUNTERCLAIMANT CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., FOR A PROTECTIVE ORDER STRIKING RULE 30(B)(6) DEPOSITION NOTICE AND QUASHING "IMPROPER DISCOVERY"; and

2.    DECLARATION OF DAN LAWTON IN **OPPOSITION** TO DEFENDANT-COUNTERCLAIMANT CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.'S MOTION FOR A PROTECTIVE ORDER STRIKING RULE 30(B)(6) DEPOSITION NOTICE AND QUASHING "IMPROPER DISCOVERY" (with accompanying INDEX OF EXHIBITS ATTACHED TO LAWTON DECLARATION and EXHIBITS 1-4)

via the Court's CM/ECF system.

I certify that all parties in these cases that have made an appearance are represented by counsel who are CM/ECF participants who have consented to electronic service.

By:    s/Dan Lawton