J. CHRISTOPHER JACZKO (149317)
ALLISON H. GODDARD (211098)
**JACZKO GODDARD LLP**
4401 Eastgate Mall
San Diego, CA 92121
Telephone:   (858) 404-9205
Facsimile:    (858) 225-3500

MARTIN B. PAVANE (admitted *pro hac vice*)
TEODOR J. HOLMBERG (admitted *pro hac vice*)
**COHEN PONTANI LIEBERMAN & PAVANE LLP**
551 Fifth Avenue
New York, NY 10176
Telephone:   (212) 687-2770
Facsimile:    (212) 972-5487
E-mail: mpavane@cplplaw.com
E-Mail: tidge@cplplaw.com

Attorneys for Defendant and Counterclaimant
CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware Corporation,<br><br>    Defendant.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.,<br><br>    Counterclaimant<br><br>    v.<br><br>ANTICANCER, INC.,<br><br>    Counterdefendant | **Case No. 07 CV 00097-JLS-RBB**<br><br>**REPLY MEMORANDUM IN SUPPORT OF CRI'S MOTION FOR A PROTECTIVE ORDER STRIKING RULE 30(b)(6) DEPOSITION NOTICE AND QUASHING IMPROPER DISCOVERY**<br><br>Hearing Date: November 16, 2009<br>Time:         11:00 AM<br>Courtroom:   B (1st Floor)<br>Judge:        Hon. Ruben B. Brooks |

## I. INTRODUCTION

AntiCancer's Second 30(b)(6) Notice is fatally defective for many of the same reasons the Court quashed AntiCancer's First 30(b)(6) Notice more than a year ago: over breadth, vagueness, for demanding privileged information and work product and for demanding testimony that can and will only be provided by experts. This is not stonewalling by CRI, but a matter of timing; it is expert discovery and under the Patent Local Rules, must await claim construction and fact discovery. Trial counsel may have ideas and beliefs about the facts and expert testimony to be developed and presented, but AntiCancer is not entitled to discovery of trial counsel's plans, ideas and beliefs. CRI disputes AntiCancer's right to take a deposition that will consist of "I don't know" and instructions not to answer on grounds of privilege or work product. AntiCancer implicitly acknowledges that the discovery it demands is futile and wasteful when it repeats, again and again, that it "is entitled to have [CRI] say so under oath", that is, that CRI "has no [factual] evidence to give on these matters."

Notwithstanding the actual language of its Second Notice, AntiCancer now concedes that all four topics in the Second Notice seek discovery only on CRI's claims that the AntiCancer patents-in-suit are invalid. AntiCancer's Memorandum in Opposition to CRI's Motion for Protective Order [D.E. 264] ("AntiCancer Opp.") at 1, *et seq.* The invalidity counterclaims were formulated, drafted, signed and served by experienced patent litigation counsel for CRI. The Joint Preliminary Invalidity Contentions ("Joint PICs") were prepared by litigation counsel for CRI and three other defendants, after AntiCancer had sued them all, alleging that the defendants infringed those patents. CRI has no in-house counsel and no in-house patent counsel, and no one at CRI took part in the preparation of the invalidity counterclaims or the Joint PICs explaining them.

The Joint PICs describe, limitation by limitation, for each claim of each patent, how each piece of prior art renders it invalid. All of that prior art was authored by third parties, or by AntiCancer itself; none of the prior art was authored by CRI. The only other non-privileged, non-work product information that CRI can provide concerning invalidity of AntiCancer's patents is the opinions and testimony of CRI's experts. But the Court has not yet set a date for expert discovery to begin, CRI has not yet retained any testifying experts, and consequently no expert has prepared a written report pursuant to Fed.R.Civ.P. 26(a)(2).

1 CRI explained all that to AntiCancer more than a year ago, when AntiCancer first sought discovery on CRI's allegations of patent invalidity via AntiCancer's First 30(b)(6) Notice (Ex. 1 [D.E. 130-04] to CRI's Mot./P.O. re: AntiCancer's 1st 30(b)(6) Notice hereinafter, "AntiCancer's 1st 30(b)(6) Notice [D.E. 130-04]"). At that time AntiCancer agreed to await expert discovery concerning the defendants' invalidity allegations. *See* §II.C below. Because the parties resolved the issue between themselves, neither raised it in the motions they made on other First Notice issues.

