**LAWTON LAW FIRM**
EMERALD PLAZA
402 WEST BROADWAY
SUITE 1860
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 595-1370
TELEFACSIMILE (619) 595-1520
www.lawtonlaw.com

DAN LAWTON
DIRECT DIAL (619) 595-1406
INTERNET E-MAIL
dlawton@lawtonlaw.com

JOSEPH C. KRACHT
DIRECT DIAL (619) 595-1405
INTERNET E-MAIL
jkracht@lawtonlaw.com

MATT VALENTI
DIRECT DIAL (619) 595-1778
DIRECT FAX (619) 595-7964
INTERNET E-MAIL
mvalenti@lawtonlaw.com

LISA MARIE LAWTON
DIRECT DIAL (619) 595-1403
DIRECT FAX (619) 595-7956
INTERNET E-MAIL
lisa@lawtonlaw.com

April 6, 2010

**VIA ELECTRONIC MAIL**

Hon. Ruben B. Brooks
U.S. Magistrate Judge
U.S. District Court for the Southern District of California
940 Front Street
San Diego, CA 92101

Re: *AntiCancer, Inc. v. Cambridge Research & Instrumentation, Inc., et al.*
U.S. District Court (Southern District) Case No. 07-CV-00097-JLS (RBB)

Your Honor:

This case (unlike *CRI II*)[1] concerns only validity of three AntiCancer imaging patents. The issues for trial relate solely to CRI's counterclaims of invalidity. Those counterclaims rest on anticipation, obviousness, indefiniteness, lack of enablement, and inadequate written description. There are no other issues.

So far, AntiCancer has produced tens of thousands of pages of documents (over 25 boxes); answered fifty (50) interrogatories; produced for deposition in San Diego all four (4) of its inventors (despite the fact only one of them still works for AntiCancer and two of them are foreign residents who had to travel from Asia for the depositions) and two lawyers who prosecuted the patents-in-suit; and made arrangements (twice) to produce a 30(b)(6) representative (before CRI canceled the depositions, twice, on short notice).

In the last three weeks, CRI has propounded over 200 discovery requests spanning 140 pages. Many (if not all) of these discovery requests are unrelated to any counterclaim or defense. Needless expense and wasted time will result without a protective order. This letter addresses only four (4) of these discovery requests.

---

[1] Case No. 09 CV 000351 JLS (RBB).

The parties await an ENE in this case, in which CRI answered on February 9, 2010 (56 days ago).

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 6, 2010
Page 2 of 5

    1.    <u>Request to permit entry onto property ("RPE")</u>.

On March 18, CRI served a "request to permit entry onto AntiCancer's property to inspect, measure, survey, photograph, test, and/or sample designated objects and operations."

The RPE seeks inspection of multiple pieces of equipment (microscopes, filters, cameras, etc.) used to perform experiments done as long ago as 1997 (and no later than 2001). It also seeks **live replication** of those experiments (via inspection of "operations described in" the patents-in-suit). It also seeks inspection of "the equipment brought into Court during the Claim Construction Hearing on December 2, 2009, and the equipment used and operation(s) performed . . .on December 2, 2009." It also seeks inspection of all of the inventors' workstations at AntiCancer.

CRI coupled its RPE with a letter announcing CRI would be "bringing a videographer to memorialize the proceedings" and would "need someone on hand during our visit to explain the operations that are being performed and to answer any questions . . ."

AntiCancer's investigation has revealed it still has only one (1) of the pieces of equipment listed in CRI's RPE. It has told CRI so and offered to make that equipment (a Leica microscope) available at the offices of AntiCancer's counsel for inspection. CRI has refused to relent, insisting on a videotaped tour of AntiCancer's facilities and "free" deposition of "someone" during the tour.

None of this data possibly could be relevant to any claim or defense. The equipment used to perform the experiments described in the patents is not probative of prior art (anticipation), obviousness, indefiniteness, a lack of enablement, or inadequate written description. Rule 34 nowhere authorizes replication of an experiment by an inventor (or by the "someone" identified in CRI's counsel's cover letter of Match 18). Nor does it authorize videography (as CRI's counsel admits). Nor does it allow a "free" deposition of "someone" who can "answer any questions." How the workstations of scientists who don't work at AntiCancer anymore (or who do work there, but did the experiments described in the patents a decade or more ago) could yield any data pertinent to validity is a mystery – one which CRI has not unlocked.

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 6, 2010
Page 3 of 5

The RPE threatens burden and expense outweighing any benefit. CRI has made clear it intends to have a team of people enter AntiCancer's facilities, roam about, interrogate "someone," demand experiments done years ago be replicated, look at workstations, and videotape the entire exercise. AntiCancer is a small company with a small facility. The intrusion CRI threatens is bound to cause disruption, consternation, an interruption in business, and expense. No basis exists to foist harms on AntiCancer.

2.  <u>Eighty (80) requests for admissions</u>.

On March 30, CRI served 80 requests for admissions.

