

**JACZKO GODDARD LLP**
ATTORNEYS AT LAW



FILED
APR 9 2010
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

4401 Eastgate Mall
San Diego, CA 92121
858.404.9205 phone
858.225.3500 fax

ALLISON H. GODDARD
858.404.9207 direct
agoddard@jaczkogoddard.com

April 9, 2010

VIA ELECTRONIC MAIL

The Honorable Ruben B. Brooks
United States District Court
for the Southern District of California
940 Front Street
San Diego, CA 92101
efile_brooks@casd.uscourts.gov

Re: *Anticancer, Inc. v. Cambridge Research & Instrumentation*
    **07cv0097 JLS (RBB)**

Your Honor:

We are counsel for defendant and counterclaimant Cambridge Research & Instrumentation, Inc. ("CRI"). We write in response to the letter brief submitted by plaintiff AntiCancer, Inc. ("AntiCancer") on April 6, 2010, requesting that the Court issue a protective order prohibiting CRI from obtaining discovery.

As an initial matter, we would like to correct some misconceptions in AntiCancer's letter. AntiCancer claims that it has produced all four inventors of the patents-in-suit for deposition by CRI. As detailed in the letter brief submitted to the Court on April 6, 2010, however, inventor Takashi Chishima has not yet appeared at a deposition, and AntiCancer is trying to unfairly restrict the length of Dr. Chishima's deposition.

In addition, AntiCancer prefaces its request for relief by contending it has provided a wealth of discovery to CRI. CRI disagrees. AntiCancer has made it incredibly difficult and expensive for CRI to obtain any discovery in this action. By way of example, with respect to the inventor depositions, AntiCancer initially took the position that it had no obligation to produce its inventors, even though it has a written agreement obligating the inventors to assist AntiCancer in litigation regarding the patents-in-suit. This forced CRI to raise the issue with the Court. On February 19, 2010, AntiCancer stated to the Court that inventor Meng Yang had no foreseeable plans to travel from Beijing, China (where he works for a wholly owned subsidiary of AntiCancer) to the United States. That was not true. AntiCancer subsequently relented and offered Dr. Yang for a deposition in San Diego on March 6, 2010, a Saturday. When CRI deposed Dr. Yang on March 6, he testified under oath that, in fact, he had been in the United States since February 19, 2010. Obtaining discovery from AntiCancer has been anything but easy.

Now AntiCancer comes to this Court seeking to prohibit CRI from taking basic and necessary discovery regarding its invalidity counterclaims. As the party resisting discovery, AntiCancer has the burden to show good cause exists for the issuance of a protective order. Fed. R. Civ. P. 26(c)(1). This is a heavy burden. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). To meet it, AntiCancer must demonstrate a particular and specific need for such an order. *Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (internal citations omitted). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice. *Id.* AntiCancer makes no attempt to demonstrate any particular or specific need for a protective order here. Its request should be denied.

### Request for Entry

CRI served a Request for Entry pursuant to Fed. R. Civ. P. 34 so that it could inspect the actual or similar equipment used, and actual or similar operations performed, by AntiCancer to observe the mice in the experiments described in the patents-in-suit, as well as, among other things, the imaging equipment used to make the videos in AntiCancer's presentation to Judge Sammartino at the claim construction hearing on December 2, 2009.

In response, AntiCancer claims that it only has one piece of the requested equipment (thus even the equipment used to make the presentation at the claim construction hearing in Court a few months ago no longer exists). Other than identifying this one piece of equipment and offering it for inspection at its counsel's office, AntiCancer has resolutely refused to meet and confer regarding CRI's Request for Entry. AntiCancer even refuses to confirm in writing that only one piece of equipment is available for inspection, refuses to explain how or why the other equipment is missing, and refuses to discuss why the requested operations cannot be performed using similar (rather than identical) equipment.

The equipment used and operations performed by a patentee are relevant to invalidity claims on the grounds of anticipation under 35 U.S.C. §102, obviousness under 35 U.S.C. §103, and enablement, written description, and best mode under 35 U.S.C. §112. *See, e.g., In re Newman*, 702 F.2d 971 (Fed. Cir. 1986) (the U.S. Patent & Trademark Office's Rule 34 request to inspect patent applicant's equipment in order to determine whether the patent claims were invalid "under 35 U.S.C. §§101, 102, 103, and 112" upheld). Here, by way of example, AntiCancer has indicated that a prior art reference asserted by CRI does not anticipate AntiCancer's suit patents because the imaging performed in the prior art reference was substantively different than the imaging performed in AntiCancer's suit patents -- despite the fact the same type of camera was used in both AntiCancer's patents and the prior art reference. CRI believes the imaging was substantively the same in the prior art and the suit patents, but wants to inspect the equipment used and operations performed to explore this. As another example, CRI believes that the operations performed and equipment used in the patent specification as of the priority date asserted by AntiCancer do not enable the full scope of the patent claims as they were later amended during the prosecution history. CRI wants to inspect the equipment used and

operations performed in the patent specification as of the priority date asserted by AntiCancer to explore this. CRI has attempted to obtain this information through less intrusive means than inspection, by deposing the inventors of AntiCancer's suit patents, but has been unable to obtain sufficient information in these depositions due to spotty and inconsistent memories.

AntiCancer has refused to discuss the specifics of any burden with CRI, and in its letter-brief to the Court, provides absolutely no showing of burden, other than vague assertions that it is a small company and an inspection would be intrusive. AntiCancer clearly has not met its heavy burden to justify a protective order.

