# LAWTON LAW FIRM

EMERALD PLAZA
402 WEST BROADWAY
SUITE 1860
SAN DIEGO, CALIFORNIA 92101
TELEPHONE: (619) 595-1370
TELEFACSIMILE: (619) 595-1520
www.lawtonlaw.com

DAN LAWTON
CERTIFIED LEGAL SPECIALIST, APPELLATE LAW
STATE BAR OF CALIFORNIA
DIRECT DIAL: (619) 595-1406
INTERNET E-MAIL:
dlawton@lawtonlaw.com

JOSEPH C. KRACHT
DIRECT DIAL: (619) 595-1318
DIRECT FAX: (619) 696-9744
INTERNET E-MAIL:
jkracht@lawtonlaw.com

MATT VALENTI
DIRECT DIAL: (619) 595-1778
DIRECT FAX: (619) 595-7964
INTERNET E-MAIL:
mvalenti@lawtonlaw.com

LISA MARIE LAWTON
DIRECT DIAL: (619) 595-1403
DIRECT FAX: (619) 595-7956
INTERNET E-MAIL:
lisa@lawtonlaw.com

April 9, 2010


FILED
APR 9 2010
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

**VIA ELECTRONIC MAIL**

Hon. Ruben B. Brooks
U.S. Magistrate Judge
U.S. District Court for the Southern District of California
940 Front Street
San Diego, CA 92101

Re: *AntiCancer, Inc. v. Cambridge Research & Instrumentation, Inc., et al.*
U.S. District Court (Southern District) Case No. 07-CV-00097-JLS (RBB)

Your Honor:

AntiCancer replies herein to the letter brief filed by CRI on April 6.

1. **Chishima deposition**.

CRI was not willing to undergo the burden and expense of letters rogatory and travel to Japan to depose one of the inventors of two of the patents-in-suit, Dr. Takashi Chishima. Instead CRI asked AntiCancer to arrange for his deposition in San Diego. Both before and after the February 22 teleconference with your Honor, I voluntarily agreed to do so. At the February 22 teleconference there was no mention of a two-day deposition. AntiCancer neither employs nor controls Dr. Chishima. I do not represent Dr. Chishima.

Dr. Chishima's flights were booked and a day chosen for his deposition (May 8, a Saturday). Afterward, CRI then insisted Dr. Chishima testify for two (2) days of deposition.

AntiCancer opposes this.

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 9, 2010
Page 2

Dr. Chishima is a busy cancer surgeon who practices in Yokohama, Japan. No law or Rule obliges Dr. Chishima to appear for even a single day of deposition in San Diego. Dr. Chishima is a domiciliary of Japan, not a party to the case, and not under AntiCancer's control. I voluntarily promised to make him available in San Diego at CRI's request so as to spare CRI and its lawyers the burden of undergoing the arduous, lengthy, and expensive process of deposing Dr. Chishima at the U.S. Embassy in Japan. I have kept that promise. Dr. Chishima will be here in San Diego for his deposition on May 8. Dr. Chishima has to return to Japan the following day (May 9) to fulfill his professional obligations there.

CRI's proposed schedule for two days of deposition (May 6 and 8, or some other combination of days between May 4 and 9) is impractical, inhumane and ignores the reality of Dr. Chishima's travel to San Diego. Dr. Chishima's inbound flight will arrive in San Diego after he has crossed the international date line and spent nearly 18 hours in transit (from Yokohama to Tokyo to Los Angeles to San Diego). Dr. Chishima will need at least two (2) days to recover physically from this trip in order to be rested and ready for what promises to be an arduous deposition. Expecting him to be prepared to testify immediately, or even within 48 hours, after he steps off the plane in San Diego is neither humane nor fair.[1]

May 4, 5, 6, 7, and 9 are not possible. May 8 is. That is the day long since agreed to.

AntiCancer acknowledges the presence of an interpreter may prolong the day's deposition. Weeks ago, however, in recognition of this, AntiCancer agreed to start early on May 8 (at an hour of CRI's choosing), and is willing to go late on that day, Dr. Chishima's condition permitting. This is a reasonable accommodation exceeding what the Rules would require. In the meantime, CRI offers no case for the proposition that an interpreter is good cause for doing away with the presumptive seven-hour limit imposed by Rule 30(d)(1).

---

[1] AntiCancer disputes CRI's version of a supposed prior agreement which would have put Dr. Chishima in a deposition less than 24 hours after arriving in San Diego.

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 9, 2010
Page 3

AntiCancer acknowledges the single day of deposition may end without CRI's counsel having exhausted all of his questions. But such are depositions under Rule 30(d)(1). Depositions are limited to a single day of seven hours. The Rule makes no exception for depositions requiring interpreters. CRI has managed to conclude all the multiple other depositions it has taken in this case (including depositions of three (3) ESL inventors) in a single day. It can do the same with Dr. Chishima.

