UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., | Civil No. 07cv0097 JLS(RBB) |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART EX PARTE REQUESTS FOR FURTHER DISCOVERY AND A PROTECTIVE ORDER |
| CAMBRIDGE RESEARCH & INSTRUMENTATION, INC.; MERCK & CO., INC.; NOVARTIS CORP.; GENENTECH, INC.; AMGEN INC.; JOHNSON & JOHNSON; CENTOCOR INC.; PROCTER & GAMBLE; GLAXOSMITHKLINE CAPITAL, INC.; SANOFI-AVENTIS; F. HOFFMAN-LAROUCHE, LTD; GENPHARM INC.; BAYER CORP.; SCHERING CORP.; ASTRAZENECA CORP.; BERLEX LABORATORIES INC.; UNILEVER U.S., INC.; DOES 17-50, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

Plaintiff and Counterclaim Defendant, AntiCancer, Inc., and Defendant and Counterclaimant, Cambridge Research & Instrumentation, Inc. ("CRI"), contacted the Court for assistance in resolving multiple discovery disputes pending between the

1  parties.  In order to efficiently and expeditiously resolve the
2  issues, each moving party was directed to submit a letter brief
3  outlining its position by April 6, 2010, and the opposing party was
4  permitted to file an opposition by April 9, 2010 [doc. no. 291].
5  AntiCancer asks for the Court's assistance to resolve four issues,
6  and CRI raises three issues.  The parties' respective letter briefs
7  will be filed concurrently with this Order.

AntiCancer's Ex Parte Request

9      1.  The Request to Permit Entry
10     Plaintiff seeks to preclude CRI from entering "AntiCancer's
11 property to inspect, measure, survey, photograph, test and/or
12 sample designated objects and operations."  (Letter Brief from Dan
13 Lawton to Hon. Ruben B. Brooks at 2 (Apr. 6, 2010).)  Defendant
14 requests that it be permitted to (1) inspect equipment used to
15 perform experiments between 1997 and 2001, (2) replicate the
16 experiments, (3) inspect equipment brought into court for the claim
17 construction hearing on December 2, 2009; (4) inspect the
18 inventors' current workstations, and (5) record the proceedings and
19 have an AntiCancer representative available to answer questions.
20 (Id.)
21     AntiCancer states that it has "only one (1) of the pieces of
22 equipment listed in CRI's [request to enter the property]."  (Id.)
23 Plaintiff has offered to make the item, a Leica microscope,
24 available for inspection at the offices of its counsel.  (Id.)
25     Defendant CRI states that it requests to inspect "the actual
26 or similar equipment used, and actual or similar operations
27 performed, by AntiCancer to observe the mice in the experiments
28 described in the patents-in-suit, as well as . . . imaging

equipment used to make the videos in AntiCancer's presentation to Judge Sammartino at the claim construction hearing on December 2, 2009." (Letter Brief from Allison Goddard to Hon. Ruben B. Brooks at 2 (Apr. 9, 2010).) CRI cites In re Newman, 782 F.2d 971 (Fed. Cir. 1986), as authority to support its assertion that "[t]he equipment used and operations performed by a patentee are relevant to invalidity claims . . . ." (Letter Brief from Allison Goddard at 2 (Apr. 9, 2010).) Newman provides limited support for CRI's position. That case was a civil action to obtain a patent, brought pursuant to 35 U.S.C. § 145, and the Commissioner of Patents was instructed to serve a Rule 34 request that the patent applicant's invention be produced to the Bureau of Standards for testing. In re Newman, 782 F.2d at 972-73. CRI's request far exceeds the scope of the ruling in In re Newman.

CRI contends that the "operations performed and equipment used in the patent specification as of the priority date asserted by AntiCancer do not enable the full scope of the patent claims as they were later amended during the prosecution history." (Letter Brief from Goddard at 2 (Apr. 9, 2010).) The Defendant "wants to inspect the equipment used and operations performed in the patent specification as of the priority date asserted by AntiCancer . . . ." (Id. at 2-3.)

The "equipment used in the patent specifications" and, to the extent the items are in the possession, custody, or control of AntiCancer, the "equipment used to make the videos in AntiCancer's presentation to Judge Sammartino at the claim construction hearing on December 2, 2009," shall be made available for inspection by Defendant and its experts at the offices of AntiCancer's counsel.

