Dan Lawton (State Bar No. 127342)
Joseph C. Kracht (State Bar No. 228507)
LAWTON LAW FIRM
Emerald Plaza
402 West Broadway, Suite 1860
San Diego, CA 92101
(619) 595-1370 (Telephone)
(619) 595-1520 (Facsimile)
dlawton@lawtonlaw.com (Electronic Mail)

Attorneys for Plaintiff and Counterdefendant AntiCancer, Inc.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., a Delaware corporation,<br><br>　　　　Defendant.<br>_____<br><br>AND RELATED COUNTERCLAIMS.<br>_____ | Case No. 3:07-CV-00097-JLS (RBB)<br><br>PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.'S **OPPOSITION** TO *EX PARTE* APPLICATION OF DEFENDANT AND COUNTERCLAIMANT CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., FOR AN ORDER DENYING OR, IN THE ALTERNATIVE, CONTINUING, PLAINTIFF ANTICANCER, INC.'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY [DOC. # 283] |

1

<u>TABLE OF CONTENTS</u>

2

PAGE

3

I.      INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 1

4

5

6

II.     ANTICANCER'S SUMMARY JUDGMENT MOTION IS NOT PREMATURE.
THERE IS NO "RIGHT" TO FACE SUMMARY JUDGMENT ONLY AFTER
FACT DISCOVERY HAS CLOSED AND THE EXPERT WITNESS DISCLOSURE
DEADLINE HAS PASSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7

8

III.    CRI HAS HAD AMPLE DISCOVERY FOR THE LAST TWO-PLUS YEARS.  THE
FEW OPEN DISCOVERY REQUESTS WARRANT NEITHER DENIAL OF
SUMMARY JUDGMENT NOR CONTINUANCE OF THE HEARING  . . . . . . . . . 4

9

        A.     Completed Discovery  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10

        B.     Discovery Disputes Resolved by Judge Brooks' April 15 Order (DE 300);
               Discovery Ordered Completed by May 7. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11

12

13

IV.     CRI'S PICS PREVENT CRI FROM OFFERING IN OPPOSITION TO SUMMARY
JUDGMENT ANY FACT NOT DISCLOSED IN THOSE PICS.  IT FOLLOWS
THAT CRI'S "PENDING" DISCOVERY REQUESTS DO NOT PROMISE ANY
EVIDENCE WHICH WOULD BE RELEVANT OR ADMISSIBLE ON SUMMARY
JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14

15

V.      CRI'S RELIANCE ON *McCORMICK-MORGAN v. TELEDYNE* IS MISPLACED
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16

VI.     CRI's 56(f) AFFIDAVIT IS DEFICIENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17

        A.     No Nexus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18

        B.     CRI Has Not Been Diligent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

PAGE

2 <u>CASES</u>

3

4 *AK Steel Corp. v. Sollac*
344 F.3d 1234, 1244 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 *Berger v. Rossignol Ski Co., Inc.*
2006 WL 1095914, at *6 (N.D. Cal. Apr. 25, 2006)   . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14
6

7 *Blanck v. Hagar*
360 F.Supp.2d 1137, 1160-1161 (D. Nev. 2005)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8 *Burke v. Utah Transit Authority*
462 F.3d 1253, 1263-1264 (10th Cir. 2006)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
9

*Burlington Northern Santa Fe RR Co. v. Assiniboine & Sioux Tribes*
10 323 F.3d 767, 774 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

11 *Celotex Corp. v. Catrett*
477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)   . . . . . . . . . . . . . . . . . . . 14
12

*Chang v. Dept. of the Navy*
13 314 F.Supp.2d 35, 46-47 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14 *Dyson v. Thomas H. Lee Co.*
61 F.Supp.2d 13, 42-43 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
15

*Employers Teamsters Local v. The Clorox Co.*
16 353 F.3d 1125, 1129-1130 (9th Cir. 2004)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

17 *Exxon Research and Engineering Co. v. U.S.*
265 F.3d 1371, 1375 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
18

*Graham v. John Deere Co.*
19 383 U.S. 1, 17, 86 S.Ct 684, 15 L.Ed.2d 545 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20 *IXYS Corp. v. Advanced Power Tech., Inc.*
2004 U.S. Dist. LEXIS 10934, *8-*9 (N.D. Cal. June 16, 2004) . . . . . . . . . . . . . . . . . . . . 7
21

*Kadair, Inc. v. Sony Corporation of America*
22 694 F.2d 1017 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

23 *Kao Corp. v. Unilever U.S., Inc.*
441 F.3d 963, 967-968 (Fed. Cir. 2006)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
24

*Lucent Techs., Inc. v. Gateway, Inc.*
25 2007 WL 1877982, at *4 (S.D. Cal. June 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14

26 *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*
134 F.R.D. 275, 285-288 (N.D. Cal. 1991)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11
27

*Merck & Co., Inc. v. MSD Technology, L.P.*
28 434 F.Supp.2d 257, 266 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Metropolitan Life Ins. Co. v. Bancorp Servs., LLC*
527 F.3d 1330, 1337 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*MGM Well Services, Inc. v. Mega Lift Systems, LLC*
2007 U.S. Dist. LEXIS 5005, at *17-*19 (S.D. Tex. Jan. 24, 2007) . . . . . . . . . . . . . . . . . 7

*Minemyer v. B-Roc Representatives, Inc.*
2009 U.S. Dist. LEXIS 99904, at *29-*36 (N.D. Ill. Oct. 27, 2009) . . . . . . . . . . . . . . . . . 6

*Monaplastics, Inc. v. Caldor, Inc.*
378 F.2d 20, 21 (2d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Nova Measurement Instruments, Ltd. v. Nanometrics, Inc.*
2006 U.S. LEXIS 16823, *6-*7 (N.D. Cal. March 23, 2006) . . . . . . . . . . . . . . . . . . . . . . . 7

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*
467 F.3d 1355, 1368 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11, 14

*Otto v. Variable Annuity Life Ins. Co.*
814 F.2d 1127, 1138 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Quinn v. Thomas H. Lee Co.*
61 F.Supp.2d 13, 18-19 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Realtime Data, LLC v. Packeteer, Inc.*
2009 U.S. Dist. LEXIS 114207, at *18-*19 (E.D. Tex. Dec. 8, 2009) . . . . . . . . . . . . . . . . 6