AntiCancer has not identified a single non-privileged, non-work product fact concerning invalidity of AntiCancer's patents, beyond what CRI and the other defendants provided in the Joint PICs, that will not be provided by CRI's experts, once they are identified and prepare their reports and appear for deposition. The Court should quash AntiCancer's Second 30(b)(6) Notice to CRI.

## II. THERE ARE NO NON-PRIVILEGED, NON-EXPERT FACTS TO BE DISCOVERED CONCERNING CRI'S INVALIDITY CONTENTIONS

### A. CRI's Initial Disclosures

More than two years ago CRI disclosed to AntiCancer in its Initial Disclosures under Fed.R.Civ.P. 26(a) that, insofar as CRI was aware, the only persons with knowledge of facts relating to invalidity of AntiCancer's patents were four individuals whom AntiCancer had named as inventors in the patents-in-suit, and all of whom were or had been AntiCancer employees. *See* CRI's Rule 26(a) Init. Disclosures, **Exhibit 9**[1] to the Reply Declaration of Teodor Holmberg in Support of CRI's Motion to Quash ("Holmberg Reply Dec.") attached hereto. CRI's Initial Disclosures identified the inventors, Meng Yang, Eugene Baranov, Yuying Tan and Takashi Chishima, as the only individuals CRI believed were likely to have "[k]nowledge of facts relating to the invalidity of the patents-in-suit". *Id.* at 3. As CRI stated, "[t]he above people are/were employed by the plaintiff, AntiCancer." *Id*. CRI did not identify anyone else; in particular, it did not identify anyone employed by CRI, as having "knowledge of facts relating to the invalidity of [AntiCancer's] patents-in-suit". *Id.* Now, more than two years later, AntiCancer demands that "a CRI representative say so under oath", "[l]et them say so under oath", that "AntiCancer is entitled to have a CRI representative say it under oath", etc. AntiCancer Opp. [D.E. 264], pp. 13, 14, 15, 16, 17.

---

[1] The exhibit numbering continues from the number of the last exhibit to CRI's Motion [D.E. 259].

B.   **Defendants' Joint Preliminary Invalidity Contentions**

AntiCancer sued not only CRI, but also Merck & Co., Inc., Novartis Institutes for Biomedical Research, Inc. and Carestream Health, Inc. for infringement of the patents-in-suit. After answering, all four defendants joined forces to prepare and submit a single set of invalidity contentions, the Joint PICs. Exs. 3-8 [D.E. 259-05 - 259-10] to Holmberg Dec. iso CRI's Mot./P.O. [D.E. 259]. Litigation counsel for all of the defendants worked on the preparation of the Joint PICs and signed the Joint PICs. Holmberg Reply Dec., ¶4. CRI has neither in-house litigation counsel nor in-house patent counsel and all of CRI's contributions to preparation and service of the Joint PICs were made by CRI's outside litigation counsel in cooperation with outside counsel for the other defendants. Holmberg Reply Dec., ¶5. No one at CRI took part in the preparation of the Joint PICs. *Id.*

In the two years since then, CRI and its outside litigation counsel have, of course, communicated regularly and extensively about all aspects of the litigation, including the contentions made by and among the four counsel for the co-defendants that the patents-in-suit are invalid. Holmberg Reply Dec., ¶6. Needless to say, the two years of communications between CRI and counsel since the complaint was filed are privileged and/or work product protected from discovery and voluminous. *Id.* Merely reviewing them and cataloguing them on a privilege log would be burdensome. *Id.* Notably, AntiCancer has not burdened itself with providing a log of its own voluminous post-complaint communications.

AntiCancer argues that the absence of a declaration from CRI or counsel affirming that no one at CRI is in a position to testify about any invalidity issues is fatal to CRI's motion. AntiCancer ignores that the Memorandum in which CRI made those assertions [D.E. 259-02] was certified, pursuant to Fed.R.Civ.P. 11, by counsel's signature — the same counsel that communicates with CRI, the same counsel that was involved, along with counsel for the other defendants, in the drafting and service of the Joint PICs. In any event, any such defect is cured by the attached Reply Declaration of Teodor Holmberg, dated November 9, 2009, restating what Martin Pavane stated, under Rule 11, in the Memorandum. *See* Holmberg Reply Dec., ¶¶4-5.