By them, CRI seeks to force AntiCancer to review thousands of pages of deposition transcripts, papers, and videotapes from prior lawsuits (which AntiCancer produced to CRI months ago) and admit that they are "true and accurate[.]" As to deposition transcripts, CRI seeks admissions that the third party witnesses who testified did not later correct or amend their answers.

CRI's eighty RFAs seek data not relevant to any issue for trial. **None** of the deposition transcripts described were taken in this case. Each originates in a prior case in which invalidity, if even at issue, was never truly litigated. The deposition transcripts themselves (and the witness files which contain them) show on their faces whether a given witness "later corrected or amended" his or her transcript. *Id.* Forcing AntiCancer's lawyers to go through and confirm the obvious would serve the purposes only of consuming time and driving up expense – things as to which, unfortunately, a strong inference exists here.

CRI no doubt will argue AntiCancer did not oppose CRI's recent application to eliminate any limit on RFAs (subject to the important caveat that any party could apply to the Court for a limitation). This argument will fail. The Court's order allows any party to seek relief from excessive RFAs (as on this motion). Before applying for the order, CRI's counsel gave no hint that her client's true purpose was to inflict 80 RFAs on AntiCancer, thus forcing its counsel to spend many hours of time on a pointless, make-work exercise. Had AntiCancer known that was CRI's true purpose it would have opposed the application.

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 6, 2010
Page 4 of 5

3. <u>UCSD subpoena.</u>

On March 12, CRI served a subpoena on UCSD. By this subpoena, CRI seeks data concerning any agreements between AntiCancer's president, Robert M. Hoffman, and UCSD concerning patents (whether the patents-in-suit or otherwise); "joint projects" involving inventors Baranov, Chishima, Tan, and Yang; "conflict of interest disclosures" by Dr. Hoffman and/or these inventors to UCSD; "statement[s] of economic interests" submitted by Dr. Hoffman and/or these inventors to UCSD; and "training, education, or employment" provided by UCSD to those scientists. Ex. 2 at pp. 6-11.

None of this data possibly relates to invalidity of any patent.

CRI's subpoena aims squarely at issues of patent ownership, *i.e.*, whether UCSD might be able to claim ownership in an AntiCancer patent. Such issues have nothing to do with validity. If CRI truly seeks to challenge AntiCancer's ownership of its patents, it has an adequate vehicle for the challenge – an action for declaratory relief of patent ownership (in which it will have the right of discovery of all relevant data). In the meantime this action does not provide that vehicle. (Ironically, CRI resisted discovery of similar data when AntiCancer sought it from Dr. Levenson, insisting that the data had nothing to do with invalidity.)

Though CRI would deny it, CRI's subpoena smacks of an intent to create annoyance and embarrassment as between Dr. Hoffman and UCSD (where he is a tenured professor) by pitting one of them against the other in a civil discovery dispute. A protective order is the precise means of dealing with such potential annoyance and embarrassment. Rule 26(c)(1).

4. <u>Interrogatory "no. 13 [sic]."</u>

On March 19, CRI served interrogatory "no. 13 [sic]" (actually, no. 51). AntiCancer duly objected, noting CRI was over the limit of 35.

Rule 33(a)(1) limits interrogatories to 25 unless "otherwise stipulated or ordered[.]" The parties' discovery plan limits interrogatories to 35. D.E. 45. The Rule counts "all discrete subparts" as interrogatories.

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 6, 2010
Page 5 of 5

      Nearly all of CRI's interrogatories have contained subparts.  When one counts up the subparts of interrogatories 1-"13," they come to 51.  *See Bender v. GSA*, 2006 U.S. Dist. LEXIS 55806  * 4 (S.D.N.Y. August 8, 2006)("[d]iscrete subparts . . . count" toward total of interrogatories for purposes of numeric limit).

      Interrogatory "no. 13" is really the fifty-first interrogatory served by CRI – putting CRI over the limit, and deliberately so.  CRI's own consciousness of this is manifest in its attempt (later abandoned) to move the Court to exceed the limit of 35.  CRI cannot claim its excess is inadvertent or unintentional.  This makes CRI's violation of Rule 33 and the discovery plan the more offensive.

      Interrogatory "no. 13" also is redundant of other discovery provided. AntiCancer's inventors have testified at length about the persons who contributed to "conception of the invention[s]" (the subject of interrogatory "no.13").  In its answers to prior interrogatories, AntiCancer already provided data concerning the "conception of the invention[s]" claimed in the patents.  Thus interrogatory "no. 13" is cumulative of data already provided – independently justifying a protective order.  *See* Rule 26(b)(2)(C).

      Thank you for your kind attention to this matter.

                                  Respectfully submitted,

                                  /s/Dan Lawton
                                  Dan Lawton
                                  Attorneys for Plaintiff and Counterdefendant
                                  AntiCancer, Inc.

DL:ek

cc:    Martin B. Pavane, Esq.(via electronic mail)
        Allison H. Goddard, Esq. (via electronic mail)
        Matt Valenti, Esq. (via electronic mail)
        Joseph C. Kracht, Esq. (via electronic mail)