### Requests for Admission

Requests for admission are an appropriate discovery vehicle for confirming the authenticity of documents. Fed. R. Civ. P. 36(a)(1)(B). AntiCancer produced several deposition transcripts from prior lawsuits that related to the patents-in-suit and the technology described in these patents. CRI asked AntiCancer to stipulate that these transcripts were authentic. AntiCancer refused to do so. CRI then served Requests for Admission to confirm the authenticity of the transcripts.[1]

AntiCancer's claim that responding to these Requests for Admission would be an undue burden is beyond the pale. At each of these depositions, AntiCancer was represented by either Dan Lawton or Joe Kracht of the Lawton Law Firm, AntiCancer's current counsel. It certainly would be much more burdensome for CRI, the Court, or a jury at trial to have to address authenticity for each transcript on an individual basis. CRI is simply trying to streamline issues.

Again, AntiCancer has not made any specific showing as to why it is entitled to a protective order regarding these Requests for Admission. AntiCancer's request should be denied.

### UCSD Subpoena

CRI served a subpoena on the University of California, San Diego ("UCSD") seeking documents regarding inventorship agreements, invention disclosures, and conflict of interest disclosures between UCSD and Dr. Robert Hoffman, AntiCancer's President and the named inventors of the patents-in-suit. Dr. Hoffman is on faculty at the UCSD Moores Cancer Center, and Dr. Yang, a named inventor, testified that he started working with AntiCancer through a joint project between AntiCancer and UCSD.

UCSD has public policies requiring employees to disclose and assign inventions to UCSD. *See, e.g.,* http://invent.ucsd.edu/faculty/policies/uc-patent-policy.shtml. UCSD also has conflict of interest policies requiring employees to disclose their relationships and affiliations with outside

---

[1] Although AntiCancer fails to mention it, CRI withdrew sixteen of the Requests for Admission on April 2, 2010, after meeting and conferring with AntiCancer. There are only 64 Requests for Admission at issue now.

entities. *See, e.g.,* http://coi.ucsd.edu. The documents sought in the subpoena relate generally to 1) agreements between UCSD and Dr. Hoffman or any of the named inventors regarding assignment of inventions of patents; 2) any invention disclosures made by Dr. Hoffman or any of the named inventors; and 3) conflict of interest related disclosures made by Dr. Hoffman or any of the named inventors. If any such documents exist, they are relevant because they could be contemporaneous evidence of the conception and reduction to practice of the inventions at issue.

Moreover, the named inventors testified during their depositions that Dr. Hoffman contributed to the conception of the inventions of the patents-in-suit, yet Dr. Hoffman is not listed as an inventor on the patents. Any contractual right UCSD may have to these inventions, if Dr. Hoffman was in fact an inventor, would be probative of inequitable conduct on Dr. Hoffman and AntiCancer's part in failing to disclose Dr. Hoffman's inventorship role to the Patent and Trademark Office, presumably to avoid those same contractual obligations to transfer rights in any invention to UCSD.

To the extent that any information requested in the subpoena could be considered Dr. Hoffman's or any individual's private information, safeguards already exist in the Stipulated Protective Order the Court has entered in this action.

Finally, although the response to the subpoena was due on March 31, 2010, UCSD did not produce documents because of AntiCancer's objections. UCSD has not served any written response to the subpoena, nor has it made any claims that it would be unduly burdensome for UCSD to comply with the subpoena.

Again, AntiCancer has made no particularized showing of a need for a protective order. AntiCancer's request should be denied.

### Interrogatory No. 13

AntiCancer also contends it is entitled to a protective order excusing it from responding to CRI's Interrogatory No. 13 because, according to AntiCancer, CRI's interrogatories contain subparts that exceed the 35 interrogatory limit agreed upon by the parties. Interrogatories that contain subparts count as one interrogatory "if they are logically and factually subsumed within and necessarily related to" the primary question. *Kendall v. GES Exposition Svcs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997).

As a preliminary matter, AntiCancer has waived any objection that Interrogatory Nos. 1-12 contained an excessive number of interrogatories. *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 457 (Fed. Cl. 2007) ("if the responding party wishes to object to the number of interrogatories as excessive, the responding party must object to the court before responding to the interrogatories; otherwise, the objection is waived"). Similarly, in *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104-05 (W.D.N.C. 1993), the court reasoned:

The Honorable Ruben B. Brooks<br>
April 9, 2010<br>
Page Five

> The responding party must object (to the Court) to the number of interrogatories before responding in order to rely on this rule. Otherwise the responding party could selectively respond to the interrogatories and thereby strategically omit the most prejudicial information. ... [I]f the Court were to allow Herdlein – the responding party – to answer certain interrogatories and then object that the total number of interrogatories exceeds the limit of twenty, the Court essentially would be allowing Herdlein to determine for itself what information to reveal.

147 F.R.D. at 104-05. Like the responding party in *Heidlein Techs.*, AntiCancer did not object to the Court before answering Interrogatory Nos. 1-12. AntiCancer cannot now "determine for itself what information to reveal" by refusing to respond to other interrogatories on the grounds that the total number of interrogatories exceeds Rule 33's limit.

Moreover, AntiCancer has made no showing that CRI's interrogatories indeed exceed Rule 33(a)'s limit. AntiCancer has the burden of showing that each of CRI's interrogatories' "subparts" are discrete and should be counted separately. *See Beckner v. El Cajon Police Dep't*, 2008 WL 2033708, at *2 (S.D. Cal. May 9, 2008) (Major, M.J.) ("[T]he party opposing discovery has the burden of showing that discovery should be prohibited[.]") AntiCancer makes no attempt to do so, bluntly contending that CRI has asked 51 interrogatories rather than 13. That is not sufficient to meet its burden.

AntiCancer's request for a protective order should be denied.

Sincerely,

JACZKO GODDARD LLP

*/s/ Allison Goddard*

Allison H. Goddard

cc:    Counsel for AntiCancer, Inc.