CRI offers to "depose Dr. Hoffman on May 6, then begin Dr. Chishima's deposition on May 7, which will allow an additional day of recovery time." This is impossible. CRI has previously noticed, then canceled (at the last minute) two (2) prior depositions of Dr. Hoffman. Each cancellation caused disruption and expense (none of which CRI has ever offered to reimburse) to AntiCancer. Dr. Hoffman has committed to the May 7 date for his deposition. He cannot change the date a third time. Nor should he be expected to.

Lastly, the order CRI wants cannot have efficacy. AntiCancer does not control Dr. Chishima. Producing him for two days is not something AntiCancer has the power to do even under compulsion of an order. Nor would it be fair to subject AntiCancer (even theoretically) to the pain of contempt were it to prove unable to produce Dr. Chishima for the extra day.

2.  Interrogatories nos. "8-10 [sic]."

CRI complains that AntiCancer's responses to CRI's interrogatories nos. "8-10 [sic]" (actually, 40-46) are inadequate. This is not true.

First, interrogatories nos. "8-10" exceed the limit of 35 provided by Rule and the parties' discovery plan. AntiCancer objected in writing to interrogatories nos. "8-10" on this basis, duly preserving the objection. Despite ample chance, CRI has never moved for leave to exceed the limit, either before or after serving interrogatories nos. "8-10." On this basis alone the Court should deny CRI's request for relief. AntiCancer would have been within its rights to object and provide no responses. As it is AntiCancer has responded.

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 9, 2010
Page 4

Second, AntiCancer's responses are adequate as written. AntiCancer has identified the level of ordinary skill in the art is "high (Ph.D. level)." Obviously "high" in the context of the inventions implies an ability to practice the methods described in the patents, something that is implicit by looking at the patents themselves. No further information is needed.

CRI complains that AntiCancer's responses inadequately identify certain documents. This is not correct. CRI knows (by document number) exactly what the "prosecution histories" are; exactly which articles the patents-in-suit cite; exactly what documents were produced at or in connection with the Murashige and Tan depositions; exactly what the "images from Dr. Baranov's files" are; and exactly what the transcripts of depositions of witnesses Baranov, Murashige, and Yang say. Forcing AntiCancer to identify them by Bates number is make-work, not true discovery. Rule 33(d)(1) expressly allows AntiCancer to answer by references in the form it has used.

3. <u>"Attorneys-eyes-only" marking of Yang deposition transcript</u>.

CRI complaint that AntiCancer over-designated the transcript of deposition of one of its inventors, Meng Yang, as "CONFIDENTIAL/ATTORNEYS' EYES ONLY" pursuant to the parties' stipulated protective order.

AntiCancer would withdraw the designation from most of the transcript, with the exception of passages which CRI could use to AntiCancer's disadvantage in the marketplace. These passages concern meetings between AntiCancer and one of its potential customers (whose identity is secret). AntiCancer does not wish to make it easier for CRI to infringe by giving CRI data which it could use to approach AntiCancer's potential customers and discourage them from purchasing licenses from AntiCancer.

CRI complains of a need to discuss "critical information with CRI's executives." Nowhere does CRI explain what "critical information" this is, or how its executives could need it in a case whose issues are limited to the issues of anticipation via prior art, obviousness, indefiniteness, lack of enablement, or inadequate written description. CRI's executives already have admitted they know nothing about any of these theories, as was shown at the deposition of CRI's 30(b)(6) witness, Peter Miller (who confessed to ignorance of all of them).

LAWTON LAW FIRM

Hon. Ruben B. Brooks
April 9, 2010
Page 5

In this setting, AntiCancer is within its rights under the parties' stipulated protective order ("SPO"). The SPO (DE 93-2) defines as "Confidential Information" any data unavailable to the general public or industry at large, to which access is restricted, and as to which efforts have been made to prevent its broad dissemination. It includes "information about existing and potential customers[,]" and testimony about the same. DE 93-2 at 2:1-13. The data AntiCancer protected via its designation is precisely this type. The SPO gives AntiCancer (and AntiCancer alone) the power to decide this issue. *Id.* at 3:21-27. It requires any dispute about designations be resolved "**by noticed motion.**" *Id.* at 4:8-11. (CRI has not filed a noticed motion.)

AntiCancer will withdraw the designation as to those parts of the Yang transcript that do not relate to its potential customer.

Thank you for your kind attention to this matter.

Respectfully submitted,

/s/Dan Lawton
Attorneys for Plaintiff and Counterdefendant
AntiCancer, Inc.

DL:lee

cc:   Martin B. Pavane, Esq.(via electronic mail)
      Allison H. Goddard, Esq. (via electronic mail)
      Matt Valenti, Esq. (via electronic mail)
      Joseph C. Kracht, Esq.