The inspection may be recorded by a videographer.  Plaintiff's request for a protective order precluding any further production or actions in response to the Defendant's Rule 34 request is granted.

2.   Requests for Admission

Plaintiff complains that on March 30, 2010, it was served with eighty requests for admissions.  (Letter Brief from Lawton at 3 (Apr. 6, 2010).)  The requests ask AntiCancer to admit that deposition transcripts, papers and videotapes from prior lawsuits are "true and accurate."  (Id.)  They also ask Plaintiff to admit that third-party witnesses did not later correct or amend their deposition answers.  (Id.)  AntiCancer complains that the requests are burdensome, and the items are not relevant and do not involve instances where invalidity was "truly litigated."  (Id.)

CRI responds that it withdrew sixteen requests on April 2, so only sixty-four remain in dispute.  (Letter Brief from Goddard at 3 n.1 (Apr. 9, 2010).)  Defendant maintains that it served the requests because AntiCancer refused to stipulate that "deposition transcripts from prior lawsuits that related to the patents in suit and the technology described in these patents [were authentic]."  (Id. at 3.)

Plaintiff has not made a compelling case that the requests relate to irrelevant subject matter.  Nevertheless, it is unduly burdensome to require Plaintiff's counsel to review every page of deposition testimony in other cases to ensure that changes were not made.  Plaintiff may respond to that type of request for admission by admitting or denying that the deponent furnished (or did not furnish) a list of corrections to the deponent's testimony, and the transcript of the testimony as corrected or uncorrected is a

genuine copy of deposition transcript. That form of response is sufficient. AntiCancer should fully respond to all other requests for admission.

### 3. UCSD Subpoena

On March 12, 2010, Defendant served a subpoena on UCSD seeking "data concerning any agreements between AntiCancer's president, Robert M. Hoffman, and UCSD concerning patents (whether patents-in-suit or otherwise); 'joint projects' involving inventors Baranov, Chishima, Tan, and Yang; 'conflict of interest disclosures' by Dr. Hoffman and/or these inventors to UCSD; 'statement[s] of economic interests' submitted by Dr. Hoffman and/or these inventors to UCSD; and 'training, education, or employment' provided by UCSD to those scientists." (Letter Brief from Lawton at 4 (Apr. 6, 2010).) Plaintiff concedes that the request is directed to "issues of patent ownership." (Id.) Yet, AntiCancer suggests that patent ownership is not an issue in this case. (Id.)

The Defendant responds that "[i]f any such documents exist, they are relevant because they could be contemporaneous evidence of the conception and reduction to practice of the inventions at issue." (Letter Brief from Goddard at 4 (Apr. 9, 2010).) CRI continues, "Moreover, the named inventors testified during their depositions that Dr. Hoffman contributed to the conception of the inventions of the patents-in-suit, yet Dr. Hoffman is not listed as an inventor on the patents." (Id.)

Plaintiff's request for a protective order is denied in part. To the extent the subpoena to UCSD seeks documents relating to the patents-in-suit and Dr. Hoffman, or the patents-in-suit and any of the named inventors, a protective order is denied and responsive

documents should be produced. In all other respects, AntiCancer's request for a protective order is granted.

    4. Interrogatory Thirteen.

Plaintiff complains that interrogatory thirteen is actually interrogatory fifty-one and exceeds the limit of thirty-five interrogatories. (Letter Brief from Lawton at 4 (Apr. 6, 2010).) Defendant maintains that AntiCancer waived this objection and has not established that CRI's interrogatories exceed the thirty-five interrogatory limit. (Letter Brief from Goddard at 5 (Apr. 9, 2010).) CRI is correct.

AntiCancer states that "[n]early all of CRI's interrogatories have contained subparts." (Letter Brief from Lawton at 5 (Apr. 6, 2010).) Yet, Plaintiff has not provided the Court with sufficient information to conclude that each "subpart introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it[;] [when it does,] the subpart must be considered a separate interrogatory no matter how it is designated." 7 James Wm. Moore et al., Moore's Federal Practice, § 33.30[2], at 33-36 (3d ed. 2010) (footnote omitted). AntiCancer cannot avoid its responsibility to answer interrogatory thirteen.