*Rivera-Torres v. Rey-Hernandez*
502 F.3d 7, 8-11 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ruiz v. A.B. Chance Co.*
234 F.3d 654, 662-663 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Schering Corp. v. Geneva Pharms., Inc.*
339 F.3d 1373, 1377-1378 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sensormatic Elec. Corp. v. WG Security Products, Inc.*
2006 U.S. Dist. LEXIS 26823, at *6-*7 (E.D. Tex. May 5, 2006) . . . . . . . . . . . . . . . . . . . 7

*Source Search Technologies, LLC v. Lendingtree, LLC*
588 F.3d 1063, 1076 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sprint Communications Co., L.P. v. TheGlobe.com, Inc.*
236 F.R.D. 524 (D. Kan. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Takeda Chemical Industries, Ltd. v. Mylan Labs., Inc.*
459 F.Supp.2d 227, 247-248 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 15

*Toro Co. v. White Consolidated Indust., Inc.*
2003 U.S. Dist. LEXIS 8550 (D. Minn. May 14, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Vermont Structural Slate Co. v. Tatko Bros. Slate Co.*
233 F.2d 9, 10 (2d Cir.), *cert. denied*, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956) . . . 4

1

RULES AND STATUTES

2  Federal Rule of Civil Procedure Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3  Federal Rule of Civil Procedure 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

4  Federal Rule of Civil Procedure Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

5  21 U.S.C. § 355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.

In this action, CRI[1] seeks via counterclaim to invalidate three of AntiCancer's[2] imaging patents: the '384 patent, the '038 patent, and the '159 patent.[3]  CRI's counterclaims assert anticipation via prior art, indefiniteness, non-enablement, and inadequacy of written description.  CRI lacks any evidence to support any of these counterclaims.  On this basis, AntiCancer filed a motion for summary judgment of validity eight weeks ago.  The hearing on this MSJ is set for June 24.

On the eve of the deadline for its opposition (April 30), CRI sought relief under Rule 56(f)[4] via *ex parte* application.  CRI seeks either outright denial of AntiCancer's MSJ or else a continuance of the June 24 hearing.  "This case is complex," CRI writes.

This is not true.  The case is not complex.  It is straightforward.  CRI's application fails.

First, CRI's application rests on a false notion.  This notion is that summary judgment should come only at the close of fact discovery, only after the deadline for expert witness reports have passed, and only with the aid of expert witnesses.  Rule 56(a), however, expressly contemplates summary judgment at any time after the case is 20 days old.  This case is over three years old.  Neither Rule 56 nor any case construing it says the Court improperly grants summary judgment before experts have done their work or after the close of fact discovery.

Second, the factual premise for CRI's motion (that CRI has suffered an inability to complete essential discovery) is false.  CRI began discovery in this case over two years ago.  It has served (and gotten responses from AntiCancer to) over 500 discrete written discovery requests; deposed multiple inventors and third parties; and received over 25 boxes' worth of

---

[1]  Counterclaimant Cambridge Research & Instrumentation, Inc.

[2]  Counterdefendant AntiCancer, Inc.

[3]  U.S. patent nos. 6,251,384, 6,759,038, and 6,649,159, respectively.

[4]  All references to Rules are to the Federal Rules of Civil Procedure, except as otherwise noted.

1  documents from AntiCancer.  The few still-pending discovery requests which CRI only

2  recently served will not change the landscape of AntiCancer's MSJ.

3      Third, CRI's own PICs[5] now prevent CRI from proffering any evidence beyond the

4  scope of those PICs, thus mooting the discovery CRI now insists it needs.  This Court, in this

5  case (and other courts, in other cases) have ruled that a party's PICs frame the evidentiary

6  basis for infringement or invalidity.  CRI itself invoked this rule two years ago in seeking and

7  getting summary judgment of non-infringement against AntiCancer over AntiCancer's

8  objection that it needed more discovery.  Now facing summary judgment itself, CRI must

9  face the same music.  CRI has had the chance to amend its PICs (and even threatened to seek

10  leave to amend them) – but has never tried to amend them (and, even now, does not request

11  leave to amend them).  The four corners of CRI's PICs limit what evidence CRI can proffer

12  in opposition to AntiCancer's MSJ.  All of CRI's pending discovery falls outside those four

13  corners.  It follows Rule 56(f) does not allow relief.

14      Fourth, the Goddard affidavit does not satisfy the standard for relief under Rule 56(f).

15  It fails to identify how the additional discovery CRI seeks will preclude summary judgment.

16  It fails to explain why CRI couldn't have gotten it months or years ago.  It highlights a lack

17  of diligence on CRI's part in seeking (over the last three years) the discovery it now insists it

18  needs on the eve of the filing deadline for CRI's opposition papers.

19      The last paragraph of CRI's application reveals a bizarre contradiction.  CRI argues

20  that AntiCancer's MSJ is a "sham" because it rests on a technical argument and "utterly

21  ignores the record in this case."  In the next sentence CRI says it should not be obliged to

22  oppose the MSJ "without the benefit of essential discovery . . ."  Both things cannot possibly

23  be true.  If AntiCancer's MSJ be a sham, then its "sham" nature and the "record in this case"

24  ought to warrant its denial on the merits.  If, on the other hand, CRI needs "essential

25  discovery" in order to oppose the motion, then the "record in this case" cannot possibly

26  justify denying the MSJ, and the MSJ can hardly be a "sham."  The request for more

27  discovery illuminates the reality: that CRI has asserted counterclaims of invalidity with no

28

[5] **P**reliminary **i**nvalidity **c**ontentions.

1   facts whatsoever to justify them.

2       CRI has had ample time within which to both (a) discover any facts pertinent to its

3   invalidity theories and (b) marshal them into a thorough written opposition.  In a case over

4   three years old, AntiCancer is entitled to rely on the Rules and the hearing date which the

5   system provides.  The Court should deny CRI's *ex parte* application and leave the hearing on

6   AntiCancer's MSJ as scheduled.

7   II.    ANTICANCER'S SUMMARY JUDGMENT MOTION IS NOT PREMATURE.
           THERE IS NO "RIGHT" TO FACE SUMMARY JUDGMENT ONLY AFTER
8          FACT DISCOVERY HAS CLOSED AND THE EXPERT WITNESS DISCLOSURE
           DEADLINE HAS PASSED.
9

10      Permeating CRI's application is the notion that summary judgment, if at all, should

11  only come after fact discovery has closed and the deadline for expert disclosure has passed.