///

///

### C. AntiCancer Agreed Last Year That the Discovery it Seeks Concerning CRI's Invalidity Claims Will Be Provided by CRI's Experts

AntiCancer's First 30(b)(6) Notice demanded testimony from CRI concerning the co-defendants' invalidity contentions as set out in the Joint PICs (Topic10), just as its current Second Notice demands testimony relating to invalidity (Topics 1-4).  *See* AntiCancer's 1st 30(b)(6) Notice [D.E. 130-04]; AntiCancer's 2nd 30(b)(6) Notice, Ex. 1 [D.E. 259-03] to CRI's Mot./P.O. [D.E. 259].  After the parties met and conferred concerning AntiCancer's First 30(b)(6) Notice, AntiCancer's counsel:

> agreed that CRI would indeed produce an appropriate <u>expert</u> witness, for <u>any factual</u>/expert contentions made <u>in regards to the validity</u>, when and if that is done, but that it [is] not appropriate (or possible) concerning the defendants' joint preliminary invalidity contentions as they consist of legal arguments.

Holmberg 6/6/08 email, Ex. 1 [D.E. 264-02] to Lawton Opp. Dec, p. 1 (underlining added).  Four days later, CRI's counsel reiterated the point in connection with CRI's invalidity claims (topic 10):

> CRI's position, as we discussed in last week's teleconference, is that this comprises attorney argument, and that, to the extent it does not, the defendants have already produced everything non-privileged/protected and relevant—i.e., the preliminary invalidity contentions themselves and the materials which are required under PatLR 3.4(b) (a copy of each piece of prior art that defendants contend invalidates AntiCancer's patents-in-suit).  <u>Beyond this there is only expert testimony concerning in/validity [*sic*], upon which any party offering such testimony will be required to submit a 'written report' pursuant to Rule 26(a) (2), as well as providing the expert to be deposed.</u>

Holmberg 6/10/08 email, Ex. 2 [D.E. 264-03] to Lawton Opp. Dec., p. 1 (underlining added).

AntiCancer did not move to compel production of a 30(b)(6) witness on invalidity and CRI did not move to quash the First Notice as to invalidity issues.  CRI and AntiCancer had already agreed in meet and confers that any such discovery from CRI would be provided by experts.

AntiCancer argues – falsely – that CRI agreed to provide non-expert testimony on invalidity issues in response to the First 30(b)(6) Notice.  AntiCancer's Opp. [D.E. 264], p. 6.  In support of this misrepresentation, AntiCancer cites to the very emails quoted above, in which CRI plainly did not designate any 30(b)(6) witness on invalidity issues, but did designate a 30(b)(6) witness on other topics, none of which is the subject of the Second Notice now at issue: the corporate organization of CRI (First Notice, topic 1), CRI's computer systems (topic 2), CRI's document storage (topic 3) and topic 8 (CRI's Initial Disclosures).  *See* AntiCancer's Opp. [D.E. 264], p. 6, and Holmberg 6/6/08

email, Ex. 1 [D.E. 264-02] to Lawton Opp. Dec, p. 1.   To the extent topic 7 (CRI's answer and counterclaims) included more than CRI's non-infringement defenses (CRI had agreed to produce a witness for Topic 7 on facts concerning infringement because CRI had not yet been granted summary judgment of non-infringement at that time), the very emails on which AntiCancer purports to rely make clear that CRI was *not* designating any non-expert witness on invalidity and that AntiCancer had agreed to await expert discovery on that issue.  Nothing has changed since then.

### D. AntiCancer Has Not Identified a Single Non-Privileged Fact That is Subject to Non-Expert Discovery

Most patent invalidity claims are issues of law that first require construction of the patent's claims, itself an issue of law.  *Linear Tech. Corp. v. ITC*, 292 Fed. Appx. 52, 56 (Fed. Cir. 2008) ("[F]irst step in any invalidity analysis is claim construction, an issue of law") (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc)); *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims") (citing *Personalized Media Communications., L.L.C. v. Int'l Trade Comm'n,* 161 F.3d 696, 705 (Fed. Cir. 1998)); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1345, 1355 (Fed. Cir. 2000) ("[T]he ultimate conclusion of obviousness is for the court to decide as a matter of law").