### CRI's Ex Parte Request

CRI's ex parte application seeks an order directing AntiCancer to (1) make inventor Takashi Chishima available for two days of deposition, (2) supplement its responses to CRI's interrogatory numbers eight, nine, and ten, and (3) remove the "Attorneys-Eyes' Only" confidentiality restriction CRI placed on the deposition

1  transcript of inventor Meng Yang.  (Letter Brief from Allison
2  Goddard to Hon. Ruben B. Brooks at 1 (Apr. 6, 2010).)
3      1.   The Chishima Deposition
4      CRI urges that Dr. Chishima has an agreement with AntiCancer
5  that he will "'sign all papers and documents, take all lawful
6  oaths, and do all other acts necessary or required to be done for
7  the procurement, maintenance, enforcement and defense of' these
8  patents."  (Id.)  The parties' dispute is whether Dr. Chishima
9  should be available for two days of deposition while he is in the
10 United States, instead of the presumptive seven hours.  The
11 deposition will require the use of a Japanese interpreter, which
12 will slow the deposition process.  (Id. at 2.)  CRI argues that Dr.
13 Chishima's deposition should take place on May 6 and 8, 2010,
14 because the deposition of AntiCancer's CEO, Dr. Hoffman, is
15 currently scheduled for May 7, 2010.  (Id.)  AntiCancer objects
16 that Dr. Chishima will leave Japan on May 4th, and a deposition
17 beginning on May 6th will not give him sufficient time to
18 recuperate from the trip from Japan.  (Id.)  CRI is willing to
19 depose Dr. Hoffman on May 6 and depose Dr. Chishima on May 7 and 8,
20 or it is willing to depose Dr. Chishima on May 8 and 9.  (Id.)
21     AntiCancer responds that it is accommodating CRI by making
22 arrangements for Dr. Chishima to be deposed in the United States.
23 (Letter Brief from Dan Lawton to Hon. Ruben B. Brooks at 1 (Apr. 9,
24 2010).)  AntiCancer states that Dr. Chishima will travel nearly
25 eighteen hours, starting on May 4th, from Yokohama, Japan to San
26 Diego, and that he needs to return to Japan on May 9th "to fulfill
27 his professional obligations there."  (Id. at 2.)  Plaintiff
28 acknowledges that the use of an interpreter will prolong the

deposition but is willing to begin the deposition early on May 8th and stay late. (Id.) AntiCancer states that CRI twice has cancelled the scheduled deposition of Dr. Hoffman and objects to rescheduling the deposition a third time. (Id. at 3.)

Under these circumstances, the Court finds that good cause exists for allowing an additional four hours for taking the deposition of Dr. Chishima. Unless the parties and Dr. Chishima agree to an alternate schedule, the eleven-hour deposition will take place on May 8, 2010.

2. AntiCancer's Responses to Interrogatories

"CRI's Interrogatory Nos. 8-10 seek information from AntiCancer regarding (1) the level or ordinary skill in the art; and (2) the dates that AntiCancer first performed the methods described in Claim 1 of the '159 patent." (Letter Brief from Goddard at 3 (Apr. 6, 2010).)

> Interrogatory Nos. 8 and 9 asked AntiCancer to (a) state the level of ordinary skill in the art pertinent to the '384, '038, and '159 patents-in-suit; and (b) identify all facts, circumstances, witness testimony, documents, ESI, and tangible things supporting the level of ordinary skill in the art for these patents.
>
> . . . .
>
> Interrogatory No. 10 asked AntiCancer to state the date that AntiCancer first performed the method claimed in Claim 1 of the '159 patent, and describe all documents, ESI, and tangible things describing the first time AntiCancer performed that method.

(Id. at 3.)

Defendant states that Plaintiff answered these interrogatories by stating that the level of ordinary skill in the art is "High (Ph.D. level)" but did not elaborate further. (Id.) It purported to answer the remainder of interrogatories eight and nine by

identifying "several hundreds of pages of documents." (<u>Id.</u>) According to CRI, for interrogatory ten, AntiCancer "only identified a vague assortment of documents." (<u>Id.</u> at 3-4.) Defendant maintains that "AntiCancer's counsel stated that the responsive images were specific images produced at Dr. Baranov's deposition." (<u>Id.</u> at 4.) CRI requests that, at a minimum, AntiCancer identify those images in a supplemental interrogatory response. (<u>Id.</u> at 5.)