12  CRI offers no authority for this notion.

13      There is no authority for the notion.  Rule 56(a) expressly contemplates summary

14  judgment as early as **20 days after commencement of the action**.  Nothing in the Rule

15  requires the Court to await the close of fact discovery or expert witness disclosure before

16  granting summary judgment.  The Court's own grant of summary judgment of non-

17  infringement in CRI's favor and against AntiCancer in 2008 in this case starkly illustrates

18  this.

19      Even if the law required what CRI implies it does, CRI offers no reason why it

20  couldn't have hired and prepared experts to opine on the validity of AntiCancer's patents

21  before now.  AntiCancer filed its MSJ on February 22 – nearly two months ago.  From that

22  day until CRI filed its *ex parte* application, seven (7) weeks passed.  This was ample time

23  within which CRI could have hired an expert to render opinions.  CRI's failure to do so

24  reflects a lack of diligence (as explained further below at pp. 16-18).

25      CRI writes that "issues of patent validity . . . require expert testimony, as specifically

26  contemplated by the Scheduling Order."  CRI EPA at p. 7:25-26.  This statement is

27  completely false.  The Scheduling Order contemplates no such thing.  It simply sets dates for

28  expert witness disclosure (while not ruling experts are required or that anything they would

1   have to say will be admissible on summary judgment or at trial).

2        As it is, AntiCancer's motion presents nothing even amenable to expert witness

3   testimony.  Patent validity is an issue of law.  *See Graham v. John Deere Co.*, 383 U.S. 1, 17,

4   86 S.Ct 684, 15 L.Ed.2d 545 (1966).  Courts can and do resolve it on summary judgment,

5   without the need for expert witness testimony whatsoever.  *See Monaplastics, Inc. v. Caldor,*

6   *Inc.*, 378 F.2d 20, 21 (2d Cir. 1967);  *Vermont Structural Slate Co. v. Tatko Bros. Slate* Co.,

7   233 F.2d 9, 10 (2d Cir.), *cert. denied*, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956).  So

8   this Court should do on June 24.

9   III.     CRI HAS HAD AMPLE DISCOVERY FOR THE LAST TWO-PLUS YEARS.  THE
          FEW OPEN DISCOVERY REQUESTS WARRANT NEITHER DENIAL OF
10         SUMMARY JUDGMENT NOR CONTINUANCE OF THE HEARING.

11       A.     Completed Discovery.

12           CRI argues, in essence, it has not had the chance to complete discovery

13   essential to oppose AntiCancer's MSJ.  This is not true.

14       As CRI admits, it began "propounding written discovery on AntiCancer **in February**

15   **2008" – over two years ago**.  *See* CRI EPA at p. 6:12 (emphasis added).  In response,

16   AntiCancer has produced tens of thousands of pages of documents (over 25 boxes);

17   answered fifty (50) interrogatories;  produced for deposition in San Diego all four (4) of its

18   inventors (despite the fact only one of them still works for AntiCancer and two of them are

19   foreign residents who had to travel from Asia for the depositions) and two lawyers who

20   prosecuted the patents-in-suit;  and made arrangements (twice) to produce a 30(b)(6)

21   representative (before CRI canceled the depositions, twice, on short notice).  The total

22   number of CRI's discrete written discovery requests (document requests, requests for

23   admissions, and interrogatories) to which AntiCancer has delivered written responses now

24   exceeds 500.  Lawton dec., ¶ 2.  This reality belies the notion that CRI has lacked the fair

25   opportunity to do discovery in advance of AntiCancer's MSJ.

26       B.     Discovery Disputes Resolved by Judge Brooks' April 15 Order (DE 300);
              Discovery Ordered Completed by May 7.
27

28       Beginning on March 18, CRI began serving what would turn out to be over 200

    discrete written discovery requests.  *Id*., ¶ 2.  Many (if not most) of these discovery requests

had little, if anything, to do with the validity of AntiCancer's patents.  AntiCancer moved for a protective order.  CRI simultaneously moved to compel.  DE 296, 297, 298, 299.

Judge Brooks' ensuing order issued on April 15.  DE 300.  It granted and denied in part both parties' requests.  Insofar as relevant to this motion, it:

- **quashed** CRI's request for entry onto AntiCancer's premises;

- **held CRI's eighty (80) requests for admissions "unduly burdensome,"** but ordered AntiCancer to admit or deny whether or not deponents in previous lawsuits furnished or did not furnish corrections to their testimony;

- **granted AntiCancer a protective order as to CRI's subpoena on UCSD,** subject to production of limited material related only to the patents-in-suit;

- **refused CRI's requests for two (2) days of deposition of inventor Takashi Chishima** (while allowing a single eleven-hour day on the previously-agreed day of May 8);

- required AntiCancer to serve a response to CRI's interrogatory no. 13 (which asks for redundant information identifying "each person who contributed to the conception" of the inventions claimed in the patents-in-suit); and

- obliging AntiCancer to supplement its previously-served responses to CRI's interrogatories nos. "8-10" (concerning the level of ordinary skill in the art and the first instance of practice of the method claimed in Claim 1 of the '159 patent).

DE 300.

Judge Brooks ordered all of this to happen no later than May 7 (five days before CRI's opposition to AntiCancer's MSJ is due), except for the Chishima deposition (previously set and still set for May 8).  *Id.*, p. 11:22.  By May 8 CRI will have had full access to the data these requests yield.  Because this day is in advance of CRI's new deadline for opposing AntiCancer's MSJ (May 12), CRI will lack any possible basis for arguing it did not have a full and fair opportunity to prepare its opposition.

///

///

///

1  **IV.    CRI'S PICS PREVENT CRI FROM OFFERING IN OPPOSITION TO SUMMARY JUDGMENT ANY FACT NOT DISCLOSED IN THOSE PICS.  IT FOLLOWS THAT CRI'S REMAINING "PENDING" DISCOVERY REQUESTS DO NOT PROMISE ANY EVIDENCE WHICH WOULD BE RELEVANT OR ADMISSIBLE ON SUMMARY JUDGMENT.**

4        Legal theories and evidence not disclosed in the PICs, for all practical purposes, do

5  not exist.  So this Court ruled in this case two years ago.  *See* D.E. 214 (order granting CRI's

6  MSJ re non-infringement).  In this setting, this ruling is all-important.  CRI's own PICs now

7  defeat its *ex parte* application.