AntiCancer is correct that invalidity claims turn on underlying facts, such as the meaning of a prior art reference to one of ordinary skill in the art.  Although those issues of law turn on facts, AntiCancer has not identified a single fact on which it seeks discovery concerning invalidity, much less a single non-privileged fact concerning those issues that CRI can or must provide except through experts.  AntiCancer cites *Takeda Chem. Inds. v. Alphapharm*, 492 F.2d 1350, 1358-59 (Fed. Cir. 2007) in which the Court permitted a 30(b)(6) deposition of an Alphapharm employee concerning "facts pertinent to invalidity theories." AntiCancer's Opp. [D.E. 264], p. 12.  AntiCancer neglects to point out that the case did not involve whether Takeda was entitled to take a 30(b)(6) deposition of Alphapharm on invalidity.  AntiCancer also neglects to acknowledge that, unlike, CRI, Alphapharm had witnesses who had knowledge of Alphapharm's invalidity contentions, such as "Dr. Rosenberg, head of Alphapharm's intellectual property department". *Takeda Chem. Inds.*, 492 F.2d at 1358.  CRI does not have an intellectual property department and it was not involved in preparing the Joint PICs.

1    Another case cited by AntiCancer actually supports CRI's argument.  In *Medtronic, Inc. v.
2    Guidant Corp.*, No. 00-1473, 2003 U.S. Dist. LEXIS 26039 (D. Minn. Jan. 8, 2003) (cited in
3    AntiCancer's Opp. [D.E. 264] at p. 21), Medtronic claimed that its employee, not Guidant's employee,
4    was the actual inventor, and that Guidant's patent was therefore invalid under 35 U.S.C. §102(g) ("the
5    invention was made … by another inventor").  *Medtronic, Inc.*, 2003 U.S. Dist. LEXIS at *7, *9.  The
6    pertinent evidence was in Medtronic's sole possession because the alleged "other inventor" worked at
7    Medtronic.  Here, the pertinent existing evidence for CRI's invalidity contentions are the prior art and the
8    language of AntiCancer's own patents, which are matters of public knowledge, not in CRI's sole
9    possession, custody, or control.

            **1.    *Prior Art***

11   AntiCancer does not dispute that CRI "had nothing to do with developing [*sic*] this prior art"
12   or "that no employee of CRI knows anything about these 336 documents generated [*sic*][2] by the
13   company's lawyers," but insists nonetheless that "a CRI representative say so under oath."
14   AntiCancer's Opp. [D.E. 264], p. 13.  The persons actually involved in identifying that prior art,
15   CRI's litigation counsel, have already said exactly that, "under" Rule 11, in their motion papers, and
16   have repeated it now, "under oath".  *See* Holmberg Reply Dec., ¶5.

            **2.    *Anticipation (35 U.S.C. §102(a), (b), (d) or (e))***

18   The Joint PICs identify for each asserted claim of each of the suit patents where each
19   limitation of that claim is disclosed in one or more prior art references.  Although anticipation, *i.e.*,
20   whether a prior art reference discloses all of the limitations of a patent claim, is, as AntiCancer notes
21   (AntiCancer's Opp. [D.E. 264], p. 13), an issue of fact, CRI can and will establish these facts by
22   expert testimony.  *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1346 (Fed. Cir. 2009) (" … FMC met
23   that burden here.  Specifically, FMC presented expert testimony … that addressed each claim
24   element and showed how each element was disclosed in [prior art]"); *Schumer v. Lab Computer Sys.*,
25   308 F.3d 1304, 1315 (Fed. Cir. 2002); *see also Continuous Curve Lenses, Inc. v. Rynco Scientific*
26   *Corp.*, 680 F.2d 605, 607 (9th Cir. 1982) ("Expert testimony was needed to determine the reaction to

---

[2] Of course, CRI's lawyers did not "develop" or "generate" any prior art.  CRI's lawyers, along with counsel for three other defendants, *found* the prior art identified in the Joint PICs.

the alleged anticipation by a person skilled in the art."). Testimony from lay witnesses who have no knowledge of them is not required and AntiCancer has not identified a single fact relevant to anticipation for which there needs to be testimony by someone other than an expert. To the extent CRI will present non-expert testimony on anticipation it will come from AntiCancer, that is, the inventors of the suit patents, none of whose depositions has yet been taken, and possibly from third party witnesses. Once again, AntiCancer demands that if no CRI non-expert witness has knowledge of those facts, "then let a CRI representative say so under oath." But a CRI representative with knowledge of those facts, litigation counsel, has said so, under Rule 11 and now under oath.