Plaintiff counters that these interrogatories exceed the thirty-five interrogatory limit; its responses are adequate; and they sufficiently identify the documents from which the information may be obtained. (Letter Brief from Dan Lawton to Hon. Ruben B. Brooks at 3-4 (Apr. 9, 2010).) It continues, "Forcing AntiCancer to identify [documents] by Bates number is make-work, not true discovery. Rule 33(d)(1) expressly allows AntiCancer to answer by references in the form it has used." (<u>Id.</u> at 4.)

As discussed earlier, AntiCancer has not established that CRI has exceeded the interrogatory limit by propounding interrogatories with multiple subparts. Defendant seeks a more detailed description of the level of ordinary skill in the art. Rule 26(e)(1) of the Federal Rules of Civil Procedure requires a party to supplement or correct a discovery response that, in some material respect, is incomplete or incorrect, and "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A). Alternatively, a discovery response must be supplemented as "ordered by the court." Fed. R. Civ. P. 26(e)(1)(B).

Plaintiff's counsel asserts that "[o]bviously, 'high' in the context of the inventions implies an ability to practice the methods described in the patents . . . ." (Letter Brief from Lawton at 4 (Apr. 9, 2010).) Even considering this addition, AntiCancer's answers to interrogatories seeking information about the level or ordinary skill in the art needed to practice the methods described in the patents are inadequate.

Furthermore, Rule 33(d)(1) is not available to AntiCancer. "The application of the option to produce records is limited to <u>business records only</u>." 7 James Wm. Moore et al., <u>Moore's Federal Practice</u>, §33.105[2], at 33-84 (3d. ed. 2010(emphasis added)). The records "cannot be documents or depositions generated during prior discovery in the same case." <u>Id.</u> (citing <u>Continental Ill. Nat'l Bank & Trust Co. v. Caton</u>, 136 F.R.D. 682, 686-87 (D. Kan. 1991); <u>accord</u> <u>In re Urethene Antitrust Litig.</u>, 2006 U.S. Dist. LEXIS 46306, at *29 n.12 (D. Kan. July 7, 2006).

> The purpose of the option to produce business records is to place the burden of research on the party seeking the information, instead of requiring the responding party to conduct a burdensome or expensive search of its own records. However, the use of the option is limited to situations in which the burden of deriving the answer is substantially the same for the propounding party as the responding party.

7 James Wm. Moore et al., <u>Moore's Federal Practice</u>, §33.105[1], at 33-83 (footnotes omitted). Items Plaintiff identified are not "business records." In addition, from the description, it appears that AntiCancer is more familiar with the described documents, so the burden of obtaining the response is not substantially the same. The Plaintiff's attempt to respond to interrogatories eight through

ten by referring to Rule 33(d)(1) is inappropriate. An additional and more complete response is required.

   3.   The Meng Yang Deposition

"Dr. Meng Yang is an inventor of one of the patents-in-suit and an employee of AntiCancer's wholly-owned subsidiary, AntiCancer Beijing." (Letter Brief from Goddard at 1 (Apr. 6, 2010).) At Dr. Yang's deposition, AntiCancer designated the entire deposition transcript as "Attorneys-Eyes' Only." (Id.) Defendant CRI argues that much of Dr. Yang's deposition covers the same subject matter inquired into during the depositions of Dr. Yuying Tan and Dr. Eugene Baranov, whose depositions were initially designated "Attorneys-Eyes' Only" and subsequently modified by the parties. (Id. at 4.) CRI states that AntiCancer has not explained what portions of the transcript justify this designation for Dr. Yang's deposition and asks that the designation be removed. (Id.)

AntiCancer responds that it will withdraw the designation except for "passages [that] concern meetings between AntiCancer and one of its potential customers (whose identity is secret)." (Letter Brief from Lawton at 4 (Apr. 9, 2010).) The Court will order that Plaintiff do as it suggests.

The parties and UCSD are to respond to these outstanding discovery requests no later than May 7, 2010.

IT IS SO ORDERED.

DATED: April 15, 2010

Ruben B. Brooks, Magistrate Judge
United States District Court

cc:
Judge Sammartino
All Parties of Record