8        In July 2008, when it moved for summary judgment based upon AntiCancer's

9  deficient PICs, CRI argued that AntiCancer's PICs defeated AntiCancer's ability to proffer

10 any evidence not disclosed in those PICs on summary judgment.  D.E. 166.  The Court

11 agreed:

12               To the extent that AntiCancer's opposition seeks to introduce new theories of infringement **based on evidence which AntiCancer did not disclose in its PICs**, the Court again invokes the principle on which Merck and NIBRI obtained a finding of non-infringement.  Summary judgment is appropriate against a party who bases its opposition on theories omitted from its infringement contentions.  See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1368 (Fed. Cir. 2006) (entering summary judgment for defendant premised on affirmance of district court's denial of leave to amend contentions to add new theory of infringement); Lucent Techs., Inc. v. Gateway, Inc., 2007 WL 1877982, at *4 (S.D. Cal. June 27, 2007) (Brewster, J.) (granting summary judgment because plaintiff could not succeed on infringement theory that plaintiff did not set forth in its infringement contentions); Berger v. Rossignol Ski Co., Inc., 2006 WL 1095914, at *6 (N.D. Cal. Apr. 25, 2006) (where plaintiffs conceded at oral argument that they had offered an "absurd" original infringement contention and court denied leave to amend, defendant's motion for summary judgment of non-infringement was granted).

23 D.E. 214 at 7:12-25 (emphasis added).

24       This constraint on new theories and evidence applies with equal force to preliminary

25 *invalidity* contentions.  *Realtime Data, LLC v. Packeteer, Inc.*, 2009 U.S. Dist. LEXIS

26 114207, at *18-*19 (E.D. Tex. Dec. 8, 2009) (striking invalidity theories and evidence from

27 consideration at summary judgment and trial because not disclosed by preliminary invalidity

28 contentions); *Minemyer v. B-Roc Representatives, Inc.*, 2009 U.S. Dist. LEXIS 99904, at

*29-*36 (N.D. Ill. Oct. 27, 2009) (denying defendant's MSJ re invalidity because of deficient preliminary invalidity contentions; MSJ on theory not disclosed in PICs was "litigation by ambush"); *MGM Well Services, Inc. v. Mega Lift Systems, LLC*, 2007 U.S. Dist. LEXIS 5005, at *17-*19 (S.D. Tex. Jan. 24, 2007) (granting motion to exclude evidence and argument not disclosed in preliminary invalidity contentions); *Sensormatic Elec. Corp. v. WG Security Products, Inc.*, 2006 U.S. Dist. LEXIS 26823, at *6-*7 (E.D. Tex. May 5, 2006) (granting, in part, motion to strike invalidity contentions not contained in PICs); *Nova Measurement Instruments, Ltd. v. Nanometrics, Inc.*, 2006 U.S. LEXIS 16823, *6-*7 (N.D. Cal. March 23, 2006) (dictum expressing disapproval of moot MSJ re invalidity that asserts theories not disclosed by PICs); *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 U.S. Dist. LEXIS 10934, *8-*9 (N.D. Cal. June 16, 2004) (granting motion to preclude evidence not disclosed by preliminary invalidity contentions).

This rule defeats relief under Rule 56(f).  This is because the evidence CRI seeks via its barrage of belated discovery strays far beyond CRI's PICs.  *See ibid.*  These PICs identified – as the sole basis for CRI's invalidity claims – 336 pieces of supposed prior art. CRI has threatened to seek leave to amend these PICs (Lawton dec., ¶ 3) – **but has never done so.**  CRI's PICs now limit the evidence it can use to oppose AntiCancer's summary judgment motion.  *O2 Micro*, 467 F.3d at 1368; *Lucent Techs., Inc.*, 2007 WL 1877982, at *4; *Berger*, 2006 WL 1095914, at *6.

Ironically, CRI well knows it is constrained by its PICs.  CRI's own lawyers know this from firsthand experience.  *See Takeda Chemical Industries, Ltd. v. Mylan Labs., Inc.*, 459 F.Supp.2d 227, 247-248 (S.D.N.Y. 2006) (awarding $11.4 million in attorneys' fees and costs upon extraordinary case finding in baseless invalidity claims prosecuted by, and litigation misconduct committed by, CRI's counsel); *aff'd*, 549 F.3d 1381 (Fed. Cir. 2008)).

*Takeda* started with an ANDA[6] action, in which the companies Alphapharm and Mylan asserted a right to manufacture a generic version of Takeda's patented diabetes drug, pioglitazone, because the patent was allegedly invalid.  *Id*. at 230-231.  In doing so, Mylan –

---

[6] Abbreviated New Drug Application, pursuant to the Hatch-Waxman Act.

1   represented by CRI's current New York counsel – filed a Section 355[7] statement which both

2   certified that Takeda's patent was invalid for obviousness and identified two prior art

3   references. *Id*. at 231, 246. Takeda then challenged the ANDA filing in the district court, in

4   which the court eventually determined Mylan's invalidity claims had no basis in fact.

5   Takeda twice noticed the 30(b)(6) deposition of Mylan to produce a witness able to

6   testify as to the factual basis of its invalidity claims. Only when ordered to do so by the court

7   did Mylan produce the witness. *Takeda v. Mylan*, 2005 U.S. Dist. LEXIS 18573, *2-*6

8   (S.D.N.Y. Sept. 1, 2005) (opinion and order on Mylan's motion for reconsideration). As

9   revealed by the deposition, Mylan had no factual basis for claiming Takeda's patent invalid.

10  In the district court's words, "Mylan filed a Paragraph IV certification in bad faith and with

11  no reasonable basis to claim that the '777 Patent was invalid." *Takeda*, 459 F.Supp.2d at

12  245.