### 3. *Obviousness (35 U.S.C. §103)*

AntiCancer is also correct that obviousness is a legal conclusion based on underlying factual determinations. AntiCancer's Opp. [D.E. 264], p. 14. But of the four factors to be considered for obviousness, three are and will be, the subject of expert testimony presented by CRI: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; and (3) the differences between the claimed invention and the prior art. No one at CRI is competent to testify on those issues, and no one at CRI has any non-privileged information responsive to those issues. Experienced patent litigation counsel for CRI and the other defendants addressed those issues in the Joint PICs, and though AntiCancer yet again demands that "a CRI representative say it under oath", it already has the details in the Joint PICs, it has counsel's statement under Rule 11, and now "under oath", that there is no "CRI representative" with such knowledge.

It is AntiCancer's burden, not CRI's, to present evidence concerning the fourth factor – "objective" evidence of **non**-obviousness (AntiCancer's Opp. [D.E. 264], p. 14). Objective evidence of non-obviousness, such as "commercial success", "long felt need", "unsuccessful attempts by others" and the like, is in the nature of an affirmative defense, to be offered by AntiCancer only after CRI has made its *prima facie* case of obviousness. *Ashland Oil v. Delta Resins & Refractories,* 776 F.2d 281, 291-92 (Fed. Cir. 1985); *Iron Grip Barbell Company, Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004); *Therasense, Inc. v. Becton, Dickinson & Co.*, 565 F. Supp. 2d 1088, 1124 (N.D. Ca. 2008). AntiCancer has yet to disclose whether it will offer such "objective evidence of non-obviousness", much less what that evidence is; no one from CRI can possibly testify to such evidence

1  before AntiCancer presents it.  Because objective evidence of non-obviousness is not part of any

2  contention CRI made or intends to make, it is also outside the scope of CRI's Second 30(b)(6) Notice,

3  which is limited to CRI's claims and contentions.  Of course, if and when AntiCancer identifies any

4  objective evidence of non-obviousness, CRI reserves the right to challenge it with new evidence.

### *4.     Non-enablement (35 U.S.C. §112)*

Whether an invention defined in a patent claim is enabled by the patent specification, that is, whether a person of ordinary skill in the art could know from looking at the patent specification how to practice the invention without undue experimentation, is another invalidity issue on which CRI will rely on expert testimony.  No one at CRI was involved in reviewing AntiCancer's patents to determine whether the claimed inventions are enabled and the factors to be considered (AntiCancer's Opp. [D.E. 264], p. 15) are often the subject of expert testimony, as they will be in this case.  The question is not, as AntiCancer would have it, whether these areas are "proper for discovery" (AntiCancer's Opp. [D.E. 264], p. 16), but whether they are ripe for discovery now, before CRI has identified the experts who will testify on its behalf and before the yet-unidentified experts have produced the required expert reports.

### *5.     Written Description*

The argument concerning CRI's claim that the suit patents do not provide a description of the claimed technology which suffices to demonstrate that AntiCancer was in possession of the claimed invention when the patent application was filed (AntiCancer's Opp. [D.E. 264], p. 16), is the same as the one concerning non-enablement.  AntiCancer argues yet again that if CRI's designated witnesses "have no evidence to give on these matters[,] … AntiCancer is entitled to have them say so under oath."  *Id.*  The persons who prepared CRI's written description defense, CRI's litigation counsel, have already stated, under Rule 11 and, now, in a declaration, that no one at CRI has evidence to give on the written description claim.  *See* Holmberg Reply Dec., ¶5.