13  Mylan and its lawyers at the Cohen Pontani firm filed the Section 355 certification

14  without a prior investigation, without any client evidence, and only a hastily prepared, last

15  minute invalidity opinion. *Id*. In short, "Mylan decided to challenge the validity of the '777

16  Patent without any good faith basis to do so." *Id*. The only difference between Mylan and

17  CRI is that Mylan (unlike CRI) paid for a last minute invalidity opinion.

18  Here, CRI did not even go so far as to provide a last-minute invalidity opinion. In

19  addition to admitting that it had no evidence and couldn't vouch for the provenance or

20  validity of the alleged prior art references, CRI testified at its own 30(b)(6) deposition that it

21  never secured an invalidity opinion before filing its counterclaims and still has not done so.

22  Dep. tx. at pp. 52:9-13; 60:4-10; *see also* 49:12-50:12 (no evidence to support

23  counterclaims); 50:13-22 (no pre-suit investigation conducted); 69:23-25 (company had no

24  role in drafting PICs).

25  Just as CRI is doing now, Mylan tried to shift its focus after its disastrous 30(b)(6)

26  deposition testimony. By manufacturing discovery disputes about evidence outside the

27  alleged prior art references, Mylan began trying to build a case that Takeda's patent should

28

---

[7] 21 U.S.C. § 355(j)(2)(A)(vii).

1   be invalidated for inequitable conduct.  The district court forbade this.  *Takeda*, 459

2   F.Supp.2d at 247-248.  In later ruling the case exceptional and awarding attorneys' fees to

3   Takeda, the district court wrote:

4       Mylan's defense of its aborted effort to make a wholesale
        revision to its obviousness theory is utterly frivolous.  As this
5       Court has previously had occasion to point out to Mylan, **since an
        attack based on obviousness must rely on disclosures made in
6       prior art, the existence or receipt of Takeda's internal
        documents is irrelevant**.  Either the invention of pioglitazone
7       was obvious based on prior art, or it was not.

8   *Id*. at 247 (emphasis added).

9       Takeda then moved successfully to preclude Mylan from presenting evidence at trial

10  that exceeded the scope of Mylan's alleged prior art.  *Takeda*, 2005 U.S. Dist. LEXIS 18573,

11  *1.  A bench trial ensued; Takeda prevailed and moved for an exceptional case finding and

12  award of sanctions, alleging that Mylan lacked a good faith basis in its invalidity claim and

13  that it engaged in litigation misconduct.  *Takeda*, 459 F.Supp.2d at 230-231.  The district

14  court agreed and awarded Cohen Pontani's client, Mylan, to pay Takeda $11.4 million in

15  attorneys' fees.  *Takeda*, 2007 U.S. Dist. LEXIS 19614, at *46.

16      Here, it is hard to see how Mylan's behavior differs substantially from that of CRI's.

17  Mylan prosecuted an invalidity theory with no basis in fact, no pre-filing investigation and no

18  evidence, exactly as CRI is doing now.  It appears CRI's motivation is the same:

19      The defendants' performance in this regard provides further
        evidence that they well understood that their attacks on the '777
20      Patent were groundless and would only succeed if Takeda did not
        expend the effort and resources necessary to shine a light on the
21      flaws in the defendants' arguments and if the Court did not spend
        the time necessary to learn the relevant science and understand
22      the evidentiary record created by the trial submissions.

23  *Id*. at *44.

24      In a letter sent in February 2010, AntiCancer warned CRI of the consequences of its

25  behavior in this case when compared to the behavior of its counsel in the *Takeda* case.

26  Lawton dec., ¶ 6;  Ex. A.  CRI ignored this letter.  Lawton dec., ¶ 6.

27  ///

28  ///

V.      CRI'S RELIANCE ON *McCORMICK-MORGAN v. TELEDYNE* IS MISPLACED.

CRI exaggerates what it calls the "complex nature of patent litigation[,]" suggesting the Court lacks the tools with which to decide AntiCancer's MSJ without a gaggle of experts and voluminous, yet-to-be-discovered matter.  In this context, CRI argues AntiCancer cannot rely on CRI's deposition testimony on summary judgment, while supposedly "ignor[ing] the **detailed factual recitations** in the invalidity contentions that CRI served in December 2007":

> AntiCancer cannot satisfy its burden as the moving party by asking the Court to inordinately focus on a deposition, yet ignore CRI's detailed preliminary invalidity contentions that, **by themselves**, create triable issues of fact that preclude summary judgment.

CRI EPA at pp. 8:26-28, 9:20-23 (emphasis added).

Here, CRI cites *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 285-288 (N.D. Cal. 1991) for the proposition that "it is typical for a party to rely on its patent counsel to formulate invalidity contentions in a case like this."  *Id*. at 9:3-20.

*McCormick-Morgan*, however, says no such thing.  Instead, the court in *McCormick-Morgan* held that, "in the limited circumstances of this case, that the most appropriate vehicle for disclosing the kind of information and argument at issue here is a sensibly crafted set of contention interrogatories."  *McCormick-Morgan*, decided in 1991, pre-dated that and this Court's adoptions of their respective Patent Local Rules, which now require parties before that court to serve preliminary infringement/invalidity contentions.  In that case, plaintiff asserted invalidity of defendant's patent.  *Id*. at 276.  Defendant noticed plaintiff's 30(b)(6) deposition, which ensued over the course of two days before plaintiff moved for a protective order.  *Id*. at 277-278.

Plaintiff argued that it was unfair and inefficient to expect its corporate representative to detail all of its invalidity contentions at an oral deposition, and argued that defendant be required instead to propound contention interrogatories.  *Id*. at 286-287.  The court described the issue framed by the motion as follows:

> [W]hich of the available devices is most appropriate, i.e., which device [contention interrogatories or deposition] would yield

1  most reliably and in the most cost-effective, least burdensome
2  manner information that is sufficiently complete to meet the
   needs of the parties and the court in a case like this?

3  *Id*. at 286.

4      The court agreed with plaintiff and ordered contention interrogatories, explaining that

5  "in the particular setting of this case" the corporate representative could not be expected to

6  set forth all the invalidity contentions in a reliable way.  *Id*. at 287-288.  The court, however,

7  also offered the following caveat (ignored by CRI):

8  That apparent fact of litigation life [i.e., the often practical
   uselessness of attorney-crafted responses to contention
9  interrogatories] makes us pause, to say the least, before ruling,
   even in the limited circumstances of this case, that the most
10 appropriate vehicle for disclosing the kind of information and
   argument at issue here is a sensibly crafted set of contention
11 interrogatories.

12 *Id*. at 287.