### *6.     Indefiniteness*

A patent claim is indefinite if it fails to apprise one skilled in the art of the boundaries of the claim in light of the patent's specification.  Indefiniteness, too, is an issue of law. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).  It necessarily turns in substantial

measure on construction of the claim. *Id.*; *Divix Golf, Inc. v. Mohr*, No. 05CV1488, 2007 U.S. Dist. LEXIS 97925 at *36, *78 (S.D. Ca. Feb. 13, 2007) ("[T]he court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness") (quoting *Harrah's Casinos, Inc. v. Station Casinos, Inc.*, 321 F. Supp. 2d 1173, 1176 (D. Nev. 2003)). In this case, discovery on indefiniteness would be premature; the parties have just finished submitting their claim construction briefs to the Court and the Court has not yet rendered its claim construction. Discovery of facts relating to indefiniteness of the yet-unconstrued claims should await claim construction.

Even then, the testimony CRI presents will come from an expert, not someone at CRI who had no part in crafting CRI's indefiniteness defense. CRI's litigation counsel, who prepared the indefiniteness defense, has already stated, subject to Rule 11, and now, in a declaration, that no one at CRI can testify on this subject. *See* Holmberg Reply Dec., ¶5. AntiCancer is not "entitled to have [someone from CRI itself] say so under oath." AntiCancer's Opp. [D.E. 264], p. 17.

### III. THE COURT HAS ALREADY HELD THAT ANTICANCER'S DOCUMENT REQUESTS ARE TOO VAGUE AND TOO OVER-BROAD TO REQUIRE COMPLIANCE

The document requests in AntiCancer's Second 30(b)(6) Notice demand production of "ALL WRITINGS CONCERNING the 'Deposition Topics' … in this notice", which AntiCancer has now restricted to CRI's invalidity claims. AntiCancer made the same request in its First 30(b)(6) Notice and in its First Request for the Production of Documents. The Court held that the request, as written, was over-broad and vague and granted CRI a protective order that it need not comply with the request. (Holmberg Dec., Exh. 8, at 13-15; DE 140). Similarly, the second document request in the Second Notice demands "ALL WRITINGS …. CONCERNING each and every invalidity contention" in the Joint PICS. The Court quashed the same request when AntiCancer made it in the First 30(b)(6) Notice. *Id.* AntiCancer presents no reason why its requests are less objectionable now than they were before.

#### A. Responding to the Document Requests in the Second Notice Would Be Unduly Burdensome

AntiCancer complains that CRI has not carried its burden of showing that responding to the document requests in the Second 30(b)(6) Notice would be unduly burdensome. AntiCancer's Opp. [D.E. 264], pp.19-21. The undue burden is obvious from the nature of the request, however and, in

any event, it is demonstrated in the accompanying Reply Declaration of Teodor Holmberg. *See* Holmberg Reply Dec., ¶6.

All of the documents AntiCancer seeks relate, by express terms of the requests, to CRI's invalidity claims and contentions in this action; they were necessarily created post-Complaint. There were no invalidity claims until CRI's litigation counsel prepared them. There were no invalidity contentions until after CRI's counsel, together with counsel for three other defendants, prepared them. No one at CRI took part in preparing them, before or after the Complaint was served.

The original complaint was served in June 2007, more than 29 months ago. All documents created over that 29-month time would thus need to be reviewed to identify all of the privileged documents responsive to the requests and all of those would have to be listed on a privilege log. Just in counsel's files alone, without taking into consideration CRI's own documents, there are approximately 8,000 items to be reviewed to identify those post-Complaint documents related to invalidity, all of which are privileged or work product, and then identified, one by one, on the privilege log. *See* Holmberg Reply Dec., ¶6.

Then, CRI's own documents would need to be reviewed. Because CRI was not involved in preparing its invalidity claims and contentions, post-Complaint, any document it has relating to those claims and contentions is likely to be privileged or work product. All of its post-Complaint documents would need to be reviewed to identify those that relate to invalidity claims or contentions and they, too, would need to be logged. While AntiCancer seeks to impose this unfair and unnecessary burden on CRI and its counsel, in response to document requests the Court has already held overbroad, AntiCancer did not list a single post-Complaint document on the revised privilege log it served at the end of September.

### IV. CONCLUSION

The Court should quash AntiCancer's Second 30(b)(6) notice in its entirety.

Dated: November 9, 2009    By:    /s Martin B. Pavane
                                   Martin B. Pavane
                                   Attorneys for Defendant and Counterclaimant
                                   CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.

145226_5.doc

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Dated: November 9, 2009     By:     /s Martin B. Pavane
                                    Martin B. Pavane
                                    Attorney for Defendant and Counterclaimant
                                    CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.