13     Thus, even when it issued 19 years ago, the *McCormick-Morgan* order had little

14 precedential value.  The Patent Local Rules here supersede what precedential value it might

15 have.  Those rules now require CRI to disclose its invalidity contentions via PICs at an early

16 stage of the case.  *See O2 Micro*, 467 F.3d at 1365-1366 (the local patent rules in the

17 Northern District of California were designed to address the problem of contention

18 interrogatories).  Ironically, CRI ignores this truth in relying on *McCormick-Morgan*.

19 AntiCancer wasn't after CRI's invalidity contentions – it already had those in the form of

20 CRI's PICs.  At CRI's 30(b)(6) deposition, AntiCancer sought the facts behind CRI's PICs,

21 just as Judge Brooks ordered it could.  D.E. 268 (Order of Judge Brooks identifying 30(b)(6)

22 deposition topics).[8]  As is now apparent, there never was a factual or evidentiary basis for

23

24     [8] Judge Brooks ordered CRI to present a 30(b)(6) representative capable of testifying on
   the following four deposition topics:
25

26 1.    Your Counterclaims to Plaintiff AntiCancer, Inc.'s Second Amended Complaint filed in
      this action, including, but not limited to, all facts, WRITINGS, ESI AND/OR
27     communications CONCERNING the invalidity theories in YOUR first, second, third,
      fourth, and fifth counterclaims recited therein, and any and all facts, WRITINGS, ESI
28     AND/OR communications upon which YOU intend to rely on in support of those
      counterclaims.

1   CRI's invalidity contentions in the first place.  CRI will have to deal with this reality on

2   summary judgment as best it can – as AntiCancer had to deal with a similar reality in

3   opposing CRI's motion for summary judgment in 2008 based on its own PICs.

4       In this setting, the more pertinent case is *Sprint Communications Co., L.P. v.*

5   *TheGlobe.com, Inc.*, 236 F.R.D. 524 (D. Kan. 2006).  In *Sprint*, defendant in an infringement

6   action noticed the 30(b)(6) deposition of Sprint concerning the preparation, filing, and

7   amendments to the patents-in-suit.  *Sprint*, 236 F.R.D. at 526-527.  Sprint moved for a

8   protective order, arguing the only potential designees were attorneys and thus both the

9   attorney-client privilege and the general prohibition against depositions of opposing counsel

10  absolved Sprint from testifying.  *Id*.  The district court rejected this notion out of hand and

11  ordered the deposition:

12          As discussed, *supra*, personal knowledge of the designated
            subject matter by the selected deponent is of no consequence.
13          Sprint is obligated to produce a deponent who has been
            competently prepared by the company to give complete,
14          knowledgeable and binding answers on behalf of the corporation.
            It is Sprint's decision who to designate as its representative in the
15          deposition.  Sprint is under no obligation to choose an attorney as
            its 30(b)(6) designee.
16
                                    * * *
17
            To that end, Sprint may adequately comply with the Rule
18          30(b)(6) deposition notice by choosing one or more non-attorney
            deponents – regardless of prior and/or personal knowledge
19          regarding the subject matter – and having them review
            memoranda, notes, applications, documents and all other matters
20          "reasonably available" to the corporation that are related to
            preparing, filing and revising each Patent.
21

22  *Id*. at 528-529.

23      *Sprint* hardly can come as a surprise to CRI.  AntiCancer's counsel raised this issue

24  _____

25  2.  YOUR "Defendants' Joint Preliminary Invalidity Contentions" served in this Action,
        including, but not limited to, all facts, WRITINGS, ESI AND/OR communications relied
26      upon in the drafting of this document AND/OR supporting the allegations AND/OR
        contentions made therein, including, <u>inter alia</u>, Exhibits A through D attached thereto.

27  3.  The alleged invalidity of the PATENTS IN SUIT as asserted by YOU.

28  4.  The prior art produced by YOU in this action insofar as it comprises evidence of
        invalidity of any of the PATENTS IN SUIT as asserted by YOU.

directly, on the record, at the conclusion of CRI's deposition, delivering a copy of the *Sprint* decision to CRI's lawyers. Ex. B at pp. 198:10-203:11. Unfortunately CRI's counsel rejected the notion that CRI must present a representative capable of knowledgeably testifying about the deposition topics (chosen by Judge Brooks) as "absurd" and "ridiculous." *Id*. at pp. 203:12-206:17.

The truth is not "complex." It is plain. There is no factual basis for CRI's invalidity theories; there never was in the first place. By definition, they are baseless. Thus AntiCancer's MSJ. Nothing in CRI's *ex parte* application warrants any delay in the Court's resolution of that motion as scheduled.

VI.   CRI'S 56(f) AFFIDAVIT IS DEFICIENT.

CRI fails its burden under Rule 56(f). The affidavit it proffers (of attorney Goddard) falls far short of what is required.

Rule 56(f) requires CRI to identify how the additional information sought will preclude summary judgment:

> To prevail under this Rule, parties opposing a motion for summary judgment must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment. The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment.

*Employers Teamsters Local v. The Clorox Co.*, 353 F.3d 1125, 1129-1130 (9th Cir. 2004) (internal quotes and citations omitted).

The Goddard affidavit does not address how the additional information sought will preclude summary judgment or why CRI couldn't have gotten the discovery it now claims it needs sooner. On this basis alone, the court should deny CRI's *ex parte* application. *Id*.; *see also, Burke v. Utah Transit Authority*, 462 F.3d 1253, 1263-1264 (10th Cir. 2006) (affirming district court's denial of 56(f) relief; 56(f) relief is not automatic and not proper where supporting affidavit lacks specificity and fails to address relevancy of information sought to

1   oppose pending summary judgment motion); *Otto v. Variable Annuity Life Ins. Co.*, 814

2   F.2d 1127, 1138 (7th Cir. 1986) (affirming district court's denial of 56(f) where

3   accompanying affidavit failed to explain party's lack of diligence); *Merck & Co., Inc. v.*

4   *MSD Technology, L.P.*, 434 F.Supp.2d 257, 266 (S.D.N.Y. 2006) (denying 56(f) relief where

5   evidence sought in patent suit is irrelevant to pending summary judgment motion); *Blanck v.*

6   *Hagar*, 360 F.Supp.2d 1137, 1160-1161 (D. Nev. 2005) (denying 56(f) relief where

7   supporting affidavit fails to state why discovery could not have been obtained earlier and

8   how such discovery would preclude summary judgment); *Chang v. Dept. of the Navy*, 314

9   F.Supp.2d 35, 46-47 (D.D.C. 2004) (denying 56(f) relief where attachments accompanying

10   opposition to summary judgment belied professed inability to marshal evidence).

11        A.    <u>No Nexus</u>.

12            The Goddard affidavit identifies the following data CRI supposedly needs in

13   order properly to oppose AntiCancer's MSJ:

14            •    identification of the "ordinary skill in the art" (¶ 7);

15            •    subpoenaed UCSD documents (¶¶ 8-9);

16            •    inspection of various equipment (¶¶ 10, 13);

17            •    documents "regarding the equipment used in the patents" (¶ 11); and

18
19            •    testimony of AntiCancer and Drs. Hoffman, Chishima, Benaron, and Contag (¶ 12).

20            None of this evidence, however, will help CRI avoid summary judgment (assuming

21   *arguendo* that it exists).  This is because CRI's PICs necessarily limit the evidence now

22   allowed on summary judgment to the 336 alleged prior art references listed therein.  *See* DE

23   214 at 7:12-25; *O2 Micro*, 467 F.3d at 1368; *Lucent Techs., Inc.*, 2007 WL 1877982, at *4;

24   *Berger*, 2006 WL 1095914, at *6.  For example, in opposing the pending summary judgment

25   motion, CRI must establish by evidence the existence of a genuine issue of material fact as to

26   the essential elements of its anticipation theory of invalidity, *i.e.*, that each and every element

27   of the targeted patent claim is present in a single alleged piece of prior art.  *See Celotex Corp.*

28   *v. Catrett*, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing

1  standard for summary judgment generally); *Schering Corp. v. Geneva Pharms., Inc.*, 339

2  F.3d 1373, 1377-1378 (Fed. Cir. 2003) (applying standard to anticipation theory of invalidity;

3  granting summary judgment).  Nothing but the alleged prior art is at issue.  This is according

4  to CRI's own PICs.

5       The same, of course, is true of CRI's obviousness theory.  *See Ruiz v. A.B. Chance*

6  *Co.*, 234 F.3d 654, 662-663 (Fed. Cir. 2000) (articulating the essential elements of the claim

7  of invalidity due to obviousness).  CRI knows this (or at least its attorneys do).  To reiterate

8  *Takeda*, "since an attack based on obviousness must rely on disclosures made in prior art, **the**

9  **existence or receipt of Takeda's internal documents is irrelevant.  Either the invention**

10 **of pioglitazone was obvious based on prior art, or it was not**." *Takeda*, 459 F.Supp.2d at

11 247 (emphasis added).  Likewise, either AntiCancer's patented methods are obvious based

12 upon the alleged prior art identified in CRI's PICs or they are not.  The additional

13 information sought by CRI is irrelevant to the pending summary judgment motion.  *Id*.

14      In its affidavit, CRI contends that it's AntiCancer's fault that CRI hasn't yet been able

15 to secure an expert because AntiCancer hasn't identified the "ordinary skill in the art."  Once

16 CRI gets this information, it says, the "expert(s) CRI will retain to testify regarding its

17 invalidity counterclaims will need time to review and analyze all of the factual information

18 CRI has obtained from discovery to date":

19           CRI's expert will need to perform a comprehensive review of the
            prior art, deposition testimony, and discovery responses in this
20           action.

21 Goddard dec. at ¶ 15.

22      Given CRI's admissions at its 30(b)(6) deposition – that CRI has no evidence,

23 performed no investigation, obtained no invalidity opinion – this is quite a statement.  It's

24 been more than *three years* since CRI first counterclaimed for invalidity (April 16, 2007).

25 D.E. 10.  Yet, CRI admits even today it hasn't even a scintilla of evidence to oppose

26 summary judgment.  CRI blames AntiCancer for its blatant failure to conduct a pre-suit

27 investigation and to call AntiCancer's summary judgment motion "premature" and a "sham."

28 CRI EPA at 10:5.  This reflects some *chutzpah*, which might be less offensive had CRI not so

1   strenuously argued AntiCancer was entitled to **no** discovery in advance of the hearing on

2   CRI's summary judgment motion:

3           **AntiCancer argues that the real problem is the lack of**
        **discovery.  [citation omitted.] But no amount of discovery can**
4           **cure the defects of AntiCancer's PICs** . . .

5   DE 166 at p. 10-12 (emphasis added).

6           Elsewhere:

7           AntiCancer's submission of this declaration as purported
        evidence of infringement by CRI, **which is beyond the**
8           **disclosures in its PICs, is an impermissible attempt to do**
        **what this Court has already told CRI [sic] it cannot do –**
9           **amend its deficient PICs.  AntiCancer is limited to its PICs in**
        **opposing CRI's motion, and any portions of the Hoffman**
10          **declaration purporting to show infringement by CRI have no**
        **relevance in this litigation, do not create a genuine issue of**
11          **material fact, and should be disregarded.**

12  DE 168 at p. 2:20-25 (emphasis added).

13          The Court sustained these arguments.  It should now do so again, if for no other

14  reasons than fairness and fidelity to its prior ruling.

15          CRI's application smacks strongly of a double standard.  When it serves CRI's

16  interest, "evidence" and experts can be found.  When it was time for CRI's motion for

17  summary judgment of invalidity, CRI had no difficulty finding evidence with which to

18  support its motion.  *See* D.E. 134 and attachments 1-24.  That was almost two years ago.

19  D.E. 134 (CRI's motion for summary judgment of invalidity filed June 30, 2008).  When it

20  was time for the parties' claim construction hearing, CRI had no trouble finding an expert –

21  Dr. Patricia A. Pesavento, DVM, Ph.D. – whom it not only thought was skilled enough in the

22  art to present CRI's claim construction tutorial to this Court, but was also worthy in CRI's

23  eyes of submitting an expert opinion affidavit in support of CRI's "Supplemental Document"

24  regarding the term metastasis filed on December 11, 2009.  D.E. 275 (later stricken by the

25  Court, but not on Dr. Pesavento's account).

26          As with its anticipation and obviousness theories, CRI's remaining theories of

27  invalidity render further evidence irrelevant to CRI's ability (or lack thereof) to oppose the

28  pending summary judgment motion.  As a matter of law, the claim language of the patents-

1   in-suit is *not* indefinite after the Court itself has construed the terms at Markman.  *See Source*

2   *Search Technologies, LLC v. Lendingtree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009); *Exxon*

3   *Research and Engineering Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001); *Toro Co. v.*

4   *White Consolidated Indust., Inc.*, 2003 U.S. Dist. LEXIS 8550 (D. Minn. May 14, 2003)

5   (rejecting indefiniteness claim after *Markman* hearing).

6        Nor does CRI require access to any further information in order to oppose the pending

7   summary judgment motion on its two remaining theories of invalidity: lack of enablement

8   and lack of written description.  Both theories require reference to nothing other than the

9   language of the patent itself.  *See AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir.

10   2003) (re enablement); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 967-968 (Fed. Cir.

11   2006) (re written description).

12        Because CRI has failed to include in its affidavit an explanation of how the

13   information it seeks will preclude summary judgment, CRI's application should be denied

14   and it should be ordered to oppose AntiCancer's motion for summary judgment.

15        B.    CRI Has Not Been Diligent.

16        CRI's 56(f) affidavit is silent on the issue of diligence.  This is reason alone to

17   deny the application.  *Employers Teamsters Local*, 353 F.3d at 1129-1130 (district court

18   doesn't abuse its discretion by denying further discovery if movant has failed to show

19   diligence).  CRI had a Rule 11 duty to investigate its claims of invalidity – and secure an

20   expert invalidity opinion if need be – *before* filing its counterclaims of invalidity more than

21   three years ago.  D.E. 10 (original answer and counterclaims filed April 16, 2007).  It did not

22   do so.  This is not the type of setting for which Rule 56(f) was designed.

23        CRI's suggests that 56(f) relief should almost be automatic in this case, citing

24   *Burlington Northern Santa Fe RR Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 774 (9th

25   Cir. 2003) and *Metropolitan Life Ins. Co. v. Bancorp Servs., LLC*, 527 F.3d 1330, 1337 (Fed.

26   Cir. 2008).  These cases, however, are different from this one in a significant respect.  In

27   *Burlington*, the non-moving party had moved for summary judgment less than four weeks

28   after filing suit.  *Burlington*, 323 F.3d at 773.  In *Metropolitan*, the party moving for 56(f)

1    relief was never afforded an opportunity to conduct *any* discovery.  *Metropolitan*, 527 F.3d at

2    1337.

3         In contrast, this case is over three years old.  AntiCancer filed it in January 2007.  CRI

4    admits it started serving discovery in February 2008 – over two years ago.  CRI has twice

5    noticed (and then scrubbed) the 30(b)(6) deposition of AntiCancer.  (That deposition is now

6    set for April 22.)  The discovery CRI has propounded in the last two years is enormous.  This

7    is *not* a case like *Burlington* and *Metropolitan*.

8         CRI's position on this *ex parte* application seems hard to juxtapose with CRI's

9    position two years ago (when it sought summary judgment of invalidity).  At that time, CRI

10   had no difficulty finding evidence to support its motion.  *See* D.E. 134 and attachments 1-24.

11   Similarly, during claim construction, CRI had no trouble finding an expert – Dr. Patricia A.

12   Pesavento.  CRI thought so highly of Dr. Pesavento that it had her present CRI's claim

13   construction tutorial, then submit an unsolicited affidavit (later stricken by the Court) reciting

14   expert opinions about the meaning of the term "metastasis."  *See* DE 275.

15        CRI offers no reason why, three years into this case, it could not have hired an expert

16   to deal with the issues raised in AntiCancer's MSJ.  There is no such reason.  There are

17   adjectives to describe CRI's behavior in this setting.  "Diligent" is not one of them.  CRI's

18   lack of diligence defeats relief under Rule 56(f).  *See, e.g., Rivera-Torres v. Rey-Hernandez*,

19   502 F.3d 7, 8-11 (1st Cir. 2007) (affirming district court's denial of 56(f) relief; 18 months

20   sufficient for discovery); *Kadair, Inc. v. Sony Corporation of America*, 694 F.2d 1017 (5th

21   Cir. 1983) (affirming district court's denial of 56(f) relief; 10 months sufficient for

22   discovery); *Dyson v. Thomas H. Lee Co.*, 61 F.Supp.2d 13, 42-43 (D.D.C. 2000) (denying

23   56(f) relief; "While claims involving large corporations often involve extensive discovery,

24   two years is sufficient time to find the small quantum of evidence needed to survive a

25   summary judgment motion.");  *Quinn v. Thomas H. Lee Co.*, 61 F.Supp.2d 13, 18-19

26   (S.D.N.Y. 1999) (denying 56(f) relief; one year sufficient time for discovery).

27   ///

28    ///

1    VII.    CONCLUSION.

2          The Court should deny CRI's Rule 56(f) application.

3                                             Respectfully submitted,

4

5    Dated: April 19, 2010                   LAWTON LAW FIRM

6

7                                     By:    s/Dan Lawton
                                            Dan Lawton
8                                           Attorneys for Plaintiff and Counterdefendant
                                            AntiCancer, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing:

1.  PLAINTIFF AND COUNTERDEFENDANT ANTICANCER, INC.'S **OPPOSITION** TO *EX PARTE* APPLICATION OF DEFENDANT AND COUNTERCLAIMANT CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., FOR AN ORDER DENYING OR, IN THE ALTERNATIVE, CONTINUING, PLAINTIFF ANTICANCER, INC.'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY [DOC. # 283]; and

2.  DECLARATION OF DAN LAWTON IN SUPPORT OF **OPPOSITION** TO *EX PARTE* APPLICATION OF DEFENDANT AND COUNTERCLAIMANT CAMBRIDGE RESEARCH & INSTRUMENTATION, INC., FOR AN ORDER DENYING OR, IN THE ALTERNATIVE, CONTINUING, PLAINTIFF ANTICANCER, INC.'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY [DOC. # 283]

was this date served upon all counsel of record by electronic transmission through the Case Management/Electronic Case Filing (CM/ECF) system of the U.S. District Court for the Southern District of California, and that all parties in this case are represented by counsel who are CM/ECF participants.

Date:  April 19, 2010          By:     /s/Dan Lawton